UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 14-cv-2028 |
| v. | Honorable Judge Manish Shah |
| YAHOO! INC., | Magistrate Judge Jeffrey Cole |
| Defendant. | |
| ZENAIDA CALDERIN, | |
| Plaintiff, | Case No. 14-cv-2753 |
| v. | Honorable Judge Manish Shah |
| YAHOO! INC., | Magistrate Judge Jeffrey Cole |
| Defendant. | |

**DECLARATION OF MONICA S. DESAI IN SUPPORT OF YAHOO! INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE MONICA S. DESAI'S EXPERT REPORT**

I, Monica S. Desai, under penalty of perjury, state as follows:

1. I have been retained as an expert witness by YAHOO! Inc. (hereinafter referred to as "Yahoo"). On May 13, 2014, I supplied an expert report prepared as required by Federal Rule of Civil Procedure 26(a)(2)(B).[1] In the report, I analyzed whether the Short Message Service ("SMS") equipment Yahoo uses to send a notification text message in connection with the

---

[1] Affirmative Expert Witness Report of Monica S. Desai [DKT. 28-4]("Desai Report"). *See* Fed. R. Civ. Pro. 26(a)(2)(B).

1

Yahoo Messenger instant messaging program ("PC2SMS Service") is an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act ("TCPA").[2]

2. In that report, I concluded that Yahoo's PC2SMS Service connected with its instant messenger program is not an ATDS under the TCPA. Critically, an important foundation for that conclusion is my substantial experience at the Federal Communications Commission ("FCC" or "Commission"), which I applied throughout my analysis.[3]

3. My 11 years of experience at the FCC give me a unique perspective on the FCC rulemaking and policymaking process. I understand the internal evaluation process for implementing rules in connection with a statute. I understand the significance of language as it appears in an order as distinguished from language appearing in a rule. I applied that experience in my evaluation of the Yahoo PC2SMS Service.

4. In the present proceedings, significant emphasis is placed on the meaning of the statutory term "automatic telephone dialing system" and language in FCC orders and rules related to that definition. My experience in the FCC rulemaking and order writing process (including direct experience as chief of the FCC Bureau responsible for implementing all TCPA rules, policy, and guidance),[4] is relevant and helpful to understanding the context for and approach to the FCC's implementing rules, and the FCC's orders surrounding those rules.

---

[2] *Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227; 47 C.F.R. § 64.1200 et seq.

[3] Desai Report at 3, para. 6.

[4] "[A]s chief of the Consumer and Governmental Affairs Bureau at the FCC, I advised the chairman and commissioners, developed orders, and managed all rulemaking proceedings related to general consumer and disability policies, including TCPA, closed captioning, TRS, and hearing aid compatibility. . . . I was involved in reviewing, analyzing, and deciding policy issues concerning the TCPA, evaluating potential changes to TCPA regulations . . . preparing reports to Congress related to the TCPA, and briefing the FCC Commissioners, Congressional Staff, and interested federal and state agencies regarding evaluation and implementation of TCPA matters." *Id*.

5. I have been informed that the Plaintiffs in these proceedings suggest that the FCC somehow "amended" the statutory definition of an ATDS through language found in certain FCC orders. The Plaintiffs are incorrect. Based on my experience, the FCC would not, cannot, and has not amended the definition of an ATDS, which is set forth in the statute,[5] and is repeated in the FCC's rules.[6]

6. When I joined the FCC in 1999, it was impressed upon me that first and foremost the FCC is a creature of Congress, and in any rulemaking, the FCC must effectuate the will of Congress, as reflected, in the first instance, in the plain language of the statute.[7]

7. As I have stated, Congress was very clear and specific in its definition of an ATDS.[8] It is not surprising to me that the definition of an ATDS as set forth in the FCC's rules tracks the language of the statute.[9] I know from experience that had the FCC intended to make any changes to the definition, it would have altered the definition in the rules.[10] And my experience is that the FCC would have changed the language in the FCC's TCPA consumer advisory, which is intended to explain to consumers the parameters of the TCPA, including the definition of an ATDS.[11]

8. Specifically, I understand based on my experience that the FCC's commentary discussing the meaning of a "predictive dialer" was not intended to alter the statutory definition

---

[5] 47 U.S.C. § 227(a)(1).

[6] 47 C.F.R. § 64.1200(f)(2); Deposition of Monica S. Desai ("Desai Dep.") at 241:21-242:14. True and correct copies of exhibits to the Desai Dep. are attached hereto as Exhibit A.

[7] Desai Dep. at 13:7-11 ("Desai Dep.").

[8] Desai Report at 8, para. 17.

[9] Desai Report at 8, para. 17; Ex. 4, Desai Dep. at 20:2-4.

[10] Desai Dep. at 246:2-247:5.

[11] Desai Dep. at 37:15-22.

nor the Commission's rules.[12] The FCC stated that the statute's "prohibition on autodialed calls not be circumvented."[13] At the same time, with the 2003 and 2008 FCC orders, the FCC consistently referred back to the statutory definition, which based on my experience as a former FCC official, indicates to me that the FCC was careful to emphasize that there was no intent to alter the statutory definition.[14] This language is consistent with my knowledge and experience with how the FCC approaches any rulemaking and the issuance of any order – the statute comes first, the rules reflect the Commission's precise intent, and this type of commentary in an order is just that – commentary, which must be understood in the context of applying the statute and not to contradict it.

9. Moreover, based on my FCC experience, it is clear to me that the FCC only intended to associate predictive dialers with voice calls – not with text messaging.[15] For example, as I mention in my expert report, the descriptions the Commission uses to explain predictive dialers "very obviously apply to equipment that is used to promote call center and sales agency efficiency, and thus, by necessity, voice calls."[16]

10. As I explained in my report and in more detail in my deposition, my conclusions regarding the nature of the Yahoo PC2SMS service are based on the same type of technical review I typically engaged in at the FCC.[17] At the FCC, it is common for non-engineering staff to work directly with engineering and other technical staff to review and evaluate technical issues, and make rules and policies based those discussions as well as based on information

---

[12] Desai Report at 11-12, para. 24, 26.

[13] *See generally* 2008 Report; see also Desai Report at 11, para. 25.

[14] Desai Dep. at 246:2-247:5.

[15] Desai Report at 11, para. 24.

[16] *Id.*

[17] Desai Dep. at 177:2-178:17.

provided by technical personnel outside of the FCC, and review of technical literature. This is necessary and typical, as it is important for personnel engaging in the drafting of rules and creation of policy to ask appropriate questions and digest the answers provided in order to have a sufficient understanding of the technology being regulated. My conclusions that the Yahoo PC2SMS Service does not have the requisite capacity to store or produce numbers to be called using a random or sequential number generator, does not and cannot function as a predictive dialer, does not and cannot operate without human intervention, and does not have the capacity to send messages or dial numbers from any database of stored numbers, are based on the same type of technical analysis process I and others typically engaged in while at the FCC.

11. In summary, my 11 years of experience working at the FCC, and in particular my time as Chief of the Consumer and Governmental Affairs Bureau – the bureau that develops and promulgates the Commission's policy on TCPA matters – enables me to provide expert guidance on the processes and thinking behind the promulgation of FCC TCPA orders and rules, and the context necessary for interpreting key TCPA terminology.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on October 24, 2014, in Washington, D.C.

*[signature]*
_____
Monica S. Desai

5