# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 14-cv-2028 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |
| ZENAIDA CALDERIN, | ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-2753 |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION

Keith J. Keogh
Timothy Sostrin
Michael S. Hilicki
Katherine Bowen
KEOGH LAW, LTD
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092 Telephone
(312) 726-1093 Facsimile
*For Plaintiff Rachel Johnson*

Vincent L. DiTommaso
Peter S. Lubin
John Auchter
DITOMMASO LUBIN, P.C.
17W 220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
(630) 333-0000 Telephone
*For Plaintiff Zenaida Calderin*

Pursuant to Fed. R. Civ. P. 23, the plaintiffs move for class certification with respect to their claims against the defendant Yahoo! Inc ("Yahoo") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). In support of this motion, Plaintiffs state:

## I. SUMMARY OF FACTS

Yahoo advertises its services by sending unsolicited text messages to cell phone numbers. Whenever a Yahoo user sends a text message to a cell phone number using Yahoo Messenger[1] for the first time, Yahoo itself sends a separate and additional text message ("the Welcome Message") to the same number. Every such Welcome Message is sent indiscriminately and automatically by Yahoo's computer servers ("the PC2SMS system") without the knowledge or input of any Yahoo user, and without regard to whether the recipient is a Yahoo user. The Welcome Message states:

> "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

At all relevant times, the URL y.ahoo.it/imsms directed to a webpage displaying the following:



---

[1] Yahoo Messenger began as an instant messaging program allowing Yahoo users to communicate with each other via real time messaging. Prior to 2007, Yahoo upgraded the Messenger program to allow Messenger users to also use the Messenger program to send SMS text messages to virtually *any* cellular telephone number, even if those numbers belong to persons who have never used any Yahoo services. *Ex. 1 – Choud. Dep. (July)* at 17:12-21; *Ex. 2 – Doron Dep.* at 32:25 – 33:8; *Ex. 3 – Choud. Dep. (September)* at 101:12-17).

1

*Ex. 3* at 90:19-24 and ex. 5 thereto.  This conduct violates the TCPA.

  A. **Facts Relating to Johnson**

  Plaintiff Rachel Johnson has never been a Yahoo user. *Ex. 4 - Interr. 6.*  On March 19, 2013, the Yahoo Messenger user miapickett862, who is unknown to Johnson, sent the following spam text message via Yahoo Messenger to Johnson's cellular telephone number 630-697-7920:

  "Do you want to be freed from of [sic] your payday advance loans call _888.9064165"

*Ex. 5*.  Immediately after Johnson received this message, she received the Welcome Message from Yahoo. *Ex. 6.*  Both messages were received on March 19, 2013 at 11:17am.

  Yahoo's computer servers automatically sent the Welcome Message to Johnson's cell phone because the spam text message sent by miapickett862 was the first text message sent to Johnson via the Yahoo Messenger program.  Yahoo did nothing to ensure or confirm that it had Johnson's consent to send the Welcome Message.

  B. **Facts Relating to Calderin**

  Plaintiff Calderin signed up for Yahoo email service on May 8, 2006. *Ex. 7 - Yahoo Dep.* at 177:23-25.  On January 7, 2010, Calderin provided Yahoo with her cellular telephone number 773-574-7978 so that Yahoo could communicate with her about her Yahoo account. *Id* at 172:3-6.  Specifically, Calderin provided the number so that Yahoo could contact her in the event of a password reset to ensure that she authorized the password change. *Id* at 179:4-13 ("It's done in the context of 'make your account more secure by providing us a phone number so in case of password reset we have another way of making sure that it was you that changed it . . . that is the context within which the phone number is provided.'")

  On April 7, 2014, Yahoo Messenger user allwheeldrive777, who was Calderin's coworker, sent a personal text message to Calderin's cellular telephone number 773-574-7978 via Yahoo Messenger. *Ex. 8*. Immediately after Calderin received this personal message, she received the

2

Welcome Message from Yahoo. Both messages were received on April 7, 2014, 9:29am. *Ex. 9*.

Yahoo's computer servers automatically sent the Welcome Message to Calderin's cell phone because the personal text message sent by allwheeldrive777 was the first text message sent to Calderin via the Yahoo Messenger program. Yahoo did nothing to confirm or ensure that that it had Calderin's consent to send the Welcome Message.

### C. Yahoo's Business Records

Yahoo maintains detailed records relating to the Welcome Messages sent by the PC2SMS system, showing: (1) the cellular telephone number to which each Welcome Message was sent; (2) the carrier providing service to those cellular telephone numbers (e.g. Sprint); and (3) the date on which each Welcome Message was sent. *Ex. 7* at 20:17 - 23:19, exs. 5 and 6 thereto.

Yahoo also maintains detailed records relating to the users of Yahoo's services. These records contain, among things, fields for the (1) email address of the user; (2) the full name of the user; (3) the address, city, state, and/or zip code of the user; (4) the birthday of the user; (5) the IP address from which the user registered for Yahoo's services; (6) the user's telephone number; (7) the date on which Yahoo obtained the user's telephone number; and (8) the date on which the user agreed to Yahoo's terms of service. *Ex. 10*, *Ex. 7* at ex. 19 thereto, *Ex. 11*.

### II. THE PROPOSED CLASS DEFINITION

Plaintiffs seek certification of the following class of similarly situated persons:

> All persons within the United States to whose cellular telephone number Yahoo sent the Welcome Message during the period: (i) commencing March 1, 2013 through March 31, 2013 and while such cellular number was assigned to Sprint or (ii) commencing April 1, 2014 through April 30, 2014 and while such cellular number was assigned to T-Mobile.

Plaintiffs also seek certification of the following subclasses:

> *Subclass A*
> All persons within the United States to whose cellular telephone number Yahoo

...

sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013 while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo user in Yahoo's records.

*Subclass B*
All persons within the United States to whose cellular telephone number Yahoo sent the Welcome Message during the period commencing April 1, 2014 through April 30, 2014 while such cellular number was assigned to T-Mobile, and whose cellular telephone number is not associated with a Yahoo user in Yahoo's records.

These definitions are narrower than the definitions proposed in the plaintiffs' complaints (*see Johnson Doc. 1* at ¶ 23; *Calderin Doc. 1* at ¶ 24); those initial definitions encompassed texts sent over a four year period rather than the two months suggested here. As such, there is no need to amend the complaints since those initial definitions encompass the class proposed here.[2]

## III.   THE TELEPHONE CONSUMER PROTECTION ACT

Section (b) of the TCPA places "restrictions on the use of automated telephone equipment." 47 U.S.C. §227(b). These restrictions apply equally both to equipment that is used to send text messages and to equipment that is used to place voice calls. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Red. 15927, 15934 (August 12, 2004) (the "prohibition on using automatic telephone dialing systems ['ATDS'] to make calls to wireless phone numbers applies to text messages[.]"); *Schlueter v. Latek*, 683 F.3d 350, 356 (7th Cir. 2012) (referring to regulation of text messages); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

Although Congress was especially concerned about the harm caused by telemarketing,

---

[2] S*ee Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *Pa. Chiropractic Assn. v. Blue Cross Blue Shield Assn.*, 2011 U.S. Dist. LEXIS 15968, *17 (N.D. Ill. 2011) ("plaintiffs were not required to amend their complaint as a prerequisite to seeking a class definition different from what they previously alleged in their complaint").

Congress found that "automated" telephone calls were a "nuisance and an invasion of privacy," "regardless of the content or the initiator of the message." Pub. L. No. 102-243, §§ 2(5), 2(10), 2(13) (Dec. 20, 1991), codified at 47 U.S.C. §227; *see also Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740, 745 (2012) (summarizing the congressional findings underlying the TCPA); *Patriotic Veterans, Inc. v. State of Indiana*, 736 F.3d 1041, 1050 (7th Cir. 2013) (referring to "Congress's goal" in enacting TCPA "to protect the privacy of citizens against unsolicited telephone calls"); *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106 (D. Minn. 2009) ("unwanted text messages, like spam e-mail, are an annoyance").

The TCPA thus makes it unlawful "to make *any call* . . . using any [ATDS]" to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent"[3] of the called party. 47 U.S.C. §227(b)(1)(A) (emphasis added). Further, as of October 16, 2013, "prior express *written* consent" is required for any such call "that includes <u>or introduces</u> an *advertisement*[4] <u>or</u> constitutes *telemarketing*[.]"[5] 47 C.F.R. § 64.1200(a)(2) (emphasis added); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830, *1857, ¶ 66 (February 15, 2012)

---

[3] Courts have uniformly held that "prior express consent" is an affirmative defense to a TCPA claim, for which the defendant bears the burden of proof. *See Nelson v. Santander Consumer USA, Inc.*, 2013 U.S. Dist. LEXIS 40799, *17 (W.D. Wisc. 2013)(collecting cases); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011)(referring to "the defense of invitation or permission," which is the analogous defense under §227(b)(1)(C)) of the TCPA addressing facsimile advertisements).

[4] "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "The FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited [as advertisements]" *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 917 (9th Cir. 2012), *citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14095 ¶¶ 140-142, 2003 WL 21517853 (F.C.C. 2003)).

[5] "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

("we establish a twelve-month period for implementation of the requirement that prior express consent be in writing").

This Court has already denied Yahoo' motion for summary judgment contending that it did not use an ATDS to send the Welcome Messages. *Doc. 89*. The only other provision of the TCPA conceivably at issue is in this case is whether Yahoo had "prior express consent" or "prior express written consent" to send the Welcome Messages. Yahoo has testified that is has three grounds for claiming consent (*ex. 7* at 44:21 - 47:5): First, Yahoo contends that every person in the class has consented because (Yahoo assumes) that they must have provided their cell phone number to the sender of the *user generated message*, which of course says nothing about whether they consented to receive the *separate* Welcome Message *from Yahoo*).[6] Second, to the extent that any of the Welcome Messages coincidentally happened to be received by a Yahoo user, Yahoo contends that the Yahoo user consented to the message by previously agreeing to Yahoo's Terms of Service. Third, Yahoo contends that any Yahoo user who coincidentally received the Welcome Message also provided consent if they had previously provided their telephone number to Yahoo to receive account related messages. As described below, all of these questions can be thoroughly and efficiently resolved on a class wide basis regardless of which party ultimately prevails.

## IV.    RULE 23 IS SATISFIED

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). They "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available");

---

[6] This theory of consent was already rejected in the concurrently pending *Sherman* case. *Sherman v. Yahoo! Inc.*, 997 F.Supp.2d 1129, 1134 ("assuming, *arguendo*, Plaintiff had provided the unidentified Yahoo! User his mobile phone number, it cannot be interpreted as consent to receive Yahoo!'s Messenger Service messages.").

*see also Gulf Oil Co. v. Bernard*, 425 U.S. 89, 100, n.11 (1980) (they allow plaintiffs "to vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.")

Class certification in this case furthers the same policies, as the TCPA is not a fee shifting statute, and each class member's claim for receiving the Welcome Message is worth at most $500-$1500. *See* 47 U.S.C. § 227(b)(3) (allowing the court to treble damages up to $1500).Thus, it would be entirely uneconomical for any class member to pursue a claim on an individual basis.

"Class certification is normal in litigation under §227 [of the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). At least fifty courts had already certified TPCA class actions as of 2010. *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010). In the past five years, courts have continued to certify TCPA class actions, many of which concern unsolicited text messages like those sent by Yahoo in this case. *See e.g. Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. Nov. 9, 2012) (text messages); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) (text messages) *Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. 2014) (text messages); *Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292 (D. Nev. 2014) (text messages); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014); *Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. 2011), *Mitchem v. Illinois Collection Service*, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. 2011); *Chapman v. Wagener*, 2014 U.S. Dist. LEXIS 16866 (N.D. Ill. 2014); *Abdeljalil v. General Electric Capital Corp.*, 2015 U.S. Dist. LEXIS 43288 (S.D. Cal. 2015); *Stemple v. QC Holdings, Inc.*, 2014 U.S. Dist. LEXIS 125313 (S.D. Cal. 2014); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779 (W.D. Wash. 2015).

### A. The Class is Demonstrably Ascertainable

A class is sufficiently ascertainable if there are at least "some objective criteria by which the identities [of class members] can be determined" and the plaintiff "propose[s] a method for ascertaining class members with some evidentiary support that the method will be successful." *Langendorf v. Skinnygirl Cocktails, LLC*, 2014 U.S. Dist. LEXIS 154444, *4 (N.D. Ill. 2014). In other words, "the class simply must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class." *Rhodes v. Cracker Barrel Old Country Store*, 213 F.R.D. 619, 674 (N.D. Ga. 2003). Rule 23 does not, however, require the comprehensive identification of class members where such a process is not feasible. *Hughes v. Kore of Indiana Enter.*, 2013 U.S. App. LEXIS 18873 (7th Cir. 2013) (reversing denial of certification and holding that "obtaining the identity of all the users might require subpoenaing hundreds of banks . . . . The members of the class in this case can't be identified through reasonable effort, effort commensurate with the stakes . . .When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted.") *Id* at *9-10.

In this case, every element of the class definition is determined by objective criteria. A person is a class member if (1) they had a cell phone number (2) to which Yahoo sent a Welcome Message (3) between March 1, 2013 and March 31, 2013 while that number was assigned to Sprint or (4) between April 1, 2014 and April 30, 2014 while that number was assigned to T-Mobile. Each of the two subclasses has an additional element that is also determined by objective criteria, i.e., whether the cell phone number is assigned to a Yahoo user in Yahoo's business records.

Yahoo's own PC2SMS records identify (1) each cellular telephone number to which the Welcome Message was sent, (2) the date on which the Welcome Message was sent to each of those numbers, and (3) the carrier providing service to those telephone numbers (e.g. Sprint or T-Mobile)

at that time. *Ex. 7* at 20:17 - 23:19 and exs. 5 and 6 thereto. Analysis of these records establishes that Yahoo sent the Welcome Message to 520,210 unique Sprint assigned cell phone numbers in March 2013 (including Plaintiff Johnson's number), and to 29,528 unique T-Mobile assigned cell phone numbers in April 2014 (including Plaintiff Calderin's number). *Ex. 12 - Hansen Dec.* at ¶13-16. With respect to the subclasses, an analysis of Yahoo's User Records shows that 321,107 of the 520,210 Sprint numbers (including Plaintiff Johnson's number) are *not* associated with a Yahoo user, and 19,568 of the 29,528 T-Mobile numbers (including Plaintiff Calderin's number) *are* associated with a Yahoo user. *Id* at ¶ 18-19.

Sprint's records and T-Mobile's records will identify the person(s) subscribing to each of the relevant numbers at the time the Welcome Message was sent. Indeed, Sprint has already responded to Plaintiffs' subpoena in this case by identifying the names, addresses, and social security numbers of persons who received the Welcome Message in March 2013.[7] Plaintiffs have also served a subpoena upon T-Mobile for the same information, and expect that T-Mobile will comply as it is already doing the same thing in *Birchmeier*, another certified TCPA class action pending in this District. *Ex. 14 - T-Mobile Response* at p.1 ("T-Mobile has agreed to develop a mechanism to access the names and addresses of the subscribers on the list provided by Plaintiffs").

In *Birchmeier*, this Court held that a class was ascertainable where the defendants' records identified the telephone numbers to which the calls at issue were placed, because telephone company records could be used to identify the persons subscribing to those telephone numbers at the time of the calls. *Birchmeier*, 302 F.R.D. at 245-26 ("it is fairly clear that the identities of the

---

[7] *Ex. 13 – Sprint Response*. Sprint's response did not identify persons with California addresses, as Sprint claims that California law prohibits disclosure of that information without "a Judge's court order or notarized, account holder consent." Should this Court certify the proposed class, Plaintiffs will seek a court order so Sprint may disclose persons with California addresses without violating California law so that those persons can receive notice.

9

persons whose numbers are on plaintiffs' list of 930,000--indeed, the subscribers for those numbers at the time defendants called them--are sufficiently ascertainable.")

Numerous courts have found classes to be ascertainable in similar circumstances. *See e.g*. *Amer. Copper & Brass v. Lake City Indust. Prod.*, 2014 U.S. App. LEXIS 12921, *12 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement."); *Booth*, 2015 U.S. Dist. LEXIS 40779 at *9 (finding class to be ascertainable where the plaintiffs "intend to rely on additional records, such as telephone carrier records and reverse look up directories, to identify class members and establish elements of their claims"); *Kristensen*, 12 F.Supp.3d at 1303 (finding class to be ascertainable where "data from T-Mobile calling lists can be used to identify the individual class members"); *Targin Sign Sys. v. Preferred Chiropractic Ctr.*, 679 F.Supp.2d 894, 897-98 (N.D. Ill. 2010) ("every fax number represents a subscriber, and the fact that a transmission sent to those fax numbers will consequently make it possible to match names and other relevant information through the numbers themselves is the definitive answer to the fallacious [identification] argument by Preferred's counsel."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869, *11, 23 (N.D. Ill. 2009) (finding a TCPA class to be ascertainable in similar circumstances because "GM Sign can use the fax numbers on the transmission logs to determine the identity and contact information of its class members"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 U.S. Dist. LEXIS 79827, *7 (N.D. Ill. 2008) ("Though the logs do not definitively establish the identities of the recipients without further investigation on the part of class counsel, they provide enough information to enable counsel to locate them.")

B.  **The Class Members are Numerous**

"Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable." *Langendorf*, 2014 U.S. Dist. LEXIS 154444 at *6. "Generally, classes with more

than one hundred plaintiffs satisfy the numerosity requirement . . . because joinder of hundreds of persons would stretch the facilities and abilities of this Court beyond their elastic limit." *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 645 (N.D. Ill. 2006). In this case, there are 549,738 class members. *Ex. 12* at ¶14, 16. 321,107 of those are members of Subclass A, and 19,568 are members of Subclass B. *Id* at ¶18-19. Joinder of all of these claims is clearly impracticable, so numerosity is satisfied.

### C. Commonality is Satisfied

Commonality requires that "there are questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)) and that "the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) In other words, the class claims must "depend upon a common contention… capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A single common factual or legal issue is sufficient to satisfy the rule. *Langendorf*, 2014 U.S. Dist. LEXIS 154444 at *6.

Commonality is satisfied in this case. First, all of the class members suffered the same injury. Yahoo's PC2SMS system sent all of them the exact same unsolicited text message automatically and indiscriminately in violation of their rights under the TCPA. Numerous courts have found commonality to be satisfied in similar circumstances. *See Agne*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Because Plaintiff's allegation is not merely that all class members suffered a violation of the TCPA, but rather that all class members were sent substantially similar unsolicited text messages by the same defendants, using the same automatic dialing technology, commonality is satisfied."); *Booth*, 2015 U.S. Dist. LEXIS 40779 at *19 (commonality satisfied where the class members' claims were all predicated on "the use of the same predictive dialer to

11

robocall and play the same recorded message to various cell phone numbers."); *Birchmeier*, 302 F.R.D. at 251 (finding "a common injury, resulting from receipt of the allegedly offending calls").

Second, Yahoo's common course of conduct gives rise to a number of common questions. For instance, is the PC2SMS system an "ATDS" under the TCPA? Does the Welcome Message introduce an advertisement or constitute telemarketing by directing the recipient to the website advertising Yahoo's services? Does Yahoo's Terms of Service Agreement provide "prior express consent" or "prior express written consent" to receive the Welcome Message, which has nothing to do with the user's Yahoo account? Does a Yahoo user's provision of a cellular telephone number to Yahoo for account verification purposes provide "prior express consent" or "prior express written consent" to receive the same Welcome Message?

Numerous courts have found such questions to be common to a TCPA class. *See e.g. Manno v. Healthcare Revenue Recovery Group*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("although defendants also contend that the mere act of tendering a phone number to an admissions clerk at the time of medical care constitutes consent per se, this argument whatever its validity, does not defeat commonality. To the contrary, the argument is itself subject to common resolution."); *Agne*, 286 F.R.D. at 567, 570 (finding consent to be a common issue); *Mitchem v. Illinois Collection Service, Inc.*, 2010 U.S. Dist. LEXIS 76581, *15 (N.D. Ill 2010) ("Because defendant is capable of compiling a list of debtors who did not, under plaintiff's theory, consent to its calls, an appropriately tailored class definition could make consent a class-wide, not an individual, issue."); *see also Stern*, 2014 U.S. Dist. LEXIS 17949 at *20 ("the evidence Defendant has presented applies to the class at large . . . at this stage in the litigation, it appears that consent will be proved or disproved on evidence and theories applicable to the entire class.")

**D.      Plaintiffs' Claims Are Typical of the Class**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

In this case, Plaintiffs' claims, and those of the absent class members, arise from the same course of conduct: Yahoo's PC2SMS indiscriminately sent each of them the same unsolicited text advertisement for the same reason - because a Yahoo user was sending them a different text message via Yahoo Messenger for the first time. This satisfies typicality. *See Stern*, 2014 U.S. Dist. LEXIS 17949 at *11-12 (finding typicality satisfied in a TCPA case because "the unnamed class members received text messages identical or similar to those received by Plaintiff. And these text messages were caused by the same course of conduct."); *Malta v. The Federal Home Loan Mortgage Corp.*, 2013 U.S. Dist. LEXIS 15731, *7 (S.D. Cal. 2013).

### E. Plaintiffs are Adequate Class Representatives

The adequacy requirement ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault*, 234 F.R.D. at 646. In this case, counsel has extensive experience and proven success with class actions brought under the TCPA. *Ex. 15*, *Ex. 16*. The class representatives have vigorously prosecuted this action on behalf of the class, have answered discovery, and have been

deposed. They do not have any interests antagonistic to the class, as they received the exact same message from Yahoo under the exact same circumstances, and seek the exact same relief.

### F.     Common Questions Predominate

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Predominance is a question of efficiency" requiring the Court to determine whether it is more efficient "to decide some issues on a class basis or all issues in separate trials." *Butler v. Sears*, 702 F.3d 359, 362 (7th Cir. 2012). The existence of some individual issues, therefore, does not preclude certification so long as common issues "are more substantial than those subject to only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2nd Cir. 2010); *see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 484-87 (N.D. Ill. 2009) (certifying class even though several individual issues existed because they did not predominate the action). This inquiry "requires a qualitative assessment," and is not akin to "bean counting" or "counting noses." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

In this case, the common questions identified above, including the questions of whether the PC2SMS system is an ATDS, will predominate this action. Indeed, the ATDS issue has already predominated this action and there is no reason to expect that it will not continue to do so at trial. Further, as described above, Yahoo's theories of consent, which rely on its terms of service and the existence of telephone numbers in Yahoo's records, are also ripe for class-wide resolution. Thus, any variances between the class members' individual circumstances will not cause individualized consent issues likely to predominate this action. *See Stern*, 2014 U.S. Dist. LEXIS 17949 at *7 (rejecting argument that consent predominates where "evidence [of consent] doesn't differ between putative class members, and the Court's evaluation of it will apply to all class

14

members equally"); *Stemple*, 2014 U.S. Dist. LEXIS 125313 at *24-25 (rejecting argument that consent issue requires mini-trials and ruling that "the overall factual scenario can be ascertained by looking at the loan application and this predominates over any individual factual scenarios).

### G.  This Class Action is Superior to other Methods of Adjudication

"Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). As described above, each class member has a claim likely worth no more than $500. Since the TCPA is not a fee shifting statute, individual actions are not feasible even if the Court were to treble damages upon a finding of willfulness, as attorneys' fees would greatly exceed the recovery. *See Agne*, 286 F.R.D. at 571 ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation like Papa John's.").

Further, a class action is the most efficient means of resolution. A single lawsuit adjudicating the question of whether Yahoo's texts violate the TCPA is superior to countless identical individual lawsuits pressing the same question, and potentially resulting in inconsistent rulings. *See Birchmeier*, 302 F.R.D. at 255. In this case, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

WHEREFORE, Plaintiffs request that the Court certify the class and subclasses, appoint Plaintiffs to be the class representatives, and appoint Plaintiffs' counsel to be Counsel for the Class.

RESPECTFULLY SUBMITTED,

/s/ Timothy J. Sostrin
One of Plaintiff's Attorneys