**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | Case No. 14-cv-2028 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| ZENAIDA CALDERIN, | ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-2753 |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Keith J. Keogh
Timothy Sostrin
Michael S. Hilicki
Katherine Bowen
**Keogh Law, Ltd.**
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092 Telephone
(312) 726-1093 Facsimile
*For Plaintiff Rachel Johnson*

Vincent L. DiTommaso
Peter S. Lubin
John Auchter
**DiTommaso Lubin, P.C.**
17W 220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
(630) 333-0000 Telephone
*For Plaintiff Zenaida Calderin*

## **TABLE OF CONTENTS**

I.    Introduction ........................................................................................................................ 1

II.   Summary of Facts .............................................................................................................. 3

III.  The Class is Ascertainable ................................................................................................ 5

    A.   Sprint and T-Mobile Subscriber Records Identify the Names and Addresses of the Class Members 6

    B.   The Telephone Subscribers are Appropriate Class Members .......................................... 7

IV.  Consent Can be Adjudicated on a Classwide Basis .......................................................... 9

    A.   "Intermediary Consent" .................................................................................................. 9

        1.   *"Intermediary Consent" will Not Predominate this Action* ................................... 12

    B.   Yahoo's Terms of Service ............................................................................................. 13

        1.   Individual Issues Regarding Agreement to the Terms of Service do not Predominate ............ 15

    C.   Provision of Telephone Number for Account Security Purposes ................................... 19

    D.   Yahoo's "Permutations" of Consent ............................................................................. 20

V.   A Class Action is Superior to Individual Prosecution ...................................................... 20

VI.  The Class Representatives are Typical and Adequate ...................................................... 22

    A.   Plaintiff Calderin ........................................................................................................... 22

    B.   Plaintiff Johnson ........................................................................................................... 23

    C.   Class Counsel ................................................................................................................ 24

VII. Conclusion ...................................................................................................................... 25

## **TABLE OF AUTHORITY**

Cases

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) ...................................................... 1, 12

Beck v. Maximus, Inc., 457 F.3d 291 (3rd Cir. 2006) ............................................................... 13

Birchmeier v. Caribbean Cruise Line, 302 F.R.D. 240 (N.D. Ill. 2014) ...................................... 1

Butler v. Sears, Roebuck & Co., 727 F.3d 796 (7th Cir. 2013) ................................................ 12

Carlson v. Nev. Eye Care Professionals, 2013 U.S. Dist. LEXIS 75357 (D. Nev. 2013) ................ 19

CE Design Ltd. v. King Architectural Metals, 637 F.3d 721 (7th Cir. 2011) ............................... 23

Cellco P'ship v. Plaza Resorts Inc., 2013 U.S. Dist. LEXIS 139337 (S.D. Fla. Sept. 27, 2013) ......... 8

Chapman v. First Index, 2015 U.S. App. LEXIS 13767 (7th Cir. 2015) ........................................ 24

Charvat v. Allstate Corp., 29 F. Supp. 3d 1147 (N.D. Ill. 2014) .................................................. 9

G.M. Sign v. Finish Thompson, Inc., 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2009) ........................ 18

Gen. Tel Co. v. Falcon, 457 U.S. 147 (1982) ......................................................................... 20

Green v. Serv. Master on Locations Servs. Corp., 2009 U.S. Dist. LEXIS 53297 (N.D. Ill. 2009) ......... 21

Hardy v. City Optical Inc., 39 F.3d 765 (7th Cir. 1994) ......................................................... 13

Horowitz v. GC Services LP, 2015 U.S. Dist. LEXIS 59878 (S.D. Cal. 2015) ................................. 8

Hughes v. Kore of Ind. Enter. 731 F.3d 672 (7th Cir. 2013) ................................................. 7, 9

In re Holocaust Victim Assets Litig., 225 F.3d 191 (2d Cir. 2000) ........................................... 24

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order, 27 FCC
   Rcd. 1830 (Feb. 15, 2012) ........................................................................... 15

In re Simon II Litig., 2002 U.S. Dist. LEXIS 25632 (E.D. N.Y. 2002) ......................................... 19

In re Vitamin C Antitrust Litigation., 279 F.R.D. 90 (E.D. NY 2012) ......................................... 13

Ira Holtzman, C.P.A., & Assocs. v. Turza, 2011 U.S. Dist. LEXIS 97666 (N.D. Ill. 2011) ............... 21

Jamison v. First Credit Serv., 290 F.R.D. 92 (N.D. Ill. 2013) ................................................. 17

Jordan v. ER Solutions, Inc., 900 F. Supp.2d 1323 (S.D. Fla. 2012) ........................................ 14

Kolinek v. Walgreen Co., 2014 U.S. Dist. LEXIS 91554 (N.D. Ill. 2014) ........................... 14, 15, 19

Kucala Enter. Ltd v. Auto Wax Co., 2003 U.S. Dist. LEXIS 8833 (N.D. Ill. 2003) ........................ 24

Long v. Trans World Airls., 761 F.Supp. 1320 (N.D. Ill. 1991) ............................................... 19

Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997) .................................................. 21

Maraan v. DISH Network, 2014 U.S. Dist. LEXIS 162241 (S.D. Ohio 2014) ................................. 8

McBean v. City of New York, 233 F.R.D. 377 (S.D. N.Y. 2006) ............................................... 24

Messner v. Northshore Univ. Healthsystem, 669 F.3d 802 (7th Cir. 2012) .................................. 24

Mims v. Arrow Fin. Servs., 132 S. Ct. 740, (2012) .............................................................. 21

Mullins v. Direct Digital, LLC, 2015 U.S. App. LEXIS 13071 (7th Cir. July 28, 2015) .................. passim

Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006) ........................................ 20, 21

Myers v. Hertz Corp., 624 F.3d 537 (2nd Cir. 2010) ............................................................ 12

Nichols v. Northland Groups, Inc., 2006 U.S. Dist. LEXIS 15037 (N.D. Ill. 2006) ........................ 21

Perri v. Rescue 1 Financial, LLC, 2015 U.S. Dist. LEXIS 95717 (S.D. Cal. 2015) ........................ 14

Sacred Heart Health Sys. v. Humana Military Healthcare Servs., 601 F.3d 1159 (11th Cir. 2010) ......... 13

Saltzman v. Pella, 257 F.R.D. 471 (N.D. Ill. 2009) ............................................................... 12

Shurland v. Bacci Café, 271 F.R.D. 139 (N.D. Ill. 2010) .................................................. 1, 7, 18

Soppet v. Enhanced Recovery, 679 F.3d 637 (7th Cir. 2012) ................................................... 8

Suchanek v. Sturm Foods, 764 F.3d 750 (7th Cir. 2014) ......................................................... 1

Targin Sign Sys. v. Preferred Chiropractic Ctr., 679 F.Supp. 2d 894 (N.D. Ill. 2010) ................................... 13

Thrasher-Lyon v. CCS Commercial, 2012 U.S. Dist. LEXIS 157230 (N.D. Ill. 2012) ...................................... 14

Toney v. Quality Resources, Inc., 2014 U.S. Dist. LEXIS 166253 (N.D. Ill. 2014) .................................. 15, 19

Wallace B. Roderick Revocable Living Trust v. XTO Energy, 725 F.3d 1213 (10th Cir. 2013) .................... 13

## Other Authorities

In the Matter of GroupMe, Inc, 29 F.C.C. Rcd. 3442 (March 27, 2014)................................................ 10, 11

In the Matter of Rules and Regs. Implementing the TCPA of 1991, 2015 FCC LEXIS 1586 (July 10, 2015) . 2, 9, 10

## Rules

47 C.F.R. § 64.1200(f)(8) ..................................................................................................................... 14

## I.    Introduction

This controversy needs classwide adjudication.  The alternative is no adjudication at all.  The class member's individual claims are small[1] and the TCPA is not a fee shifting statute.  Thus, this is the quintessential case in which "the class device is . . . essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  *Mullins v. Direct Digital, LLC*, 2015 U.S. App. LEXIS 13071, *4 (7th Cir. July 28, 2015), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Defendants seeking to derail classwide adjudication of such small value cases with a parade of horrors about complications that might arise in litigation face an uphill battle.  "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Suchanek v. Sturm Foods*, 764 F.3d 750, 760 (7th Cir. 2014).  This is especially true here, since any perceived difficulties stem from Yahoo' own failure to maintain adequate business records. *See Mullins*, 2015 U.S. App. LEXIS 13071 at *31 ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions."); *Birchmeier v. Caribbean Cruise Line*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("declining to certify a class altogether, as defendants propose--would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct."); *Shurland v. Bacci Café*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) ("whether a class action is appropriate cannot be a function of Bacci's record-keeping practices.")

In this case, Yahoo's chosen examples of hypothetical complexity all stem from its own

---

[1] Each class members claim is worth $500 or up to $1500 if the Court decides to treble damages.  There is no evidence that any class member received the Welcome Message more than once.

failure to maintain the very records that the FCC requires of those asserting a prior express consent defense.[2]  Although Yahoo's records show the date, time, and number called for each Welcome Message, and together with the subscriber records of T-Mobile and Sprint, clearly identify the class, Yahoo never cared *who* received the Welcome Message, never cared whether any recipient of the Welcome Message actually consented, and thus never endeavored to maintain any records of prior express consent.  This cloud of ignorance, self-imposed, is not a shield against justice.

Further, all of the supposedly "individual issues" that Yahoo magnifies either concern a frivolous defense that cannot reasonably be at issue during trial (e.g. whether a class member ever 'revoked' prior express consent or gave prior express consent through an intermediary, as there is no evidence of either) or are easily resolved with administrative solutions (e.g. creating subclasses to address the three (3), slightly different, versions of Yahoo's Terms of Service, if the court deems it necessary[3]).  The common issues which remain are all capable of classwide resolution: (1) is the PC2SMS system an ATDS?; (2) do Yahoo's written Terms of Service provide "prior express consent" for the Welcome Message; and (3) does the provision of a cellular telephone number to Yahoo for account security purposes provide "prior express consent" for the Welcome Message?

Yahoo's arguments about ascertainability must also fail.  The 7th Circuit's recent decision in *Mullins* flatly rejects Yahoo's interpretation, and its purported expert's interpretation, of the

---

[2] "We expect that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their burden to prove that they have such consent, will maintain proper business records tracking consent." *In the Matter of Rules and Regs. Implementing the TCPA of 1991*, 2015 FCC LEXIS 1586, *116, ¶ 70 (July 10, 2015) ("FCC Omnibus Ruling").

[3] As argued below, Plaintiff does not believe that this solution is at all necessary.  The slight differences among the various versions of Yahoo's Terms of Service are irrelevant because Yahoo admits that (1) the terms of service have not changed in any relevant way since 2007; (2) any Yahoo users who opened an account prior to 2007 were nevertheless required to agree to most recent version of the terms of service in 2010; if they did not, Yahoo closed their accounts; and (3) Yahoo contends that all of its users are always bound by the most current version of Yahoo's Terms of Service.  Thus, the only version of the Terms of Service that matters is the single version that was in place at the time of the texts.

ascertainability requirement. There is no dispute that the class defined by Plaintiffs in this case is ascertainable under 7th Circuit law because it is clearly defined by referenced to objective criteria.

Finally, Yahoo's arguments about the adequacy of the named Plaintiffs and their counsel are groundless distractions from the real issues in this case. Neither the facts, nor any law, support Yahoo's accusations of inadequacy.

## II.    Summary of Facts

The focus of this case is not on Yahoo's Messenger program, which allows anyone, including spammers, to send text messages to any cellular telephone numbers that they choose.[4] Rather, it is the "Welcome Message" that Yahoo itself sends to promote its services whenever a "User Message" is sent to a cellular number for the first time. The Welcome Message states:

> "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

A recipient of this message who goes to the URL "y.ahoo.it/imsms" sees nothing more than an advertisement of Yahoo's various mobile apps. *Doc. 125* at p.2. The Welcome Message[5] is thus a marketing tool – it directs the recipient to a Yahoo webpage advertising Yahoo services. The Welcome Message does not provide any opt out information. Instead, in order to get the opt-out information, the recipient has to text "INFO" in reply to the Welcome Message, which triggers a second automated text message from Yahoo, then reply "INFO 2" to that message, which triggers

---

[4] These "User Messages" are often blatant spam. The "User Message" sent to Plaintiff Johnson was spam (*Doc. 125-5* - "Do you want to be freed from of your payday advance loans call _888.9064165") and the User Message sent to Plaintiff Pathman in the California action was also spam (*Exhibit 1 - Pathman Dep.,* ex. 21 ("hi you have collected,a cruiseevaccition ca ll thi s numbe r no w1-855-644-2382*no cost*).

[5] Despite its own admissions that the Welcome Message is sent and received as a completely separate text message, Yahoo repeatedly attempts to obscure that fact by claiming that the Welcome Message is merely "appended to" the user's message, as if they are sent and received as a single message. Yahoo's admissions and other evidence clearly shows that these are separate text messages. *Doc. 134-2 – Doron Declaration* at ¶ 8 ("the personalized message and Welcome Message are transmitted virtually simultaneously as two messages*."); Exhibit 2 – Choud. Dep.* at 64:10 -12 (admitting that Welcome Message is a "different additional message").

a third automated message from Yahoo, and then reply "INFO 3" to that message, which triggers a fourth automated message from Yahoo that finally informs the recipient of the "block" command necessary to opt out of the system. *See Doc. 57 - Plaintiffs' Statement of Additional Material Facts* at ¶ 6-10. Alternatively, the recipient of a welcome message can blindly navigate Yahoo's advertisement laced webpage in the hopes of finding any opt-out information, which Yahoo hides behind a small "help" hyperlink at the bottom of the webpage. *Doc. 125-3 – Choud. Dep. (September)* at 90:19-24 and ex.5 thereto.

Yahoo does absolutely nothing to ensure that the Welcome Message is sent only to persons that provided "prior express consent" as required by the TCPA. Instead, Yahoo's PC2SMS server indiscriminately sends the message to virtually any cellular telephone number input into the PC2SMS system, regardless of whether the recipient is a Yahoo user and regardless of whether the recipient has ever expressed any interest in Yahoo's services. In other words, the relationship of the recipient with Yahoo has never factored into Yahoo's decision to send any Welcome Message. It is, at its core, a blind marketing campaign run by the operation of computer code piggybacking on user messages.

Thus, some of the persons to whom Yahoo sent the Welcome Message, such as Plaintiff Johnson, have never used any Yahoo product or service. Others, such as Plaintiff Calderin, entirely by coincidence happen to be Yahoo users.[6] This distinction never mattered to Yahoo when it sent the Welcome Messages, as the Welcome Messages have absolutely nothing to do with any Yahoo user's account. Now, however, Yahoo seizes upon happenstance as its primary hope against class certification. For the reasons described below, this is a distinction without a difference that, in any event, is capable of classwide adjudication.

---

[6] Not surprising considering Yahoo's claim that it services ██████ accounts. *Doron Dec.* at ¶ 19.

### III.    The Class is Ascertainable

Plaintiffs seek to certify a class of persons to whom Yahoo sent the Welcome Message that is, for all intents and purposes, already identified.   Yahoo's ascertainability arguments were therefore meritless before the 7th Circuit's landmark decision in *Mullins*, but now they are doomed.   *Mullins* explicitly rejects the idea that a Plaintiff must set forth a "reliable and administratively feasible way to identify all who fall within the class definition." 2015 U.S. App. LEXIS 13071 at *3.  Instead, a class is ascertainable so long as it is clearly defined by objective criteria. *Id* at *42.  This class easily satisfies that requirement, and Yahoo does not argue otherwise.

Plaintiffs seek certification of the following class and subclasses:

> "All persons within the United States to whose cellular telephone number Yahoo sent the Welcome Message during the period: (i) commencing March 1, 2013 through March 31, 2013 and while such cellular number was assigned to Sprint or (ii) commencing April 1, 2014 through April 30, 2014 and while such cellular number was assigned to T-Mobile."
>
> *Subclass A*
> "All persons within the United States to whose cellular telephone number Yahoo sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013 while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo user in Yahoo's records."
>
> *Subclass B*
> "All persons within the United States to whose cellular telephone number Yahoo sent the Welcome Message during the period commencing April 1, 2014 through April 30, 2014 while such cellular number was assigned to T-Mobile, and whose cellular telephone number is associated with a Yahoo user in Yahoo's records."

*Doc. 125* at pp. 3-4.  Yahoo does not contest that these definitions are clearly defined by reference to objective criteria.  Instead, it advances the same arguments about the feasibility of complete, foolproof class member identification that the 7th Circuit rejected in *Mullins*.  Despite this dispositive ruling, Plaintiff will nevertheless address these arguments below.

With respect to the larger class, Yahoo does not dispute that its own records (the "Optin DB") show each cellular telephone number to which the Welcome Message was sent, the date on

which it was sent, and the carrier that serviced the number at the time it was sent. *See Doc. 134-2* at ¶ 12. With respect to the subclasses, Yahoo does not dispute that its own records (the "UDB") show every telephone number associated with a Yahoo user, i.e. if a Yahoo user ever provided a telephone number to Yahoo, it exists within the UDB. Id at ¶ 18. Thus, Yahoo concedes that it has already identified every recipient cellular telephone number that falls within these definitions. *Id* at ¶ 16-17 (identifying ███ cellular telephone numbers for the Sprint portion of the class definition and ███ for the T-Mobile portion, for a total of ███); *id* at ¶ 26 (identifying ███ cellular telephone numbers falling within subclass A and ███ cellular telephone numbers falling within subclass B). Yahoo's arguments instead focus on Plaintiff's ability to identify the names and addresses of the Welcome Message recipients. These arguments lack merit.

### A. Sprint and T-Mobile Subscriber Records Identify the Names and Addresses of the Class Members

Yahoo argues that Sprint and T-Mobile subscriber records cannot be used to identify the class because pre-paid customers are not required to provide their names and addresses to the carriers, which Yahoo argues makes the records incomplete and unreliable. Sprint and T-Mobile's responses to Plaintiffs' subpoenas show otherwise. T-Mobile states that it has located the names and addresses for ███ of the T-Mobile telephone numbers at issue (roughly 91%). *Exhibit 3 - T-Mobile Email; Doc. 134-1, ex. T - T-Mobile Declaration.*[7] Similarly, Sprint has already produced subscriber names and addresses for the Sprint numbers at issue, except for those subscribers in California. *Doc. 125- 13.* As the California subscriber information has been withheld pending further court order, Plaintiffs do not yet know the total number of identifiable names and addresses for the Sprint numbers, but based on Yahoo's own statistics, expect a similar

---

[7] In accordance with this Court's order (*Doc. 124*), T-Mobile has not yet produced the actual names and addresses to Plaintiffs, but the Court has advised T-Mobile of the possibility that it will order the production as necessary.

result. *Doc. 134* at p. 8 (both T-Mobile and Sprint have approximately 30% pre-paid customers). These responses show that prepaid accounts are not a significant hurdle to identification.

In any case, as the 7th Circuit explained in *Mullins*, neither Rule 23 nor due process "require the ability to identify all members of the class at the certification stage." 2015 U.S. App. LEXIS 13071 at *23 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process."); *See also Shurland*, 271 F.R.D. at 145-46 ("In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law.") Plaintiffs have demonstrated the ability to obtain the names and addresses of a significant portion of the class members, more than satisfying any identification requirement and allowing for direct mail notice to the vast majority of the class. Notice by publication or email is sufficient to account for any class members for whom a name and address is not available. *Id.* As the 7th Circuit held in *Hughes v. Kore of Ind. Enter.*:

> Rule 23(c)(2)(B) of the civil rules requires (for a class action under Rule 23(b)(3), as this one is) only the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The members of the class in this case can't be identified through reasonable effort, effort commensurate with the stakes. (If they could be, they would be entitled to individual notice even if it were very costly, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), as the language of Fed. R. Civ. P. 23(c)(2)(B) implies.) When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted."

731 F.3d 672, 676-77 (7th Cir. 2013). In this case, however, Yahoo has email addresses for roughly 40% of the class. *Doc. 134* at p. 12.

## B. The Telephone Subscribers are Appropriate Class Members

Yahoo also argues that Sprint and T-Mobile's subscriber records are not adequate to

7

identify the class members because the existence of family or business plans means that the telephone subscriber (i.e the account holder who pays the bill) identified by Sprint or T-Mobile will not necessarily be the person who actually received the text message (e.g. the user of the phone assigned to a particular number in a family plan). This argument is premised on the incorrect assumption that only that actual recipient of a violative text has statutory standing under the TCPA.

To the contrary, however, both the person who pays the bills (the account holder) and the regular user of the phone number have standing to pursue a TCPA claim. *See Soppet v. Enhanced Recovery*, 679 F.3d 637, 640 (7th Cir. 2012) (referring to "subscriber" as "the person who pays the bills or needs the line in order to receive other calls"); *Horowitz v. GC Services LP*, 2015 U.S. Dist. LEXIS 59878, *24-25 (S.D. Cal. 2015) (finding standing for two plaintiffs - "the nominal account holder" and the "regular user of the phone"); *Cellco P'ship v. Plaza Resorts Inc.*, 2013 U.S. Dist. LEXIS 139337 (S.D. Fla. Sept. 27, 2013) ("After carefully reviewing the text of the TCPA and its legislative intent, the Court concludes that a cause of action for a violation of the statute inures either to the subscriber of the telephone or the person to whom the subscriber provides the telephone for that person's primary use."); *Maraan v. DISH Network*, 2014 U.S. Dist. LEXIS 162241, *15 (S.D. Ohio 2014) ("That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view. He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA."). Thus, the subscribers identified by the telephone carriers are indeed appropriate class members with standing, just as Plaintiffs Johnson and Calderin have standing as the regular users of their telephone number called.

Finally, even if the Court were to find that only the regular user of the telephone number has standing, there is no ascertainability or notice problem. The class members can still be reached

by first class mail notice delivered to the account holder identified by T-Mobile and Sprint, who inherently has a close relationship with the class members. The notice could identify the particular phone number at issue, thus advising the recipient as to the identity of the family member/employee with the claim. *See* Fed. R. Civ. P. 23(c)(2)(B)(requiring only a "reasonable effort" to identify class members); *Hughes*, 731 F3rd 672 (7th Cir. 2013) (allowing pure publication notice with payment to cy pres).

## IV. Consent Can be Adjudicated on a Classwide Basis

The TCPA provides a defense for calls made with "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A); *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) ("'Prior express consent'" under the TCPA is an affirmative defense on which the defendant bears the burden of proof.") In this case, Yahoo never endeavored to obtain prior express consent from anyone before configuring the PC2SMS system to send the Welcome Message to millions of people. To be sure, Yahoo has never cared *who* received the Welcome Messages . . . until now.

Now that it faces class certification, Yahoo posits a variety of novel mechanisms by which class members may have provided consent and declares that getting to the bottom of it will require individualized inquires that will predominate this action. This tactic fails because each of Yahoo's theories of consent either (1) does not present a viable issue for trial that could reasonably predominate this action or (2) can be resolved on a classwide basis.

### A. "Intermediary Consent"

First, Yahoo contends that class members who consented to receive text messages from the third party Yahoo user, who sent the User Message, automatically consented to receive the completely separate Welcome Message from Yahoo as well. The FCC's recent ruling flatly rejects this "presumed consent" argument. *Omnibus Ruling* at ¶ 2 ("Simply being on an acquaintance's phone contact list does not amount to consent to receive robocalls from third-party applications

downloaded by the acquaintance."); ¶ 51 ("a contact's presence in a contact list or address book does not establish consent to receive a message from the app platform."). Thus, the mere fact that a Yahoo user added a cellular telephone number to the PC2SMS system by selecting the number from the user's "contact list" does not mean that Yahoo itself had "prior express consent" to send, unbeknownst to anyone except a Yahoo, a completely separate marketing message.

Instead, intermediary consent requires that the 3rd party intermediary (sender of the User Message) *actually obtain* the call recipient's consent to receive calls *from the caller* (Yahoo) and then *convey that consent* to the caller. *Id* at ¶ 49 ("an intermediary can only convey consent that has actually been obtained, and cannot provide consent on behalf of another party"); ¶ 52 ("We disagree with Glide that consent can be 'presumed.' The TCPA and the Commission's rules plainly require express consent, not implied or 'presumed' consent").

The FCC's *GroupMe* ruling, upon which Yahoo relies, actually demonstrates why Yahoo's theory of intermediary consent must fail in this case. In *GroupMe*, the FCC ruled that the TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary, "with the caveat that if consent was not, in fact, obtained, the sender, such as GroupMe, remains liable." *In the Matter of GroupMe, Inc*, 29 F.C.C. Rcd. 3442, ¶ 11 (March 27, 2014). According to the FCC,

> "GroupMe provides a free group text messaging service . . . A user who wishes to create a group using GroupMe's service must register with GroupMe and agree to its terms of service, which require the group creator to represent that **each individual added to the group has consented to be added and to receive text messages**. Once registered, the group creator provides GroupMe with the wireless telephone numbers of the group members. GroupMe then sends up to four text messages to each group member, informing each member of information about the group creator, the names of the individuals who comprise the group, the unique ten-digit number GroupMe assigned to the group, instructions on how to stop receiving text messages associated with the group, and instructions to download the free GroupMe app."

*Id* at ¶ 3 (emphasis added). Thus, the intermediary consent claimed by GroupMe was based on

the "prior consent of each group member to receive texts *from GroupMe*", not just from other group me users. *Id* at ¶ 13 (emphasis added). The FCC therefore concluded:

> "where the consumer has agreed to participate in a GroupMe group, agreed to receive associated calls and texts, and provided his or her wireless telephone number to the group organizer for that purpose, the TCPA's prior express consent requirement is satisfied with respect to both GroupMe and the group members regarding that particular group, but only regarding that particular group." *Id* at ¶ 12.

Yahoo cannot possibly establish any such intermediary consent in this case. First, Yahoo never informed its PC2SMS users that Yahoo itself would send additional system messages, whereas this information was expressly provided to the group creators in *GroupMe*. *Exhibit 4 – GroupMe Terms* ("As part of the Service, GroupMe sometimes causes administrative messages to be sent to members of the group.") Second, there is no evidence that any PC2SMS user ever obtained a recipient's consent to receive PCSMS messages from either the PC2SMS user or Yahoo itself, whereas each group creator in *GroupMe* represented that they had in fact obtained the requisite consent. *Id* ("You represent and warrant to us that each person you add to a group has consented to be added to the group a*nd to receive administrative messages from GroupMe and text messages from you and anyone else in the group.*") (emphasis added) Third, there is no evidence that any PC2SMS user ever conveyed such consent to Yahoo as the group creators did through their representations to *GroupMe*. *Id*.

Yahoo's argument that the welcome message recipients in this case may have provided intermediary consent is therefore frivolous. Yahoo's sole argument that Plaintiff Calderin "likely provided intermediary consent' is that "Calderin received the [User] text from her friend and co-worker, who worked within sight of Calderin and with whom she regularly communicated via text message." *Doc. 134* at p. 19. Yahoo does not argue or present any evidence of intermediary consent *to any messages from Yahoo*. Similarly, Yahoo's sole argument that Plaintiff Johnson

11

"likely provided intermediary consent" is the completely speculative[8] assertion that Johnson "likely consented to be contacted relating to debt services through one of the entities to who she was indebted or who she contacted." *Id*.

### 1. *"Intermediary Consent" will Not Predominate this Action*

For the reasons described above, Yahoo's intermediary consent defense is frivolous. Yahoo has not even identified a mechanism or likely scenario in which true intermediary consent could have been obtained for Yahoo's Welcome Message. Thus, Yahoo is wrong that individual issues concerning intermediary consent will predominate this action.

"[T]he predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The rule does not ask the court to determine whether common issues "outnumber individual issues," but rather "requires a qualitative assessment," instead of "bean counting" or "counting noses." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The existence of numerous individual issues, therefore, does not preclude certification so long as common issues "are more substantial than those subject to only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2nd Cir. 2010*); Saltzman v. Pella*, 257 F.R.D. 471, 484-87 (N.D. Ill. 2009).

In light of this qualitative assessment, a defendant cannot successfully defeat class certification by arguing that issues surrounding a <u>meritless defense</u> will predominate over common issues vital to the case. Rather, "to defeat class certification, a defendant must show some degree of likelihood a unique defense will play <u>a significant role at trial</u>. If a court determines an asserted

---

[8] Yahoo is really stretching here. Yahoo contends that Johnson consented to receive autodialed calls from CashCall, Inc in 2008, but there is no evidence that the User Message was sent by CashCall or any person affiliated with CashCall. To the contrary, it is clearly blatant spam sent by someone with no relationship with Johnson. *Doc. 125-5*. Thus, the best Yahoo can say is that the message "could have been from an affiliate of the company to which she provided prior express consent." *Doc. 134* at p. 6.

unique defense has no merit, the defense will not preclude class certification." *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3rd Cir. 2006) (emphasis added), *citing Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994) ("But the 'unique defense' here, while possibly unique, is not a defense."); *Wallace B. Roderick Revocable Living Trust v. XTO Energy*, 725 F.3d 1213, 1220 (10th Cir. 2013), *citing Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (requiring "non-frivolous defenses"); *see also Targin Sign Sys. v. Preferred Chiropractic Ctr.*, 679 F.Supp. 2d 894, 899 (N.D. Ill. 2010) (Preferred's claimed nightmare of 'hundreds or thousands of individual proceedings' that lack common issues is a pipedream rather than a nightmare--it too reflects fanciful frivolousness.); *In re Vitamin C Antitrust Litigation.*, 279 F.R.D. 90, 109 (E.D. NY 2012) ("the 'individual issues' of which defendants complain . . . are insubstantial. None of these 'individual issues' presents a meritorious defense that could distinguish Ranis from any other class member.")

Yahoo's theory of intermediary consent is nether meritorious nor will it play any significant role at trial, as there is virtually zero evidence of true intermediary consent in the record. Thus, individual issues relating to Yahoo's frivolous theory of intermediary consent do not predominate over the common issues in this case. Yahoo's "presumed consent" theory is also a common issue.

### B. Yahoo's Terms of Service

Seizing upon the coincidence that some of the recipients of the Welcome Message happen to be among Yahoo's ▉ billion users, Yahoo argues that any class member who happens to be a Yahoo user gave prior express consent for the Welcome Message via Yahoo's Universal Terms of Service ("uTOS") and/or Yahoo's Communications Additional Terms of Service ("Comms ATOS"). Yahoo does not cite a single case finding a terms of service agreement to provide prior express consent for autodialed calls under the TCPA. Perhaps that is because the

13

law in this Circuit and elsewhere is that terms of service provide prior express consent under the TCPA only if they *expressly* authorize *autodialed* calls made with an automatic telephone dialing system. *See Thrasher-Lyon v. CCS Commercial*, 2012 U.S. Dist. LEXIS 125203, *15 (prior express consent requires "agreeing to terms of service that *explicitly permit automated telephone contact*.") (emphasis added), *reconsideration denied* at 2012 U.S. Dist. LEXIS 157230 (N.D. Ill. 2012); *Frausto v. IC System*, 2011 U.S. Dist. LEXIS 93514, *3 (N.D. Ill. 2011) ("you consent *to receiving autodialed* and prerecorded message calls) (emphasis added); s*ee also Jordan v. ER Solutions, Inc.*, 900 F. Supp.2d 1323, 1327 (S.D. Fla. 2012) ("you expressly consent to any such contact being made by the most efficient technology available, *including but not limited to automated dialing equipment* and prerecorded messages") (emphasis added); *Perri v. Rescue 1 Financial, LLC*, 2015 U.S. Dist. LEXIS 95717, * 2 (S.D. Cal. 2015) ("he did not give clear written consent to receiving messages *using an automatic telephone dialing system* or an artificial or prerecorded voice"), *citing* 47 C.F.R. § 64.1200(f)(8). Neither the uTOS nor the Comms ATOS meet this requirement, and thus do not provide *express* consent for *autodialed* text messages.[9] *See Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554, *11 (N.D. Ill. 2014) ("[implied consent]

---

[9] The provisions upon which Yahoo relies state:

> *"Communications from Yahoo!.* You also understand and agree that the Services may include certain communications from Yahoo!, such as service announcements and administrative messages and that you will not be able to opt out of receiving such communications." *Doc. 134-5 – Andrews Dec.* at ¶ 5, ex. A (Comms ATOS at ¶ 2(e)).

> "NOTICE
> Yahoo! may provide you with notices, including those regarding changes to the TOS, including by but not limited to email, regular mail, SMS, MMS, text message, postings on the Yahoo! Services, or other reasonable means now known or hereafter developed. Such notices may not be received if you violate this TOS by accessing the Yahoo! Services in an unauthorized manner. Your agreement to this TOS constitutes your agreement that you are deemed to have received any and all notices that would have been delivered had you accessed the Yahoo! Services in an authorized manner. *Id* at ¶ 16, ex. E (uTOS at ¶ 24).

is not what the statute requires; it says that prior *express* consent is needed.")

Further, the scope of these terms of service is limited to communications concerning the Yahoo user's account. Comms ATOS at ¶ 2(e) ("*the Services may include* certain communications"); uTOS at ¶ 24 ("*Such notices* may not be received if you violate this TOS by accessing the Yahoo! Services in an unauthorized manner. Your agreement to this TOS constitutes your agreement that *you are deemed to have received any and all notices that would have been delivered* had you accessed the Yahoo! Services in an authorized manner."). Thus, to the extent the terms of service provide *express* consent for any autodialed calls at all, that consent is limited to calls concerning the Yahoo user's account. *See Kolinek*, 2014 U.S. Dist. LEXIS 91554 at *11 ("To the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes."); *Toney v. Quality Resources, Inc.*, 2014 U.S. Dist. LEXIS 166253, *13-14 (N.D. Ill. 2014) (holding that prior express consent does not go beyond the limited purpose for which it is given), *citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 27 FCC Rcd. 1830, 1840 ¶ 25 (Feb. 15, 2012). Yahoo's Welcome Message, which is completely unrelated to the user's Yahoo account, exceeds that scope. Yahoo's argument that the terms of service provide prior express consent will ultimately fail.

### 1. Individual Issues Regarding Agreement to the Terms of Service do not Predominate

Ignoring the merits, however, Yahoo contends that individual issues regarding the operative versions of the terms of service for any Yahoo users who happened to receive the welcome message will predominate this action due to slight variations in the terms of service over time. Yahoo admits that "the relevant provisions of the Yahoo terms of service agreement have largely been unchanged since 2007." In fact, the uTOS has not been modified at all since

November 2008. *Doc. 134-5 – Andrews Dec.* at ¶ 16. There are, in total, only three (3) versions of the uTOS and one (1) version of the Comms ATOS in the record. *Id* at ex. A, C, D, & E.

Yahoo admits that it *can* identify, without an individualized inquiry, *when* a Yahoo user registered his or her account ("Registration Group") and therefore, which version of the terms of service they initially agreed to, "through the cross-referencing of the Optin DB and UDB created for this litigation." *Doc. 134-2 – Doron Dec.* at ¶ 31-33. Yahoo also admits that it *can* identify, without an individualized inquiry, if a user ever consented to the Comms ATOS and the most recent uTOS (i.e. the terms of service in place at the time of the text messages at issue and which are still in place now) through the same process. *Id.*[10] Thus, for any class member who happens to be a Yahoo user, Yahoo's own admissions prove that there are no individual issues regarding which terms of service they agreed to. To the extent the Court believes that the slight differences between the three (3) uTOS versions are even relevant, the Court can separate the class into subclasses addressing each version.

Yahoo's additional argument regarding persons who download Yahoo "applications" stems from its utter failure to maintain records of consent. Yahoo claims:

"Yahoo does not maintain records of Yahoo users who expressly agreed to the uTOS agreement (and Comms ATOS agreement) through applications, such as the Yahoo Messenger application, as opposed to through the website. Accordingly, a given user may have provided express assent to multiple versions of the uTOS and/or Comms ATOS agreements at multiple intervals, but Yahoo would have to examine each user's current and

---

[10] In fact, between 2010 and 2012, Yahoo *required* all users to agree to the most recent terms of service, or Yahoo simply locked them out of their accounts. *Doc. 134-5 – Andrews Dec.* at ¶ 18. Thus, every class member who happened to be a yahoo user at the time the Welcome Message was sent had already agreed to the most recent terms of service. Further, the terms of service provide that users agree to be bound by any changes to the terms of service, so Yahoo's stated position is that every class member who happened to be a Yahoo user at the time the Welcome Message was sent had agreed to the current version as a result. *See Exhibit 7 – Yahoo 30(b)(6) dep.* at 71:4-7 (".Q Yahoo's position is that its users agree that they are bound by the new versions of the terms of service whenever they are updated; right? A. Right."); *Exhibit 8 - Andrews Dep.* at 36:23-24 ("Yahoo! users are consistently notified of the terms and are made available and made aware of the terms on a day-to-day basis every time they use the service")

all prior computers, phones, or other devices to determine the date of installation (and consent thereby)."

In other words, Yahoo admits that it *purposefully* has no evidence that any class member ever consented to the Welcome Message by downloading a Yahoo application, but thinks it should be able to forensically examine every computer and mobile device ever used by every single class member to determine if, by coincidence, any of them did. This is exactly the type of argument that *Mullins* requires this Court to reject. 2015 U.S. App. LEXIS 13071 at *31 ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions.") Even Yahoo's own cited cases hold that a defendant must "set forth specific evidence showing that a significant percentage of the putative class consented" before a Court can possibly hold that "individualized issues" regarding that theory of consent predominate over common issues. *Jamison v. First Credit Serv.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013). Yahoo fails to do so here.[11]

Yahoo makes one other argument regarding the determination of consent via Yahoo's terms of service, which has a similar premise. Yahoo contends that even with the full names of all class members, it "could not feasibly identify which of those individuals possessed Yahoo accounts" because "nothing more than a user ID is required from a user to create a Yahoo account." *Doc. 134* at p. 11; *Doron Dec.* at ¶ 30. This is inaccurate and misleading. Yahoo *has* required

---

[11] For the same reasons, Yahoo's argument that individualized issues concerning whether or not a class member ever *revoked* consent do not predominate this action. First, Yahoo admits that its own records (the Optin DB) show whether a person revoked consent through the PC2SMS system. *Doron Dec.* ¶ 13. Plaintiff is currently unaware of any evidence showing that a Class Member was sent a Welcome Message after opting out of the system, but the final determination can be made on a classwide basis because the Optin DB contains the answer for all class members. Second, there is no evidence that any class member revoked consent through some other means, so this is a completely hypothetical issue that does not predominate this action.

new users to provide their cellular telephone numbers since 2013 (*id* at ¶ 21), and although Yahoo has not "required" already existing users to provide their cellular telephone numbers, it does prompt them to do so for account security purposes. That is why Plaintiff Calderin provided her cellular telephone number to Yahoo in 2010, even though she created her Yahoo account in 2006. *Doc. 125-7* at 179:4-13 ("It's done in the context of 'make your account more secure by providing us a phone number so in case of password reset we have another way of making sure that it was you that changed it . . . that is the context within which the phone number is provided.'")

There is no evidence that any significant portion of the class members who happen to be Yahoo users did not also provide their cellular telephone number to Yahoo through this process. That is why Plaintiffs defined the subclasses to address the existence of cellular telephone numbers in Yahoo's records. In any case, Yahoo is again relying on its own failure to heed the FCC's direction to maintain records of prior express consent as a basis to derail adjudication of this controversy. The simple truth of the matter is that discovery is over and, despite having the burden to prove it, Yahoo has *no evidence* supporting its theory of consent as to class members such as Plaintiff Johnson whose identifying information is not contained in Yahoo's user database. That should end the matter. *See e.g., G.M. Sign v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869, *13 (N.D. Ill. 2009) ("Finish cannot defeat class certification by asserting vague possibility that some of the individuals on the anonymous lists may have perchance consented…").[12]

---

[12]     To the extent that the Court nevertheless believes a further determination of Yahoo membership is warranted for these class members, *Mullins* provides the answer. During administration, Class members can submit affidavits attesting to whether and when they ever created a Yahoo account. *Mullins*, 2015 U.S. App. LEXIS 13071 at *43 ("courts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits.") Yahoo does not have a due process right to test the sufficiency of those affidavits by depositions or forensic examinations of the class members' computers. *See Shurland*, 271 F.R.D. at 144 ("Plaintiffs have met the Federal Rules' requirement that 'questions of law or fact common to class members predominate over any questions affecting only individual members', and the court, is therefore, not troubled by Defendant's in ability to cross-examine absentee plaintiff class members."); *In re Simon II Litig.*, 2002 U.S. Dist. LEXIS 25632,

### C. Provision of Telephone Number for Account Security Purposes

Yahoo's final theory of consent relating to class members who coincidentally provided their cellular telephone number to Yahoo also lacks merit, but is, in any case a common issue capable of classwide adjudication. First, this argument fails as a matter of law because any class member who provided a telephone number to Yahoo did so at Yahoo's request for the sole purpose of communicating with the user regarding password changes for security purposes. *Supra*. Yahoo *does not contest* this fact. The provision of a cellular telephone number to Yahoo for this purpose does not equal prior express consent for the Welcome Message, which has nothing to do with the yahoo user's account. *See Toney*, 2014 U.S. Dist. LEXIS 166253 at *18 (N.D. Ill. 2014) ("the court rejects Quality's contention that Toney's providing her phone number to Stompeez 'for questions about [her] order' constituted consent to phone calls offering the services of Budget Savers."); *Kolinek*, 2014 U.S. Dist. LEXIS 91554 at *11 ("Consent for one purpose does not equate to consent for all purposes."); *Carlson v. Nev. Eye Care Professionals*, 2013 U.S. Dist. LEXIS 75357, *12-13 (D. Nev. 2013).

Regardless, there are no individual issues here that could predominate. Yahoo admits that its own records determine whether and when a class member may have provided a telephone number to Yahoo. *Doron Dec.* at ¶ 32. The proposed sub-class definitions account for such distinctions among the class members.

---

*164 (E.D.N.Y. 2002) ("Some discovery necessarily must be foregone or structured in complex litigation if massive cases are to be expeditiously resolved.")

    Rather, Yahoo can test the affidavits by determining if any of the class members' contact information appear in its user database. *Mullins*, 2015 U.S. App. LEXIS 13071 at *35 (district judge has discretion to "establish mechanisms to test those affidavits as needed"). This satisfies due process. *Long v. Trans World Airls.*, 761 F.Supp. 1320, 1323 (N.D. Ill. 1991) (no absolute right to obtain discovery from each adverse party or to introduce evidence concerning each such party."); *In re Simon II Litig.*, 2002 U.S. Dist. LEXIS at *167 ("Examining each grain of sand is too burdensome in a survey of a beach.")

### D. Yahoo's "Permutations" of Consent

Continuing the parade of horrors, Yahoo claims that this court will have to analyze "over 200 permutations" of consent. This calculation is vastly overblown. Most of these permutations (*Doron Dec.* at Ex. I) stem from Yahoo's meritless arguments regarding revocation, consent by intermediary, or consent by "application download," which as shown above are utterly unsupported by any evidence or law. These theories do not present any viable issues for trial.

Yahoo admits that the remaining permutations (timing of registration, timing of consent to updated terms of service, and timing of phone number provision to Yahoo) are all capable of resolution *without* an individual inquiry by reference to Yahoo's own business records. *Id.* Even most of *these* permutations are completely unnecessary, as they account for persons who agreed to Yahoo's terms of service or provided their telephone number to Yahoo *after* Yahoo had already sent them the Welcome Message. *Id.* Such consent cannot possibly be "*prior* express consent" under the TCPA. Thus, the only viable "permutations" that remain are all classwide inquiries.

### V. A Class Action is Superior to Individual Prosecution

As described above, a class action is superior to individual prosecution of the class members' claims because *there won't be any* individual prosecutions considering the amount in controversy and the cost of litigation. "Rule 23(b) was designed for [these] situations." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); s*ee also Mullins*, 2015 U.S. App. LEXIS 13071 at *4. In addition, this class action will efficiently adjudicate the claims of approximately ████ class members, and thus "saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. v. Falcon*, 457 U.S. 147, 155 (1982).

Yahoo misses the point when it argues that this class action is not the *most* efficient class action that that Plaintiffs could have brought because it does not cover all persons who received

the Welcome Message during applicable four year statute of limitations. The question is not whether Plaintiffs have sought certification of the broadest possible class to maximize efficiency, but whether this action is more efficient than *individual* prosecutions by members *of the defined class. See Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, *32-37 (N.D. Ill. 2006) (rejecting similar superiority argument), *citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes."). Yahoo cites no law to the contrary.

Yahoo's second argument, that class members are better off in small claims court, has been "squarely rejected by the Seventh Circuit." *Green v. Serv. Master on Locations Servs. Corp.*, 2009 U.S. Dist. LEXIS 53297, *8-9 (N.D. Ill. 2009), *citing Murray*, 434 F.3d at 953. As the Supreme Court held in *Mims v. Arrow Fin. Servs.*, "the views of a single legislator" who hoped TCPA claims would be brought in small claims Court, "are not controlling." 132 S. Ct. 740, *752 (2012).

Yahoo also engages in pure speculation by asserting that many class members "would not want to participate in this class action," citing the opinion of its purported expert Danah Boyd, which is itself purely speculative, as it is not based on any facts or data concerning the beliefs and attitudes of the PC2SMS users. *See Motion to Strike Boyd's Declaration.* Yahoo provides not factual or legal foundation for this argument.

Finally, Yahoo's due process argument that a class action is not superior "because of the financial impact it would have on Yahoo" has also been squarely rejected by the Seventh Circuit. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 2011 U.S. Dist. LEXIS 97666, *12-13 (N.D. Ill. 2011) (improper to deny class certification because aggregated statutory damages might be excessive), *citing Murray*, 434 F.3d at 953-54.

## VI. The Class Representatives are Typical and Adequate

### A. Plaintiff Calderin

Yahoo boldly asserts that Plaintiff Calderin "at least had knowledge of a plan to manufacture this lawsuit" and therefore has "credibility problems" that will amount to a conflict of interest with the class. There is no such evidence. Yahoo's argument is based on "the *timing* of [] communications" between Plaintiff's co-worker, Andrew Jimenez, and one of Calderin's attorneys, Alexander Arezina. *Resp.* at p. 3. Yahoo ignores the evidence about the *substance* of these communications showing that they have nothing to do with this case.

As Jimenez testified at his deposition, Arezina did not instigate him to message Calderin through Yahoo Messenger. *Exhibit 9 - Jimenez Dep.* at 36:23 - 37:21. Arezina represented Jimenez in a lawsuit against McGrath Lexus which was pending in the Circuit Court of DuPage County, Illinois. *Id.* at 21:2-9. A motion hearing was scheduled to take place in the case on April 10, 2014 (shortly after the 43 text messages between Arezina and Jimenez reflected in Defendant's records were exchanged.). *Id* at 47:2-5. Jimenez repeatedly testified that the text messages and phone calls between himself and Arezina in early April 2014 related to the upcoming hearing, which Arezina ultimately attended on behalf of Jimenez. *Id* at 44:7-12, 45:9-16, 46:10-19, 47:17-21, 48:11-16. Jimenez also produced all emails between himself and Arezina, none of which contained any discussion of the Welcome Message. *Id* at 20:1-5.

Further, there is zero evidence that *Calderin* was aware of any plan to manufacture a claim. As Calderin testified at her deposition, she was not aware of Arezina until "a couple days after the [Welcome Message] text." *Exhibit 10 - Calderin Dep.* 18:9-11. Calderin further testified that she has "never spoken with Mr. Jimenez about the lawsuit". *Id*. at 66:20-22. Thus, the unrefuted testimony from Jimenez and Calderin concerning the substance of the communications at issue directly refutes Yahoo's circumstantial allegation that Calderin colluded to "generate this lawsuit."

In any case, Yahoo does not cite a single case where a class representative was found to be inadequate to represent the class because of knowledge of or even involvement with a "manufactured" claim. Yahoo's cited cases instead concerned a professional relationship between plaintiff's counsel and her father (Langendorf) and clearly dishonest testimony by the named Plaintiff (CE Design). Both are inapposite. "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design Ltd. v. King Architectural Metals*, 637 F.3d 721, 728 (7th Cir. 2011). There is no such evidence here.

### B. Plaintiff Johnson

If any claim has been "manufactured" in this litigation, it is Yahoo's threatened spoliation argument against Plaintiff Johnson because she no longer has the physical phone on which she received the Welcome Message. Yahoo does not dispute that Plaintiff Johnson actually received the Welcome Message from Yahoo; as Yahoo admits, Johnson's wife even transcribed the message and took a picture of the message displayed on Ms. Johnson's phone. *Resp.* p.14. Yahoo also admits that "Johnson is not a Yahoo user." *Id* at p. 19. The physical telephone is therefore completely irrelevant to this case.

Creating an issue where none exists, Yahoo asserts that the phone might have indicated "whether Johnson regularly received other text messages concerning offers for personal loans." So what? Such evidence is irrelevant even to Yahoo's bogus intermediary consent defense, as it would not show that Johnson ever provided *consent* to any message from Yahoo or even to the sender of the spam User Message. If Yahoo really wanted to push this "defense", it should have pursued discovery about *who* sent the User Message to Johnson. It did not.

Yahoo's only other argument is that Ms. Johnson's physical phone would allow Yahoo to

"determine whether Johnson ever downloaded a Yahoo application to her phone." This is so far-fetched it borders on the disingenuous. Johnson is sixty-eight years old and doesn't even know how to send a text message. *Exhibit 5 - Johnson Dep.* at 6:2-3; 8:10-15. The phone in question was a basic Sanyo flip phone; Johnson has never owned a smartphone. *Exhibit 6 - Teager Dep.* at 42:1-23. Johnson would not even have known how to download a Yahoo app if the phone even allowed her to do so. *Id* at 43:5-9. Further, Yahoo has *already admitted* that Johnson is not a Yahoo user. Yahoo's threat of a spoliation claim is ridiculous. There is nothing even approaching bad faith by Johnson here and Yahoo has not been prejudiced in the slightest. *Compare Kucala Enter. Ltd v. Auto Wax Co.*, 2003 U.S. Dist. LEXIS 8833 (N.D. Ill. 2003) (finding spoliation where plaintiff intentionally downloaded a software program called "evidence eliminator").

### C. Class Counsel

Yahoo finally makes the novel claim that class counsel are inadequate because they narrowed the class definition from that proposed in the complaint. Yahoo does not cite any law establishing that this routine occurrence is improper. To the contrary, the 7th Circuit explicitly allows for narrowing of class definitions. *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems "can and often should be solved by refining the class definition"). A class definition in a complaint has no operative effect. *Chapman v. First Index*, 2015 U.S. App. LEXIS 13767, *3-4 (7th Cir. 2015) ("a decision under Rule 23 does not require the Plaintiff to amend the complaint"). The complaint does not even need a class definition. *Id*.

Plaintiffs had legitimate reasons to narrow the class definition. "Fairness does not require class counsel to act on behalf of individuals not in the class, even if at one time those individuals were included in a pretrial class definition." *McBean v. City of New York*, 233 F.R.D. 377 (S.D. N.Y. 2006), *citing In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000). Class counsel has extensive experience with class action and proven success with class actions brought

under the TCPA. *Doc. 125-15, 125-16*.  There is no basis for a finding of inadequacy here.

**VII.    Conclusion**

This action meets all the requirements of Rule 23.  Plaintiff's respectfully request that the Court certify the class.

RESPECTFULLY SUBMITTED,

/s/ Timothy J. Sostrin
One of Plaintiff's Attorneys


Keith J. Keogh                                   Vincent L. DiTommaso
Timothy Sostrin                                  Peter S. Lubin
Michael S. Hilicki                               John Auchter
Katherine Bowen                                  **DiTommaso Lubin, P.C.**
**Keogh Law, Ltd.**                              17W 220 22nd Street, Suite 410
55 West Monroe Street, Suite 3390                Oakbrook Terrace, Illinois  60181
Chicago, Illinois  60603                         (630) 333-0000  Telephone
(312) 726-1092  Telephone                        *For Plaintiff Zenaida Calderin*
(312) 726-1093  Facsimile
*For Plaintiff Rachel Johnson*