# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 14-cv-2028 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) ) | |
| ZENAIDA CALDERIN, | ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-2753 |
| v. | ) ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION TO STRIKE AND EXCLUDE
## PROPOSED EXPERT TESTIMONY OF DANAH BOYD

Now come Plaintiffs Rachel Johnson and Zenaida Calderin, through their counsel, and move to exclude the opinions offered by Defendant's proposed expert, Danah Boyd (hereinafter "Boyd"). Boyd's proffered opinions fail *Daubert's* reliability requirements.[1] Boyd does not use any principles or methodology in proffering her opinions that can be applied to the facts in issue in this case.[2] Experience without reliable, testable methodology is not sufficient.[3] Fed. R. Evid. 702(c) requires that an expert's testimony be "the product of reliable principles and methods."[4]

---

[1] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-3 (U.S. 1993).
[2] *Id* at 2796.
[3] *Brown v. Burlington Northern Santa Fe Ry.*, 765 F.3d 765, 776 (7th Cir. Ill. 2014) *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")
[4] *Id.*

Similarly, Fed. R. Evid. 703 requires the expert to rely on "facts or data," as opposed to subjective impressions.[5]

I. BACKGROUND

This case seeks redress for Defendant, Yahoo! Inc.'s (hereinafter "Yahoo") repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter "TCPA"). As part of its regular business practice, Yahoo sent an unsolicited text message to Plaintiffs (and many others) cellular telephones in violation of the TCPA.

Consumer complaints about abuses of telephone technology prompted Congress to enact the TCPA in 1991.[6] Congress determined that federal legislation was necessary because telemarketers, by operating interstate, were escaping state-law prohibitions governing intrusive nuisance calls.[7] The scope of such nuisance calls includes communication via text message.[8]

Yahoo advertises its services by sending unsolicited text messages to cell phone numbers. Whenever a Yahoo user sends a text message to a cell phone number using Yahoo Messenger for the first time, Yahoo itself sends a separate and additional text message ("the Welcome Message") to the same number. Every such Welcome Message is sent indiscriminately and automatically by Yahoo's computer servers ("the PC2SMS system") without the knowledge or input of any Yahoo user, and without regard to whether the recipient is a Yahoo user. The Welcome Message states:

> "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

At all relevant times, the URL y.ahoo.it/imsms directed to a webpage displaying the following:

---

[5] *Id.*
[6] *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).
[7] *Id.*
[8] *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 820 (N.D. Ill. 2014).

2

.

The central issue in this lawsuit is whether Yahoo's Welcome Message violates the TCPA. The elements Plaintiffs assert are as follows:

1. The Welcome Messages is a non-emergency text message;

2. The Welcome Message was sent using an automatic telephone dialing system (hereinafter "ATDS");

3. The Welcome Messages w sent to cellular telephone numbers;

Yahoo also asserts an affirmative defense claiming that it had prior express consent to send the Welcome Messages.

As set forth *infra*, none of Boyd's opinions address any of these issues, nor do they employ any reliable, testable methodology. Boyd's opinions do not satisfy the requirements for admission of expert opinion testimony.

## II. LEGAL STANDARDS FOR ADMISSIBILTIY OF EXPERT OPINIONS

District judges have "considerable leeway in deciding in a particular case how to go

about determining whether particular expert testimony is reliable."[9] Expert testimony is governed by Rule 702, which "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony ... is not only relevant, but reliable.'"[10] Specifically, the Rule states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) The testimony is based on sufficient facts or data;
> c) The testimony is the product of reliable principles and methods; and
> d) The expert has reliably applied the principles and methods to the facts of the case."[11]

As this Court set forth in *Padilla v. Hunter Douglas Window Coverings,* in assessing the reliability of an expert's testimony, Rule 702 requires the district court judge to evaluate whether it "is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology."[12]

> "'Daubert offers a non-exclusive list of factors to aid judges in determining whether [a] particular expert opinion is grounded in reliable scientific methodology. Among the factors articulated are:
>
> (1) whether the proffered theory can be and has been tested;
> (2) whether the theory has been subjected to peer review;
> (3) whether the theory has been evaluated in light of potential rates of error; and
> (4) whether the theory has been accepted in the relevant scientific community.'"[13]

---

[9] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), *quoting Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).
[10] *Kumho*, 526 U.S. at 147.
[11] Fed. R. Evid. 702.
[12] *Id,* 14 F. Supp. 3d 1127, 1135-1136 (N.D. Ill. 2014) citing *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013).
[13] *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2013) (quoting *Dhillon v. Crown Controls Corp.,* 269 F.3d 865, 869 (7th Cir. Ill. 2001)). *See Daubert*, 509 U.S. at 593-94.

The same criteria which are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony.[14] In this case, Boyd has failed to demonstrate that her opinions will assist the jury, or that she has employed a reliable methodology in arriving at her opinions.

"The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard....Under Rule 104(a), the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."[15] As Rule 702's text suggests, meeting the burden as to the reliability requirement means that Yahoo must prove Boyd's opinions satisfy several criteria.

First, Yahoo must prove Boyd's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue."[16] Second, Yahoo must show Boyd's opinions are based on "sufficient facts or data."[17] Third, Yahoo must prove Boyd's opinions are the product of "reliable principles and methods."[18] Last, Yahoo must prove that Boyd "reliably applied the principles and methods to the facts of the case."[19] Yahoo cannot meet the criteria mandated by Rule 702.

The requirement that the opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue" means the expert's opinion must actually be relevant to some issue

---

[14] *Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176; *see also Clark v. Takata Corp.,* 192 F.3d 750, 758 (7th Cir. 1999)("In determining whether an expert's testimony is reliable, the Daubert factors are applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion merely on 'experience' or 'training.'").
[15] *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)(Internal quotation marks and citations omitted).
[16] Fed. R. Evid. 702.
[17] *Id.*
[18] *Id.*
[19] *Id.*

in the case.[20] Expert testimony that does not address the issues in controversy has the potential to confuse the jury and must be excluded.[21] As explained herein, Yahoo cannot satisfy its burden of proving that Boyd's proposed opinions are either relevant *or* reliable.

### III. BOYD'S OPINIONS FAIL TO MEET THE RULE 702 RELEVANCE & RELIABILTY REQUIREMENTS

#### A. Boyd's Opinions Are Not Relevant and Will Not Help the Jury Understand or Decide any Issue in This Case

Yahoo retained Boyd as an expert witness to "provide insight into different user practices that are relevant to understanding the Yahoo Messenger to SMS platform ("PC2SMS")" and to offer an opinion whether Yahoo's PC2SMS platform provides and the Welcome Message at issue in this lawsuit provide a benefit to consumers."[22]

Hence, the scope of Yahoo's retention of Boyd, and the report that she prepared, has no relevance to any fact in issue in this case. Boyd's expert opinions, as set forth in her report, are as follows:

> "Based upon my analysis of the PC2SMS service and my expertise, I have reached the following conclusions:
>
> 1)   The PC2SMS is a valuable tool that has clear value for users.
> 2) The Welcome Message sent by Yahoo is not only not burdensome, but it provides a direct benefit to users."[23]

Boyd focuses on her bald opinion as to whether or not the Yahoo Messenger program provides a benefit to users. Notably, the value of Yahoo Messenger is not at issue in this case  The Plaintiffs and members of the class are non-consensual recipients of the Welcome Message. And

---

[20] *See United States v. Young*, 316 F.3d 649, 656 (7th Cir. 2002).
[21] *Ohrn v. JDPHD Inv. Group, LLC,* 2013 U.S. Dist. LEXIS 167410 (S.D. Ind. 2013).
[22] (Expert Report of Danah Boyd, p.2 (June 3, 2015)).
[23] *Id,* p. 3. *Also see Exhibit 1 - Depo. Trans. Dana Boyd*, p. 17-18 (June, 17, 2015).

even if Boyd's opinion were actually about a benefit to the Plaintiffs and class members, it is not only disputed, but wholly irrelevant to the merits of this case.

The facts in issue herein are whether Yahoo sent non-emergency texts to cellular telephone numbers using an ATDS without the consent of the recipients. Boyd's opinions address none of these issues. Nor do Boyd's speculative conclusions give rise to any potential basis for any defense in this case. Boyd's opinions are simply not relevant.

Boyd's opinion will not help the jury decide or understand any fact in issue because "value" and "benefit to users" are not elements of a TCPA claim, and thus not a fact in issue. The jury does not need to consider "value" and "benefit to users."

Boyd's opinions are inadmissible for lack of relevance.

**B.    Boyd's Opinions Are Not Reliable**

Boyd's opinions do not satisfy Rule 702's reliability requirements because her opinions do not purport to show any reliance on "sufficient facts or data" or "reliable principles and methods," or that she "has reliably applied the principles and methods to the facts of the case."[24] Boyd's conclusions are not the product of any methodology. And, as set forth *infra,* Boyd failed to apply any principles or methods to the facts of this case.

Her opinions are simply her speculation based on her prior "experience," which is unrelated to this case.[25] As the Seventh Circuit has aptly noted:

> "[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert."[26]

---

[24] Fed. R. Evid. 702.
[25] (Expert Report of Danah Boyd, (June 3, 2015)).
[26] *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

7

Notably, none of Boyd's experience, research or studies have any correlation to this case. In further support of the fact that her opinions are unreliable, Boyd admits she conducted no research, interviews or studies;[27] nor could Boyd reference any studies or data that she relied upon in reaching her conclusions.[28] Boyd admits that she did not even review the links relating to the very Welcome Message in question.[29] Boyd testified as follows:

> Boyd: As I've stated before, I have never done any direct research on the PC2SMS. I have never looked into or never done a study on the welcome message.[30]
>
> Question: Did you interview anyone specifically for the purpose of gathering information to use in your expert report in this case?
> Boyd: No.[31]
>
> Boyd: I drew on the extensive work that I've done over the multiple years, which is why I felt as though I could actually write an expert report on this, because I had done so much work over the years that I didn't feel as though I needed to draw or do any new research to make my arguments.[32]
>
> Question: Did you do any demographic analysis of the users of Yahoo's PC2SMS system?
> Boyd: As I mentioned before, I did no specific research on PC2SMS and, as a result, I did not demographic work on PC2SMS.[33]
>
> Question: Can you name any particular studies or data?
> Boyd: As I said, I'm responding to a decade worth of ethnographic work. What this means is I have spent hundreds of hours in situ

---

[27] Depo Tran., Boyd, p. 30, 48 63, 85.
[28] *Id* at p. 114.
[29] *Id* at p. 96 and 105.
[30] Depo Tran., Boyd, p. 63
[31] *Id* at p. 30.
[32] *Id* at p. 48.
[33] *Id* at p. 85.

8

> with people using their phones, watching them how they use their phone in a while variety of different contexts.[34]

Question: Okay. Did you ever go to the web address shown in the welcome message?
Boyd: Not to my knowledge.[35]

Question: Do you know what happens when a user replies "info"?
Boyd: I don't recall.
. . .
Question: Okay. And so you didn't consider that to be important for your report?
Boyd: I considered the fact that they gave you the option to find out information, to figure out how to cope, and that they gave you a website to deal with it as being important."[36]

As Boyd testified, she has undertaken no research or studies applicable to *this* case. She does not even recollect conducting such a basic task as reviewing the web link contained in the Welcome Message. Boyd contends that the Welcome Message provides a "benefit to users," but took no steps to learn what happens when a user replies to the "info" link. Boyd makes assumptions without taking any steps to research the website or ascertain facts in lieu of pure speculation. Boyd attempts to substitute her alleged qualifications for intellectual rigor, and fails to utilize sufficient facts and data to be applied to this case. This complete circumvention of Rule 702 provides solid grounds to strike Boyd's opinions.

To pass muster under Rule 702, the expert's opinion must offer more than a "bottom line."[37] The expert must explain the methodologies and principles supporting her opinion.[38]

---

[34] *Id* at p. 114.
[35] *Id* at p. 105.
[36] *Id* at p. 96.
[37] *Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.,* 521 F.3d 790, 791 (7th Cir. 2008).
[38] See Rule 702 (requiring that expert testimony be "the product of reliable principles and methods"); Smith, 215 F.3d at 718 ("[T]he role of the court is to . . . examine the methodology

> "Of course, the Court cannot simply "take the expert's word for it"; rather, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[39]

To satisfy the reliability requirement based only on her experience, Boyd must explain how her experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience reliably applied to the facts.[40] Boyd's report and testimony are demonstrative that she cannot satisfy the criteria to provide reliable evidence in this case. Accordingly, Boyd's opinions are inadmissible for lack of reliability.

## IV. CONCLUSION

For the foregoing reasons above, the opinions of Dana Boyd fail to meet the requirements of *Daubert* and the Federal Rules of Evidence. Plaintiffs respectfully submits that the expert opinions of Boyd proffered by Yahoo be excluded.

Respectfully submitted,

/s/ Timothy J. Sostrin

| | |
|---|---|
| Keith J. Keogh | Vincent L. DiTommaso |
| Timothy Sostrin | Peter S. Lubin |
| Michael S. Hilicki | DITOMMASO LUBIN, P.C. |
| Katherine Bowen | 17W 220 22nd Street, Suite 410 |
| KEOGH LAW, LTD | Oakbrook Terrace, Illinois  60181 |
| 55 West Monroe Street, Suite 3390 | (630) 333-0000  Telephone |
| Chicago, Illinois  60603 | *For Plaintiff Zenaida Calderin* |
| (312) 726-1092  Telephone | |
| (312) 726-1093  Facsimile | |
| *For Plaintiff Rachel Johnson* | |

---

the expert has used in reaching his conclusions.").
*Minix v. Canarecci,* 597 F.3d 824 (7th Cir. Ind. 2010).
[39] *Baker v. Buffenbarger,* 2006 U.S. Dist. LEXIS 2911, 13-14 (N.D. Ill. Jan. 13, 2006).
[40] *Id.*