**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RACHEL JOHNSON and ZENAIDA CALDERIN, | |
| Plaintiffs, | Nos. 14 CV 2028 |
| | 14 CV 2753 |
| v. | |
| | Judge Manish S. Shah |
| YAHOO!, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are cell phone subscribers who each received at least two text messages transmitted by defendant Yahoo!. The first: personalized text messages originally sent to plaintiffs by some non-party. The second: Yahoo!'s explanation for why plaintiffs received the first. While plaintiffs take no issue with the former, they contend Yahoo!'s sending of the latter violated the Telephone Consumer Protection Act.

Plaintiffs have moved for class certification, seeking to represent certain individuals who similarly received text messages from defendant during a defined two-month period of time. For the following reasons, plaintiffs' motion is granted in part, and denied in part.

**I.   Legal Standard**

A plaintiff seeking to certify a class under Rule 23 of the Federal Rules of Civil Procedure must show that her proposed class is "sufficiently definite [such]

that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). Once that hurdle is cleared, the plaintiff must satisfy the four requirements of Rule 23(a)—commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). The plaintiff must also satisfy the requirements of at least one subsection of Rule 23(b). *Id.* Plaintiffs seek to certify a class under Rule 23(b)(3), so they must show that issues common to the class members predominate over questions affecting only individual members, and that a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

A putative class representative must "affirmatively demonstrate" compliance with Rule 23 through "evidentiary proof"—mere allegations are insufficient. *Comcast Corp. v. Behrend*, — U.S. —, 133 S.Ct. 1426, 1432 (2013); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Compliance with each requirement must be shown by a preponderance of the evidence. *Messner*, 669 F.3d at 811. A class may be certified only if a district court is "satisfied, after a rigorous analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits. *Wal–Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S.Ct. 2541, 2551 (2011); *see also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

## II.     Background

Defendant Yahoo! is widely known for its free online consumer services. One such service is an instant messaging client called Yahoo! Messenger, which allows registered users to send online messages to others. Of primary importance to this case, Yahoo! Messenger also allows users to send personalized messages to people's cell phones through a feature called Mobile SMS[1] Messenger Service, or PC2SMS. PC2SMS bridges the gap between the online and SMS worlds by converting the Yahoo! user's online instant message into a text message that is sent to a recipient's cell phone number. The details of this system are set forth in the prior order denying summary judgment, *see* [89], but suffice it to say for present purposes that the first time a given cell phone number receives a text message from the PC2SMS system, the number is also sent a text message stating: "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms." The parties refer to this stock message as the "Welcome Message."

Plaintiff Rachel Johnson received the Welcome Message on March 19, 2013. It was sent in connection with a spam text message Johnson received via PC2SMS, which stated: "Do you want to be freed from of [sic] your payday advance loans call _888.9064165." Neither party has determined who sent this underlying message, but defendant hypothesizes that the sender was a payday lender Johnson previously borrowed money from. Plaintiff Zenaida Calderin received the Welcome

---

[1] SMS, which stands for "short message service," is another name for a text message.

Message on April 7, 2014, in connection with a text message sent by Calderin's co-worker.

Plaintiffs contend that in sending them these Welcome Messages, defendant violated the Telephone Consumer Protection Act, which makes it unlawful "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system . . . to any cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiffs have moved for class certification under Rules 23(a) and 23(b)(3). They seek to represent a class they define as follows:

> All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period: (i) commencing March 1, 2013 through March 31, 2013, and while such cellular number was assigned to Sprint or (ii) commencing April 1, 2014 through April 30, 2014 and while such cellular number was assigned to T-Mobile.

In addition, plaintiffs seek certification of two subclasses:

> *Subclass A*
> All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records.

> *Subclass B*
> All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing April 1, 2014 through April 30, 2014, while such cellular number was assigned to T-Mobile, and whose cellular telephone number is associated with a Yahoo! user in Yahoo!'s records.

Defendant opposes class certification.

### III.    Analysis

### A.    Ascertainability

Although not explicitly listed under Rule 23, a class may be certified only if its members can be ascertained. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). To show that a class is ascertainable, a plaintiff must begin by offering a definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Id*. at 659–60. In *Mullins*, the Seventh Circuit made clear that, at this stage of the litigation, a plaintiff need not prove there is a reliable and administratively feasible way to identify all who fall within the class definition. *Id*. at 657–58.

Defendant filed its brief opposing class certification before *Mullins* was decided. Accordingly, its arguments about whether there is a reliable and administratively feasible way to identify those who fall within the class definition are no longer persuasive. In its post-*Mullins* supplemental brief, defendant appears to concede that the proposed classes are ascertainable. *See* [163] at 4 n. 3.

Plaintiffs' proposed classes—both the primary one and the two subclasses—are ascertainable because they are defined precisely, defined by objective criteria, and are not defined in terms of success on the merits. *Mullins*, 795 F.3d at 659. Nothing more is required.

### B.    Rule 23(a)

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous

that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

## 1. Numerosity and Commonality

Defendant does not argue that numerosity or commonality is missing. And plaintiffs make a sufficient showing that both are met—the proposed class could contain more than 500,000 members, for whom common questions would include, among others, whether the PC2SMS platform constitutes an "automatic telephone dialing system." These two factors under Rule 23(a) are therefore satisfied.

## 2. Typicality and Adequacy

Defendant combines its discussion of typicality and adequacy, though they are distinct concepts. For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed

class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

As for adequacy, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

Defendant says plaintiff Calderin is not typical or adequate because she "participated in, or at least had knowledge of, a plan to manufacture this lawsuit by triggering her receipt of the Welcome Message," and therefore her "relationship with her counsel, her credibility, and the propriety of her conduct, will be at issue." [133] at 31. Defendant's evidentiary support for this claim consists of records showing that Calderin received the Welcome Message shortly after her co-worker (the sender of the underlying text message) spoke with Calderin's now-attorney. The co-worker testified, however, that the attorney did not cause him to send Calderin a message via PC2SMS. Instead, as the co-worker explained, the communications between him and the attorney concerned another case in which the attorney represented the co-worker and for which there was an upcoming hearing. Further, none of the co-worker's emails, which were produced, contained any discussion of the Welcome Message. Finally, Calderin testified that she was not

aware of the attorney until a couple days after she received the Welcome Message, and that she has never spoken with her co-worker about this lawsuit.

The Seventh Circuit has said that "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728. The evidence in this record does not suffice to call Calderin's typicality or adequacy into question—her motive for bringing suit (of marginal relevance in the first place) is not so obviously improper or antagonistic to the class that she could not be its representative.

Defendant next argues that Calderin is atypical or inadequate because her claim is subject to the defense of prior consent. *See id.* at 726 ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.") (internal quotation omitted). Defendant contends Calderin consented to receiving the Welcome Message when she agreed in March 2012 to defendant's Universal Terms of Service ("uTOS") and to its Communications Additional Terms of Service

("Comms ATOS"). At the time Calderin assented to defendant's uTOS, the relevant

provision read:

> 24.   NOTICE
>
> Yahoo! may provide you with notices, including those regarding
> changes to the [Terms of Service], including by but not limited to
> email, regular mail, SMS, MMS, text message, postings on the
> Service, or other reasonable means now known or hereinafter
> developed.

[134-5] at 45. The relevant provision of the Comms ATOS said the following:

> *Communications from Yahoo!.* You also understand and agree that the
> Services [i.e., Yahoo! Mail and Yahoo! Messenger] may include certain
> communications from Yahoo!, such as service announcements and
> administrative messages and that you will not be able to opt out of
> receiving such communications.

[134-5] at 10.

Plaintiffs say neither of these provisions constituted express consent under

the TCPA because neither specifically stated that notice would be given via an

"automatic telephone dialing system." Plaintiffs primarily rely on *Thrasher-Lyon v.

CCS Commercial, LLC*, which interpreted the TCPA to require just that. *See* 2012

WL 3835089, *5 (N.D. Ill. Sept. 4, 2012). This interpretation, however, represents

the minority view. Many more courts have held that, in order for "prior express

consent" to exist, a person need not consent to be contacted via an "autodialer" or

the like. *See Ebling v. ClearSpring Loan Services, Inc.*, — F.Supp.3d —, 2015 WL

3439161, *2 (D. Minn. April 14, 2015) (collecting cases). The majority view generally

relies on Federal Communications Commission declaratory rulings holding that a

person can give express consent simply by providing her cell phone number to

another. *See* 2008 FCC Declaratory Ruling, CG Docket No. 02–278, FCC 07–232, 23

F.C.C.R. 559 (Jan. 4, 2008); 1992 FCC Report and Order, CC Docket No. 92–90, FCC 92–44, 7 F.C.C.R. 8752 (Oct. 16, 1992). Since the act of giving one's number does not also include communicating permissible or impermissible modes of communication with the giver—yet such an act still constitutes prior express consent—it stands to reason that the TCPA does not require a consenter to specify that an automatic telephone dialing system may be used. I agree with this majority interpretation.

Plaintiffs next say uTOS and Comms ATOS were ineffective because "the scope of these terms of service is limited to communication concerning the Yahoo user's account." [139] at 19. Plaintiffs similarly argue that, specifically with regard to the uTOS, the word "notice" refers only to that term of art that is synonymous with "legal notification." [172] at 6–8. I disagree with both of these points. The language of paragraph 24 of the uTOS is plain, and it is broad enough to have had the effect of consenting to receive the Welcome Message at issue in this case.[2]

Because Calderin agreed to the uTOS, defendant did not violate the TCPA when it sent her the Welcome Message. As such, her claim is not typical of the three proposed classes, and I am not assured that she would adequately represent their interests. The requirements of Rule 23(a) cannot be met with Calderin serving as a representative.

---

[2] However, the Welcome Message did not fall within the scope of the Comms ATOS, which only obtained a user's consent to be exposed to communications *from within Yahoo! Mail and Yahoo! Messenger*. This interpretation is reinforced by the fact that a recipient of a Welcome Message could have opted out of receiving such communications, which defendant forbade for communications falling within the scope of the Comms ATOS.

Turning to Johnson, defendant says she is not typical or adequate either because she too consented to receiving the Welcome Message. Unlike Calderin, though, Johnson never agreed to defendant's uTOS. Instead, defendant contends Johnson consented through an intermediary. In 2008, Johnson filled out online applications for personal loans from the website CashCall.com. In signing the CashCall.com promissory notes, Johnson expressly agreed to receive phone calls and text messages using an automatic telephone dialing system. Because the underlying message Johnson received in this case related to these types of loans ("Do you want to be freed from of [sic] your payday advance loans"), defendant maintains that Johnson received the Welcome Message pursuant to a grant of prior express consent.

Intermediary consent under the TCPA is articulated in the FCC's decision, *In the Matter of GroupMe*, in which the FCC said a text-based social network could obtain consent to send administrative text messages to consumers by having a third-party organizer obtain the consumer's consent on the network's behalf. *See* 29 F.C.C.R. 3442 ¶ 1 (F.C.C. 2014). Crucial to this ruling, however, was the fact that the third party conveyed the individual recipient's consent to the network. *See id.* ¶ 3 (group creator represented to GroupMe that each individual consented to receiving text messages). The FCC's rule on intermediary consent has two necessary parts: (1) consent given by the recipient to the intermediary, and (2) consent conveyed by the intermediary to the sender. *See, e.g., id.* ¶ 9 ("Thus, we see nothing in the record or our present complaints that warrants requiring GroupMe to get

consent directly from each called party, rather than indirectly through the group organizer, *who conveys each party's consent*, in order to meaningfully ensure the protections of the TCPA are extended to the recipients of these GroupMe messages.") (emphasis added); *see also id.* ¶¶ 1, 6, 11, 14.

Here, defendant has put forth no evidence to suggest that—during the time in question—any third party conveyed any recipient's consent to defendant. With no such proof, there is no basis to conclude that Johnson or any other recipient gave effective consent through an intermediary.

Next, defendant says Johnson is not typical or adequate because she failed to retain the cell phone on which she received the Welcome Message. This prejudiced defendant, it says, because it cannot determine "whether Johnson regularly received other text messages concerning personal loans." As just explained, though, this information would be irrelevant.

Defendant also complains about not being able to see if Johnson ever downloaded a Yahoo! application to her phone, which would have required her assent to terms of service agreements that provide consent for Yahoo! to send text messages. As plaintiffs note, though, the only evidence on the matter is that the 68-year-old Johnson owned a Sanyo flip phone, she never owned a smartphone, she never sent a text message, and she never "download[ed] a game or something on" her flip phone. *See* [139] at 28. In other words, defendant's contention that Johnson may have downloaded one of its applications is nothing but a shot in the dark. As

12

such, the mere fact that Johnson got rid of her phone after the case was filed does not persuade me that she would be atypical or inadequate.

At the same time, plaintiffs demonstrate that Johnson is typical of the class she is offered for (Subclass A), and that she would adequately represent the absent members. Defendant sent Johnson an unsolicited text message using its PC2SMS system, which she did not consent to receive. Johnson's claim is not subject to unique defenses, or premised on unique facts. Johnson has prosecuted this action to date, participated in discovery, and she has no interest in an outcome adverse to the other members. She satisfies typicality and adequacy.

Finally, defendant says plaintiffs' counsel is not adequate because, in offering the revised proposed classes, they "cast aside more than 96% of the purported class . . . in an apparent attempt to preserve the viability of the named plaintiffs . . . ." [133] at 33. For the reasons given below in the discussion of superiority, I do not agree that class counsel's strategic decisions make them inadequate. In addition, class counsel has demonstrated their competence through their submissions, *see* [125-15] and [125-16], and also through their prosecution of this case to date.

### C. Rule 23(b)(3)

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of Rule 23(b)'s three subsections. Here, plaintiffs proceed under subsection (3), which allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any

questions affecting only individual members," and also that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. This "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). "Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id.* "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quotation omitted).

It bears repeating that, at this point, the only proposed class with a potentially viable representative consists of:

> All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period

> commencing March 1, 2013 through March 31, 2013, while such
> cellular number was assigned to Sprint, and whose cellular telephone
> number is not associated with a Yahoo! user in Yahoo!'s records.

Plaintiffs say common questions, including whether the PC2SMS system is an automatic telephone dialing system, would predominate over individual ones. Defendant disagrees and contends the individual issue of consent will overwhelm the common issues.

Defendant says a given class member could have consented to receive the Welcome Message in any of the following ways: (1) through an intermediary, (2) by agreeing to defendant's uTOS when creating a Yahoo account post-August 9, 2007,[3] (3) by agreeing to defendant's uTOS when migrating to the new email platform in 2012 (even if the account was opened pre-August 9, 2007), (4) by providing defendant a telephone number, or (5) by agreeing to defendant's uTOS when installing one of defendant's applications.

As previously discussed, defendant's intermediary consent theory is not supported by evidence such that it appears likely to be a significant issue. Whether consent was given by providing defendant a phone number would not be a predominant issue for the remaining proposed class because it specifically excludes anyone whose cellular telephone number was associated with a Yahoo! user.[4]

---

[3] Before August 10, 2007, paragraph 24 of defendant's uTOS stated that defendant "may provide you with notices, including those regarding changes to the [Terms of Service], by email, regular mail, or postings on the Service." [134-5] at 4. This earlier language did not grant defendant express consent to send users the Welcome Message via the PC2SMS platform. As a result, uTOS is a channel of express consent for only those users who agreed to it on or after August 10, 2007.

[4] Defendant suggests there may be some class members who gave their phone numbers to defendant but do not have a number associated with an account (meaning they arguably

There is a split of opinion in TCPA cases on whether issues of individualized consent predominate over commons questions of law or fact so as to prevent class certification. *See Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013) (collecting cases). In *Jamison*, Judge Kendall synthesized the legal landscape on this question, arriving at a statement of the law with which I agree:

> The rule that can be extracted from these cases is that issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone. However, if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification.

*Id*. While it is plaintiff's burden to meet the predominance test, an opposition based on theory, not evidence, is not a weighty objection. Defendant has not presented specific evidence showing that a significant percentage of the putative class agreed to the uTOS by downloading and using one of defendant's applications. Defendant says it does not keep records of individuals who downloaded and installed defendant's applications. [134-5] at 5. Fair enough, but defendant could have endeavored to obtain some evidence that members of the proposed class downloaded and used its applications. For example, defendant states that many of its applications are available for download through Google Play and Apple's App Store. [134-5] at 6. Yet the record contains no indication that defendant attempted to obtain a record of anyone who downloaded its program in the months leading up to

---

consented but will not be shown to have done so). However, consistent with the reasons discussed below, defendant has not provided enough evidence of this phenomenon to show that this individual issue would predominate.

March 2013. In any event, defendant may not rely on its own failure to obtain and retain records of who agreed to its uTOS to defeat class certification in this matter. *Mullins*, 795 F.3d at 668 ("[R]efusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions.").

The remaining channels of consent are all amenable to class-wide evidence. Defendant admits it can identify when a Yahoo user registered his or her account, and also whether a user agreed to uTOS as part of the email migration. [134-2] 8–9. This information could be verified or supplemented by making use of an affidavit as part of claims administration process. *Mullins*, 795 F.3d at 669 ("[W]e believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.").

Defendant argues that individual issues also predominate because any number of the would-be class members could have revoked any consent they gave, say by cancelling their accounts or by calling defendant and revoking consent verbally. Defendant laments the fact that there is no way to asses either occurrence on a class-wide basis. Once more, though, defendant has not presented specific evidence showing that a significant percentage of the putative class actually revoked its consent. Defendant admits that it "has not been able to develop evidence of verified instances of revoked consent[.]" [163] at 6. It blames this on the fact that "discovery has been limited to the two named plaintiffs and this was not an issue in

17

this case or the California case prior to the [FCC ruling of July 10, 2015]." *Id*. at 5–6. But as defendant also acknowledges, even before the recent FCC ruling, legal support existed for the position that consent to receive otherwise prohibited calls can be revoked. *Id*. at 5 n. 6. Further, at no point since the FCC made its recent ruling has defendant sought leave to take additional discovery. The responsibility for this lack of evidence, therefore, lies with defendant. What is more, defendant admits that it lacks data about the issue even on an individualized basis. *Id*. at 6 n. 7. Defendant offers revocation data from October 2015: 1,058 accounts out of the 56,257 that received the Welcome Message had already been deleted or were marked as deactivated and for future deletion. *Id*. at 7. This is not specific evidence showing that a significant percentage of the putative class revoked consent.

In sum, plaintiffs have demonstrated that common issues will predominate.

### 2. Superiority

In addition to requiring that common issues predominate, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

18

Plaintiffs say the class device is superior in this case because "each class member has a claim likely worth no more than $500," and the TCPA is not a fee-shifting statute.

Defendant offers several arguments in response. First, it says this proposed class is not superior because, being for only one month out of the permissible four-year statute-of-limitations period, it amounts to piecemeal litigation and not a "true class action." Defendant notes that it would face potentially dozens of class actions for each month and each phone carrier.

Plaintiffs reply that they have no obligation to bring the broadest class action possible. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes."). As plaintiffs see it, obtaining a remedy for one month's worth of class members is superior to obtaining it for no months' worth. I agree.

Second, defendant says Congress contemplated that TCPA claims could be brought as small-claims court actions. However, "Congress did not make a clear expression of an intent to preclude application of Fed. R. Civ. P. 23 to the TCPA, and the Court will not read one into the statute." *Green v. Service Master on Location Services Corp.*, 2009 WL 1810769, *3 (N.D. Ill. June 22, 2009); *see also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

19

Third, defendant offers an expert report for the proposition that the PC2SMS service offers tremendous benefit to many categories of consumers, and as a result, many would not want to participate in this class action. Defendant fails to cite any authority, however, suggesting that this is a proper reason to find that the class action device is not otherwise superior.

Fourth, defendant says a class action is not superior because of the financial impact it would have on Yahoo! and the disproportionality of a damage award that has little relation to the harm actually suffered by the class. Certifying a class action, however, does not necessarily mean defendant will be found liable. And complaints of disproportionality are better taken up with Congress. *Cf. Murray*, 434 F.3d at 953 ("The reason that damages can be substantial, however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person . . . .").

Finally, for the same reasons defendant originally said no class was ascertainable, it says the class action device is not superior.

In the recent decision, *Mullins v. Direct Digital, LLC*, the Seventh Circuit advised:

> At bottom, the district court was correct not to let a quest for perfect treatment of one issue become a reason to deny class certification and with it the hope of any effective relief at all. . . . [A] district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation. . . . Due process simply does not require the ability to identify all members of the class at the certification stage.

20

795 F.3d at 664–65. Consistent with this guidance, I find class treatment to be the superior way to proceed in this case. Defendant's concerns are not unreasonable, and there is a prospect that significant management difficulties could arise as the case moves forward. If plaintiff and her counsel cannot provide a manageable, cost-effective plan for identifying and communicating with the class, and resolving issues of consent, then decertification may follow. But without more concrete evidentiary support, defendant's fears are not sufficient to defeat class certification.[5]

## IV.  Conclusion

Plaintiffs' motion for class certification [125] is granted in part, and denied in part. The following class is certified: "All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records." Plaintiff Johnson is designated the representative of this class. Plaintiffs' motions to strike, [141] and [144], are denied.

ENTER:

Date:  1/4/16

Manish S. Shah
United States District Judge

---

[5] Plaintiffs moved to strike two expert declarations submitted by defendant. [141], [144]. The content of these declarations was taken into consideration in this decision, but ultimately they did not affect its outcome.

21