**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) | Case No. 14-cv-2028 |
| Plaintiff, | ) | Judge Manish S. Shah |
| v. | ) | Magistrate Judge Jeffrey Cole |
| YAHOO! INC., | ) | |
| Defendant. | ) | |

**DEFENDANT YAHOO! INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE CLASS NOTICE**

Robert A. Chapman (ARDC #6191210)
David A. Wheeler (ARDC #6270817)
Chapman Spingola LLP
190 South LaSalle Street, Suite 3850
Chicago, IL 60603
Tel: 312.630.9202
Fax: 312.630.9233
RChapman@chapmanspingola.com
DWheeler@chapmanspingola.com

Scott A. Edelman (Appearing *Pro Hac Vice*)
Christopher Chorba (Appearing *Pro Hac Vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: 213.229.7000
Fax: 213.229.7520
SEdelman@gibsondunn.com
CChorba@gibsondunn.com

**TABLE OF CONTENTS**

Page


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. LEGAL STANDARD ..... 3

III. ARGUMENT ..... 4

A. Plaintiff's Counsel's New Proposal For Individual Notice Relies Almost Entirely on Incomplete and Unreliable Sprint Customer Data ..... 5

B. The Proposed "Facebook Newsfeed" Cannot Fill The Gaps In The Notice Plan ..... 9

C. The Flaws In The Notice Plan Also Underscore Substantial Manageability Concerns With The Class That Must Be Addressed Before Notice Can Be Sent ..... 13

IV. CONCLUSION ..... 14

Pursuant to the Court's August 11, 2016 Order (*see* Dkt. 231), Defendant Yahoo! Inc. ("Yahoo"), by and through its undersigned counsel, hereby submits its opposition to Plaintiff's Motion to Approve Class Notice. (*See* Dkt. 227 ("Mot.").)

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's counsel's latest Proposed Notice Plan represents a last-minute shift in strategy that glosses over the fact that they cannot identify the vast majority of the class members who they purport to represent, who should be notified of the pendency of this action pursuant to Rule 23(c), and who will be bound by the results of this litigation. Most notably, the Sprint customer data that Plaintiff's counsel have been pursuing since this Court's class certification ruling in January do not even contain contact information for their client and class representative, Rachel Johnson.

Although Plaintiff's counsel previously proposed in their class certification motion that notice could be accomplished by generating a class list from Sprint's data, they now concede that this is not possible. In their new proposal, Plaintiff's counsel recommend notifying the class by: (1) sending a postcard to Sprint subscribers who are not even class members; (2) employing an undefined and vague "reverse look up" methodology to figure out who was actually using the telephone number that was texted on one occasion over three years ago; and (3) sending a "Facebook newsfeed" to 540,000 individuals who expressed an interest "in Sprint mobile, mobile phones, or Smartphones." (Mot. ¶ 10.)

Plaintiff's Motion does not acknowledge that the Sprint customer records do not provide any contact information whatsoever for 87,884 class members, meaning that more than ***27%*** of the class will not receive individual notice. Even where *some* contact information is available, Plaintiff's counsel have made no effort to determine whether that contact information is for the

***subscriber*** of the wireless telephone number (who would *not* be a member of the class certified by this Court) or the ***user*** of the number (who *would* be a class member). Instead, counsel seeks to provide "notice" by shifting the burden to the recipient of the individually-addressed postcard to figure out which person in his or her cell phone plan may have received a single Welcome Message from Yahoo more than 40 months ago. That is no small task where some subscribers have as many as 52,000 wireless lines in their plans. This user-subscriber problem plagues at least 150,032 class members, representing an additional ***47%*** of the class with no reliable contact information. Combined with the class members with no contact information, the net result is that up to ***74%*** of the class will not be advised of the binding impact of this litigation on their rights.

The Motion proposes to fill these gaps with a nondescript "Facebook newsfeed" announcement. But because this proposal is both overinclusive and not tailored to reach the class, it does not comport with due process or Rule 23(c)(2)(B), which requires that class members receive the "best notice that is practicable under the circumstances." Plaintiff's counsel provide no evidence or support demonstrating that the "Facebook newsfeed" will reach the 74% of the class that may not receive the postcard notice. There is no reason to believe that a widespread notification will create anything other than confusion, given that Plaintiff's counsel have (for strategic reasons) limited their class to one cellular carrier, to a single text message received by each class member, and to a single month more than three years ago. The Court should not approve a "notice" plan that will leave up to *three-quarters* of the class unaware of these proceedings and their rights to opt out.

These failings highlight that this case has become unmanageable as a class action. After several months of concerted effort, Plaintiff's counsel still have not been able to identify who will be bound by these proceedings (i.e., the group that would be barred from filing new lawsuits

if Yahoo prevails, or who would recover if Plaintiff prevails), much less provide a path to manage efficiently and effectively the complicated questions of damages, liability, and consent that arise from a class that is narrowly defined as one-time recipients of a text message sent during March 2013. In its class certification ruling, this Court recognized "there is a prospect that significant management difficulties could arise as the case moves forward," and cautioned Plaintiff that if "her counsel cannot provide a manageable, cost-effective plan for identifying and communicating with the class . . . then decertification may follow." (Dkt. 177 at 21.) Plaintiff's counsel's current proposal confirms these significant management difficulties and that they have not provided a cost-effective plan to identify and communicate with the class. It would be inefficient to proceed with a deficient notice plan now, especially when this case concerns a class definition that is bounded by time, and there is no prejudice to the class from waiting to send notice (assuming the class is not decertified before trial).

Yahoo respectfully requests that the Court deny Plaintiff's Motion, and defer notice until Yahoo has an opportunity to address these manageability concerns, which it intends to present by no later than September 13, 2016, in a Motion to Decertify the Class.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 requires that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23's mandatory notice requirement ensures that absent class members are given personal notice and an opportunity to be heard, which are "fundamental requisites of the constitutional guarantee of procedural due process." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974); *see also Lemon v. Int'l Union of Operating Engr's*, 216 F.3d 577, 580 (7th Cir. 2000). Adequate notice is

therefore an "absolute requirement for a court to exercise jurisdiction over . . . class members." *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 321 (7th Cir. 1995). Because it is the class representative who seeks to maintain the suit as a class action, and bind class members by the result of the case, the class representative bears the burden of identifying and sending notice to absent class members. *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 355 (1978).

Absent class members who can be identified with "reasonable effort" are entitled to receive individual notice. *Eisen*, 417 U.S. at 175. What constitutes "reasonable effort" is determined on a "case-by-case basis," 7AA Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1786 (3d ed. 2016), and includes an analysis of whether the effort is "commensurate with the stakes" in the litigation, *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013).

To be sufficient, a class notice plan must reach a high percentage of the class. For example, the Federal Judicial Center has reported that the median reach of approved notice plans is 87%, with some achieving as high as 95%. FJC, *Judges' Class Action Notice & Claims Process Checklist/Plain Language Guide* 3 (2010). Failure to demonstrate that an adequate reach will be achieved is grounds to deny a proposed notice plan. *See, e.g., Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 957 (N.D. Ill. 2005) (rejecting notice plan where counsel did not "cite[] any statistics" to show that the plan was "reasonably likely" to reach class members, and were "unable to tell [the court] . . . how many people may actually get notice").

## III. ARGUMENT

The Proposed Notice Plan is insufficient for three independent reasons. *First*, the proposal does not comport with due process or Rule 23 because it rests almost entirely on incomplete and unreliable Sprint customer data that potentially leaves up to 74% of the class of

cellphone users without any direct notice that they will be bound unless they opt out. *Second*, the proposal to fill in these gaps with a Facebook post is not "reasonably calculated" to reach the many class members who will not receive the individual (postcard) notice. *Third*, in light of the significant manageability concerns and the present inability to identify who will be bound by the results of any judgment, the Court should defer any notice until Yahoo has an opportunity to brief these important Rule 23 and due process issues in a motion for decertification. For these reasons, the Court should deny Plaintiff's Motion to Approve Class Notice.

### A. Plaintiff's Counsel's New Proposal For Individual Notice Relies Almost Entirely on Incomplete and Unreliable Sprint Customer Data

At the heart of the Proposed Notice Plan is an individual postcard notice that would, if approved, be sent to individuals on a list that Plaintiff's counsel has compiled from customer data provided by Sprint in response to a subpoena. But the data suffer from multiple problems that raise serious doubts as to whether it is—or ever can be—effective as a means of identifying and reaching class members. Although Plaintiff suggests that Sprint provided a straightforward spreadsheet containing the telephone numbers, names, and addresses of the class members (Mot. ¶ 7; *see also* Pl.'s Consol. Mot. for Class Cert. [Dkt. 100] at 9), in fact, Sprint's newest data production is actually a 32-tab spreadsheet containing over 300,000 rows of data with over a dozen variables of information. Moreover, the spreadsheet is far from complete, as it contains several blank cells, duplicate entries, and inaccurate information. Yahoo's initial analysis of the Sprint data has identified at least two significant problems that Plaintiff's counsel have not addressed adequately:[1]

---

[1] Plaintiff's counsel submitted their Motion and Proposed Notice Plan on August 8, which was one day *before* they received the new Sprint data. Accordingly, counsel had no opportunity to examine and analyze the revised Sprint data, or explain how the proposal addresses the deficiencies in the data. Yahoo continues to analyze the data, and it reserves the right to identify further issues and/or pursue its previously-requested Rule 30(b)(6) deposition of Sprint regarding the data.

First, the Sprint data contain ***no*** contact information for 87,884 class members, which represents more than 27% of the class. In fact, the contact information for Ms. Johnson (the named plaintiff and class representative) does not appear in the Sprint data—the mailing name for her telephone number is listed only as "WEBLIFE MEDIA LLC." This gap in the data undercuts the efficacy of the proposed postcard notices, which would never reach a quarter of the class. Rule 23(c) does not permit counsel to conclude that they need not provide individual notice to any of these 87,884 class members simply because the Sprint data do not contain their contact information. Rather, it affirmatively requires Plaintiff to use all "reasonable efforts" to identify and provide individual notice to absent class members. Fed. R. Civ. P. 23(c)(2)(B).

Plaintiff's Motion does not attempt to discharge this burden, or otherwise effectively explain what efforts Plaintiff has taken to obtain information that would allow her to notify the nearly 27% of the class for whom she presently has no contact information. Plaintiff's counsel propose, for the first time, to cure these problems by using a "reverse look up" of "public record databases" as a means of locating contact information for missing class members. (Mot. ¶ 9.) Plaintiff's counsel have not performed this task yet—some seven months after the class certification ruling—and this new proposal is short on details and suffers from several critical flaws: Plaintiff does not define the term "reverse look up," identify which "public record databases" she will consult, or otherwise state the expected efficacy and reliability of this process. In fact, wireless telephone carriers, including Sprint, do not publish directories of wireless telephone numbers,[2] and private, third-party data vendors that offer "reverse look up" services offer no guarantees of trustworthiness, especially when the text message at issue was sent to each class member only once, more than three years ago in March of 2013.

[2] *See* Sprint Corporation Privacy Policy (July 22, 2016), https://www.sprint.com/legal/privacy.html.

Notably, this same "reverse look up" methodology was proposed—and soundly rejected—by Judge Curiel in the parallel *Sherman v. Yahoo! Inc.* case in which he denied class certification in a class action that covered another small sliver of Plaintiff's counsel's TCPA litigation against Yahoo. *See Sherman v. Yahoo! Inc.*, No. 13-cv-41-GPC, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015). In that case, Yahoo's expert, Dr. Debra Aron (who is also designated as an expert here), testified that this methodology is unworkable because "'reverse look-up' services available from data vendors do not generally purport to offer historical data on wireless subscribers with which one can determine the subscriber or user of a wireless telephone number on a specific date, and reliability statistics on their current data are not offered." Decl. of Dr. Debra Aron ¶ 42, *Sherman v. Yahoo! Inc.*, No. 13-cv-41 (S.D. Cal. May 8, 2015), Dkt. 129-7 [hereinafter Aron Decl.] (attached as Ex. A). Judge Curiel cited Dr. Aron's assessment and agreed that the *Sherman* plaintiff's "belated" proposal did "not provide objective, verifiable criteria for identifying class members." *Sherman*, 2015 WL 5604400, at *6.

Additionally, public records are an inherently unstable source of data, because there is no way of determining whether the historical contact information accurately reflects the user of a telephone number on a specific date. *See id.* (Judge Curiel noted that "reverse look ups" cannot verify whether the "current owners of the telephone numbers were the owners [during the relevant class period]"). That is especially so considering that both the user and subscriber of a wireless telephone number may have switched hands several times since the text message was sent in March 2013. *See* Aron Decl. ¶ 22 (citing data from the Number Portability Administration Center showing that 45 million Americans change phone numbers each year). Thus, these "reverse look up" searches are far from reliable.

*__Second__*, even for those 233,223 class members for whom the Sprint data contain *some*

contact information, those details pertain to the ***subscriber*** of the wireless number, not the ***user*** of the number who received the single text at issue. Only ***users*** who received the text message are the class members entitled to notice and an opt-out right. But nearly two-thirds of the 233,223 accounts with some contact information (i.e., 150,032, or 47% of the total class) are linked to at least two different telephone numbers. For these accounts, the data do not distinguish between which individual is the ***user*** as opposed to the ***subscriber*** (i.e., account holder) of the Sprint account. And many accounts are linked to scores of telephone numbers: remarkably, on *average*, there are ***359*** different telephone numbers associated with each subscriber in the data, with one subscriber account (the UPS Corporate Account) associated with ***52,295*** different telephone numbers.[3] These figures demonstrate that it is not currently possible to identify the class members and Sprint users who will be bound by this lawsuit.

Identifying the contact information for the ***users*** is paramount since the certified class is "limited to the users of the cellular telephone numbers." (May 20, 2016 Order [Dkt. 209].) Indeed, Plaintiff and class representative Ms. Johnson is well aware that this is a distinction that matters, because she is the ***user*** of the cellular telephone number that received a Yahoo Welcome Message, ***but not a subscriber***. Because the current data only provide contact information for the ***subscribers***, there is no assurance that notice to the user who received the text message will be accomplished by sending a postcard to the subscriber.

Rather than address the user-subscriber problem and other gaps in the data, or identify additional discovery or steps that could be taken to fill this substantive void, Plaintiff's counsel simply propose to revise the wording of the notices to inform the postcard recipients that they or

[3] Even where the data contain only one linked personal telephone number, there is no guarantee that a postcard notice will actually reach the class member. For example, a class member whose mobile phone is paid for and registered in the name of another person will not appear at all in the Sprint data.

"***someone in [their] cellular telephone plan***" may be a class member. (Mot., Ex. 1.A [Dkt. 227-1].) This proposal does nothing to identify class members and would simply shift Plaintiff's burden to third parties and would conscript them to deliver the notice to the actual class members—assuming the third parties even knew who the class members were (something the parties have not been able to discover in the last 7 months). This proposal is improper, and it is implausible to believe that these third parties—who have no stake in this litigation—will know whether a user from their cellular telephone plan received a single Yahoo Welcome Message from more than three years ago. Some subscribers, such as UPS, have *thousands* of numbers in their plans. Moreover, it is likely that even the individuals who are part of the class will have difficulty in identifying themselves, given that most class members will no longer recall whether they received a single Welcome Message in 2013.

These are but two of the reasons why Plaintiff's reliance on the Sprint customer data to create a "class list" is fundamentally flawed. As presently constituted, this "class list" excludes 27% of the class for whom there is no contact information. And even for those on the list, there is no assurance that the postcards will reach class members because the data contain ***subscriber***—and not ***user***—contact information. In sum, Plaintiff's counsel have tried for months, but they cannot show that the proposed mailing is "reasonably calculated" to reach class members. Accordingly, their Proposed Notice Plan is inadequate; it certainly does not provide the "best notice . . . practicable," and the Court should reject it. Fed. R. Civ. P. 23(c)(2)(B).

**B. The Proposed "Facebook Newsfeed" Cannot Fill The Gaps In The Notice Plan**

If class members cannot be identified with reasonable effort, courts may consider alternative methods of giving notice to absent class members, provided that those methods are "reasonably calculated to reach interested parties." *Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 318 (1950). For instance, "[w]hen reasonable effort would not suffice to identify class members, notice by publication, imperfect though it is, may be substituted." *Hughes*, 731 F.3d at 677. Courts may also consider other methods, such as "notice through third parties, paid advertising, and/or posting in places frequented by class members" to satisfy Rule 23's notice requirements. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015).

Here, given the limitations of the Sprint customer data in adequately identifying class members, the Court ordered Plaintiff's counsel to revise their proposal "to include publication in some manner . . . so that the court can be confident that communication with the class is feasible." (May 20, 2016 Order [Dkt. 209].) In response, Plaintiff's counsel propose a "Facebook newsfeed" post to "extend reach among unknown Class members." (Mot. ¶ 10.) This newsfeed will involve "image/text ads with a link to the case website [that] will appear on mobile devices through Facebook newsfeed." (*Id.*) Plaintiff's counsel estimate that "[a]n estimated 540,000 impressions targeting adults interested in Sprint mobile, mobile phones, or Smartphones . . . will appear over a one month period." (*Id.*)

But Plaintiff's counsel have not established that this proposed "Facebook newsfeed" publication will reach the unknown class members. The brief paragraph in their proposal (*see* Mot. ¶ 10) contains several critical gaps:

*First*, they have not submitted any expert reports or statistics showing how the estimated "540,000 impressions" were calculated. It is impossible to assess the estimated reach without this information.[4]

*Second*, Plaintiff's counsel do not establish any nexus between the class (cellphone users)

[4] In fact, the headline number of "540,000 impressions" is irrelevant; the relevant statistic is the number of unknown class members whom the "Facebook newsfeed" will reach. Plaintiff's counsel have not provided this figure.

and the proposed publication platform (an Internet-based social networking website). Ms. Johnson did not have a "smartphone" capable of accessing Facebook. As such, Plaintiff's counsel cannot even establish that the proposed publication notice would reach the class representative, let alone a meaningful portion of the class.

Third, the target audience—adult Facebook users "interested in Sprint mobile, mobile phones, or Smartphones"—does not mirror the intended class members, who are comprised of *pre-existing* Sprint users who *already* own mobile phones. There is no reason to believe that unknown class members are likely to fall within the target audience, and Plaintiff's counsel have not offered any evidence or expert testimony to establish this link. Moreover, the focus on "smartphones" does not comport with the class representative's experience, who again neither owned a smartphone at the time that the Yahoo Welcome Message was received, nor expressed any interest in one. And even if this target audience were appropriate (and it is not obvious that it is), it remains—like the "reverse look up" searches discussed above—simply a *proposal* at this stage. Plaintiff's counsel have offered no explanation about the technology that will implement the proposed notice program. Nor have they provided any details about how the "Facebook newsfeed" would actually appear to users; among other problems, Plaintiff's counsel have not (1) provided a sample of the appearance or content of the "image/text ads"; or (2) indicated whether the "Facebook newsfeed" would be available to non-Facebook users, or whether it would be available on computers, mobile devices, or both. And because the class has been defined very strategically to consist of customers from just one carrier, who received just one text, from just one specific month from three years ago,[5] it is unreasonable to expect that the

[5] The significant manageability issues resulting from such a limited class definition were one reason why Judge Curiel denied class certification in the parallel *Sherman v. Yahoo! Inc.* proceeding. As in the present case, the plaintiff in *Sherman* "narrowed the class down to one month in 2013 and one

newsfeed post will yield anything other than confusion and a flood of responses from individuals who do not fit in the one-carrier, one-month class. Given the paucity of details regarding the "Facebook newsfeed," this Court simply has no way to judge the overall efficacy of the proposal.

Even taking into account the individual mailings from the proposed notice list, the reach of Plaintiff's counsel's Proposed Notice Plan fails to satisfy the benchmark reach of 87% that approved notice plans frequently achieve. FJC *Class Action Notice Checklist*, *supra*, at 3. At present, there is no contact information at all for 27% of the class. The contact information for an additional 47% of the class is unreliable, because there is presently no way to differentiate the account ***subscribers*** (who are not class members) from the actual cellular telephone ***users*** (who are class members). Thus, the Proposed Notice Plan does not even touch the lower-bound of the reach that a notice plan should be reasonably expected to achieve. *See id.* With no guarantees that notice will reach a significant portion of absent class members, Plaintiff is not providing the "best notice . . . practicable" to class members under Rule 23(c)(2)(B).

While the Court previously noted that not having a complete list of users "is not fatal" (May 20, 2016 Order [Dkt. 209]), Plaintiff's counsel nonetheless needed to revise the notice plan "so that the court can be confident that communication with the class is feasible." *Id.* The latest proposal does not provide that confidence. Plaintiff's counsel originally argued that class certification was appropriate because "Sprint[] Subscriber Records Identify the Names and Addresses of the Class Members," and they claimed in the class certification briefing that the Sprint data "demonstrated the ability to obtain the names and addresses of a significant portion of the class members, [which] more than satisf[ied] any identification requirement and allow[ed]

---

cellular service provider," leading Judge Curiel to note that this "highly circumscribed class definition seems to offend the very purpose of [Rule 23]." 2015 WL 5604400, at *11.

for direct mail notice to the vast majority of the class." (Pl.'s Reply Brief [Dkt. 139] at 6-7 (emphasis in original).) Now that the Sprint data is in hand, however, this has not proven to be a viable plan for informing class members of their rights.

**C. The Flaws In The Notice Plan Also Underscore Substantial Manageability Concerns With The Class That Must Be Addressed Before Notice Can Be Sent**

As discussed, in the seven months since this Court's class certification order, Plaintiff's counsel have struggled to develop a means of adequately identifying the specific people whose rights will be impacted by any trial in this case. Even after significant discovery, counsel simply cannot identify exactly who these people are, how the Court can reliably communicate with them, or who would be bound by (or share in the recovery of) any ultimate judgment. Before proceeding with any notice plan, the Court should be confident that the class members "have the information [and] foresight needed to decide, intelligently" whether to opt out of the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997). These are critically important issues because Plaintiff's counsel have pursued a very narrow class whose members are defined by one cellular carrier, during one month in 2013, concerning the receipt of a single text message.[6]

This case should not simply forge ahead to trial in light of these issues. Rule 23 "affords the Court discretion to control the manner in which a class action proceeds, including the timing . . . of notice to the class." *Cavin v. Home Loan Ctr. Inc.*, 469 F. Supp. 2d 561, 574 (N.D. Ill. 2007). Courts should conduct a class action in such a manner that "prevent[s] undue repetition or complication in presenting evidence or argument." Fed. R. Civ. P. 23(d)(1)(A).

To finalize a notice plan now would exacerbate these complications unnecessarily. In light of the continued difficulties with identifying class members, the Court should refrain from

[6] Although narrow, the class still seeks staggering sums—$160,553,500 in statutory penalties, which amount to $481,660,500 if trebled. (Compl. [Dkt. 1] at 7; Pl.'s Case Mgmt. Plan [Dkt. 207] at 8-9.)

finalizing a class notice plan until it has a chance to determine whether the issues presented by the deficient class list and deficient publication notice can be resolved.

The Court already has suggested that decertification remains an option if Plaintiff "cannot provide a manageable, cost-effective plan for identifying and communicating with the class." (Order Grt'g-in-Part Class Cert. [Dkt. 177] at 21.) Despite several opportunities, Plaintiff's counsel have not done so. Yahoo's analysis of the recently-produced Sprint customer data has uncovered problems that raise further doubts as to the manageability of this case as a class action, which will only be exacerbated as this litigation proceeds. It intends to present these issues no later than three weeks from the August 23 status conference.[7] Giving sufficient time and consideration to address these issues now before notice is given, rather than later, will ensure that the litigation remains fair to all class members and manageable for the Court. *See, e.g.*, *Cavin*, 469 F. Supp. 2d at 574; *Hamilton v. Am. Corrective Counseling Servs., Inc.*, No. 05-cv-434-RM, 2007 WL 1395592, at *2 (N.D. Ind. May 10, 2007) (delaying class notice where resolution of pending motions "may help hone the contents of the notice").

## IV. CONCLUSION

Plaintiff's counsel's Proposed Notice Plan does not provide the "best notice . . . practicable" to class members. Counsel did not even have the final Sprint customer data in hand before presenting their revised notice plan on August 8. The data are incomplete, unreliable, and only contains decipherable contact information for, at most, 22% of the class. Plaintiff's counsel have offered no credible means of addressing these problems. Their proposals to use a "reverse look up" of telephone numbers; to have non-class members pass along the

[7] As discussed above (*supra* note 1), Yahoo is still analyzing the Sprint data produced on August 9, and it reserves the right to pursue a deposition of Sprint regarding the data.

postcard notices to the class members; and to employ some form of a nondescript "Facebook newsfeed" carry no assurances that they will provide the type of notice that constitutional due process and Rule 23 require. In addition to the Proposed Notice Plan's substantive shortcomings, sending any form of notice at this juncture would be premature and inefficient.

Yahoo therefore asks this Court to deny Plaintiff's Motion to Approve Class Notice.

Dated: August 19, 2016 **YAHOO! INC.**

By: /s/ David A. Wheeler
One of its attorneys

Robert A. Chapman (ARDC #6191210)
David A. Wheeler (ARDC #6270817)
Chapman Spingola LLP
190 South LaSalle Street, Suite 3850
Chicago, IL 60603
Tel: 312.630.9202
Fax: 312.630.9233
RChapman@chapmanspingola.com
DWheeler@chapmanspingola.com

Scott A. Edelman (Appearing *Pro Hac Vice*)
Christopher Chorba (Appearing *Pro Hac Vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: 213.229.7000
Fax: 213.229.7520
SEdelman@gibsondunn.com
CChorba@gibsondunn.com

## CERTIFICATE OF SERVICE

I, David A. Wheeler, an attorney, hereby certify that on August 19, 2016, I caused the foregoing to be filed electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David A. Wheeler