# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 14-cv-2028 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| YAHOO! INC., | ) ) | |
| Defendant. | ) | |

_____

**AMENDED MOTION TO APPROVE CLASS NOTICE**

Pursuant to the Court's Order of October 6, 2016 (Doc. 251), Plaintiff respectfully submits this Amended Motion to Approve Class Notice. In support hereof, Plaintiff states:

## I.  Introduction

Plaintiff submits a notice plan below expected to reach at least 85.5% of the class with the majority of that notice reaching the class by U.S. mail. *See Exhibit 1 - Intrepido-Bowden Declaration* at ¶¶ 5, 41. This plan includes United States mail delivery of four distinct versions of a Double Postcard Notice, internet publication through targeted Facebook advertisements, the issuance of press releases to media outlets nationwide, which have demonstrated interest in Yahoo in recent months and have demonstrated interest in this case, and the maintenance of a notice website, which will provide a long form notice and additional relevant documents. This notice plan is not only consistent with notice plans in other TCPA actions, it is the best notice that is practicable under the circumstances, and satisfies due process.

## II.  Procedural Background

On January 4, 2016, the Court certified the following class under Fed. R. Civ. P.23(b)(3):

"All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013,

while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records."

*Doc. 177* at p. 21.

On April 15, 2016, the Court granted Plaintiff's first Motion to Approve Class Notice, finding that "Plaintiff's proposed notice accomplishes the requirements of Rule 23(c)(2)(B), and a summary postcard [to the Sprint account holders] along with a long form posting on a website is the best notice that is practicable under the circumstances." *Doc. 203*. A month later, the Court ruled that it would issue an order clarifying the class definition and that the class notice would be stayed pending the ruling. *Doc. 208*. On May 20, 2016, the Court entered its order clarifying the definition: "the definition of the certified class is clarified to specify that the term 'persons' is limited to the users of the cellular telephone numbers" rather than the account holders (AKA subscribers) of the telephone numbers. *Doc. 209*. In doing so, the Court held:

> "That the parties do not have a complete list of users is not fatal to the manageability of the class because knowing every name of every class member is not required, and there is no reason to suspect that a user of the number that was sent the Welcome Message does not exist. The court's assessment of the suitability and superiority of a class action is not changed by clarifying that users, not mere subscribers, are the class members. But plaintiff is directed to propose revisions to the language of the class notice and the method of notice (to include publication in some manner) so that the court can be confident that communication with the class is feasible."

*Id.*

At the status hearing on June 7, 2016, Plaintiff agreed with the Court that while notice was already sufficient notice under Rule 23, notice might be improved by first obtaining further information from Sprint that would be helpful for communicating with the users, and which would clarify the necessary scope of publication. Plaintiff explained that Plaintiff had already sent a subpoena to Sprint seeking this additional user information. *See Doc. 211*.

After obtaining the additional data from Sprint, which contains information identifying the user of the telephone number at issue in March 2013 for 72% of the class, Plaintiff filed a Motion

to Approve an Amended Class Notice on August 8, 2016. *Doc. 227.* Yahoo opposed the motion and requested to take Sprint's deposition regarding the records it produced. The Court ordered that the deposition take place by September 14, 2016 and ordered further briefing on the motion to approve notice after the deposition. *Doc. 243.* In light of the information obtained at the deposition, the Court granted leave to file this Amended Motion. *Doc. 246.*

### III. <u>Standard for Class Notice</u>

Rule 23(c)(2)(B) states as follows:

> "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(c)(2)(B).

As the reiterated by the 7th Circuit, the rule requires "only the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Hughes v. Kore of Ind. Enter.*, 731 F.3d 672, 676 (7th Cir. 2013), citing Fed. R. Civ. P. 23(c)(2)(B). Thus, "the rule does not insist on actual notice to all class members in all cases. It recognizes it might be impossible to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015). For instance, in some cases, records identifying the names and addresses of the class members simply may not exist. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("Maybe Fleet should have such a record, but it doesn't and so individual notice is impossible.")

In cases where direct notice is impossible, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins*, 795 F.3d at 665. Thus, "the Seventh Circuit has expressly held that the feasibility of notice by mail is not a prerequisite to class certification." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 418 (N.D. Ill. 2012), citing Mirfasihi, 356 F.3d at 786.

In all cases, the "reasonable effort" required by Rule 23(c)(2)(B) is "effort commensurate with the stakes." *Hughes*, 731 F.3d at 676. "[I]t is particularly important that the types of notice that courts require correspond to the value of the absent class members' interests." *Mullins*, 795 F.3d at 665 (7th Cir. 2015). For "low-value claims like this one[,] . . . only a lunatic or a fanatic would litigate the claim individually, so opt-out rights are not likely to be exercised by anyone planning a separate individual lawsuit." *Id.*, citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). In such cases, notice requirements may be satisfied by publication alone. *Id.* at 666, *citing Hughes*, 731 F.3d 676-77 ("We did not insist on first-class mail even though the notice plan likely would not reach everyone in the class. We approved the plan because the notice plan was 'commensurate with the stakes.'"); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning.")

Thus, there is no requirement that a certain percentage of class members be reached by notice, as can be seen the plain language of Rule 23(c) itself ("best notice that is practicable") and Seventh Circuit precedent. *Hughes*, 731 F.3d at 676 (the "reasonable effort" required by Rule 23(c)(2)(B) is "effort commensurate with the stakes."); *Mullins*, 795 F.3d at 666 ("We approved

4

the plan because the notice plan was 'commensurate with the stakes.'")

In this case, the class administrator estimates that Plaintiff's notice plan in this case will reach at least 85.5% of the class. This outcome is in line with the Federal Judicial Center's guidelines, which provide that "a high percentage (e.g. between 70-95%) can often reasonably be reached by a notice campaign." Judges Class Action Notice and Claims Process Checklist and Plain Language Guide (2010);[1] *see also In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) (finding estimated 70% to 95% to be reasonable based on Federal Judicial Center Guidelines); *Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, *14 (N.D. Ind. 2013) ("it is reasonable to reach between 70-95%.")

## IV.    Analysis of Sprint's Records

Yahoo's PC2SMS database showed that it sent the Welcome Message to 520,210 unique cellular telephone numbers assigned to the Sprint Network in March 2013. *Doc. 125-12 – Hansen Declaration* at ¶ 13. Of those, 321,107 numbers did *not* appear in Yahoo's user records. *Doc. 125-12 – Hansen Declaration* at ¶ 18. Thus, at the time of certification, the certified class, which is limited to persons whose numbers did not appear in Yahoo's records, appeared to contain 321,107 persons.

Plaintiff's subpoena to Sprint asked it to provide the account level information for those 321,107 numbers. Sprint's records submitted in response to the subpoena did not provide any responsive information for 87,884 of those numbers. The deposition of Sprint clarified that this lack of data means that there was no active customer account for those numbers in March 2013. *Exhibit 2 - Sprint Deposition* at 85:13 – 87:10. In other words, there is no class member that corresponds to those 87,884 numbers. Thus, those numbers should be excluded from the class.

---

[1] Available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf

This leaves 233,223 cellular telephone numbers at issue for the class.

Of the 233,223 numbers at issue for the class, an analysis of Sprint's records indicates that they are highly reliable for identifying the class member's names and addresses and providing notice:

- Sprint's records provide the name and address of the account holder for 188,426 (81%) of the telephone numbers at issue; 167,672 (72%) of the telephone numbers at issue identify the *user* in March 2013 in addition to the account holder. *See Intrepido-Bowden Declaration* at ¶¶ 19-20.

- 38,274 (16.4%) of the telephone numbers at issue were on an account with only one telephone line (i.e., the number to which Yahoo sent the Welcome Message), which means that the account holder is almost certain to be the same as the user – since there was only one number on the account, there is no account holder/user distinction. *Id.* at ¶ 20.

- 205,358 (88%) were on an account with 10 or less telephone lines, and of those, 194,743 telephone numbers (83% of the entire class) were on an account with 5 or less telephone lines. *Id.* at ¶ 20. Thus, even where the user name is not identified in Sprint's records for these accounts, it is reasonable to expect that account holder to readily know who was using the telephone number at issue and be able to forward the notice to that person without difficulty.

- Only 5,813 (2.49%) of the telephone numbers at issue were on an account with more than 10 lines that did not contain any user information. *Id.* at ¶ 23. As described below, Plaintiff's notice plan will utilize a reverse directory search for additional names and addresses to be sent notice in addition to the notice sent to the account holder names and addresses in Sprint's records.

- For 45,010 (19%) of the telephone numbers, Sprint was unable to provide name and address information for an account holder because even though those numbers were assigned to the Sprint network in March of 2013, those numbers were serviced by a reseller of Sprint's service's (e.g. Virgin Mobile, Tracfone) during that time period. *Exhibit 2 - Sprint Dep. Tran.* at 137:3-8. For these numbers, Plaintiff's notice plan (described below) will utilize a reverse directory search for additional names and addresses to be sent notice in addition to a notice sent directly to the resellers themselves.

### V.   <u>Mailed Notice Using Sprint's Records is the Best Notice Practicable</u>

In this case, Plaintiff proposes to mail a summary Double Postcard Notice that is expected to reach 85.5% of the class, and to post a Long Form Notice on a settlement website that will be promoted in the Double Postcard Notice itself, through Facebook advertisements, and press releases to media outlets nationwide. The mailing of a summary notice combined with a website posting a long form notice is a commonly-approved method for giving notice in class actions. *See, e.g., City of Greenville v. Syngenta Crop Prot., Inc.*, 2012 U.S. Dist. LEXIS 74305, *13-14 (S.D. Ill. 2012); *Berkson v. Gogo, LLC*, 2015 U.S. Dist. LEXIS 163405, *72-73 (E.D.N.Y. Dec. 4, 2015); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1375 (S.D. Fla. 2007).

### A.  Sprint's Records are the Best Source of Mailing Information

Given that Yahoo itself does not have any contact information for the class, Sprint's records are the best source of initial mailing information for the class. Indeed, Sprint itself confirmed in its deposition that it "is not aware of any" source of information that would more accurately identify the users of the telephone numbers at issue. *Exhibit 2 - Sprint Dep. Tran.* at 137:18-25.

Sprint's records identify not only the name and address of the account holders for the telephone numbers at issue during March 2013, but for 72% of the class, the records also identify

the *user* of the telephone numbers at issue during March 2013 as identified by the account holders themselves when they provided that information to Sprint. *Exhibit 3 - Sprint Records Excerpt*; *Exhibit 4 - Records Data Key*; *Exhibit 2 - Sprint Dep. Tran.* at p. 19:14 -20:3 (testifying that account holder may provide the user name at the time of account set up or may later add or update the user information at Sprint's website).

For example, with respect to Plaintiff's telephone number, Sprint's records identify the name and address of the account holder, ███████████████████████████████ ████████████████████████ *Exhibit 3 - Sprint Records Excerpt* at line 182706.  As another common example, for a telephone number tied to a ████████████████████████████ ████████████████████████████████████████████████████ ████████████. *Id.* at line 22.

Sprint relies on both the account holder information and the user information (e.g. "* Rachel") for its own billing purposes. *Exhibit 2 - Sprint Dep. Tran.* at 151:21 – 153:6; *Exhibit 5 - Plaintiff's Sprint Bill* at p. 5, p.10 (showing billing and call details broken down by user name).  In addition, Sprint receives approximately 200,000 to 300,000 subpoenas a year, and provides account holder information and user information in response to many of those subpoenas, including in response to subpoenas from law enforcement. *Exhibit 2 - Sprint Dep. Tran.* at 103:19 – 104:15, 111:2-17.  Given that Sprint regularly relies on this information for its own purposes and is unaware of a better source of information to identify the users of its telephone numbers, this information is appropriate for use in providing class notice.

Plaintiff's notice plan does not, however, rely on Sprint's records alone.  First, Plaintiff proposes to conduct a search for updated addresses using the National Change of Address Database ("NCOA"), which is maintained by the U.S. Postal Services and updates addresses for all people

who had moved during the previous four years and file a change of address with the USPS. *See Intrepido-Bowden Declaration* at ¶ 27. In addition, Plaintiff has asked Sprint to provide any updated address information it may have for the accounts at issue, but Sprint has refused to do so stating that "we do not think it is appropriate to continue to burden Sprint in this case." Plaintiff believes the notice plan is sufficient using the NCOA alone, but any updated address information from Sprint may also be useful. KCC is prepared to use any updated address information from Sprint in addition to the NCOA data should the Court choose to order Sprint's production of any updated addresses. *Id.* Further, as explained below, Plaintiff's Notice Plan will utilize a reverse directory search for additional names and addresses for the small percentage of class members that are not adequately identified in Sprint's records.

## B. Forms of Notice and Reverse Directory Searches

Plaintiff's notice plan includes four forms of Double Postcard Notice that are tailored to account for the most significant variations in the Sprint records. Form A will be sent to the names and addresses identified in Sprint's records (covering 81% of the class) and, where user information is identified (72% of the class), will be directed to the attention of the name of the phone *user* that Sprint identified in its records. *See Intrepido-Bowden Declaration* at ¶ 31. This form of notice, along with all others, informs the recipient that the notice is intended "for the user of the cellular telephone number xxx-xxx-xxx during March 2013" and identifies the complete telephone number at issue. *Id.* at exs. A-D thereto. Given that 88% percent of the class members were on Sprint accounts with 10 or fewer telephone lines, it is reasonable to expect that these notices will reach the class members directly. Nevertheless, in order to prevent any confusion by the recipient of the notice, this form of notice, along with all others, clearly explains that only the user of that number during March 2013 is the class member and that the notice describes "the class

members' rights and options." *Id.* Further, the notice instructs: "If you were not the user, please promptly send a copy of this notice to the user or provide the name and address of the user to the class administrator by emailing info@yahootcpaclass.com." *Id.* at ex. A thereto. A similar instruction exists for every other form of the Double Postcard Notice utilized in the notice plan.

The mailing of class notice directly to third parties who may have class member contact information, such as account holders in this case, is not only expressly approved by the 7th Circuit (*Mullins*, 795 F.3d at 665 "(courts may use alternative means such as notice through third parties[.]")), it is also routinely used by KCC in class notice efforts. *Intrepido-Bowden Declaration* at ¶ 28. This is particularly true in securities actions, where notice is commonly mailed to brokerage firms, banks, and other persons who hold shares of stock for the benefit of the class members. When KCC has delivered notice to those third parties in such actions, the notice makes a similar request that the third party forward the notice to class member, or instead provide the class members contact information to KCC. *Id.* at ex. I thereto. The use of such notices procedures here is the best notice practicable because even Sprint itself does not believe there are any other sources of information that would more reliably identify names and addresses of the class members. *See also Michels v. Phoenix Home Life Mut. Ins. Co.,* 1997 N.Y. Misc. LEXIS 171 *46-47 (N.Y. Sup. Ct. Jan. 3, 1997) (holding that due process was satisfied even though many notices were mailed to third parties instead of directly to the class members).

Form B will be sent to the additional names and addresses obtained through reverse directory searches for the cellular telephone numbers that Sprint's records identified as being serviced by a virtual network operator using Sprint's network (e.g. Virgin Mobile, Tracfone) in March of 2013. *Exhibit 2 - Sprint Dep. Tran.* at 137:3-8. As noted above, this is necessary for only 19% of the class. In order to prevent any confusion, the form of notice mailed for these

telephone numbers will advise that "even if your number was serviced by a company other than Sprint, (such as <<[resller name]>>), you may still be a class member if your number was assigned to the Sprint network." *Intrepido-Bowden Declaration* at ex. B thereto. The long form notice will also direct the notice recipients to a list of the Sprint resellers on the Settlement Website to check if their provider is covered. *Id.* at ex. F thereto.

The use of a reverse directory search for additional names and addresses for such records is common in TCPA actions. *Id.* at ¶ 25 (explaining that KCC has utilized reverse directory searches for notice in 70% of its TCPA administrations this year alone). Further, numerous courts have approved the use of reverse directory searched to provide notice to the class. *See Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *47 (N.D. Ill. 2016) (approving use of reverse look up search for addresses through Lexis Nexis); *Tucker v. Walgreen Co.*, 2007 U.S. Dist. LEXIS 74628, *13 (S.D. Ill. 2007) (approving use of "a database search for additional addresses" as part of notice plan); *Stemple v. QC Holdings, Inc.*, 2016 U.S. Dist. LEXIS 55011, *11 (S.D. Cal. 2016) (approving use of "a reverse telephone number look-up to determine the address information for class members for whom address information is not available"); *Ralston v. Mortgage Investors Group, Inc.*, 2013 U.S. Dist. LEXIS 134960, *8 (N.D. Cal. 2013) (approving use of an "third-party address search service" for as part of notice plan); *Russell v. United States*, 2013 U.S. Dist. LEXIS 109112, * 7 (N.D. Cal. 2013) (approving notice plan where administrator used "credit bureau listings" and "public records databases" to find addresses for notice); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779, *9 (W.D. Wash. 2015) (approving use of "reverse-lookup directories" to identify class members); *Bee, Denning v. Capital Alliance Group*, 310 F.R.D. 614, 622 (S.D. Cal. 2015) (approving "reverse look-up technology to identify persons").

In this case, the use of reverse directory searches for these numbers is the best practicable method of obtaining additional names and addresses under the circumstances as there is no other practicable source of information[2] and the amount at issue is small ($500, or up to $1500 if the Court finds the violation to be willful). *See Hughes*, 731 F.3d at 676. (the "reasonable effort" required by Rule 23(c)(2)(B) is "effort commensurate with the stakes."); *Mullins*, 795 F.3d at 665 ("[I]t is particularly important that the types of notice that courts require correspond to the value of the absent class members' interests." For "low-value claims like this one[,] . . . only a lunatic or a fanatic would litigate the claim individually, so opt-out rights are not likely to be exercised by anyone planning a separate individual lawsuit.")

Form C will be sent to the reseller virtual network service providers themselves, and will ask them to forward the notice to their customers or to provide the customer's name and address to KCC. *Intrepido-Bowden Declaration* at ¶ 33, ex. C thereto. Again, this type of notice and request sent to third parties who may have class member information is routinely used in class notice efforts, including in securities actions. *Id.* at ¶ 28. The Court should note that this notice will be sent *in addition to* the notice sent to the reverse directory search results for these numbers.

Form D will be sent for the small percentage of telephone numbers (2.49%) that were on an account with more than 10 lines where there is no user information. *Id.* at ¶ 34. For these numbers, Plaintiff's notice plan will utilize a reverse directory search for additional names and addresses. *Id.* Notice will be sent to those names and addresses obtained through the reverse directory search *in addition to* the Form A notice sent to the account holder identified in Sprint's

---

[2] Because there are nearly one hundred resellers identified in Sprint's data, and because it is unclear what additional information those resellers might be able to provide, Plaintiff submits that sending subpoenas to every single one of those resellers for additional information is not practicable given the circumstances of this case. *See Hughes*, 731 F.3d at 676; *Mullins*, 795 F.3d at 665.

records. *Id.* It is worth noting that, even for these accounts, it is perfectly reasonable to expect that the account holder will be able to identify the user of the telephone number at issue by reference to the telephone number identified in the notice because the vast majority of these account holders are businesses and government entities that likely have records identifying which employees it assigned particular phone numbers to. The use of reverse directory searches for these numbers is again the best practicable method of obtaining additional names and addresses under the circumstances as there is no other practicable source of mailing information for these numbers and the amount at issue is small.

## C. The Mailing Portion of the Notice Plan is Sufficient to Satisfy Notice Requirements even without Supplemental Publication

Plaintiff's notice expert estimates that "the individual mailing notice effort alone is anticipated to reach approximately 85.5% of Class Members." *Intrepido-Bowden Declaration* at ¶¶ 5, 41. Given that the Federal Judicial Center's guidelines provide that "a high percentage (e.g. between 70-95%) can often reasonably be reached by a notice campaign," the mailing effort alone would satisfy notice standards in this action. Judges Class Action Notice and Claims Process Checklist and Plain Language Guide (2010); *see also In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. at 603 (N.D. Ill. 2016) (finding estimated 70% to 95% to be reasonable based on Federal Judicial Center Guidelines); *Swift*, 2013 U.S. Dist. LEXIS 152618, *14 ("it is reasonable to reach between 70-95%.")

Given the high reach of the mailing plan, supplemental efforts to reach the class, such as through publication, quickly become impracticable because they provide diminishing returns:

> "Adding layers of notice are beneficial; however, at a certain point increasing the overall reach of the Notice Plan becomes more difficult due to overlapping audiences. The overlap results in an increase of frequency of exposure among the same individuals, as opposed to broadening reach among new individuals. Essentially, more money is spent to achieve a fractional increase in the overall reach."

13

*Intrepido-Bowden Declaration* at ¶ 41. Given the relatively low stakes of this case, extensive publication efforts are not practicable especially in light of the broad reach of the mailing plan. Plaintiff has nevertheless gone above and beyond what is required, by setting forth a notice plan that includes publication efforts via Facebook advertisements and press releases to media outlets nationwide. *Compare Hughes*, 731 F.3d 672 at 677 ("notice posted conspicuously in both bars in which Kore's ATMs were located may be the best way to reach the bars regulars").

## VI.   Supplemental Publication Efforts

Despite the sufficiency of mailed notice alone, Plaintiff nevertheless proposes to supplement the notice effort with two forms of publication. First, over a one month period, KCC will display advertisements via Facebook's Newsfeed that will appear on mobile devices of persons interested in either Sprint or any of the reseller services providers identified in Sprint's data production, but excluding persons with Yahoo! email addresses or with interests in Yahoo! mail. *Intrepido-Bowden Declaration* at ¶ 35. This is reasonably tailored to reach the class members given that their telephone numbers are not contained in Yahoo's records. KCC has utilized Facebook Newsfeed advertisements in order to extend the reach of notice in other class actions, and in this case estimates that 540,000 impressions will be made via this process. *Id.* Further, additional exposures may be achieved when individuals share, like, comment, ore repost the ad. *Id.* A sample of the Facebook advertisements proposed for use in this case is attached to the *Intrepido-Bowen Declaration* as Exhibit E.

Second, KCC will issue a press release (attached to Intrepido-Bowen Declaration as Exhibit G) to approximately 6,580 press outlets nationwide. *Id.* at ¶ 40. Given the media's extensive and national interest in Yahoo in recent months (due to the sale of the company and a massive privacy breach, among other things), the likelihood of press coverage is higher than

normal in this case. *Id.* Indeed, the press has already shown an interest in this case in particular, as numerous articles were written when the Court certified the class. *See Exhibit 6 - Articles on Class Certification* (showing that news of the Court's certification order in this case was published in Reuters, the Wall Street Journal, the Washington Post, Fortune, Law360, Consumerist, Engadget, and TopClassActions.com, among other outlets).

The issuance of press releases in this action is therefore reasonably calculated to extend the reach of notice in this action. Indeed, numerous courts have approved the use of press releases as part of a notice plan. *See e.g., In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 2016 U.S. Dist. LEXIS 24962, *15 (E.D. Wisc. 2016) (approving notice plan where "settlement administrator will distribute a national press release announcing the settlement to thousands of newspapers, television stations, radio stations, magazines, and websites. The press release will direct class members to a website containing information about the case, the settlement, and the procedures for class members to object to the settlement and/or the plaintiffs' requests for attorneys' fees and incentive awards."); *Alberton v. Commonwealth Land Title Ins. Co.*, 2010 U.S. Dist. LEXIS 25476, *8-10 (E.D. Penn. 2010) (approving notice plan where only 2/3 of class sent direct notice and the only remaining notice procedures was the issuance of press releases to local media).

## VII.   Conclusion

The notice plan outlined above is expected to reach 85.5% of the Class Members and is the best notice practicable under the circumstances.

WHEREFORE, Plaintiff respectfully requests that the Court approve the notice plan herein and direct notice be delivered to the class.

Respectfully submitted,

By: /s/ Timothy J. Sostrin

15

Keith J. Keogh
Timothy Sostrin
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (office)
312.726.1093 (fax)
TSostrin@KeoghLaw.com

*Attorneys for Plaintiff Rachel Johnson and the Class*

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br>   v.<br><br>YAHOO!, INC.,<br><br>       Defendant. | Case No. 14-CV-2028<br><br>**DECLARATION OF GINA M. INTREPIDO-BOWDEN ON CLASS CERTIFICATION NOTICE PLAN** |

I, Gina M. Intrepido-Bowden, declare as follows:

1. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct. I am a Vice President of Legal Notification Services at Kurtzman Carson Consultants, LLC ("KCC"). KCC is an experienced national class action notice provider and class administrator with experience in administering class action settlements. KCC's services include settlement fund escrow and reporting, class member data management, legal notification, call center support, and claims administration.

2. I specialize in the design and implementation of class action legal notification campaigns, supported by evidence-based reach calculations relating to the adequacy of notice distribution to members of the class. I work with Carla A. Peak, also a Vice President of Legal Notification Services at KCC, who specializes in the design and implementation of plain language legal notice documents. Together, we ensure that class members are adequately reached with notices that capture their attention and are easily understood. Ms. Peak and I have been involved in many of the largest and most complex class action notice programs, including all aspects of notice dissemination.

3.     This declaration will describe our experience, as well as the notice program (the "Notice Plan" or "Notice Program") that KCC will implement for this case.

## OVERVIEW

4.     KCC was retained by Plaintiff's Counsel to serve as the Notice Administrator to, among other tasks, assess and update the class notice list using reverse lookups, mail the Double Postcard Notice, launch a media campaign on Facebook to enhance the direct notice effort, issue a press release to media outlets nationwide, make the Full Notice and other documents available to Class Members on a notice website, receive and process requests for exclusion, as well as other Class Member inquiries, and to establish and maintain the notice website and perform other duties as necessary to effectuate notice to Class Members.

5.     The Notice Program is expected to reach approximately 85.5% of Class Members via the individual mailed notice efforts alone.[1] This reach will be further enhanced by a Facebook media effort, as well as the distribution of an informational release.

6.     The reach of the Notice Program is consistent with other effective court-approved notice programs, and is designed to meet due process requirements. The Federal Judicial Center's (FJC) *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (the FJC Checklist) considers 70-95% reach among class members to be a "high percentage" and reasonable.

7.     We have worked with Plaintiff's Counsel to develop various forms of notice for Court approval. All forms of notice have been designed to be noticeable, clear and concise, and written in plain, easily understood language. Draft forms of Notice are attached as **Exhibits A-G**.

## EXPERIENCE RELEVANT TO THIS CASE

8.     Our c.v.,[2] attached as **Exhibit H**, identifies over a hundred cases Ms. Peak and I have been involved with, including the dissemination of notice around the globe in more than 35

---

[1] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once.

[2] Includes work performed by Ms. Peak and myself while employed at other firms.

languages. It contains numerous judicial comments citing cases we have worked on, as well as articles we have written and speaking engagements where we have discussed the adequacy and design of legal notice efforts.

9.       Ms. Peak and I have been involved in many of the largest and most significant cases, including *Shames v. The Hertz Corporation*, No. 3:07-cv-02174 (S.D. Cal.), a national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies; *In Re Uponor, Inc.*, F1807 Plumbing Fittings Products Liability Litigation, No. 11-MD-2247 (D. Minn.), a national products liability settlement providing reimbursement, repair, and replacement of affected plumbing components; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), a class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement; *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.), one of the largest U.S. and Canadian retail consumer security breach notice programs; *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 (W.D. Wash.), *Donnelly v. United Technologies Corp.* No. 06-CV-320045CP (Ont. S.C.J.) and *Wener v. United Technologies Corp.* 500-06-000425-088 (QC. Super. Ct.), product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

10.      As noted in our c.v., we have written numerous articles, as well as presented about notice and due process. We believe notice and due process depend upon clear communication with the people affected. Our articles include: Carla Peak and Steven Weisbrot, *How to Design Your Notice to Minimize Professional Objectors*, CLASS ACTION LAWSUIT DEFENSE: CLASS ACTION DEFENSE NEWS, Developments and Commentary provided by BAKERHOSTETLER

(www.classactionlawsuitdefense.com) (2012); Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011); John B. Isbister, Todd B. Hilsee, & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008); Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (June 2006); Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005); and Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359 (Fall 2005).

11.    Our speaking engagements regarding notice include: *Class Action Notice Requirements: Leveraging Traditional and Emerging Media to Reach Class Members*, STRAFFORD, Carla Peak presenter/panelist (April 2016); *Ethics in Legal Notification*, accredited CLE Program, presented by Gina Intrepido-Bowden in Radnor at Kessler Topaz Meltzer & Check LLP (September 2015), Carla Peak & Patrick Ivie in Philadelphia at Class Action Preservation Project (November 2014), Carla Peak & Robert DeWitte in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014), Gina Intrepido-Bowden and Patrick Ivie at the St. Regis Deer Valley Resort in Utah (March 2014), Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot at Morgan Lewis & Bockius in New York (December 2012); *Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014); *The Ethics of Class Action Settlements*, CHICAGO BAR ASSOCIATION, Class Action Committee, Carla Peak presenter (June 2014); *Pitfalls of Class Action Notice and Settlement Administration*, accredited CLE Program, presented by Carla Peak and Robert DeWitte at Harke Clasby & Bushman LLP in Miami (March 2014), Gina Intrepido-Bowden and Robert DeWitte

presenters/panelists, PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013 (July 2013); *The Fundamentals of Settlement Administration*, accredited CLE Program, presented by Carla Peak and Steven Weisbrot at DLA Piper LLP in Philadelphia (August 2013), Carla Peak and Robert DeWitte at Locke Lord LLP in Chicago and broadcast to offices in California, Georgia, New York, Texas and London (April 2013), Gina Intrepido-Bowden and Robert DeWitte at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP in Chicago (January 2013), Gina Intrepido-Bowden and Robert DeWitte at Hinshaw & Culbertson LLP in Chicago (October 2012), and Gina Intrepido-Bowden and Rob Taylor-Manning at Spector Roseman Kodroff & Willis, P.C. in Philadelphia (December 2011); *Designing a Settlement and Notice Program to Minimize Scrutiny and Objections*, Gina Intrepido-Bowden presenter/panelist, AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation (July 2013); *Class Action Settlement Administration Tips & Pitfalls on the Path to Approval*, accredited CLE program, presented by Carla Peak, Gina Intrepido-Bowden & Robert DeWitte at Jenner & Block in Chicago and broadcast to offices in Washington DC, New York and Los Angeles (October 2012); *Perspectives from Class Action Claims Administrators: Innovations in Notification*, Gina Intrepido-Bowden, presenter/panelist, CLE INTERNATIONAL, 8th Annual Class Actions Conference (May 2012); *Innovations in Notification*, Carla Peak, presenter, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar (May 2012); *Ethical Considerations in Canadian Class Actions*, accredited CLE Program, presented by Gina Intrepido-Bowden and Robert Taylor-Manning at Rochon Genova, LLP in Toronto (April 2012); *Reaching Class Members & Driving Take Rates*, Gina Intrepido-Bowden, presenter/panelist, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium (October 2011); *Legal Notice Ethics*, accredited CLE Program, presented by Gina Intrepido-Bowden, Carla Peak, and Elizabeth Grande at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne in Minneapolis (January 2011), at Berger & Montague, P.C., Anapol Schwartz, Lundy Law and Dechert LLP, in Philadelphia, and broadcast to Dechert offices in California, New Jersey,

New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010); *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, CLE Program, presented by Brian Christensen, Gina Intrepido, and Richard Simmons, to the KANSAS BAR ASSOCIATION (March 2009).

12.     We have been recognized by courts for our opinion as to which method of notification is appropriate for a given case and whether a certain method of notice represents the best notice practicable under the circumstances; for example:

a.     Honorable Lynn Adelman, *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd*. (Indirect Purchaser–Jui Li Settlement), (July 7, 2016) No. 2:09-CV-00852 (E.D. Wis.):

> *The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 1–3, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

b.     Judge Marco A. Hernandez, *Kearney v. Equilon Enterprises LLC*, (June 6, 2016) No. 3:14-cv-00254 (D. Ore.):

> *The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in paragraphs 35-42 of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina Intrepido-Bowen: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other*

> *applicable law. The Court further finds that the Parties' plan for providing Notice to the Settlement Classes, as described in paragraphs 35-42 of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina Intrepido-Bowen, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as not to be bound by the Settlement Agreement.*

    c.      Honorable Sara I. Ellis, *Thomas v. Lennox Industries Inc*., (July 9, 2015)

No. 1:13-CV-07747 (N.D. Ill.):

> *The Court approves the form and content of the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the Settlement Agreement. The Court finds that the Notice Plan, included in the Settlement Agreement and the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notice Documents, constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under the United States Constitution.*

13.     Additional court comments referencing our work are included in our c.v.

14.     In forming my opinions, I draw from my in-depth class action case experience, as well as my educational and related work experiences. I graduated *summa cum laude* with a B.A. in Advertising from Penn State University and received formal media training at one of New York's largest advertising agency media departments, BBDO. At BBDO I devised sophisticated, multi-million dollar media campaigns for large consumer clients such as Gillette, HBO, DuPont, and GE. I have applied my experience to the legal notification field for more than a decade.

15.     Ms. Peak worked with Plaintiff's Counsel to draft the notice documents in this case to be noticeable, concise, and well understood. With over a decade of industry experience, she has an extensive knowledge of drafting and developing class action notice documents. She also has extensive experience managing all aspects of notice dissemination, including in numerous countries and languages around the world.

DECLARATION OF GINA M. INTREPIDO-BOWDEN
ON CLASS CERTIFICATION NOTICE PLAN

7

16.    In addition to the personal experience provided above, KCC has administered or is currently administering numerous TCPA settlements, and is fully versed in the wide range of administrative issues that can arise in these matters. A selection of KCC's TCPA settlement administrations include: *In Re Midland Credit Management, Inc. TCPA Litigation*, No. 11-md-2286 (S.D. Cal.); *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.); *Steinfeld v. Discover Financial Services*, No. 12-cv-01118 (N.D. Cal.); *Adams v. AllianceOne Receivables Management, Inc.*, No. 08-cv-00248 (S.D. Cal.); *Couser v. Comenity Bank*, No. 12-cv-02484 (N.D. Cal.); *Connor v. JPMorgan*, No. 10-cv-01284 (S.D. Cal.); *Allen v. JPMorgan Chase Bank*, No. 13-cv-08285 (N.D. Ill.); *Newman v. AmeriCredit*, No. 11-cv-3041 (S.D. Cal.); *Guarisma v. Blue Cross Blue Shield of Florida*, No. 13-cv-21016-FAM (S.D. Fla.); *Hetherington v. Omaha Steaks*, No. 13-cv-2152 (D. Ore.); *Lees v. Anthem Ins. Cos., Inc.*, No. 13-cv-01411 (E.D. Mo.); *Charvat v. AEP Energy,* No. 14-cv-3121 (N.D. Ill.); *Abdeljalil v. GE Capital Retail Bank*, No. 12-cv-02078-JAH-MDD (S.D. Cal.); *Coffman v. Glide Talk, Ltd.*, No. 13-cv-05190 (N.D. Ill.); *Luster v. Duncan Solutions*, No. 14-cv-00112 (N.D. Ga.); *Sherman v. Kaiser Foundation Health Plan, Inc.*, No. 13-cv-00981 (S.D. Cal.); *Martin v. Global Marketing Research Services, Inc.*, No. 14-cv-1290 (M.D. Fla); *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.); *In re Life Time Fitness*, MDL No. 2564 (D. Minn.); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.); *Cummings v. Sallie Mae, Inc.*, No. 12-cv-9984 (N.D. Ill.); *Prater v. Medicredit, Inc.*, No. 14-cv-00159 (E.D. Mo.); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 (N.D. Cal.); *Wannemacher v. Carrington Mortgage Servs.*, No. 12-cv-02016 (C.D. Cal); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462 (N.D. Ill.); *Animal Medical Center of Orland Park v. JP Morgan Chase & Co.*, 14-cv-01251 (N.D. Ill.); and *Hageman v. AT&T Mobility LLC*, 13-cv-50 (D. Mont.).

## <u>NOTICE PLAN SUMMARY</u>

### *Class Definition*

17.    The Class is defined as, "All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1,

2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records. On May 20th, 2016, the Court ordered that the definition of the Certified Class is clarified to specify that the term "persons" is limited to the users of the cellular telephone numbers further described in the class definition.

### *Data Preparation*

18.  On August 9, 2016, KCC received from Plaintiff's Counsel a computerized list of 332,921 records, characterized as the list of phone numbers, mailing information (mailing name and address), and user information for to potential members of the Class, the "Notice List". The 332,921 records on the Notice List comprise 321,107 unique telephone numbers. Included in this list are 87,884 telephone numbers where no mailing or user information was provided. KCC has been informed by Class Counsel that Sprint confirmed during its deposition that telephone numbers with no mailing/user information means that there was no active customer account for those telephone numbers in March 2013. KCC therefore removed the 87,884 telephone numbers from the Notice List.

19.  KCC de-duplicated the Notice List to ensure, as best as possible, that each unique telephone number appears on the list a single time. Where duplicate telephone numbers appeared on the Notice List with matching mailing and user information, the duplicate telephone numbers were removed. Where duplicate telephone numbers appeared on the Notice List with unique mailing and user information, the duplicate telephone numbers were retained. There are 425 duplicate records which comprise 212 unique telephone numbers retained in the Notice List. After the de-duplication, the Notice List contains 233,436 records which comprise 233,223 unique telephone numbers. Of the 233,436 records on the Notice List, 188,426 (80.7% of the Notice List) have a Mailing Name and address for the account holder. Of the 233,436 records on the Notice List, 106,753 (45.73% of the Notice List) have a Mailing Name and a User Name which are identical.

20.     Of the 233,436 records on the Notice List, 167,672 (71.83% of the Notice List) contain apparent valid user information, and 65,764 (28.17% of the Notice List) do not. Additionally, of the records on the Notice List, 38,274 (16.4% of the Notice List) contain a single Personal Telephone Number ("PTN"), 194,743 (83.42% of the Notice List) are group accounts which contain five or less PTNs, 205,358 (87.97% of the Notice List) are group accounts which contain ten or less PTNs, and 18,914 (8.1% of the Notice List) are group accounts which contain more than 100 PTNs.

21.     Of the 233,436 records on the Notice List, 45,010 (19.28% of the Notice List) provide contact information for a whole sale service provider rather than for any account holder or user of the phone. These 45,010 records are referred to as the "Reverse Look Up List #1" and will require additional searches to obtain names and/or addresses for mailing of the Double Postcard Notice. The remaining records on the Notice List are the "Non-Wholesale List".

22.     Of the 188,426 records on the Non-Wholesale List, 167,668 (71.83% of the Notice List) contain user information, and 20,758 (8.89% of the Notice List) do not contain user information. The 167,668 records with user information are referred to as "Mailing List #1", and the remaining 20,758 records on the Non-Wholesale List are the "No User Data List".

23.     Of the 20,758 records on the No User Data List, 14,945 (6.4% of the Notice List) are single or group accounts which contain ten or less PTNs. These are referred to as "Mailing List #2". The remaining 5,813 (2.49% of the Notice List) records on the No User Data List are group accounts which contain more than ten PTNs and are referred to as "Reverse Look Up List #2". Of the 14,945 records on Mailing List #2, 4,380 (1.88% of the Notice List) contain a single PTN, 4,421 (1.89% of the Notice List) are referred to as "individual liable corporate" or "individual liable government" account types, with a total of 7,902 (3.39% of the Notice List) records which fall into either of these two categories.

24.    To obtain mailing information for Reverse Lookup List #1 and Reverse Lookup List #2, KCC will perform a reverse directory search using the phone numbers provided on the Notice List.

25.    KCC routinely performs reverse directory searches and lookups; this process has been used in at least 12 KCC administrations of TCPA matters this year, which is nearly 70% of KCC's 2016 TCPA administrations, and has been relied upon by KCC for a number of administrations in past years for the purpose of notice. KCC will facilitate multiple vendor reverse look-ups, through Pacific East, Lexis Nexis and Nexxa, to identify names and addresses associated with phone numbers during the Class Period of March 1, 2013 – March 31, 2013.

26.    Where the initial search does not return a result, KCC may use both a secondary and tertiary reverse directory data vendor to increase the number of search results.

27.    Upon completion of the above-referenced searches, KCC will update the Notice List with the information obtained and will de-duplicate and review the entire Notice List to ensure a single Double Postcard Notice is mailed, except as discussed below, per unique phone number to, as best as can be determined, the actual user of the phone (based on the updated information on the Notice List). Addresses on the final Notice List will be updated using the National Change of Address database ("NCOA") and/or with updated addresses from Sprint if so ordered by the Court prior to mailing. The NCOA database is maintained by the U.S. Postal Service (USPS) and updates addresses for all people who had moved during the previous four years and filed a change of address with the USPS.

28.    Where the Notice List provides contact information for third parties, such as employers who provided cellular telephones for employees, KCC will mail a specialized notice with a request that this third party either deliver the notice to the Class Member, or provide KCC with contact information that we may mail notice directly to the Class Member. KCC routinely uses this process of sending notice to third parties, such as custodians of Class Member contact

information to further extend the overall reach. Samples of such notifications are attached as **Exhibit I.**

*Notice Mailing*

29.     KCC will mail the Double Postcard Notice to all records on the Notice List with complete mailing addresses. Where a Double Postcard Notice is returned by the USPS as undeliverable, KCC will conduct further address searches using credit and other public source databases to attempt to locate new addresses, and will re-mail these Double Postcard Notices where possible.

30.     KCC will mail four distinct versions of the Double Postcard Notice to account for circumstantial variations in the Notice List. The versions of the Double Postcard Notice are attached as Exhibits A – D.

31.     Exhibit A is the form of Double Postcard Notice that KCC will send to the billing name and mailing addresses shown in the Notice List. If Sprint provided an additional user name in the Notice List, as discussed in paragraph 19 above, the Notice will advise of it. This form of the Double Postcard Notice will be mailed to the records on Mailing List #1.

32.     Exhibit B is the form of Double Postcard Notice that KCC will send to the names and addresses obtained via a reverse directory search for the 45,010 telephone numbers on the Reverse Look Up List #1, which provide contact information for wholesale service providers rather than for any account holders or users of the phone.

33.     Exhibit C is the form of Double Postcard Notice that KCC will send directly to wholesale service providers identified in the Notice List (Mailing List #2), which asks those service providers to forward the Double Postcard Notice to the users of the cellular telephone numbers at issue in March 2013.

34.     Exhibit D is the form of Double Postcard Notice that KCC will send to the names and addresses obtained via a reverse directory search for the 5,830 telephone numbers on Reverse

Look Up List #2, which both do not contain user information and are group accounts which contain more than ten PTNs.

### *Facebook Campaign*

35.     To extend reach to Class Members who likely will not receive the Notice Mailing, image/text ads with a link to the case website will appear on mobile devices through Facebook newsfeed. Facebook newsfeed is often used in notice programs to extend reach to class members An estimated 540,000 impressions targeting adults interested in Sprint or any of the wholesale service providers identified in the Notice List and excluding those with Yahoo! email addresses or with interests in Yahoo! Mail will appear over a one-month period. Additional notice exposures can be achieved when individuals share, like, comment or repost the Facebook ad. A sample copy of Facebook ad is attached hereto as **Exhibit E**.

### *Response Mechanisms*

36.     On or before the date of the notice mailing, KCC will establish a website, toll-free telephone number, and email address dedicated to this matter.

37.     The website will provide visitors with the opportunity to view and download relevant Court Documents, including the Full Notice, review a list of frequently asked questions and answers, and obtain contact information for the Notice Administrator. The website address will be prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the Facebook image/text ad notices. A copy of the Full Notice is attached hereto as **Exhibit F**.

38.     The toll-free number will allow callers to listen to answers to frequently asked questions and/or request that a copy of the Notice be mailed to them. The toll-free number will be prominently displayed in all printed notice materials.

39.     The email address will allow notice recipients to email KCC to request more information. The email address will be included in all printed notice materials.

*Informational Release*

40.     An informational press release will be issued to approximately 6,580 press outlets nationwide. The release will include the toll-free number and website address so that Class Members may easily obtain more information about the litigation. Several factors contribute to whether or not a press release is picked up by press outlets, including, but not limited to timing, relevance, and interest.  Although we are not able to speculate on the number of press outlets that would report the story, or be able to apply a reach percentage or circulation statistics for them, the press release will provide a valuable role in distributing information in a cost-effective manner. Given that the defendant, is a well-known company, and numerous articles have already appeared about this litigation, the likelihood of press coverage is higher than normal. A copy of the informational press release is attached hereto as **Exhibit G.**

*Reach*

41.     The individual mailing notice effort alone is anticipated to reach approximately 85.5% of Class Members. This reach will be further enhanced by the Facebook campaign, as well as the distribution of the informational release. Without a complete and accurate Notice List, reaching the entire Class in not possible. Adding layers of notice are beneficial; however, at a certain point increasing the overall reach of the Notice Plan becomes more difficult due to overlapping audiences. The overlap results in an increase of frequency of exposure among the same individuals, as opposed to broadening reach among new individuals. Essentially, more money is spent to achieve a fractional increase in the overall reach.

*Notice Design*

42.     The Notices have been designed to be "noticed" and understood by Class Members. They contain easy-to-read summaries of all of the key information affecting Class Members' rights and options. All information required by Federal Rule of Civil Procedure 23, as well as the *Manual for Complex Litigation, Fourth*, has been incorporated into the notice documents. Many

courts, as well as the FJC, have approved notices that have been written and designed in a similar fashion.

## CONCLUSION

43.     The Notice Plan will effectively reach the Class and will deliver "noticeable" Notices to capture Class Members' attention and provide them with information necessary to understand their rights and options.

44.     In my opinion, the Notice Plan is consistent with other effective class action notice programs. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane*. It provides the same reach and frequency evidence that Courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review. The Notice Plan is also consistent with the 70-95% "high percentage" reach guideline set forth in the FJC's Checklist.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of October, 2016.

_____
Gina M. Intrepido-Bowden

*© 2016 KCC LLC*

DECLARATION OF GINA M. INTREPIDO-BOWDEN
ON CLASS CERTIFICATION NOTICE PLAN
15

# Exhibit A

Front

<u>Legal Notice</u>

**If you received a "Welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!**

**Please see inside for important details.**

**1-866-726-1092**
**www.YahooTCPAClass.com**
**info@yahootcpaclass.com**

*Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web:*
*www.YahooTCPAClass.com*

**YHJ**

---

**Yahoo Text Message Class Action**
**Notice Administrator**
c/o KCC Class Action Services
PO Box 30227
College Station, TX 77842-3227

**2D**

« |||▯▯▯▯▯▯▯»
Postal Service: Please do not mark barcode

YHJ- <<Claim7>>-<<CkDig>>

<<FName>> <<LName>>
**<<ATTN: <User Name Identified by Sprint>>**
          **[Or, if no user name, then]**
**<<ATTN: User of the cellular telephone number ending**
**in <<last 4>> during March 2013>>**
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

---

Inside 1

**Legal Notice of Class Action Lawsuit against Yahoo**

**This notice is intended for the user of the cellular telephone number <<Complete Number>> during March 2013. You may be a member of a class action lawsuit against Yahoo.** The lawsuit alleges that Yahoo violated the Telephone Consumer Protection Act ("TCPA") by using an automatic dialing system to text the following "Welcome" text message to cellphone users:

"A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

The lawsuit is known as *Johnson v. Yahoo!, Inc.*, case number 14-cv-2028, and is currently pending in the U.S. District Court for the Northern District of Illinois, Eastern Division. The plaintiff claims that Yahoo must pay a minimum of $500 per text sent without consent of the called party.

Yahoo denies any wrongdoing. Yahoo says that the "Welcome" text messages did not violate the TCPA, it did not use an automatic telephone dialing system, and that some of the potential class members provided consent to receive the message. The Court has not yet ruled on who is right and who is wrong.

*Special Instructions for Sprint Account Holders:*

You are receiving this notice because Sprint's records show you were the account holder for cellular telephone number <<**Complete Number**>> in March of 2013. As the account holder, you may have been the user, or **the user may have been on your cellular telephone plan. <<Sprint's records indicate a user identified as <name>>>.** If you were not the user, please promptly send a copy of this notice to the user or provide the name and address of the user to the class administrator by emailing info@yahootcpaclass.com.

**Please read the back of this Notice carefully as it explains the class member's rights.**
**For more information, visit <u>www.YahooTCPAClass.com</u>.**

**Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com.**

Inside 2

**Who is a class member?**

The Court certified the following class:

"All persons within the United States to whose cellular telephone number Yahoo! sent the "Welcome" text message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records."

To be a class member, you must have been the user of the cellular number that was sent the "Welcome" text message during March 2013. The instructions below describe the class member's rights and options.

**What are my options?**

| DO NOTHING to stay in the class | By doing nothing, you will remain a member of the class. If the Court rules against Yahoo, you may be entitled to payment. If the Court rules for Yahoo, you will receive nothing. Either way, you will be bound by any judgment and may lose your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. The attorneys for the Plaintiff also represent the class, but if you want to be represented by your own lawyer, you may hire one at your expense. |
|---|---|
| EXCLUDE YOURSELF FROM THE CLASS by following the instructions below | If you exclude yourself from the class you will not receive any benefit from a resolution of this case, but you <u>not</u> will be bound by any judgment and will keep your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. |

**How do I exclude myself?**

If you do not want to remain a member of the class, you may exclude yourself by mailing a **written request** to the attorneys representing the class at **Yahoo Text Message Class Action Notice Administrator**, c/o KCC Class Action Services, PO Box 30227, College Station, TX 77842-3227. Your written request for exclusion **must be postmarked** by <**60 days from mailing date**> and include your name, address, phone number, and signature, as well as a statement indicating that you want to be excluded from the Class in *Johnson v. Yahoo!, Inc.*, 14-cv-2028. If you exclude yourself, you will not receive anything resulting from this case, but you will keep the right to sue Yahoo over the claims raised in this case.

**How do I get further information?**

Please visit www.YahooTCPAClass.com for more information, including a more detailed explanation of your rights, important updates, and important documents filed in the case. You may also email the Yahoo Text Message Class Action Notice Administrator at info@yahootcpaclass.com for more information. You can also call Keogh Law, Ltd. (the law firm representing the class) toll free at (866) 726-1092 if you still have any questions. Before doing so, please read this full notice carefully.

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

Back

IMPORTANT CLASS ACTION NOTICE. PLEASE OPEN TO REVIEW IMPORTANT LEGAL INFORMATION ABOUT YOUR RIGHTS IN A LAWSUIT AGAINST YAHOO!

# Exhibit B

Front

<u>Legal Notice</u>

**If you received a "Welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!**

**Please see inside for important details.**

**1-866-726-1092**
**www.YahooTCPAClass.com**
**info@yahootcpaclass.com**

*Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com*

**YHJ**

**Yahoo Text Message Class Action**
**Notice Administrator**
c/o KCC Class Action Services
PO Box 30227
College Station, TX 77842-3227

**2D**

« ||||▯▯▯▯▯▯▯»
Postal Service: Please do not mark barcode

YHJ- <<Claim7>>-<<CkDig>>

<<FName>> <<LName>>
**<<ATTN: User of the cellular telephone number ending in <<last 4>> during March 2013>>**
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

Inside 1

**Legal Notice of Class Action Lawsuit against Yahoo**

**This notice is intended for the user of the cellular telephone number ending in <<Complete Number>> during March 2013. You may be a member of a class action lawsuit against Yahoo.** The lawsuit alleges that Yahoo violated the Telephone Consumer Protection Act ("TCPA") by using an automatic dialing system to text the following "Welcome" text message to cellphone users:
"A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

The lawsuit is known as *Johnson v. Yahoo!, Inc.*, case number 14-cv-2028, and is currently pending in the U.S. District Court for the Northern District of Illinois, Eastern Division. The plaintiff claims that Yahoo must pay a minimum of $500 per text sent without consent of the called party.

Yahoo denies any wrongdoing. Yahoo says that the "Welcome" text messages did not violate the TCPA, it did not use an automatic telephone dialing system, and that some of the potential class members provided consent to receive the message. The Court has not yet ruled on who is right and who is wrong.

***Special Instructions for Cellular Account Holders***:

If you were a Cellular Telephone Account Holder in March 2013, **the user of the cellular telephone number <<Complete Number>> may have been on your cellular telephone plan.** If you were not the user, please promptly send a copy of this notice to the user or provide the name and address of the user to the class administrator by emailing info@yahootcpaclass.com.

**Please read the back of this Notice carefully as it explains the class member's rights.**

**For more information, visit www.YahooTCPAClass.com.**

**Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com**

## Inside 2

**Who is a class member?**

The Court certified the following class: "All persons within the United States to whose cellular telephone number Yahoo! sent the "Welcome" text message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records." To be a class member, you must have been the user of the cellular number that was sent the "Welcome" text message during March 2013. **Please note: even if your number was serviced by a company other than Sprint, (such as <<____>>), you may still be a class member** if your number was assigned to the Sprint network. The instructions below describe the class member's rights and options.

**What are my options?**

| **DO NOTHING to stay in the class** | By doing nothing, you will remain a member of the class. If the Court rules against Yahoo, you may be entitled to payment. If the Court rules for Yahoo, you will receive nothing. Either way, you will be bound by any judgment and may lose your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. The attorneys for the Plaintiff also represent the class, but if you want to be represented by your own lawyer, you may hire one at your expense. |
|---|---|
| **EXCLUDE YOURSELF FROM THE CLASS by following the instructions below** | If you exclude yourself from the class you will not receive any benefit from a resolution of this case, but you <u>not</u> will be bound by any judgment and will keep your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. |

**How do I exclude myself?**

If you do not want to remain a member of the class, you may exclude yourself by mailing a **written request** to the attorneys representing the class at **Yahoo Text Message Class Action Notice Administrator**, c/o KCC Class Action Services, PO Box 30227, College Station, TX 77842-3227. Your written request for exclusion **must be postmarked** by <**60 days from mailing date**> and include your name, address, phone number, and signature, as well as a statement indicating that you want to be excluded from the Class in *Johnson v. Yahoo!, Inc*., 14-cv-2028. If you exclude yourself, you will not receive anything resulting from this case, but you will not lose the right to sue Yahoo over the claims raised in this case.

**How do I get further information?**

Please visit www.YahooTCPAClass.com for more information, including a more detailed explanation of your rights, important updates, and important documents filed in the case. You may also email the Yahoo Text Message Class Action Notice Administrator at info@yahootcpaclass.com for more information. You can also call Keogh Law, Ltd. (the law firm representing the class) toll free at (866) 726-1092 if you still have any questions. Before doing so, please read this full notice carefully.

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

## Back

IMPORTANT CLASS ACTION NOTICE. PLEASE OPEN TO
REVIEW IMPORTANT LEGAL INFORMATION ABOUT
YOUR RIGHTS IN A LAWSUIT AGAINST YAHOO!

# Exhibit C

Front

<u>Legal Notice</u>

**If you received a "Welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!**

**Please see inside for important details.**

**1-866-726-1092**
**www.YahooTCPAClass.com**
**info@yahootcpaclass.com**

*Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com*

**YHJ**

**Yahoo Text Message Class Action Notice Administrator**
c/o KCC Class Action Services
PO Box 30227
College Station, TX 77842-3227

2D

« |||⬜⬜⬜⬜⬜⬜»
Postal Service: Please do not mark barcode

YHJ- <<Claim7>>-<<CkDig>>

<<FName>> <<LName>>
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

Inside 1

**Legal Notice of Class Action Lawsuit against Yahoo**

**This notice is intended for the user of the cellular telephone number <<<u>Complete Number</u>>> during March 2013. You may be a member of a class action lawsuit against Yahoo.** The lawsuit alleges that Yahoo violated the Telephone Consumer Protection Act ("TCPA") by using an automatic dialing system to text the following "Welcome" text message to cellphone users:

"A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

The lawsuit is known as Johnson v. Yahoo!, Inc., case number 14-cv-2028, and is currently pending in the U.S. District Court for the Northern District of Illinois, Eastern Division. The plaintiff claims that Yahoo must pay a minimum of $500 per text sent without consent of the called party.

Yahoo denies any wrongdoing. Yahoo says that the "Welcome" text messages did not violate the TCPA, it did not use an automatic telephone dialing system, and that some of the potential class members provided consent to receive the message. The Court has not yet ruled on who is right and who is wrong.

*<u>Special Instructions for Cellular Service Providers</u>*:
You are receiving this notice because **you may have serviced the cellular telephone number <<<u>Complete Number</u>>> during March 2013**. Please check your records and promptly send a copy of this notice to the user or provide the name and address of the user to the class administrator by emailing info@yahootcpaclass.com.

**Please read the back of this Notice carefully as it explains the class member's rights.**

**For more information, visit www.YahooTCPAClass.com.**

**Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com**

Inside 2

**Who is a class member?**

The Court certified the following class:

"All persons within the United States to whose cellular telephone number Yahoo! sent the "Welcome" text message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records."

To be a class member, you must have been the user of the cellular number that was sent the "Welcome" text message during March 2013. **Please note: even if your number was serviced by a company other than Sprint, (such as <<____>>), you may still be a class member** if your number was assigned to the Sprint network. The instructions below describe the class member's rights and options.

**What are my options?**

| DO NOTHING to stay in the class | By doing nothing, you will remain a member of the class. If the Court rules against Yahoo, you may be entitled to payment. If the Court rules for Yahoo, you will receive nothing. Either way, you will be bound by any judgment and may lose your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. The attorneys for the Plaintiff also represent the class, but if you want to be represented by your own lawyer, you may hire one at your expense. |
| --- | --- |
| EXCLUDE YOURSELF FROM THE CLASS by following the instructions below | If you exclude yourself from the class you will not receive any benefit from a resolution of this case, but you will not be bound by any judgment and will keep your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. |

**How do I exclude myself?**

If you do not want to remain a member of the class, you may exclude yourself by mailing a **written request** to the attorneys representing the class at **Yahoo Text Message Class Action Notice Administrator**, c/o KCC Class Action Services, PO Box 30227, College Station, TX 77842-3227. Your written request for exclusion **must be postmarked** by <**60 days from mailing date**> and include your name, address, phone number, and signature, as well as a statement indicating that you want to be excluded from the Class in *Johnson v. Yahoo!, Inc.*, 14-cv-2028. If you exclude yourself, you will not receive anything resulting from this case, but you will not lose the right to sue Yahoo over the claims raised in this case.

**How do I get further information?**

Please visit www.YahooTCPAClass.com for more information, including a more detailed explanation of your rights, important updates, and important documents filed in the case. You may also email the Yahoo Text Message Class Action Notice Administrator at info@yahootcpaclass.com for more information. You can also call Keogh Law, Ltd. (the law firm representing the class) toll free at (866) 726-1092 if you still have any questions. Before doing so, please read this full notice carefully.

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

Back

IMPORTANT CLASS ACTION NOTICE. PLEASE OPEN TO REVIEW IMPORTANT LEGAL INFORMATION ABOUT YOUR RIGHTS IN A LAWSUIT AGAINST YAHOO!

# Exhibit D

Front

Legal Notice

## If you received a "Welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!

### Please see inside for important details.

**1-866-726-1092**
**www.YahooTCPAClass.com**
**info@yahootcpaclass.com**

*Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com*

**YHJ**

**Yahoo Text Message Class Action**
**Notice Administrator**
c/o KCC Class Action Services
PO Box 30227
College Station, TX 77842-3227

**2D**

« |||⬜⬜⬜⬜⬜⬜»
Postal Service:  Please do not mark barcode

YHJ- <<Claim7>>-<<CkDig>>

<<FName>> <<LName>>
**<<ATTN:  User of the cellular telephone number ending in <<last 4>> during March 2013>>**
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

---

Inside 1

### Legal Notice of Class Action Lawsuit against Yahoo

**This notice is intended for the user of the cellular telephone number <<Complete Number>> during March 2013.  You may be a member of a class action lawsuit against Yahoo.** The lawsuit alleges that Yahoo violated the Telephone Consumer Protection Act ("TCPA") by using an automatic dialing system to text the following "Welcome" text message to cellphone users:

"A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

The lawsuit is known as *Johnson v. Yahoo!, Inc*., case number 14-cv-2028, and is currently pending in the U.S. District Court for the Northern District of Illinois, Eastern Division.  The plaintiff claims that Yahoo must pay a minimum of $500 per text sent without consent of the called party.

Yahoo denies any wrongdoing. Yahoo says that the "Welcome" text messages did not violate the TCPA, it did not use an automatic telephone dialing system, and that some of the potential class members provided consent to receive the message. The Court has not yet ruled on who is right and who is wrong.

### *Special Instructions for Sprint Account Holders*:

If you were a Sprint Account Holder in March 2013, **the user of the cellular telephone number <<Complete Number>> may have been on your Sprint plan**.  If you were not the user, please promptly send a copy of this notice to the user or provide the name and address of the user to the class administrator by emailing info@yahootcpaclass.com.

**Please read the back of this Notice carefully as it explains the class member's rights.**

**For more information, visit www.YahooTCPAClass.com.**

**Quiza tendra una causa en contra de Yahoo. Si requiere una versión de este anuncio en español, por favor visite la página de web: www.YahooTCPAClass.com**

Inside 2

**Who is a class member?**

The Court certified the following class:

"All persons within the United States to whose cellular telephone number Yahoo! sent the "Welcome" text message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records."

To be a class member, you must have been the user of the cellular number that was sent the "Welcome" text message during March 2013. The instructions below describe the class member's rights and options.

**What are my options?**

| | |
|---|---|
| **DO NOTHING to stay in the class** | By doing nothing, you will remain a member of the class. If the Court rules against Yahoo, you may be entitled to payment. If the Court rules for Yahoo, you will receive nothing. Either way, you will be bound by any judgment and may lose your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. The attorneys for the Plaintiff also represent the class, but if you want to be represented by your own lawyer, you may hire one at your expense. |
| **EXCLUDE YOURSELF FROM THE CLASS by following the instructions below** | If you exclude yourself from the class you will not receive any benefit from a resolution of this case, but you <u>not</u> will be bound by any judgment and will keep your right to file your own lawsuit against Yahoo regarding the "Welcome" text message. |

**How do I exclude myself?**

If you do not want to remain a member of the class, you may exclude yourself by mailing a **written request** to the attorneys representing the class at **Yahoo Text Message Class Action Notice Administrator**, c/o KCC Class Action Services, PO Box 30227, College Station, TX 77842-3227. Your written request for exclusion **must be postmarked** by <**60 days from mailing date**> and include your name, address, phone number, and signature, as well as a statement indicating that you want to be excluded from the Class in *Johnson v. Yahoo!, Inc*., 14-cv-2028. If you exclude yourself, you will not receive anything resulting from this case, but you will not lose the right to sue Yahoo over the claims raised in this case.

**How do I get further information?**

Please visit www.YahooTCPAClass.com for more information, including a more detailed explanation of your rights, important updates, and important documents filed in the case. You may also email the Yahoo Text Message Class Action Notice Administrator at info@yahootcpaclass.com for more information. You can also call Keogh Law, Ltd. (the law firm representing the class) toll free at (866) 726-1092 if you still have any questions. Before doing so, please read this full notice carefully.

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

Back

IMPORTANT CLASS ACTION NOTICE. PLEASE OPEN TO
REVIEW IMPORTANT LEGAL INFORMATION ABOUT
YOUR RIGHTS IN A LAWSUIT AGAINST YAHOO!

# Exhibit E

 **Yahoo TCPA Class Action**
Sponsored ·

If you received a "Welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!



**Yahoo TCPA Class Action**
You may be a member of a class ...
yahootcpaclass.com

Learn More

👍 Like    💬 Comment    ➤ Share

# Exhibit F

# If you received the following "welcome" text message from Yahoo! any time during March 2013, you may be a member of a class action lawsuit against Yahoo!

*"Welcome" text message: A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms.*

### A federal court authorized this notice. This is not a solicitation from a lawyer.

**You may be a member of a class action lawsuit against Yahoo.** The lawsuit alleges that Yahoo used an automatic telephone dialing system to text the above "Welcome" text message to cellphone users in violation of the Telephone Consumer Protection Act.

You are included in the lawsuit as a "Class Member" if you are a person within the United States who Yahoo! sent the "Welcome" text message any time during March 1, 2013 through March 31, 2013, while your cell phone number was assigned to Sprint, but not associated with a Yahoo! user in Yahoo!'s records. To be a Class Member, you must have been **the user** of the cell phone number that was sent the "Welcome" text message. If your number was serviced by a company other than Sprint, you may still be a Class Member if your number was assigned to the Sprint network. For a complete list of other services providers who might have provided your cellular telephone service, please see www.YahooTCPAClass.com.

This Notice explains your legal rights as a potential member of the class. Please read this Notice carefully.

| YOUR RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up certain rights.** |
| | By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement. But, you give up any rights to sue Yahoo separately about the "Welcome" text message claims made in this lawsuit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.** |
| | If you ask to be excluded and money or benefits are later awarded, you won't share in those. But, you keep any rights to sue Yahoo separately about the "Welcome" text message claims made in this lawsuit |

These rights and the deadlines to exercise them are explained more fully below.

## 1. What is this lawsuit against Yahoo about?

Plaintiff Rachel Johnson filed a class action lawsuit against Yahoo, Inc. in the United States District Court for the Northern District of Illinois. The case name is *Johnson v. Yahoo!, Inc.*, Inc. and the case number is 14-cv-2028.

The lawsuit alleges that Yahoo violated the Telephone Consumer Protection Act ("TCPA") by using an automatic telephone dialing system to send the "Welcome" text message to cellphone numbers without first obtaining consent to send the text message. The TCPA provides $500 per violation and up to $1,500 if the violation is willful (intentional).

The plaintiff claims that this text message violates the TCPA, which prohibits the use of an "automatic telephone dialing system" to send text messages without the "prior express consent" of the called party. Yahoo says that the "Welcome" text message did not violate the TPCA. Yahoo also denies using an "automatic telephone dialing system" and claims that some of the potential class members may have provided "prior express consent."

## 2. Why is this a class action?

The Court determined that a class action was appropriate after the plaintiff asked the Court to certify a class. In a class action, one or more people called Class Representatives (in this case, Rachel Johnson), sue on behalf of a group of people who all suffered the same injury and have the same legal claims. In this case, the plaintiff sued on behalf of a class of people (together called a "Class" or "Class Members") that received the same automated text message from Yahoo and argues that Yahoo violated the TCPA by sending the automated messages.

## 3. How do I know if I am a part of the Class?

The Court certified the following Class:

> "All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records."

To be a Class Member, you must have been the user of the cellular number that was sent the "Welcome" text message during March 2013.

If your number was serviced by a company other than Sprint, you may still be a Class Member if your number was assigned to the Sprint network. For a complete list of other services providers who might have provided your cellular telephone service, please see www.YahooTCPAClass.com.

***Special Instructions for Cellular Account Holders:*** If you were a cellular telephone account holder in March 2013, you are only a class member if you were the user of the number to which Yahoo sent the "Welcome" text message. The user may have been on your cellular telephone plan. Please forward this notice to all persons on your cellular telephone plan in March 2013.

## 4. Why am I receiving this notice?

You, or someone in your cellular telephone plan in March of 2013, were identified as a potential member of the class because Yahoo's business records show that it sent the "Welcome" text message to a number in your cellular telephone plan in March 2013.

## 5. What is the lawsuit trying to get from Yahoo?

The lawsuit seeks money for Class Members and attorneys' fees and costs. The TCPA provides $500 per violation (in this case, per "Welcome" text message) and up to $1,500 if the violation is willful.

## 6. Is there any money available now?

No money or benefits are available now because the Court has not yet decided whether Yahoo did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained. If they are, you will be notified about how to receive a share.

## 7. What are my options as a Class Member?

You must decide whether to stay in the Class or exclude yourself from it.

## 8. What happens if I choose to stay in the Class?

If you stay in the Class, you will be able share in any money or benefits that *may* result from this class action. You will be legally bound by all orders and judgments made by the Court in this class action and you will give up any rights to sue Yahoo separately about the "Welcome" text message TCPA claims made in this lawsuit.

## 9. What happens if ask to be excluded?

If you exclude yourself, you will not receive money or benefits that *may* result from the class action, but you will keep your rights to bring your own case against Yahoo over the "Welcome" text message TCPA claims raised in this case. In addition, the time you have in which to file your own lawsuit (called the "statute of limitations") will begin to run again. You will have the same amount of time to file the lawsuit that you had

when this case was filed.

## 10. How do I exclude myself?

To exclude yourself from the Class you must mail a written request to the notice administrator at:

**Yahoo Text Message Class Action Notice Administrator**
c/o KCC Class Action Services
PO Box 30227
College Station, TX 77842-3227

Your request for exclusion **must** include your full name, address, telephone number, and signature as well as a statement indicating that you want to be excluded from the Class in *Johnson v. Yahoo!, Inc*., 14-cv-2028. Your request for exclusion **must be postmarked by [60 days from notice mailing]**.

## 11. What happens if I do nothing?

If you do nothing you are choosing to stay in the Class. You will be able share in any money or benefits that *may* result from this class action. You will also be legally bound by all orders and judgments made by the Court in this class action and you will give up any rights to sue Yahoo separately about the "Welcome" text message TCPA claims made in this lawsuit.

## 12. Do I have a lawyer in this case?

Yes, the Court decided that the attorneys representing the named plaintiff Rachel Johnson should also represent Class Members. These attorneys are called "Class Counsel". You will not be charged for the services of these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13. How will the lawyers be paid?

Plaintiff contends that individual actions are not feasible because the TCPA does not provide for a separate payment of attorneys' fees and expenses. Nevertheless, if Class Counsel wins the lawsuit against Yahoo or reaches a settlement with them, they may ask the Court to approve the payment of attorney's fees and expenses from any judgment or settlement amount. Class Counsel has expended time and expense in this case without any guaranty of payment. Regardless of whether the Class wins or loses the lawsuit against Yahoo, you will not personally owe them anything.

## 14. What if my address has changed?

If this notice was forwarded by the Postal Service, or if it was otherwise sent to you at an address which is not current, you should immediately update your contact information at www.YahooTCPAClass.com. You may also send a letter to Yahoo Text Message Class Action Notice Administrator, c/o KCC Class Action Services, PO Box 30227, College Station, TX 77842-3227 stating your name, past and current addresses, telephone number, and reference the case name and number (*Johnson v. Yahoo!, Inc*. 14-cv-2028).

## 15. How do I get more information?

Go to www.YahooTCPAClass.com for more information. You can review important updates and important documents filed in the case at the website. You may also email the Yahoo Text Message Class Action Notice Administrator at info@yahootcpaclass.com for more information. You can also call toll free to Keogh Law, Ltd. for further information at (866) 726-1092 if you still have any questions. Before doing so, please read this full notice carefully.

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE**.

# Exhibit G

**Court Approves Text Message Spam Class Action against Yahoo, Orders Notice of Lawsuit that May Provide $500-$1500 per Text Message, Announces Keogh Law, LTD.**

Chicago, IL (PRNewswire) -

On January 4, 2016, the United States District Court for the Northern District of Illinois certified a class action against Yahoo, claiming that it violated the Telephone Consumer Protection Act ("TCPA") by using an automatic telephone dialing system to send "Welcome" text messages regarding its Yahoo Messenger program without prior express consent. The lawsuit, *Johnson v. Yahoo! Inc.*, Case No. 14-cv-2028, is pending in the United States District Court for the Northern District of Illinois.  On _____, the court approved Johnson's notice plan and ordered that notice be sent to the class.

The lawsuit alleges that Yahoo used automated dialing systems to send the following "Welcome" text message to the class members in order to promote its Yahoo Messenger program:

> "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

The Plaintiff claims that this text message violates the TCPA, which prohibits the use of an "automatic telephone dialing system" to send text messages without the "prior express consent" of the called party. Yahoo denies violating the TPCA and the use of an automatic telephone dialing system, and claims some class members may have provided consent. The lawsuit seeks $500-$1500 per text message for the class members.

The class includes all persons within the United States who used a cellular telephone number to which Yahoo! sent the Welcome Message from March 1, 2013 through March 31, 2013, while the cellular number was assigned to Sprint and was not associated with a Yahoo! user in Yahoo!'s records.

The Court has not yet ruled on the merits of the case.  Class members may stay in the class or request to be excluded by <60 days from mailing date>.

For a detailed notice, instructions, and other documents about this lawsuit and your rights, go to www.YahooTCPAClass.com, call 1-866-726-1092, email info@yahootcpaclass.com, or write to Yahoo Text Message Class Action Notice Administrator c/o KCC Class Action Services PO Box 30227 College Station, TX 77842-3227.

SOURCE:  Keogh Law, LTD.  (Counsel for the Class)

# Exhibit H



KCC's Legal Notification Services team provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been involved in more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some case examples our experts have been involved with include:

- **Shames v. The Hertz Corporation**, No. 3:07-cv-02174 (S.D. Cal.) A national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies.

- **In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation**, No. 11-MD-2247 (D. Minn.) A national products liability settlement providing reimbursement, repair and replacement of affected plumbing components.

- **In re Trans Union Corp. Privacy Litigation**, MDL No. 1350 (N.D. Ill.) Perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- **In re TJX Companies, Inc., Customer Data Security Breach Litigation**, MDL No. 1838 (D. Mass.) One of the largest U.S. and Canadian retail consumer security breach notice programs.

- **Grays Harbor Adventist Christian School v. Carrier Corp.**, No. 05-05437 (W.D. Wash.), **Donnelly v. United Technologies Corp.** No. 06-CV-320045CP (Ont. S.C.J.) and **Wener v. United Technologies Corp.** 500-06-000425-088 (QC. Super. Ct.) Product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada.

- **In re Residential Schools Litigation**, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

# Our Experts

**Gina M. Intrepido-Bowden**

With 25 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as VP, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has designed more than 85 judicially approved media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As a legal notice expert, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

**Carla A. Peak**

With over a decade of industry experience, Carla A. Peak, also VP, Legal Notification Services, specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition

Following are some judicial comments recognizing the work of our expert(s):

**Honorable Manish S. Shah,** *Campos v. Calumet Transload Railroad, LLC*, (August 3, 2016) No. 1:13-cv-08376 (S.D. NY.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate, reasonable, and constitute the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the Settlements, the terms and conditions set forth therein, and these proceedings to all Persons entitled to such notice. The notice satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and due process.*

**Honorable Lynn Adelman,** *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.,* **(Indirect Purchaser–Jui Li Settlement)**, (July 7, 2016) No. 2:09-cv-00852 (E.D. Wis.):

> *The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 1–3,*

2

*respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

**Judge Marco A. Hernandez,** *Kearney v. Equilon Enterprises LLC*, (June 6, 2016) No. 3:14-cv-00254 (D. Ore.):

*The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in paragraphs 35-42 of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina Intrepido-Bowen: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. The Court further finds that the Parties' plan for providing Notice to the Settlement Classes, as described in paragraphs 35-42 of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina Intrepido-Bowen, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as not to be bound by the Settlement Agreement.*

**Judge William H. Pauley III,** *The Dial Corporation v. News Corporation*, (June 2, 2016) No. 1:13-cv-06802 (S.D. NY.):

*The form and content of the notice program described herein, and the methods set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and constitutional due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.*

**Honorable R. Gary Klausner,** *Russell v. Kohl's Department Stores, Inc.*, (April 11, 2016) No. 5:15-cv-01143 (C.D. Cal.):

*Here, the Notice Plan includes several ways to reach proposed Class Members, including an information website, direct mailing, direct emails, and a toll-free help line. Furthermore, the proposed Notice provides details sufficient to explain the terms of the Settlement Agreement and provide information to Class Members about their rights, releases, and application deadlines. The Notice informs Class Members of how funds will be allocated, and how Residual Funds will be handled. Class Members are also put on notice of Attorneys' Fees and Expenses awarded and an Incentive Award to the Class Representative. Finally, the Notice plainly indicates the time and place of the hearing to consider approval of the settlement and the method of objecting to or opting out of the settlement.*
*Based on the above facts, the Court approves the proposed Notice Plan.*

**Judge Joan A. Leonard,** *Barba v. Shire U.S., Inc.*, (April 11, 2016) No. 1:13-cv-21158 (S.D. Fla.):

*The Court finds that the proposed methods for giving notice of the Settlement to members of the Settlement Class, as set forth in this Order and in the Settlement*

3

*Agreement, meet the requirements of Federal Rule of Civil Procedure Rule 23 and requirements of state and federal due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.*

**Honorable Manish S. Shah,** ***Campos v. Calumet Transload Railroad, LLC,*** (March 10, 2016 and April 18, 2016) No. 1:13-cv-08376 (S.D. NY.):

*The Court approves the Notice Program set forth in the Declaration of Carla A. Peak, attached as Exhibit A to the Settlement. The Court approves as to form and content the Postcard Notice, Summary Notice, and Detailed Notice in the forms attached as Exhibits B, C, and D, respectively, to the Settlement. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement and this Order to all persons entitled thereto, and is in full compliance with the requirements of Fed. R. Civ. P. 23, applicable law, and due process.*

**Judge Mary M. Rowland,** ***In re: The Home Depot, In., Customer Data Security Breach Litig.,*** (March 8, 2016) No. 1:14-md-02583 (N.D. Ga.):

*The Court finds that the form, content and method of giving notice to the Class as described in Paragraph 7 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement, including but not limited to their rights to object to or exclude themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.*

**Judge Mary M. Rowland,** ***In re: Sears, Roebuck and Co. Front-Loader Washer Products Liability Litig.,*** (February 29, 2016) No. 1:06-cv-07023 (N.D. Ill.):

*The Court concludes that, under the circumstances of this case, the Settlement Administrator's notice program was the "best notice that is practicable," Fed. R. Civ. P. 23(c)(2)(B), and was "reasonably calculated to reach interested parties," Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950).*

**Honorable Lynn Adelman,** ***Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.,*** **(Indirect Purchaser–Tong Yang & Gordon Settlements)**, (January 14, 2016) No. 2:09-CV-00852 (E.D. Wis.):

*The form, content, and methods of dissemination of Notice of the Settlements to the Settlement Class were reasonable, adequate, and constitute the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the Settlements, the terms and conditions set forth in the Settlements, and these proceedings to all persons and entities entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.*

**Judge Curtis L. Collier,** ***In re: Skelaxin (Metaxalone) Antitrust Litigation***, (December 22, 2015) No. 1:12-md-2343 (E.D. Tenn.):

4

*The Class Notice met statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirement process.*

**Honorable Mitchell D. Dembin,** ***Lerma v. Schiff Nutrition International, Inc.***, (November 3, 2015) No. 3:11-CV-01056 (S.D. Cal.):

*According to Ms. Intrepido-Bowden, between June 29, 2015, and August 2, 2015, consumer publications are estimated to have reached 53.9% of likely Class Members and internet publications are estimated to have reached 58.9% of likely Class Members…The Court finds this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class Members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.*

**Honorable Lynn Adelman,** ***Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.***, **(Direct Purchaser–Tong Yang & Gordon Settlements)**, (August 13, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court further finds that the Notice Plan, previously approved by the Court (See ECF Nos. 619 & 641) and as executed by the Court-appointed Claims Administrator, KCC, as set forth in the Declaration of Carla A. Peak on Implementation and Overall Adequacy of Combined Settlement Notice Plan ("Peak Declaration") is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complied fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice (Peak Declaration Exhibits 1 and 2) are written in plain language, use simple terminology, and are designed to be readily understandable and noticeable by Settlement Class Members.*

**Honorable Lynn Adelman,** ***Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.***, **(Indirect Purchaser–Gordon Settlement)**, (August 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

**Honorable Sara I. Ellis,** ***Thomas v. Lennox Industries Inc.***, (July 9, 2015) No. 1:13-CV-07747 (N.D. Ill.):

*The Court approves the form and content of the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the Settlement Agreement. The Court finds that the Notice Plan, included in the Settlement Agreement and the Declaration of Gina M. Intrepido-Bowden on Settlement*

*Notice Plan and Notice Documents, constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under the United States Constitution.*

**Honorable Lynn Adelman,** ***Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*** **(Indirect Purchaser–Tong Yang Settlement)**, (May 29, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

**Honorable Mitchell D. Dembin,** ***Lerma v. Schiff Nutrition International, Inc.***, (May 25, 2015) No. 11-CV-01056 (S.D. Cal.):

*The parties are to notify the Settlement Class in accordance with the Notice Program outlined in the Second Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program.*

**Honorable Lynn Adelman,** ***Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*** **(Direct Purchaser–Gordon Settlement)**, (May 5, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla Peak ("Peak Decl.") at Exhibit 1 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members. The Notice Program set forth herein is substantially similar to the one set forth in the Court's April 24, 2015 Order regarding notice of the Tong Yang Settlement (ECF. No. 619) and combines the Notice for the Tong Yang Settlement with that of the Gordon Settlement into a comprehensive Notice Program. To the extent differences exist between the two, the Notice Program set forth and approved herein shall prevail over that found in the April 24, 2015 Order.*

**Honorable José L. Linares,** ***Demmick v. Cellco Partnership***, (May 1, 2015) No. 2:06-CV-2163 (D. N.J.):

*The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)… The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process*

*Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.*

**Honorable Lynn Adelman,** ***Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*** **(Direct Purchaser–Tong Yang Settlement)**, (April 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla A. Peak ("Peak Decl.") as Exhibit 2 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.*

**Honorable Rhonda A. Isiran Nishimura,** ***Charles v. Haskeo Homes, Inc.***, (February 24, 2015) No. 09-1-1932-08 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice, and the Notice Plan that are attached as Exhibits 8-9 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak…The Court finds that the Hurricane Straps Class Notice, the Hurricane Straps Repose Subclass Notice, and the Notice Plan will fully and accurately inform the potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members of all material elements of the proposed Settlement, of their right to be excluded from the Hurricane Straps Class or Hurricane Straps Repose Subclass, and of each Hurricane Straps Class Member's or Hurricane Straps Repose Subclass Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members.*

**Honorable Gary W.B. Chang,** ***Kai v. Haskeo Homes, Inc.***, (February 15, 2015) No. 09-1-2834-12 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the PEX Class Notice and Notice Plan attached as Exhibit 10 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak. The Court finds that the PEX Class Notice and the Notice Plan will fully and accurately inform potential PEX Class Members of all material elements of the proposed Settlement, of their right to be excluded from the PEX Class, and of each PEX Class Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the PEX Class Notice substantially in the manner and form set forth in this Order will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Class Members.*

**Honorable David O. Carter, *Cobb v. BSH Home Appliances Corp.*,** (December 29, 2014) No. 8:10-CV-0711 (C.D. Cal.):

> *The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

**Honorable José L. Linares, *Demmick v. Cellco Partnership*,** (November 19, 2014) No. 2:06-CV-2163 (D. N.J.):

> *The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*
> *The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

**Honorable Christina A. Snyder, *Roberts v. Electrolux Home Products, Inc.*,** (September 11, 2014) No. 8:12-CV-01644 (C.D. Cal.):

> *The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan…The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement…Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects…Any objections to the notice provided to the Class are hereby overruled.*

**Honorable David O. Carter, *Cobb v. BSH Home Appliances Corp.*,** (August 25, 2014) No. 8:10-CV-0711 (C.D. Cal.):

*…the Court also finding that the proposed notice plan and forms of notice are the best notice practicable under the circumstances and satisfy all requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(b)(2); and for good cause shown,*

*IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend the Illinois Class Definition is GRANTED; and it is further ORDERED that Plaintiffs' Motion for Approval of Notice Plan and Proposed Forms of Notice is GRANTED.*

**Judge Gregory A. Presnell,** ***Poertner v. The Gillette Co. and The Procter & Gamble Co.***, (August 21, 2014) No. 6:12-CV-00803 (M.D. Fla.):

*This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.*

**Honorable Curtis L. Collier,** ***In re: Skelaxin (Metaxalone) Antitrust Litigation***, (August 5, 2014) No. 1:12-md-02343 (E.D. Tenn.):

*The proposed form of Notice to End-Payor Settlement Class Members of the pendency and proposed settlement of this action ("Settlement Notice") set forth in the Notice Plan and Declaration of Carla Peak and the proposed method of dissemination of the Settlement Notice ("Notice Plan")—first to Third-Party Payors and then to Consumers—satisfy the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, are otherwise fair and reasonable, and therefore are approved.*

**Honorable Christina A. Snyder,** ***Roberts v. Electrolux Home Products, Inc.***, (May 5, 2014) No. 8:12-CV-01644 (C.D. Cal.):

*The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

**Honorable Jose L. Linares,** ***In re Hypodermic Products Antitrust Litigation***, (March 17, 2014) MDL No. 1730, No. 2:05-CV-01602 (D. N.J.):

*The Class Notice provides a description of the Indirect Purchaser Class, the procedural status of the litigation, a brief description of the plan of allocation, the court approval process for the proposed Settlement, and the significant terms of the Settlement. The Class Notice also fully informed members of the Indirect Purchaser Class of their rights with respect to the Settlement, including the right*

*to opt out of, object to the Settlement, or otherwise be heard as to the reasonableness and fairness of the Settlement. The Class Notice also informed members of the Indirect Purchaser Class of their right to object to Indirect Purchaser Plaintiffs' Lead Counsel's application for an award of attorneys' fees, an award of incentive fees, and reimbursement of expenses from the Settlement Fund....The Class Notice met the statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

**Honorable William E. Smith, *Cappalli v. BJ's Wholesale Club, Inc.*,** (December 12, 2013) No. 1:10-CV-00407 (D. R.I.):

*The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings of the proposed Settlement, and of the terms set forth in the Stipulation and first Joint Addendum, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.*

**Judge Gregory A. Presnell, *Poertner v. The Gillette Co. and The Procter & Gamble Co.*,** (November 5, 2013) No. 6:12-CV-00803 (M.D. Fla.):

*The proposed Class Notice and Claim Form are approved as to form and content. The Court finds that the content of the Class Notice and the Claim Form satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process and accordingly approves them...The Court finds that compliance with the Notice Plan is the best practicable notice under the circumstances and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.*

**Honorable Jose L. Linares, *In re Hypodermic Products Antitrust Litigation*,** (November 4, 2013) No. 2:05-CV-01602 (D. N.J.):

*Upon reviewing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan and the Declarations of Karin E. Fisch, Esq. and Carla A. Peak and the documents attached thereto, it is hereby ORDERED, ADJUDGED AND DECREED as follows:...Proposed forms of Notice are attached hereto as Exhibit A. The Court finds that the form fairly and adequately: (i) describes the terms and effect of the Settlement Agreement and of the Settlement; (ii) notifies the Indirect Purchaser Class concerning the proposed plan of allocation and distribution; (iii) notifies the Indirect Purchaser Plaintiffs' Lead Counsel will seek attorneys' fees not to exceed one-third of the Settlement Fund, reimbursement of expenses and incentive fees; (iv) gives notice to the Indirect Purchaser Class of the time and place of the Fairness Hearing; and (v) describes how the recipients of the Notice may submit a claim, exclude themselves from the Settlement or object to any of the relief requested.*

**Judge Marilyn L. Huff, *Beck-Ellman v. Kaz USA, Inc.*,** (June 11, 2013) No. 3:10-cv-02134 (S. D. Cal.):

*The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language... The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website. KCC identified that the class members*

*belong to a demographic group known as "Pain Relief Users." The Heating Pads are considered a Pain Relief product. The publications that KCC's Notice Plan used are publications and websites whose viewers and readers include a high percentage of Pain Relief product users…The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.*

**Judge Tom A. Lucas, *Stroud v. eMachines, Inc.*,** (March 27, 2013) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Notices met the requirements of Okla. Stat. tit. 12 section 2023(C), due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto. All objections are stricken. Alternatively, considered on their merits, all objections are overruled.*

**Judge Marilyn L. Huff, *Beck-Ellman v. Kaz USA, Inc.*** (January 7, 2013) No. 3:10-cv-02134 (S. D. Cal.):

*The proposed Class Notice, Publication Notice, and Settlement Website are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances… Notice is written in easy and clear language, and provides all needed information, including: (l) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained. After review of the proposed notice and Settlement Agreement, the Court concludes that the Publication Notice and Settlement Website are adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.*

**Judge Tom A. Lucas, *Stroud v. eMachines, Inc.*,** (December 21, 2012) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Plan of Notice in the Settlement Agreement as well as the content of the Claim Form, Class Notice, Post-Card Notice, and Summary Notice of Settlement is hereby approved in all respects. The Court finds that the Plan of Notice and the contents of the Class Notice, Post-Card Notice and Summary Notice of Settlement and the manner of their dissemination described in the Settlement Agreement is the best practicable notice under the circumstances and is reasonably calculated, under the circumstances, to apprise Putative Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Certified Settlement Class and, therefore, the Plan of Notice, the Class Notice, Post-Card Notice and Summary Notice of Settlement are approved in all respects. The Court further finds that the Class Notice, Post-Card Notice and Summary Notice of Settlement are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and that they meet the requirements of due process.*

**Honorable Michael M. Anello, *Shames v. The Hertz Corporation*,** (November 5, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*…the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both…The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice…The Court OVERRULES all objections to the class settlement…*

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (July 9, 2012) No. 11-MD-2247 (D. Minn.):**

*The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (June 29, 2012) No. 11-MD-2247 (D. Minn.):**

*After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each…The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

**Honorable Michael M. Anello, *Shames v. The Hertz Corporation*, (May 22, 2012) No. 3:07-cv-02174 (S.D. Cal.):**

*The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.*

**Judge Anthony Powell, *Molina v. Intrust Bank, N.A.*, (May 21, 2012) No. 10-CV-3686 (18th J.D. Ct., Kan.):**

*The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceeding to all persons entitled to such*

*notice, and said notice fully satisfied the requirements of K.S.A. § 60-223 and due process.*

**Judge Ronald L. Bauer,** ***Blue Cross of California Website Securities Litigation***, (April 5, 2012) No. JCCP 4647 (Super. Ct. Cal.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Person entitled to such notice, and said notice satisfied the requirements of California Rules of Court, Rule 3,766(e) and (f), and due process.*

**Judge Ann D. Montgomery,** ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> *The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering,** ***Molina v. Intrust Bank, N.A.***, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell,** ***Allen v. UMB Bank, N.A.***, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell,** ***Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

13

> *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel, *Ko v. Natura Pet Products, Inc.*, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):**

> *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann, *Billieson v. City of New Orleans*, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):**

> *The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak… IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson, *In re Department of Veterans Affairs (VA) Data Theft Litig.*, (February 11, 2009) MDL No. 1796 (D.C.):**

> *The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.*

**Judge Louis J. Farina, *Soders v. General Motors Corp.*, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):**

> *The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.*

**Judge Robert W. Gettleman, *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):**

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.*

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> …as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge David De Alba,** *Ford Explorer Cases*, (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

> Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.

# Speaking Engagements

*Class Action Notice Requirements: Leveraging Traditional and Emerging Media to Reach Class Members*, STRAFFORD, Carla Peak presenter/panelist (April 2016).

*Ethics in Legal Notification*, accredited CLE Program, Gina Intrepido-Bowden, presented in Radnor at Kessler Topaz Meltzer & Check LLP (September 2015); Carla Peak & Patrick Ivie, presented in Philadelphia at Class Action Preservation Project (November 2014); Carla Peak & Robert DeWitte, presented in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014); Gina Intrepido-Bowden & Patrick Ivie, presented in Utah at The St. Regis Deer Valley Resort (March 2014); Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot, presented in New York at Morgan Lewis & Bockius (December 2012).

*Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014).

*The Ethics of Class Action Settlements,* CHICAGO BAR ASSOCIATION, Class Litigation Committee, Carla Peak presenter/panelist (June 2014).

*Pitfalls of Class Action Notice and Settlement Administration,* accredited CLE Program, Carla Peak and Robert DeWitte, presented in Miami at Harke Clasby & Bushman LLP (March 2014); PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013, Gina Intrepido-Bowden and Robert DeWitte presenters/panelists (July 2013).

*Designing a Settlement and Notice Program to Minimize Scrutiny and Objections,* AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation, Gina Intrepido-Bowden presenter/panelist (July 2013).

*The Fundamentals of Settlement Administration* accredited CLE Program, Carla Peak and Steven Weisbrot, presented in Philadelphia at DLA Piper LLP (August 2013); Carla Peak and Robert DeWitte, presented in Illinois at Locke Lord LLP and broadcast to offices in California, Georgia, New York, Texas and London (April 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP (January 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Hinshaw & Culberson LLP (October 2012); Gina Intrepido-Bowden and Rob Taylor-Manning, presented in Pennsylvania at Spector Roseman Kodroff & Willis, P.C. (December 2011).

*Class Action Settlement Administration Tips & Pitfalls on the Path to Approval* accredited CLE Program, Carla Peak, Gina Intrepido-Bowden & Robert DeWitte, presented in Illinois at Jenner & Block and broadcast to offices in Washington DC, New York and California (October 2012).

*Perspectives from Class Action Claims Administrators: Innovations in Notification*, CLE INTERNATIONAL, 8th Annual Class Actions Conference, Gina Intrepido-Bowden, presenter/panelist (May 2012).

*Innovations in Notification*, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar, Carla Peak, presenter (May 2012).

*Ethical Considerations in Canadian Class Actions*, accredited CLE Program, Gina Intrepido-Bowden and Robert Taylor-Manning, presented in Canada at Rochon Genova, LLP (April 2012).

*Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium, Gina Intrepido-Bowden, presenter/panelist (October 2011).

*Legal Notice Ethics*, accredited CLE Program, Gina Intrepido-Bowden, Carla Peak & Elizabeth Grande, presented in New York at Cohen Milstein Sellers & Toll PLLC and Milberg LLP (May 2010), in Illinois at Miller Law LLC (May 2010), in Pennsylvania at Berger & Montague, P.C., Anapol Schwartz, Lundy Law, and Dechert LLP, which was broadcast to offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010), and in Minnesota at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne (January 2011).

*Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, accredited CLE Program, Brian Christensen, Gina Intrepido & Richard Simmons, presented to Kansas Bar Association (March 2009).

# Articles

Carla Peak and Steven Weisbrot. *How to Design Your Notice to Minimize Professional Objectors,* Class Action Lawsuit Defense: Class Action Defense News, Developments and Commentary provided by BakerHostetler ([www.classactionlawsuitdefense.com](www.classactionlawsuitdefense.com)) (July 20, 2012).

Carla Peak, *Is your legal notice designed to be noticed?* Westlaw Journal Class Action Vol.18 Issue 10 (2011).

John B. Isbister, Todd B. Hilsee & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, American Bar Association, Section of Litigation, Class Actions Today 16 (2008).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 Tulane Law Rev. 1771 (2006); reprinted in course materials for: American Bar Association, 10th Annual National Institute on Class Actions (2006); National Business Institute, Class Action Update: Today's Trends & Strategies for Success (2006); Center for Legal Education International, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 Class Action Litig. Rep. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 Georgetown Journal Legal Ethics 1359 (2005).

# Legal Notice Case Examples

Following is a list of cases in which our expert(s) have been involved in the design and implementation of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |

| | |
|---|---|
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp. (Extended Viewing Fees)* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., 1:03-md-01539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., 1:04-md-01653 (LAK) |

| | |
|---|---|
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of Veterans Affairs (VA) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 3:08-md-1998 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *Ko v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |

| | |
|---|---|
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvarez v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn., MDL No. 2247 |
| *Shames v. The Hertz Corporation* | S.D. Cal., No. 07cv2174-MMA |
| *Stroud v. eMachines, Inc.* | D. Ct. Cleveland Cnty, Okla., No. CJ-2003-968-L |
| *Holman v. Experian Information Solutions, Inc.* | N.D. Cal., No. 4:11cv00180 |
| *Beck-Ellman v. Kaz USA Inc.* | S.D. Cal., No. 10-cv-2134 |
| *Lee v. Stonebridge Life Insurance Company* | N.D. Cal., No. 3:11-cv-00043 |
| *Steinfeld v. Discover Financial Services* | N.D. Cal., No. 3:12-cv-01118 |
| *Cappalli v. BJ's Wholesale Club, Inc.* | D. R.I., No. 1:10-cv-00407 |
| *Poertner v. The Gillette Co. and The Procter & Gamble Co.* | M.D. Fla., No. 6:12-cv-00803 |
| *In re Hypodermic Products Antitrust Litigation* | D. N.J., No. 2:05-cv-01602 |
| *McCrary v. The Elations Company, LLC (class certification)* | C.D. Cal., No. 13-cv-00242 |
| *Lerma v. Schiff Nutrition International, Inc.* | S.D. Cal., No. 3:11-cv-01056 |
| *Charles v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2697-11 |
| *Kai v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2834-12 |
| *Roberts v. Electrolux Home Products, Inc.* | C.D. Cal., No. 8:12-cv-01644 |
| *Demereckis v. BSH Home Appliances Corporation* (Certification) | C.D. Cal., No. 8:10-cv-00711 |
| *In re Skelaxin (Metaxalone) Antitrust Litigation* | E.D. Ten., MDL 2343, No. 1:12-cv-194 |
| *Demmick v. Cellco Partnership d/b/a Verizon Wireless* | D. Ct. N.J., No. 06-cv-2163 |
| *Cobb v. BSH Home Appliances Corporation* | C.D. Cal., No. 8:10-cv-00711 |
| *Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co. Ltd. (Direct & Indirect Purchasers Classes)* | E.D. Wis., No. 2:09-cv-00852 |
| *Thomas v. Lennox Industries Inc.* | N.D. Ill., No. 1:13-cv-07747 |
| *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation* | N.D. Ill., No. 1:06-cv-07023 |
| *Chambers v. Whirlpool Corporation* | C.D. Cal., No. 8:11-cv-01733 |
| *The Dial Corp. v. News Corp.* | S.D.N.Y., No. 1:13-cv-06802 |
| *Cole v. Asurion Corporation* | C.D. Cal., 2:06-cv-6649 |
| *Stender v. Archstone-Smith Operating Trust* | D. Colo., 1:07-cv-02503 |
| *Campos v. Calumet Transload Railroad, LLC* | N.D. Ill., 1:13-cv-08376 |
| *In re: The Home Depot, Inc., Customer Data Security Breach Litig.* | N.D. Ga., 1:14-md-02583 |
| *Russell v. Kohl's Department Stores, Inc.* | C. D. Cal., No 5:15-cv-01143 |
| *Barba v. Shire U.S., Inc.* | S.D. Fla., 1:13-cv-21158 |
| *Giuliano v. SanDisk Corporation* | N.D. Cal., 4:10-cv-2787 |

# Exhibit I

TO ALL PERSONS AND ENTITIES WHO HELD SHARES OF WALGREEN CO. (NOW KNOWN AS WALGREENS BOOTS ALLIANCE, INC.) COMMON STOCK (OR ANY INTEREST THEREIN), EITHER OF RECORD OR BENEFICIALLY, AND THEIR SUCCESSORS IN INTEREST AT ANY TIME BETWEEN AND INCLUDING AUGUST 5, 2014 AND DECEMBER 31, 2014 (THE "CLASS PERIOD").

IF YOU HOLD WALGREEN CO. COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER. ALTERNATELY, YOU MAY PROVIDE A LIST OF THE NAMES AND ADDRESSES OF SUCH BENEFICIAL OWNERS TO THE NOTICE ADMINISTRATOR BY EMAILING nominees@WalgreenProxyShareholderSettlement.com. MORE INFORMATION REGARDING THE NOTICE ADMINISTRATOR IS AVAILABLE AT www.WalgreenProxyShareholderSettlement.com.

A settlement has been reached in a class action related to Step 2 of Walgreen's acquisition of Alliance Boots, GmbH. Among other things, the Plaintiffs sought to enjoin the Defendants from proceeding with the acquisition unless and until they remedied certain alleged disclosure violations. The Defendants contend that the Plaintiffs' allegations are without merit and deny that they did anything wrong. However, the Defendants agreed to make certain supplemental disclosures and to settle the Plaintiffs' actions.

**What Does The Settlement Provide?**
Pursuant to a Memorandum of Understanding providing for the settlement of the action, the Defendants made supplemental disclosures prior to Walgreen shareholders' vote on the acquisition. The information contained in the supplemental disclosures had not been included in the Proxy filed with the SEC and Plaintiffs considered such information to be material and important for Walgreen shareholders to make a fully informed decision with respect to whether or not to vote their shares in favor of the acquisition.

**What Are Your Rights?**
Record holders and beneficial owners of Walgreens common stock during the Class Period and certain other individuals are members of the Settlement Class, and their rights may be affected by this action and the settlement thereof. You are hereby notified that pursuant to an Order of the United States District Court for the Northern District of Illinois, a hearing will be held on November 20, 2015, at 10:00 a.m., in Courtroom 2325 of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604 (the "Settlement Hearing") to consider whether to approve the settlement and the requested attorneys' fees. As described in the notice available at www.WalgreenProxyShareholderSettlement.com, if you are a member of the Settlement Class, you may:

| DO NOTHING | You will be bound by the judgment entered by the Court if it approves the settlement, including releasing the settled claims. |
|---|---|
| OBJECT | You may write to the Court **by November 6, 2015** if you wish to object to the Settlement, the judgment to be entered in the action, certification of the Settlement Class, and/or Plaintiffs' attorneys' fee petition. |
| GO TO THE SETTLEMENT HEARING | You may attend and, subject to certain requirements, speak at the Settlement Hearing. |

**Do You Have an Attorney in this Action?**
Pomerantz LLP ("Pomerantz"), Friedman Oster PLLC ("Friedman Oster"), Levi & Korsinsky LLP ("Levi & Korsinsky"), the Law Office of Alfred G. Yates, Jr., P.C., and DiTommaso Lubin, P.C., represent you and other members of the Settlement Class in the action. You will not be charged for these Plaintiffs' Counsel. Instead, any award of attorneys' fees to Plaintiffs' Counsel will be paid by Walgreen. Plaintiffs' Counsel intend to petition the Court for an award of attorneys' fees and expenses not to exceed $370,000 for their efforts in litigating this case. If you want to be represented by your own lawyer, you may hire one at your own expense.

**How Do You Get More Information?**
For more information, visit **www.WalgreenProxyShareholderSettlement.com**, or contact Gustavo F. Bruckner, Pomerantz LLP, at (212) 661-1100.

STATE OF NORTH CAROLINA

COUNTY OF SURRY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14-CVS-1202 (Master File);
14-CVS-1031;
14-CVS-1127;
14-CVS-1161.

---

In re Pike Corp. Shareholder Litigation

---

**NOTICE OF PROPOSED SETTLEMENT, SETTLEMENT HEARING, AND RIGHT TO APPEAR**

**TO:     ALL RECORD AND BENEFICIAL HOLDERS OF PIKE CORPORATION ("PIKE" OR THE "COMPANY") COMMON STOCK DURING THE PERIOD BEGINNING ON AUGUST 4, 2014, THROUGH DECEMBER 22, 2014, INCLUDING ANY AND ALL OF THEIR RESPECTIVE SUCCESSORS IN INTEREST, SUCCESSORS, PREDECESSORS IN INTEREST, PREDECESSORS, REPRESENTATIVES, TRUSTEES, EXECUTORS, ADMINISTRATORS, HEIRS, ASSIGNS OR TRANSFEREES, IMMEDIATE AND REMOTE, AND ANY PERSON OR ENTITY ACTING FOR OR ON BEHALF OF, OR CLAIMING UNDER ANY OF THEM, AND EACH OF THEM, TOGETHER WITH THEIR PREDECESSORS AND SUCCESSORS AND ASSIGNS.**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE "RELEASED CLAIMS" (DEFINED HEREIN).

IF YOU HELD PIKE COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.

**I.     THE PURPOSE OF THIS NOTICE**

The purpose of this Notice is to inform you of the pendency of the above-captioned shareholder litigation (the "Consolidated Action") and a proposed settlement ("Settlement") of the Consolidated Action.  This Notice also informs you of the Court's preliminary certification of a non-opt-out Class (as defined below in this Section) for purposes of the Settlement, and of your right to participate in a hearing to be held on August 26, 2015 at 10:00 a.m. before the Honorable James L. Gale in the North Carolina Business Court (the "Court"), 211 North Greene Street, Greensboro, North Carolina 27401 (the "Settlement Hearing") to: (1) determine whether the Court should approve the Settlement as fair, reasonable and adequate to the Class; (2) determine whether to enter judgment dismissing the Consolidated Action with prejudice and extinguishing and releasing all Released Claims (defined below); (3) determine whether the Class should be permanently certified as a mandatory, non-opt-out class pursuant to Rule 23 of the North Carolina Rules of Civil Procedure; (4) determine whether plaintiff Annabelle Umberger and Lead Counsel in the Consolidated Action should be certified in the Consolidated Action as Class Representative and Class Counsel, respectively; (5) if the Court approves the Settlement, determine whether the Court should grant Plaintiffs' application for payment of attorneys' fees and reimbursement of expenses (as set for below in Section X, below); and (6) to consider such other matters as may properly come before the Court.

The Court has determined that the Consolidated Action shall be preliminarily certified as a class action under Rule 23 of the North Carolina Rules of Civil Procedure, for settlement purposes only, on behalf of all record and beneficial holders of Pike common stock, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them, together with their predecessors and successors and assigns, who held Pike common stock at any time between and including August 4, 2014 and December 22, 2014, the date of consummation of the Transaction (as defined in Section II, below), but excluding the Defendants and their affiliates (the "Class").

This Notice describes the rights you may have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement.

If the Court approves the Settlement, Plaintiffs and the Defendants in the Consolidated Action (the "Parties") will ask the Court to enter a Final Order and Judgment dismissing the Consolidated Action with prejudice on the merits.  The merger between Pike and Pioneer Merger Sub, Inc. closed on December 22, 2014, and the Settlement will not affect the status of the completed merger.

*          *          *          *          *

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT.  IT IS BASED ON SUMMARY STATEMENTS BY THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

II.    **BACKGROUND OF THE LAWSUIT**

On August 4, 2014, Pike announced that it had entered into an Agreement and Plan of Merger dated as of August 4, 2014 (the "Merger Agreement"), with Pioneer Parent, Inc. ("Parent"), a Delaware corporation ("Pioneer Parent"), and Pioneer Merger Sub, Inc. ("Merger Sub"), a North Carolina corporation and a direct, wholly-owned subsidiary of Parent, providing for the merger of Merger Sub with and into the Company with the Company surviving the Merger as a wholly-owned subsidiary of Pioneer Parent (the "Transaction"). Pioneer Parent is owned by an investment fund affiliated with Court Square Capital Partners ("Court Square"). Pursuant to the Merger Agreement, Pioneer Parent acquired Pike for $12.00 in cash per share of Pike common stock.

Concurrently with the execution of the Merger Agreement, J. Eric Pike, the Joe B. / Anne A. Pike Generation Skipping Trust, and Takuan, LLC (collectively, the "J. Eric Pike Investors"), agreed to contribute to Pioneer Parent 1,644,275 shares of Pike common stock, and, in the case of J. Eric Pike, to provide an additional $1,078,308 in cash equity financing for the merger, in exchange for common stock of Pioneer Parent immediately prior to consummation of the merger (the "Rollover Agreement"). In addition, the J. Eric Pike Investors entered into a voting agreement (the "Voting Agreement") with Pike and Pioneer Parent which required the J. Eric Pike Investors to vote their shares of Pike common stock in favor of the Transaction.

Between August 19, 2014 and September 25, 2014, four shareholder class actions (two of which were also brought derivatively on behalf of Pike) were filed in the General Court of Justice, Superior Court Division, of Surry County, North Carolina and subsequently assigned to the Hon. James L. Gale of the North Carolina Business Court (the "Court"), alleging breaches of fiduciary duties and/or aiding and abetting thereof against Defendants relating to the Transaction. The actions were captioned as follows: *Orban v. Pike Corp., et al.*, Civil Action No. 14 CVS 1031 (N.C.B.C.), filed August 19, 2014 (the "Orban Case"); *Lieberg v. Pioneer Parent, Inc., et al.*, Civil Action No. 14 CVS 1127 (N.C.B.C.), filed September 8, 2014 (the "Lieberg Case"); *Beickert v. J. Eric Pike, et al.*, Civil Action No. 14 CVS 1161 (N.C.B.C.), filed September 17, 2014 (the "Beickert Case"); and *Umberger v. Pike Corp., et al.*, Civil Action No. 14 CVS 1202 (N.C.B.C.), filed September 25, 2014 (the "Umberger Case") (collectively, the "Related Actions").

On September 19, 2014, Pike filed a preliminary proxy statement on Schedule 14A (the "Preliminary Proxy") with the United States Securities and Exchange Commission ("SEC").

On September 25, 2014, plaintiff in the Umberger Case served defendants with a request for the production of documents in connection with the Transaction.

On September 30, 2014, plaintiff in the Umberger Case filed a Motion for Expedited Proceedings.

On October 1, 2014, plaintiff in the Umberger Case served a subpoena *duces tecum* and *ad testificandum* on Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Bank of America Merrill Lynch"), the financial advisor to a committee of the Pike Board Of Directors (the "Board") designated by the Board to review, evaluate, investigate, and/or negotiate strategic alternatives, which included the Transaction (the "Special Committee"). Bank of America Merrill Lynch served objections to the subpoena on October 13, 2014.

On October 6, 2014, plaintiffs in the Orban Case and the Umberger Case collectively filed a Motion to Consolidate Related Actions and Appoint a Leadership Structure ("Motion to Consolidate") seeking the consolidation of the Related Actions and the appointment of Lead Counsel and Liaison Counsel.

On October 7, 2014, plaintiff in the Beickert Case filed a Verified Amended Class Action and Shareholder Derivative Complaint alleging direct and derivative claims for breach of fiduciary duties to shareholders and aiding and abetting thereof.

On October 13, 2014, plaintiff in the Lieberg Case filed a joinder in support of the Motion to Consolidate.

On October 20, 2014, Pike filed an amended preliminary proxy statement on Schedule 14A (the "Amended Preliminary Proxy") with the SEC, which revised the median enterprise value to LTM EBITDA multiple from 6.5x to 7.0x in Bank of America Merrill Lynch's Selected Precedent Transaction Analysis, and Defendants agree that Plaintiffs were a material cause of that revision.

On October 22, 2014, plaintiff in the Beickert Case filed a Motion for Expedited Proceedings.

On October 23, 2014, Defendants filed their opposition to the Motion for Expedited Proceedings filed by the plaintiff in the Umberger Case.

On October 30, 2014, Pike filed a second amended preliminary proxy statement on Schedule 14A (the "Second Amended Preliminary Proxy") with the SEC.

Also, on October 30, 2014, the Court with consent of all parties issued an Order consolidating the Related Actions under the caption *In re Pike Corp. Shareholder Litigation*, No. 14 CVS 1202 (Master File) and designating the complaint filed in the Umberger Case as the operative complaint in the Consolidated Action ("Operative Complaint"). The Court also, with Defendants taking no position, appointed Kessler Topaz Meltzer & Check, LLP as Lead Counsel and Schiller & Schiller, PLLC as Liaison Counsel over the Consolidated Action.

On November 6, 2014, Plaintiffs filed a reply brief in support of their Motion for Expedited Proceedings, which was scheduled for a hearing before the Court on November 10, 2014.

**On November 10, 2014, the Parties informed the Court that they had reached an agreement on the scope of expedited discovery.**

On November 12, 2014, Defendants produced certain documents pursuant to the expedited discovery agreement.

Over the next two weeks, Lead Counsel negotiated with counsel for Defendants for additional document discovery and also negotiated with counsel for Bank of America Merrill Lynch, the financial advisor to the Special Committee, to provide documents on an expedited basis and for a representative of Bank of America Merrill Lynch to sit for a deposition.

On November 14, 2014, Pike filed a third amended preliminary proxy statement on Schedule 14A (the "Third Amended Preliminary Proxy") with the SEC.

On November 18, 2014, Pike filed a definitive proxy statement on Schedule 14A (the "Definitive Proxy") with the SEC, announcing, among other things, that the shareholder vote in connection with the Transaction would take place on December 18, 2014 (the "Shareholder Vote").

On November 20, 2014, Plaintiffs deposed defendant James L. Turner ("Turner"), the Lead Independent Director of Pike's Board and the Chair of the Special Committee.

On November 21, 2014, Plaintiffs deposed Nils Henner Krahe ("Krahe"), Managing Director of Bank of America Merrill Lynch, the Special Committee's financial advisor in connection with the Transaction.

Following the preceding two depositions, Lead Counsel negotiated and Defendants agreed to produce additional documents.

Plaintiffs conducted a detailed review and analysis of (a) the non-public documents produced by Defendants; (b) publicly available documents, including the Preliminary Proxy, Amended Preliminary Proxy, Second Amended Preliminary Proxy, Third Amended Preliminary Proxy, Definitive Proxy, and all accompanying Rule 13E-3 Transaction Statements; and (c) the deposition testimony.

On November 26, 2014, Plaintiffs filed a motion for preliminary injunction related to the Shareholder Vote and the terms of the Merger Agreement.

During expedited discovery, the Parties began engaging in discussions with respect to a potential resolution of Plaintiffs' claims, which culminated on December 1, 2014 in the Parties reaching an agreement-in-principle on the structure of a settlement of the Consolidated Action.

The Parties then informed the Court, and on December 1, 2014, the Court entered a Joint Motion for Extension of Time on All Briefing Deadlines for the Parties to complete negotiations to finalize a Memorandum of Understanding detailing the terms of the settlement.

On December 3, 2014, the hearing on Plaintiffs' Motion for Preliminary Injunction, scheduled for 2:00 p.m. on Wednesday, December 10, 2014, was cancelled.

Counsel to the Parties engaged in arm's-length negotiations concerning disclosure of further information to Pike shareholders and the terms and conditions of a potential resolution of the Consolidated Action. As a result of these negotiations, the Parties entered into a Memorandum of Understanding ("MOU") on December 8, 2014, containing the terms of the Parties' agreement-in-principle to resolve the Consolidated Action. Among other things, the MOU set forth the Parties' agreement-in-principle that, in consideration for the full and final settlement and dismissal with prejudice of the Consolidated Action and the release of any and all Released Claims (defined below), Defendants would make additional and supplemental material disclosures (the "Supplemental Disclosures") in a Form 8-K filed with the SEC, which was filed on December 9, 2014.

On December 11, 2014, Pike filed Amendment No. 5 to its Schedule 13E-3 in connection with the Transaction, disclosing in its entirety the Confidentiality Agreement, dated January 17, 2013, between Pike Electric Corporation and Court Square Capital GP III, LLC, which was the subject of certain of the Supplemental Disclosures.

On December 18, 2014, at a special meeting of Pike shareholders, the shareholders voted to adopt the Transaction, which was thereafter consummated on December 22, 2014.

Pursuant to the MOU, Plaintiffs conducted additional discovery to further confirm the fairness, reasonableness, and adequacy of the settlement. Defendants produced, and Plaintiffs' counsel reviewed approximately 120,000 pages of documents, including without limitation financial projections, merger agreements, board of directors meeting and committee meeting minutes, historical financial documents, internal emails, and other corporate documents.

On May 8, 2015, the Parties executed a Stipulation and Agreement of Compromise, Settlement, and Release (the "Stipulation"), documenting the terms of the Settlement.

Lead Counsel retained and consulted with a financial expert in connection with the prosecution of Plaintiffs' claims and reviewed with their expert confidential discovery materials as well as publicly available information.

On the basis of information available to them, including publicly available information, the expedited document discovery provided by Defendants, the depositions of Turner and Krahe, the additional confirmatory discovery described herein, and consultations with the financial expert retained by Lead Counsel, Lead Counsel has determined that the Settlement described herein is fair, reasonable and adequate to Plaintiffs and the Class.

### III.    SUMMARY OF SETTLEMENT TERMS

In consideration for the Settlement and dismissal with prejudice of the Consolidated Action and the releases provided herein, and as a result of the filing and prosecution of the Consolidated Action and after arm's-length negotiations with counsel for Plaintiffs, in conjunction with this Settlement, defendants agreed to provide and did provide additional disclosures to Pike's shareholders, as set forth in the Form 8-K filed by Pike with the SEC on December 9, 2014 concerning certain matters raised by Plaintiffs and their counsel.   Specifically, the Supplemental Disclosures included, among other things, additional information related to the timing and initiation of the Transaction, including the terms of a preexisting nondisclosure and "standstill" agreement entered into between Court Square and the Company, the retention of the Special Committee's financial advisor and the Special Committee's evaluation of potential conflicts of interest between Bank of America Merrill Lynch and Court Square, revisions to the Company's financial projections, and the "go-shop" process employed by the Company.

### IV.    REASONS FOR THE SETTLEMENT

Plaintiffs, through Plaintiffs' counsel, have completed a thorough investigation of the claims and allegations asserted in the Consolidated Action, as well as the underlying events and transaction relevant to those claims and allegations.   In connection with their investigation, Plaintiffs' counsel have reviewed confidential documents produced by Defendants, as well as publicly-available documents filed with the SEC, in connection with the Transaction.   Plaintiffs' counsel also retained and consulted with a financial expert in connection with the prosecution of Plaintiffs' claims and reviewed with their expert confidential discovery material as well as publicly available information.   Plaintiffs' counsel have also conducted the depositions of: (1) Turner, the Chairman of the Special Committee of the Board that negotiated the Transaction with Court Square; and (2) Krahe, a representative of Bank of America Merrill Lynch, which served as the Special Committee's financial advisor.   Plaintiffs' counsel also performed additional factual and legal research concerning the validity of Plaintiffs' claims and other claims that could have arisen from the Transaction.   Plaintiffs and Plaintiffs' counsel believe that the claims asserted by the Plaintiffs have merit, that the entry by Plaintiffs into the Stipulation is not an admission as to the lack of merit of any claims asserted in the Consolidated Action, and that Plaintiffs entered into the settlement set forth in the Stipulation only to secure substantial relief for the Class and to eliminate the risk, burden, and expense of further litigation, and because they believe that the Supplemental Disclosures provided Pike shareholders with substantial benefits and allowed them to cast a fully informed vote on the Transaction and enabled them to determine whether to seek appraisal of their shares pursuant to N.C. Gen. Stat. § 55-13-02.   In agreeing to the Settlement, Plaintiffs and their counsel considered: (i) the substantial benefits to the members of the Class, Pike and its shareholders from the Settlement and the pre-shareholder vote disclosures made in conjunction with the Settlement; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of the Consolidated Action; (iii) the probability of success on the merits based on the allegations contained in the Consolidated Action and the facts developed through discovery; and (iv) the desirability of permitting the Settlement to be consummated according to its terms.   Plaintiffs and their counsel believe that the Settlement is fair, reasonable and adequate to Plaintiffs and the Class.

Defendants each have vigorously denied, and continue to deny, that they have committed or aided and abetted in the commission of any violation of law or breaches of duty or engaged in any of the wrongful acts alleged in the Consolidated Action or the Related Actions, and expressly maintain that they diligently and scrupulously complied with their fiduciary, disclosure, and other legal duties, that they did not make any material misstatements or omissions in the Preliminary Proxy, Amended Preliminary Proxy, Second Amended Preliminary Proxy, Third Amended Preliminary Proxy, Definitive Proxy, or any other public disclosures, and that they entered into the Stipulation solely to eliminate the risk, burden, and expense of further litigation and to put to rest and terminate all the claims that were or could have been asserted against Defendants in the Consolidated Action or the Related Actions.

### V.    RELEASES

Under the terms of the Settlement, Plaintiffs and the Class agree to the complete discharge, dismissal with prejudice, settlement and release of the Released Persons of any and all manner of claims, debts, demands, rights, actions or causes of action, liabilities, damages, interest, losses, obligations, duties, judgments, suits, fees (including attorneys' fees other than the attorneys' fees provided for in the Stipulation), expenses, penalties, sanctions, costs, agreements, matters, issues and controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, accrued or un-accrued, foreseen or unforeseen, liquidated or un-liquidated, at law or in equity, matured or unmatured, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity (including, but not limited to, any claims, arising under state, local, federal, foreign, statutory, or common law or any other law, rule or regulation), that have been, could have been, or in the future can or might be asserted in the Consolidated Action, the Related Actions, or in any court, tribunal, forum or proceeding by any Releasing Persons arising out of, relating in any way to, or involving, directly or indirectly, any of the allegations, facts, events, acquisitions, transactions, matters, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related in any way to the Consolidated Action or the Related Actions or the subject matter of the Consolidated Action or the Related Actions, including, without limitation: (i) the Transaction; (ii) the Merger Agreement, the Rollover Agreement, the Voting Agreement, and/or any related agreements, including any amendments thereto; (iii) any actions, deliberations or negotiations in connection with the Transaction, the Merger Agreement, the Rollover Agreement, and/or the Voting Agreement, including the process of deliberation or negotiation by each of Pike, the Court Square Defendants and any of their respective officers, directors, employees, general or limited partners or partnerships, limited liability companies, members, representatives or advisors; (iv) the consideration offered, paid or received in connection with the Transaction; (v) the disclosures (including the Preliminary Proxy, Amended Preliminary Proxy, Second Amended Preliminary Proxy, Third Amended Preliminary Proxy, Definitive Proxy, as well as any amendments thereto, or any other disclosures, public filings, periodic reports, press releases, proxy statements or other statements issued, made available or filed concerning the Transaction, the Merger Agreement, the Rollover Agreement, and/or the Voting Agreement) or disclosure obligations of any Defendant or Released Person relating to

or discussing, directly or indirectly, the Transaction, the Merger Agreement, the Rollover Agreement, and/or the Voting Agreement; (vi) any fiduciary obligations of any of the Released Persons in connection with the Transaction, the Merger Agreement, the Rollover Agreement, and/or the Voting Agreement, including the negotiation and consideration of the Transaction, the Merger Agreement, the Rollover Agreement, and/or the Voting Agreement or any disclosures related thereto, and/or (vii) the Shareholder Vote and/or any shareholder vote on the Transaction (collectively, the "Released Claims"); provided, however, that the Released Claims shall not include any claims to enforce the Settlement, the Stipulation, or the rights of any member of the Class to seek appraisal of their Pike shares pursuant to N.C. Gen. Stat. § 55-13-02.

"Released Persons" means each of the Defendants and each of their respective past and/or present family members, heirs, estates, executors, administrators, predecessors, successors, assigns, parent entities, subsidiaries, associates, affiliates, employees, officers, directors, shareholders, general or limited partners or partnerships, limited liability companies, trusts, members, managing members, agents, representatives, attorneys, financial or investment advisors, advisors, consultants, accountants, investment bankers, commercial bankers, trustees, engineers, insurers, co-insurers and re-insurers, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, whether or not such Released Person was named, served with process or appeared in the Consolidated Action.

"Releasing Persons" means Plaintiffs and each of the other members of the Class, on behalf of themselves and each of their agents, representatives, heirs, executors, administrators, predecessors, successors and assigns, and any other person or entity who has the right, ability, standing or capacity to assert, prosecute or maintain on behalf of any Plaintiff or Class member any of the Released Claims or to obtain the proceeds of any recovery in whole or in part (whether individual, derivative, representative, legal, equitable or any other type or in any other capacity).

Reciprocally, under the terms of the Settlement, Defendants and the Released Persons agree to release, relinquish, and discharge each and all of Plaintiffs, Plaintiffs' counsel and members of the Class and the Releasing Person, from any and all claims, complaints, allegations or sanctions arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Consolidated Action, the Related Actions, or the Released Claims ("Defendants' Released Claims").

The Settlement is intended to extinguish all Released Claims and Defendants' Released Claims and, consistent with such intentions, the Releasing Persons and Released Persons shall waive their rights to the extent permitted by state law, federal law, foreign law, or principle of common law, which may have the effect of limiting the releases set forth above. This shall include Unknown Claims. "Unknown Claims" means (i) any claim that a Releasing Person does not know or suspect exists in his, her, or its favor at the time of the release of the Released Claims as against the Released Persons, including without limitation those which, if known, might have affected the decision to enter into the Settlement and (ii) any claim that a Released Person does not know or suspect exists in his, her, or its favor at the time of the release of the Defendants' Released Claims as against the Releasing Persons, including without limitation those which, if known, might have affected the decision to enter into the Settlement. This shall include a waiver of any rights pursuant to § 1542 of the California Civil Code (or any similar, comparable or equivalent provision under state or federal law) which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Persons acknowledge that members of the Class and/or other Pike shareholders may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, as Plaintiffs and on behalf of the Class, to fully, finally, and forever settle and release any and all claims released hereby known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. Plaintiffs and the other undersigned parties acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for, constitutes separate consideration for, and was a key element of the Settlement and is being relied upon by each and all of the Defendants in entering into the Stipulation. Notwithstanding anything in the foregoing and for the avoidance of doubt, for Unknown Claims to be released, as with any other Released Claim, they must arise out of, relate in any way to, or involve, directly or indirectly, any of the allegations, facts, events, acquisitions, transactions, matters, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related in any way to the Consolidated Action or the Related Actions or the subject matter of the Consolidated Action or the Related Actions.

## VI.    CLASS ACTION DETERMINATION

The Court has ordered that the Consolidated Action shall be preliminarily certified as a non-opt-out class action for purposes of the Settlement only, pursuant to Rule 23 of the North Carolina Rules of Civil Procedure. At the Settlement Hearing, the Court will consider, among other things, whether the Class should be certified permanently.

## VII.    THE SETTLEMENT HEARING

The Court has scheduled the Settlement Hearing to be held in the North Carolina Business Court, 211 North Greene Street, Greensboro, NC 27401 at the time identified in Section I above to determine: (i) whether the Court should approve the Settlement as fair, reasonable and adequate to the Class; (ii) whether to enter judgment dismissing the Consolidated Action with prejudice and extinguishing and releasing the Released Claims; (iii) whether the Class should be permanently certified pursuant to Rule 23 or the North Carolina Rules of Civil Procedure; (iv) whether the Court should certify plaintiff Annabelle

Umberger as the Class Representative in the Consolidated Action and Lead Counsel as Class Counsel in the Consolidated Action; (v) if the Court approves the Settlement, whether the Court should grant Plaintiffs' application for payment of attorneys' fees and reimbursement of expenses; and (vi) to consider such other matters as may properly come before the Court.

The Court may postpone, reschedule or adjourn the Settlement Hearing without further notice to the Class other than by filing a notice on the docket in the Consolidated Action in advance of the Settlement Hearing, or announcement at the Settlement Hearing or any adjournment thereof.  The Court also has reserved the right to approve the Stipulation and the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties and without further notice to the Class.

## VIII.    YOUR RIGHT TO APPEAR AND OBJECT

Any member of the Class who objects to any aspect of the Settlement, certification of the Class, entry of the Final Order and Judgment, and/or Plaintiffs' counsel's application for payment of attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person by his, her or its attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the judgment to be entered thereon, and no papers or briefs submitted by any member of the Class or any other person shall be received and considered by the Court unless not later than August 12, 2015 such person files with the Court and serves upon all of the counsel listed below, at the addresses listed below, the following: (i) proof of ownership of Pike common stock at any time beginning August 4, 2014 through and including December 22, 2014; (ii) written notice of the person's intention to appear; (iii) a detailed statement of the objections and the reasons for desiring to appear and to be heard; and (iv) a detailed statement of all of the grounds for such objections and the reasons for desiring to appear and to be heard, as well as all documents or writings which the person desires the Court to consider.

Clerk of Court
North Carolina Business Court
211 North Greene Street
Greensboro, NC 27401

- and -

Clerk of Superior Court for Surry County
P.O. Box 345
Dobson, NC 27017

***Court overseeing the Consolidated Action***

J. Daniel Albert
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax: (610) 667-7056

***Lead Counsel for Plaintiffs***

Gregory J. Murphy
Scott M. Tyler
MOORE & VAN ALLEN PLLC
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Tel:  (704) 331-2463
Fax: (704) 378-1963

***Counsel for defendants Pike Corporation,***
***J. Eric Pike, Charles E. Bayless, James R. Helvey, III,***
***Peter Pace, Daniel J. Sullivan, and James L. Turner***

Stuart T. Steinberg
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel:  (215) 994-4000
Fax: (215) 994-2222

***Counsel for defendants Court Square Capital Partners,***
***Pioneer Parent, Inc. and Pioneer Merger Sub, Inc.***

Any person or entity who fails to object in the manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court shall forever be barred from making any such objection in the Consolidated Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given.

### IX.      FINAL ORDER AND JUDGMENT OF THE COURT

If the Settlement is approved by the Court following the Settlement Hearing as fair, reasonable and adequate to the Class, the Parties will jointly request that the Court enter a Final Order and Judgment which will, among other things: (1) certify the Consolidated Action as a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of the Class; (2) determine that the requirements of the North Carolina Rules of Civil Procedure and due process have been satisfied in connection with the Notice provided to the Class; (3) certify plaintiff Annabelle Umberger in the Consolidated Action as Class Representative and Lead Counsel as Class Counsel in the Consolidated Action; (4) approve the Settlement as fair, reasonable and adequate to the Class; (5) dismiss the Consolidated Action with prejudice on the merits, as against any and all Defendants, without costs except as herein provided, and release Defendants and any other of the Released Persons from the Released Claims; and (6) determine any payment of attorneys' fees and expenses incurred by Plaintiffs as provided in Section X below.

### X.      THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

If the Court approves the Settlement, Plaintiffs intend to petition the Court at the Settlement Hearing to approve the payment of attorneys' fees and expenses by Pike, its successor in interest, and/or the insurer(s) of Pike, or its successor in interest, in an amount not to exceed in the aggregate $595,000 (including costs, disbursements, and expert fees), which included over $38,000 of out-of-pocket expenses incurred by Plaintiffs for expert and other costs associated with their prosecution of the Consolidated Action. Defendants have not agreed to this amount. Final resolution by the Court of the fee application shall not be a precondition to the dismissal of the Consolidated Action in accordance with the Stipulation and the fee application may be considered separately from the proposed Settlement of the Consolidated Action.

### XI.      NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS.

Brokerage firms, banks and/or other persons or entities who held shares of Pike common stock for the benefit of others are requested to immediately send this Notice to all such beneficial owners or to provide the above-listed counsel with a list of such beneficial owners within five (5) days of receipt of this Notice. Pike will reimburse the expenses incurred by anyone complying with the instructions set forth in the preceding sentence. If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such additional copies or provision of a list of names and mailing addresses or beneficial owners may be made to:

In re Pike Corp. Shareholder Litigation
c/o KCC Class Action Services
P.O. Box 40008
College Station, TX 77842-4008
PikeShareholderLitigation@kccllc.com

### XII.      SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Consolidated Action, the Stipulation and all other papers or proceedings herein are only summaries and do not purport to be comprehensive. For the full details of the Consolidated Action, the claims that have been asserted in the Consolidated Action and the terms and conditions of the Settlement, including a complete copy of the Stipulation and related Orders and proposed forms of Orders, you are referred to the Court file for the Consolidated Action (accessible at http://www.ncbusinesscourt.net) and the public filings of the Company.

### XIII.      GENERAL INQUIRIES

General inquiries about the Settlement should be directed to the attention of Lead Counsel as follows:

J. Daniel Albert
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

**PLEASE DO NOT CALL OR WRITE THE COURT WITH GENERAL INQUIRIES.**

**In re Pike Corp. Shareholder Litigation**
c/o KCC Class Action Services
P.O. Box 40008
College Station, TX  77842-4008

«ScanString»

Control#: PKS-«AccountID»-«NoticeID»
«Line1»
«Line2»
«Line3»
«Line4»
«Line5»
«Line6»
«Line7»

**PKS**

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| IN RE PMFG, INC. | CONSOLIDATED |
| STOCKHOLDER LITIGATION | C.A. No. 11223-VCN |

**NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTION
AND HEARING ON PROPOSED SETTLEMENT**

TO: ANY PERSON WHO WAS A RECORD HOLDER OR BENEFICIAL OWNER OF PMFG, INC. ("PMFG") COMMON STOCK AT ANY TIME BETWEEN AND INCLUDING MAY 4, 2015 AND SEPTEMBER 3, 2015 (THE "CLASS PERIOD"), REGARDLESS OF THE DATE OF PURCHASE OR SALE OF PMFG COMMON STOCK, THEIR RESPECTIVE SUCCESSORS IN INTEREST, SUCCESSORS, PREDECESSORS IN INTEREST, REPRESENTATIVES, TRUSTEES, EXECUTORS, ADMINISTRATORS, HEIRS, ASSIGNS OR TRANSFEREES, IMMEDIATE AND REMOTE, AND ANY PERSON OR ENTITY ACTING ON BEHALF OF OR CLAIMING UNDER ANY OF THEM, AND EACH OF THEM, TOGETHER WITH THEIR PREDECESSORS AND SUCCESSORS AND ASSIGNS.

Please read this Notice carefully and in its entirety. Your rights will be affected by the legal proceedings in the above-captioned Action (the "Action"). If the Court approves the proposed settlement, you will be forever barred from contesting the fairness of the proposed settlement or pursuing the "Released Claims" (defined below).

<u>SPECIAL NOTICE TO BROKERS, BANKS AND OTHER NOMINEES</u>:

BROKERAGE FIRMS, BANKS, AND OTHER PERSONS OR ENTITIES WHO WERE RECORD OWNERS OF PMFG COMMON STOCK, BUT NOT BENEFICIAL OWNERS, ARE REQUESTED TO SEND THIS NOTICE PROMPTLY TO THE BENEFICIAL OWNERS. ADDITIONAL COPIES FOR TRANSMITTAL TO BENEFICIAL OWNERS ARE AVAILABLE BY REQUEST DIRECTED TO:

PMFG Stockholder Settlement Notice Administrator
c/o KCC Class Action Services
P.O. Box 40008
College Station, TX 77842-4008

## I.    PURPOSE OF THIS NOTICE

You received this Notice because you have been identified as a stockholder of PMFG. The purpose of this Notice is to inform you of the Action, a proposed settlement of the Action (the "Settlement"), and a hearing to be held by the Court of Chancery of the State of Delaware (the "Court") to consider whether to approve the Settlement. The hearing will be held in the Kent County Courthouse for the Delaware Court of Chancery, 414 Federal Street, Dover, Delaware 19901, on September 14, 2016 at 2:00 p.m. (the "Settlement Hearing") to:

1.    determine whether the Settlement should be approved by the Court as fair, reasonable, adequate and in the best interest of the Class (defined below);

2.    determine whether the Court should enter the proposed order and final judgment pursuant to the Settlement, dismissing the claims asserted in this Action with prejudice against the plaintiffs in the Action (the "Plaintiffs") and all Class Members (defined below) and releasing the Released Claims (defined below) against the Released Persons (defined below) (the "Order and Final Judgment");

3.    determine whether the provisional class action certification should be made final and whether Plaintiffs and their counsel have adequately represented the Class (defined below);

4.    rule on the application of Plaintiffs' Counsel (defined below) for an award of attorneys' fees and expenses (the "Fee Application");

5.    hear and determine any objections to the Settlement, the Fee Application, or the final certification of the Class (defined below); and

6.    hear any such other matters as the Court may deem appropriate.

The Court has determined that the Action shall be preliminarily maintained as a class action for purposes of the Settlement only under Rule 23 of the Court of Chancery Rules, pursued by Plaintiffs, as representatives of and on behalf of the Class Members (defined below). The defendants are Peter J. Burlage, Charles M. Gillman, Kenneth H. Shubin Stein, Kenneth R. Hanks, Robert McCashin, R. Clayton Mulford, Howard G. Westerman (collectively, the "Individual Defendants"), along with CECO Environmental Corp., Top Gear Acquisition Inc. and Top Gear Acquisition II LLC (the "CECO Defendants," and collectively with the Individual Defendants, the "Defendants"). Plaintiffs are Terry Brown, Georgia Brown and C. Jeffrey Herre ("Plaintiffs," and collectively with Defendants, the "Parties").

## II.    BACKGROUND OF THE ACTION

A.    On May 4, 2015, PMFG announced that it had entered into an agreement and plan of merger (the "Merger Agreement") by which CECO and its wholly-owned merger subsidiaries, Top Gear Acquisition, Inc. and Top Gear Acquisition II LLC, agreed to acquire all outstanding shares of PFMG stock for $6.85 per share in cash or shares of CECO common stock having an equivalent volume weighted average trading price as set forth in the Merger Agreement, all such elections being subject to proration such that PMFG's outstanding shares will be exchanged for approximately 55% of CECO common stock and 45% cash (the "Merger").

B.    On June 29, 2015 and July 17, 2015, Plaintiffs filed two purported class action lawsuit against Defendants in this Court which challenged the proposed Merger, captioned *Herre v. Burlage, et al.,* C.A. No. 11223-VCN, and *Brown v. CECO Environmental Corp., et al.*, C.A. No. 11306-VCN.

C.    On July 7, 2015, Plaintiff Herre served his First Request for the Production of Documents on all Defendants and served a Subpoena Duces Tecum and Ad Testificandum on Stifel, Nicolaus & Company, Inc. ("Stifel"), which had served as PMFG's financial advisor in connection with the Merger.

D.    On July 28, 2015, the Court entered an Order of Consolidation and Appointment of Co-Lead Counsel, appointing the law firms of Brodsky & Smith, LLC and Levi & Korsinsky, LLP as Plaintiffs' Co-Lead Counsel and Rigrodsky & Long, P.A. as Plaintiffs' Liaison Counsel.

E.    On July 28, 2015, the Court granted a [Proposed] Order Governing the Production and Exchange of Confidential and Highly Confidential Information and a Stipulation and [Proposed] Order Regarding Case Schedule.

F.  On July 29, 2015, PMFG announced that the special meeting of stockholders regarding the proposed Merger had been scheduled for September 2, 2015 (the "Stockholder Vote").

G.  On July 31, 2015, PMFG and CECO filed with the U.S. Securities & Exchange Commission ("SEC") a Joint Proxy Statement in connection with the Merger pursuant to Section 14(a) of the Securities Exchange Act of 1934 (together with any exhibits and annexes thereto, and as amended or supplemented from time to time, the "Proxy Statement") which, among other things, summarizes and provides the Merger Agreement, provides an account of the events that led up to execution of the Merger Agreement, and summarizes the financial analyses conducted by Stifel.

H.  Defendants and Stifel produced, and Plaintiffs' Counsel (defined below) reviewed, more than 24,000 pages of confidential documents during the course of expedited discovery, including minutes of meetings of PMFG's Board of Directors, presentations by Stifel, materials relating to the Cannell proxy contest, "go-shop" materials, correspondence, forecasts, projections, and e-mail communications from Defendant Peter J. Burlage, Chairman of the Board and Chief Executive Officer of PMFG, and Defendant Charles M. Gillman, a director of PMFG who was appointed to the PMFG Board of Directors following the Cannell proxy contest.

I.  On August 12, 14, and 26, respectively, Plaintiffs deposed Defendants Burlage and Gillman, and a representative from Stifel.

J.  On August 17, 2015, Plaintiffs filed their Motion for Preliminary Injunction, seeking to enjoin the Stockholder Vote. The Court scheduled a hearing on Plaintiffs' motion for August 31, 2015.

K.  On August 23, 2015, counsel for the Parties reached an agreement in principle, set forth in a Memorandum of Understanding ("MOU").

L.  On August 24, 2015, Defendants made the supplemental disclosures that Plaintiff requested regarding the Merger in Form 8-Ks that were filed with the SEC.

M.  On September 2, 2015 the stockholders of PMFG and CECO approved the Merger.

N.  The Merger closed on September 3, 2015.

O.  Defendants have vigorously denied, and continue to vigorously deny, all allegations of wrongdoing, fault, liability or damage to Plaintiffs or the Class (defined below and certification of which is only considered in connection with the contemplated Settlement), that any of them committed or have threatened to commit, or aided and abetted the commission of, any violation of law or breach of fiduciary duty to the Plaintiffs, the Class (defined below), or anyone else, or otherwise engaged in any wrongdoing, or acted improperly in any way, and expressly maintain that they believe the Action has no merit, they diligently and scrupulously complied with their fiduciary and other legal duties, and are entering into this Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

P.  Plaintiffs state that they brought their claims in good faith and believed that they had substantial merit when filed and are settling these claims solely because they believe that the Supplemental Disclosures provided substantial benefits to the Class (defined below).

Q.  Plaintiffs state that, following a full analysis of the strengths and weaknesses of their case, including review and analysis of certain confidential non-public documents concerning the fairness of the merger consideration, the testimony of PMFG's CEO, one of its directors, and a representative from Stifel, and in consultation with their valuation expert, they and their counsel have concluded that the terms contained in this Settlement are fair, reasonable, adequate and in the best interests of PMFG stockholders and that it is reasonable to pursue the Settlement based upon those terms and the procedures outlined herein.

R.    The Parties entered into the Stipulation of Settlement and Release (the "Stipulation") on April 13, 2016 in which they agreed, subject to the approval of the Court and pursuant to Delaware Court of Chancery Rule 23 and other conditions set forth in the Stipulation, that the Action shall be settled, compromised, and dismissed, on the merits and with prejudice (and without cost to any party except as provided in the Stipulation), and that the Released Claims (defined below) shall be finally and fully compromised, settled, released, discharged, extinguished, and dismissed as to all Released Persons (defined below), Plaintiffs, their counsel, and any member of the Class (defined below), in the manner and upon the terms set forth in the Stipulation.

S.    On April 14, 2016, the Parties submitted the Stipulation to the Court, and on May 11, 2016, the Court entered an order that provides for, among other things, the scheduling of the Settlement Hearing, and an injunction against the commencement or prosecution of any action by any Class Member asserting any of the claims that are subject to the Settlement of the Action. On June 2, 2016, the Court entered an order that amended the scheduling of the Settlement Hearing.

## III.    SETTLEMENT CONSIDERATION

Plaintiffs, acting in their individual capacities and on behalf of the Class (defined below), and Defendants have agreed upon the Settlement of the Action. The terms and conditions of the Settlement are set forth in detail in the Stipulation, which has been filed with the Court. The Settlement is subject to and will become effective only upon approval by the Court. This Notice includes a summary of various terms of the Settlement, and does not purport to be a comprehensive description of its terms, which are available for review, as described below.

Pursuant to the MOU, and as a result of the prosecution of the Action and the efforts of counsel for the Plaintiffs ("Plaintiffs' Counsel"), PMFG filed the Supplemental Disclosures with the SEC, containing additional information regarding the Merger, a copy of which is annexed hereto as Exhibit A.

Other than any attorneys' fees and expenses that may be awarded by the Court, Defendants shall have no other obligations, liabilities, or responsibilities in connection with the proposed Settlement except as specifically set forth in the Stipulation.

## IV.    RELEASES

Upon Final Court Approval of the Settlement (defined below), pursuant to Court of Chancery Rule 23:

A.    The Action will be dismissed with prejudice and without costs, except as provided in the Stipulation.

B.    Plaintiffs and the Class will release the Released Persons from all Released Claims.

C.    Defendants will release Plaintiffs, their counsel, and any member of the Class from all Defendants' Released Claims.

D.    "Released Claims" means any and all claims of any kind whatsoever by or on behalf of the Releasing Persons (as defined below) based on his, her or its ownership of PMFG stock during the Class Period, against any and all Released Persons (as defined below), which the Releasing Persons ever had, now have, or hereafter can, shall or may have, by reasons of, arising out of, relating to, or in connection with (1) any disclosures (or alleged omissions) made to PMFG's stockholders concerning the Merger in any form, or (2) any fiduciary duty claims concerning the decision to enter into or effectuate the Merger; *provided, however*, that the Released Claims shall not include claims to enforce the Settlement, or claims for appraisal under Section 262 of the Delaware General Corporation Law.

E.     "Released Persons" means Defendants Peter J. Burlage, Charles M. Gillman, Kenneth H. Shubin Stein, Kenneth R. Hanks, Robert McCashin, R. Clayton Mulford, Howard G. Westerman, CECO Environmental Corp., Top Gear Acquisition Inc. and Top Gear Acquisition II LLC, and/or any of their family members, parent entities, associates, predecessors, successors, affiliates or subsidiaries and each and all of their respective past or present officers, directors, stockholders, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, engineers, advisors or agents, insurers, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, predecessors, successors and assigns, including but not limited to Top Gear Acquisition, Inc. and/or Top Gear Acquisition II LLC.

F.     "Releasing Persons" means Plaintiffs in the Action or any Class Member.

## V.     REASONS FOR THE SETTLEMENT

The Parties negotiated at arms' length to reach the Settlement and the form and content of the exhibits attached thereto, including, but not limited to, this Notice to PMFG stockholders and Class Members (defined below).

Plaintiffs' Counsel conducted a thorough investigation of the claims and allegations asserted in the Action, as well as the underlying events and transactions relevant to the Action, including (i) reviewing public documents concerning PMFG and the Merger; (ii) reviewing non-public documents produced by Defendants and Stifel; and (iii) deposing Peter Burlage, PMFG's Chairman and CEO, Charles M. Gillman, a PMFG director, and a representative of Stifel.

In evaluating and agreeing to the Settlement, Plaintiffs and their counsel have considered: (i) the benefits to the Class Members from the consummation of the Transaction; (ii) the facts developed during discovery in the litigation and the law applicable thereto; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (iv) the desirability of permitting the Settlement to be consummated according to its terms; and (v) the conclusion of Plaintiffs and their counsel that the terms and conditions of the Settlement are fair, reasonable, and adequate.

Defendants deny any improper conduct, breach of any duty whatsoever, or that they otherwise acted in an improper manner or failed to act in a proper manner in connection with the Transaction, and are settling the Action solely to avoid the risk, burden, and expense of further litigation. Defendants maintain that they have not committed any violations of law or breaches of fiduciary duty or any wrongdoing whatsoever, and that they have not aided and abetted any violations of law or breaches of fiduciary duty, including in connection with the Transaction, the disclosures or otherwise. Defendants' entry into this Settlement is not an admission as to any of the claims asserted in the Action.

## VI.     CLASS ACTION DETERMINATION

The Court has ordered that the Action shall be preliminarily maintained as a class action for purposes of the Settlement only, with Plaintiffs designated as the representatives of the Class and their counsel, Brodsky & Smith, LLC and Levi & Korsinsky, LLP, as Lead Class Counsel, pursuant to Delaware Court of Chancery Rules 23(a), (b)(1) and (b)(2), on behalf of a class (the "Class," to be composed of "Class Members") consisting of:

any and all record and beneficial owners of PMFG common stock during the period beginning on May 4, 2015 through September 3, 2015, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of any of them, and each of them. Excluded from the Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heir, successors or assigns of any such excluded person.

At the Settlement Hearing, the Court will consider, among other things, whether the Class should be certified permanently.

Inquiries or comments about the Settlement should be directed in writing to the attention of counsel for the Class as follows:

Marc L. Ackerman
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
(610) 667-6200 (Telephone)
(610) 667-9029 (Facsimile)

*– and –*

Shannon L. Hopkins
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, CT 06901
(646) 453-8910 (Direct)
(203) 992-4523 (Telephone)
(212) 363-7171 (Facsimile)

*Plaintiffs' Co-Lead Counsel*

## VII.    THE SETTLEMENT HEARING

The Court retains the right to adjourn the Settlement Hearing or any part thereof, including the consideration of the Fee Application, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modification(s) thereto as may be consented to by the Parties as provided for in the Stipulation and without further notice to the Class.

## VIII.   YOUR RIGHT TO APPEAR AND OBJECT

Any member of the Class who objects to the Stipulation, the Settlement, the final certification of the Class, the adequacy of representation by Plaintiffs and their counsel, the proposed Order and Final Judgment to be entered in the Action, and/or the Fee Application, or who otherwise wishes to be heard with respect to the Settlement, may appear in person or by his, her, or its counsel at the Settlement Hearing and present evidence or argument that may be proper or relevant, subject to compliance with the following procedures. If any member of the Class wishes to so object or otherwise be heard, appear, or present evidence or argument (such a Class Member, an "Objector"), unless the Court shall direct upon such Objector's application and for good cause shown, such Objector must, not later than fourteen (14) calendar days prior to the date of the Settlement Hearing, file with the Register in Chancery, Kent County Courthouse for the Delaware Court of Chancery, 414 Federal Street, Dover, Delaware 19901, copies of the following:

1.  a written notice of intention to appear, identifying the name, address, and telephone number of the objector and, if represented, the Objector's counsel;

2.  proof of ownership certifying that the Objector is a member of the Class;

3.  a listing of all of the Objector's transactions in PMFG's common stock during the Class Period;

4.  a detailed written statement of the Objector's objections to any matters before the Court;

5.  the grounds for such objections and any reasons that the objector desires to appear and be heard;

6.  all documents or writings the Objector desires the Court to consider; and

7.  a statement advising the Court and the Parties of all other court proceedings in which the Objector and/or the Objector's counsel has made an objection to a class action settlement in the past three years, identified by case name, docket number, and the court in which the prior objections were filed, as well as the nature of the objections made.

Such papers also must be served by e-filing (in accordance with applicable Court rules), by overnight mail, or by hand delivery upon on the following counsel of record:

Marc L. Ackerman
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
(610) 667-6200 (Telephone)
(610) 667-9029 (Facsimile)

*Plaintiffs' Co-Lead Counsel*

*– and –*

Thomas R. Jackson
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 220-3939 (Telephone)
(214) 969-5100 (Facsimile)

*Counsel to Defendants*

Any person who fails to object to the Stipulation, the Settlement, the final certification of the Class, the adequacy of representation by Plaintiffs and their counsel, the proposed Final Order and Judgment, or the Fee Application in the manner described above shall be deemed to have waived the right to so object, including any right of appeal, and shall be forever barred from raising such objection in this Action or any other action or proceeding, unless the Court orders otherwise. No person other than the Plaintiffs' Counsel and counsel for any of Defendants shall be heard, and no papers, briefs, pleadings, or other documents submitted by any person shall be considered, except by Court order for good cause shown, unless an objector has complied with the foregoing requirements. Any Class Member who does not object to the Stipulation, the Settlement, the final certification of the Class, the adequacy of representation by Plaintiffs and their counsel, the proposed Order and Final Judgment, or the Fee Application, and who does not otherwise wish to be heard, need not take any action with respect to this Notice or the proposed Settlement.

## IX.     INTERIM INJUNCTION

Pending final determination of whether the Settlement should be approved, Plaintiffs and all Class Members are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action, in any forum, asserting any Released Claims, either directly, representatively, individually, derivatively, or in any other capacity, against any Released Party, provided, however, that this interim injunction does not apply to any proceeding as may be necessary to carry out the terms and conditions of the Settlement and any application for an award of attorneys' fees and expenses by Plaintiffs' counsel.

## X.     ORDER AND FINAL JUDGMENT OF THE COURT

If the Settlement is approved by the Court following the Settlement Hearing as fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class, the Parties to the Action shall jointly request that the Court enter the Order and Final Judgment which will, among other things: (i) confirm final certification of the Action as a non opt-out class action pursuant to Court of Chancery Rules 23(a), (b)(1), and (b)(2) on behalf of the Class; (ii) determine that the requirements of the Rules of the Court of Chancery and due process have been satisfied in connection with the Notice provided to the Class; (iii) approve the Settlement as fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class; (iv) dismiss the Action with prejudice as against any and all Defendants, without costs except as provided in the Stipulation, and release Defendants and all other Released Persons from the Released Claims; (v) permanently bar and enjoin Plaintiffs and all Class Members from instituting, commencing, prosecuting, or participating in any of the Released Claims against any of the Released Persons; and (vi) determine any award of attorneys' fees and expenses to Plaintiffs' Counsel as provided in Section XII below.

## XI.     FINAL APPROVAL OF THE SETTLEMENT

As used in the Stipulation, "Final" approval of the Settlement means that the Court has entered an order approving the Settlement in accordance with the Stipulation, and that such order is finally affirmed on appeal or is no longer subject to appeal and the time for any petition for reargument, appeal, or review, by leave, certiorari, or otherwise, has expired.

The Settlement is conditioned upon each of the following:

1.     The Settlement receiving Final Court Approval (including resolution of any and all appeals);

2.     The Court approving a complete release of all Released Persons; and

3.     The Action being dismissed with prejudice as to all Defendants.

## XII.     APPLICATION OF ATTORNEYS' FEES AND EXPENSES

After negotiating the substantive terms of the Settlement, the Parties negotiated in good faith a fair and reasonable sum to be paid for Plaintiffs' attorneys' fees and expenses. Plaintiffs' counsel intends to file the Fee Application seeking an award of attorneys' fees and expenses up to but not exceeding $375,000. Defendants do not oppose Plaintiffs' Fee Application as long as it does not exceed $375,000. No other application for attorneys' fees and expenses shall be filed, and Plaintiffs' Counsel expressly waives any right to seek any award of such fees and expenses in connection with the Action, in this Court or in any other court, except as provided in this Paragraph.

In the event that the Court grants all or part of Plaintiffs' Counsel's Fee Application, PMFG (or its insurer(s) or any successor-in-interest) will pay or cause to be paid to Brodsky & Smith, LLC, on behalf of and for the benefit of all Defendants, the full amount of any fee award entered by the Court, within ten (10) business days after both of the following events have occurred: (i) entry of the Court's order awarding such fees; and (ii) receipt by PMFG (or its insurer(s) or any successor-in-interest) of wire transfer instructions for the payment and Brodsky & Smith, LLC's federal tax identification number. In the event that any such order is reversed or modified on appeal, Plaintiffs' Counsel shall refund to PMFG (or its insurer(s) or any successor-in-interest) the amount by which the fees and expenses were reduced and all interest accrued or accumulated thereon.

No other application for attorneys' fees and expenses shall be filed, and Plaintiffs' Counsel have expressly waived any right to seek any award of such fees and expenses in connection with the Action, except as provided in the Stipulation. The Court may consider and rule upon the fairness, reasonableness, and adequacy of the Settlement independently of any award of attorneys' fees and expenses. The Parties have agreed that any agreement or approval of an award of attorneys' fees and expenses shall not be a condition to Final Court Approval of the Settlement. The failure of the Court to approve any Fee Application, in whole or in part, shall have no effect on the Settlement, and final resolution by the Court of any Fee Application shall not be a precondition to the dismissal of the Action.

Except as specifically provided for in the Stipulation, Defendants shall bear no expenses, costs, damages, or fees alleged or incurred by Plaintiffs, by any member of the Class, or by any of their attorneys, experts, advisors, agents, or representatives.

## XIII.  NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks, and/or other persons or entities who held shares of PMFG common stock at any time from and including May 4, 2015 through September 3, 2015, for the benefit of others are requested to immediately send this Notice to all such beneficial owners. If additional copies of this Notice are needed for forwarding to such beneficial owners, any requests for such additional copies may be made to:

PMFG Stockholder Settlement Notice Administrator
c/o KCC Class Action Services
P.O. Box 40008
College Station, TX 77842-4008
PMFGStockholderLitigation@kccllc.com

## XIV.  SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Action, the Stipulation, and all other papers or proceedings herein are only summaries and do not purport to be comprehensive. For the full details of the Action, the claims that have been asserted in the Action, and the terms and conditions of the Settlement, including a complete copy of the Stipulation and related orders and proposed forms of orders, you are referred to the Court files for the Action. You or your attorney may examine the public Court files during regular business hours of each business day at the office of the Register in Chancery, Kent County Courthouse for the Delaware Court of Chancery, 414 Federal Street, Dover, Delaware 19901.

**PLEASE DO NOT CALL OR WRITE THE COURT.**

Dated: June 10, 2016                                     BY ORDER OF THE COURT

_____
Register in Chancery

**PMFG Stockholder Settlement Notice Administrator**
c/o KCC Class Action Services
P.O. Box 40008
College Station, TX  77842-4008

«ScanString»

Postal Service: Please do not mark barcode

Control#: PGX-«AccountID»-«NoticeID»
«Line1»
«Line2»
«Line3»
«Line4»
«Line5»
«Line6»
«Line7»

**PGX**

| | |
|---|---|
| *Anderson v. The Attorney General of Canada* | Sup. Ct. NL, No. 2007 01T4955CP |
| *Kearney v. Equilon Enterprises LLC* | D. Ore., 3:14-cv-00254 |
| *Aliano v. CVS Pharmacy, Inc.* | N.D. Ill., 16-cv-03372 |
| *Jovel v. I-Health, Inc.* | E.D. N.Y., 1:12-cv-05614 |
| *Jammal v. American Family Ins. Grp.* | N.D. Ohio, 1:13-cv-00437 |

Following is a list of cases in which our expert(s) were involved with a critique of the notice program and/or notices:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J., No. 02-CV-235958CP/No. 02-CV-238276 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx Office and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |
| *In re Vitamin C Antitrust Litigation* | E.D. N.Y., No. 1:06-md-1738 |

# EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   RACHEL JOHNSON, on behalf
     of herself and all others
 5   similarly situated,

 6              Plaintiff,

 7   vs.                             Case No. 14-cv-2028

 8   YAHOO!, INC.,                   Hon. Manish S. Shah

 9              Defendant.

10

11

12         VIDEOTAPED DEPOSITION OF THOMAS KOCH, a
     witness, taken on behalf of the Defendant,
13   pursuant to Subpoena, on the 14th day of
     September, 2016, at the offices of Hostetler &
14   Associates, 8001 Conser, Suite 200, Overland Park,
     Kansas, before
15

16              SAMANTHA R. JOHNSON,

17   of Hostetler & Associates, a Certified Shorthand
     Reporter in and for the State of Kansas.
18

19

20                    APPEARANCES

21         For the Plaintiff:
                MR. TIMOTHY J. SOSTRIN
22              KEOGH LAW, LTD.
                55 West Monroe Street, Suite 3390
23              Chicago, Illinois 60603

24

25
```



8001 Conser, Suite 200                                    Toll Free (800) 642-6878
Overland Park, KS 66204                                   (913) 262-0100 • Fax 262-3717
www.hostetlercourtreporters.com                           mail@hostetlercourtreporters.com

```
 1         recall specifically.
 2    Q.   What would you do to refresh your
 3         recollection?
 4    A.   If I could see an example.
 5    Q.   And when you say "see an example," do you mean
 6         see an example of the fields of data that were
 7         produced by Sprint in response to the
 8         subpoena?
 9    A.   That's correct.
10    Q.   We'll get to that in a little bit --
11    A.   Okay.
12    Q.   -- so I'll come back to this line of
13         questioning.
14              In those situations where the account
15         holder will identify the name of the user of a
16         particular line, am I correct in understanding
17         that can happen when the account is being set
18         up?
19    A.   That can occur at that time, yes.
20    Q.   Can it occur at any other times?
21    A.   Yes.
22    Q.   What other times can an account holder add
23         name information for a subscribe -- for a user
24         of a cell phone line?
25    A.   There are tools available on sprint.com that
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com



Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1        would allow the account holder or the person
 2        that has access to alter the username or
 3        update the username at any given time.
 4   Q.   When Sprint is receiving information about the
 5        username from the subscriber, does it do
 6        anything to verify the information that the --
 7        the account holder is providing about the name
 8        of the user?
 9   A.   Could you repeat that, please?
10   Q.   When an account holder is providing the name
11        of a user, does Sprint do anything to verify
12        the information that the account holder is
13        providing?
14   A.   Pertaining to the user?
15   Q.   Correct.
16   A.   Not to my knowledge, no.
17   Q.   Does Sprint require an account holder to
18        update the name information provided regarding
19        a user of a particular line on the account?
20   A.   To my knowledge, there is no requirement to
21        update that.
22   Q.   Are there any restrictions on what information
23        an account holder could put with respect to a
24        username?
25   A.   Such as?
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com



HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1   A.  -- something more specific.
 2   Q.  -- bad -- I will admit, it's a pretty bad
 3       question.
 4           You -- I'm just trying to come back
 5       to something you had said earlier, which was
 6       because the request was specific as to March
 7       of 2013, there might be a situation in which a
 8       PTN has switched carriers, and Sprint would
 9       not have information for that PTN.  Do you
10       recall that testimony?
11           MS. BERNARD:  Objection.  I don't
12       think that's what he said.
13   Q.  (By Mr. Loose)  Okay.  Then let me -- let me
14       go back and try to figure out what you did
15       say, because I certainly don't want to
16       mischaracterize it.
17           What were you -- what were you
18       thinking of when you said that there was --
19       there wouldn't be any information associated
20       with certain PTNs because of the time focus of
21       the request?
22   A.  So as an example, if there was an active
23       account holder as of February 2013, that
24       number or PTN had canceled at the end of
25       February, and based upon this specific
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostelercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostelercourtreporters.com

Thomas Koch  May 14, 2016

```
 1          request, there would be no account information
 2          associated with that PTN relevant to this
 3          request.
 4    Q.    I see.  So for accounts that were active
 5          during March of 2013, those accounts will have
 6          information where it's available in what's
 7          produced in response to the subpoena on
 8          August 9, 2016?
 9    A.    Could you rephrase, please.
10    Q.    Sure.  So where accounts were active in March
11          of 2013, Sprint has produced the available
12          data for those accounts in its August 9, 2016,
13          production?
14    A.    Yes.
15    Q.    And the hypothetical situation that you were
16          thinking of would only apply to accounts that
17          were deactivated before March 1, 2013?
18    A.    As one example.
19    Q.    Okay.
20    A.    Yes.
21    Q.    What other examples can you think of as
22          reasons why there would be no information in
23          Sprint's database associated with a PTN that
24          was provided in the subpoena request?
25    A.    Could be an example of the PTN is owned and
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1        managed by Sprint, but has never been
 2        associated with an account, or especially
 3        during the specific time period was not
 4        active.  Could be an instance where that PTN
 5        had transferred or ported to another carrier.
 6    Q.  Are there any other reasons that you could
 7        think of why Sprint would not have any data
 8        associated with a PTN identified in the
 9        subpoena request?
10    A.  Not at this time, no.
11    Q.  Is it possible that Sprint at one time had
12        that data, but that data is not accessible or
13        recoverable for whatever reason at this point
14        in time?
15            MS. BERNARD:  Objection.  Vague as to
16        "that data."
17    A.  What data would you be referring to?
18    Q.  (By Mr. Loose)  Sure.  So let's use line 28 as
19        an example.  There are no records that were
20        found associated with this PTN in columns B
21        through P.
22            Is it possible that Sprint had data
23        for line 28, columns B through P at one time,
24        but that data has either been lost or become
25        inaccessible or destroyed, or for some other
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1        subpoena compliance department?
 2   A.   We have approximately 59.
 3   Q.   59?  And are there other employees at Sprint,
 4        outside of the subpoena compliance department,
 5        that assist in gathering data to provide in
 6        response to subpoenas?
 7   A.   Yes.
 8   Q.   Okay.  And how many of those employers --
 9        employees are there?
10   A.   Depending upon the topic or the subject matter
11        for the request, could be anywhere from one to
12        ten.
13   Q.   How about for account level records, like,
14        subscriber information?
15   A.   In -- for example, this particular situation
16        utilized one other resource within IT to write
17        the query and perform the extraction from the
18        database.
19   Q.   Okay.  How many subpoenas did Sprint respond
20        to in 2015?
21   A.   In 2015 -- excuse me -- approximately 200 to
22        300,000.
23   Q.   And how many of those were requests for
24        subscriber information?
25   A.   Couldn't tell you the -- the precise number.
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1          The vast majority of our requests typically
 2          are asking for subscriber information.
 3     Q.   And how many of those include a request for
 4          user information?
 5     A.   The majority of them are specific for
 6          subscriber, not necessarily defined by user
 7          versus the subscriber.
 8     Q.   Okay.  How many of them included are requests
 9          for user information, as far as you know?
10               MS. BERNARD:  I'm going to object
11          that this is beyond the scope of the subpoena
12          topics.
13               But you can answer, if you know.
14     A.   I'm not aware of the specific number that
15          would have asked for user specific.
16     Q.   (By Mr. Sostrin)  Okay.  As a records
17          custodian for Sprint, can you certify the
18          authenticity of Exhibit C, which is the data
19          that Sprint produced in response to the
20          subpoena in this case?
21               MR. LOOSE:  Objection.
22     A.   Yes.
23     Q.   (By Mr. Sostrin)  And is it an authentic copy
24          of Sprint's account level information with
25          respect to the PTNs that were requested in the
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

**H**OSTETLER
& ASSOCIATES
*Certified Court Reporters*

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1        vague and beyond the scope.
 2   A.   Their typical requests are asking for account
 3        holder information associated with a specific
 4        PTN or device.
 5   Q.   (By Mr. Sostrin)  Okay.  And does Sprint ever
 6        provide user information in response to those
 7        subpoenas?
 8              MR. LOOSE:  Objection.  Vague.
 9        Beyond the scope.
10   A.   It would depend on how the account is set up.
11   Q.   (By Mr. Sostrin)  Okay.  Do you have an
12        understanding that law enforcement typically
13        wants to know who the user of a phone number
14        is?
15              MR. LOOSE:  Objection.  Vague.
16        Beyond the scope.  Calls for speculation.
17   A.   I don't have specific knowledge.
18   Q.   (By Mr. Sostrin)  Earlier you testified that
19        you did not gather the data for Sprint's
20        August 9, 2016, production; is that right?
21   A.   That's correct.
22   Q.   Who did?
23   A.   A gentleman in IT.
24   Q.   And what's that gentleman's name?
25   A.   His name is Lee Lefler.
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com



Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1        network?
 2   A.   Yes.
 3   Q.   Okay.  So a number that appears in Sprint's
 4        August 9, 2016, production that is identified
 5        as Wholesale is still on the Sprint --
 6        assigned to the Sprint network; correct?
 7             MR. LOOSE:  Objection.  Vague.
 8   A.   Yes.
 9   Q.   (By Mr. Sostrin)  Or I should say was in March
10        2013; correct?
11   A.   Correct.
12   Q.   Okay.  Does Sprint ever -- has Sprint ever
13        requested any third party to provide
14        information about who its users are?
15             MR. LOOSE:  Object to form and beyond
16        the scope.
17   A.   Not to my knowledge.
18   Q.   (By Mr. Sostrin)  Okay.  Are you aware of any
19        source of information that would more
20        accurately identify who Sprint's users were at
21        a particular time other than Sprint's own
22        records?
23             MR. LOOSE:  Object to form and beyond
24        the scope.
25   A.   I'm not aware of any.
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1   A.  Yes.

 2   Q.  Take a look at -- do you know what a Bates

 3       number is?

 4   A.  I do not.

 5   Q.  Do you see the number at the bottom of these

 6       pages toward -- on the right in Exhibit G?

 7   A.  Okay.

 8   Q.  Do you see the Bates No. "Johnson_Yahoo_0057"?

 9   A.  Yes.

10   Q.  Okay.  Take a look at that page.  Do you see

11       under the Account Summary there there's a

12       table showing each line on the account and a

13       username for each line?

14   A.  I see the numbers and the name listed

15       associated with those numbers.

16   Q.  Okay.  And the PTN ▮▮▮▮▮▮▮ matches up to

17       the PTN at line 182706 --

18   A.  Yes.

19   Q.  -- in Exhibit D; correct?

20   A.  That's correct.

21   Q.  So the subscriber name ▮▮▮▮ that appears in

22       column M was actually used in Sprint's bill;

23       correct?

24   A.  That's correct.

25   Q.  Does Sprint put inaccurate information into
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1      its billing invoices?
 2  A.  No.
 3          MR. LOOSE:  Object to the form of the
 4      question.
 5  A.  No.
 6  Q.  (By Mr. Sostrin)  So the data was good enough
 7      for Sprint to put it into its bill; correct?
 8          MR. LOOSE:  Object to form.
 9  A.  The data appears to be utilized on the Sprint
10      bill, yes.
11  Q.  (By Mr. Sostrin)  Take a look at Bates No. 62.
12  A.  (The witness complied.)
13  Q.  Do you see where it says Subscriber Activity
14      Summary?
15  A.  Yes.
16  Q.  And that's the subscriber activity summary for
17      the specific telephone number          ;
18      correct?
19  A.  That's correct.
20  Q.  With the name      ; correct?
21  A.  That is correct.
22  Q.  And when this -- although this bill says
23      Subscriber, that does not mean the account
24      holder; that means the user of the telephone
25      number; correct?
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER & ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

```
 1              MR. LOOSE:  Object to form.
 2   A.   That is a value designated or input by the
 3        account holder.
 4   Q.   (By Mr. Sostrin)  As the user; correct?
 5              MR. LOOSE:  Object to form.
 6   A.   Possibly the user, yes.
 7   Q.   (By Mr. Sostrin)  Okay.  So this -- when
 8        Sprint's records say "subscriber," it's not
 9        referring to the account holder, even though
10        your testimony today has referred to a
11        subscriber as the account holder?
12              MR. LOOSE:  Objection.
13   Q.   (By Mr. Sostrin)  There's a distinction
14        between the two; correct?
15              MR. LOOSE:  Object to form.
16        Misstates testimony.
17              MR. SOSTRIN:  I'll rephrase.
18   Q.   (By Mr. Sostrin)  Earlier counsel for Yahoo
19        asked you to assume that when he says
20        "subscriber," he means the account holder;
21        correct?
22   A.   Yes, I believe so.
23   Q.   Okay.  When Sprint's records at Exhibit G say
24        "subscriber," that does not mean account
25        holder; correct?
```

8001 Conser, Suite 200
Overland Park, KS 66204
www.hostetlercourtreporters.com

HOSTETLER
& ASSOCIATES
Certified Court Reporters

Toll Free (800) 642-6878
(913) 262-0100 • Fax 262-3717
mail@hostetlercourtreporters.com

# EXHIBIT 3

Placeholder for Exhibit to be filed Under Seal

# EXHIBIT 4

# PERKINSCOIE

131 South Dearborn Street    ☎ +1.312.324.8400
Suite 1700            ☏ +1.312.324.9400
Chicago, IL 60603-5559    PerkinsCoie.com

July 29, 2016

Debra R. Bernard
dbernard@perkinscoie.com
D.   +1.312.324.8559
F.   +1.312.324.9559

## VIA EMAIL

Timothy J. Sostrin
Keogh Law, LTD.
55 West Monroe Street, Suite 3390
Chicago, IL 60603

Frank Citera
Shareholder
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601

     Re:      **Subpoena to Sprint Corporation, Johnson v. Yahoo! Inc.**
               **No. 14-cv-2028 (N.D. Ill.)**

Counsel:

Per your request, we have created a key to assist you in interpreting the Sprint data that was provided to you on July 25, 2016 via Box. Please let me know if you have any additional questions.

| PTN | The telephone number originally proved to us in conjunction with the legal demand |
|---|---|
| **Account ID** | The account number associated to the PTN for the date range of March 2013 |
| **Account Name** | The name provided to Sprint as the account holder |
| **SSN** | The Social Security Number associated to the person listed in the Account Name |
| **Account Type** | The type of account assigned to Account (the following are nonexhaustive examples) |
| Prepaid | Virgin Mobile, Boost Prepaid, Assurance Wireless |
| Postpaid | Individual, Individual Liable Corporate, Agnts Cntrctr Co-op Dlr Dist Frnchse Etc, Employees Referring Customers (ERC), Individual Liable |

132073170.2
Perkins Coie LLP



Timothy J. Sostrin
Frank Citera
July 29, 2016
Page 2

|  | Government, Major Acct with VPL, Corporate Corporate, Association Programs, General Business, Local Government, State Government, Advantage Club, Health Care – Utilities, Premier General Business, Public Safety Govt, Secured, 3rd Party Employee (CDMA), Premier Major Accounts, Major Acct-No VPL-No PrmrClub, Indirect Dealer Demo, Employee Purchase Plan, Enterprise Custom Network Solutions, Education - K-12, GSA Federal Supply Schedule, Direct Dealer Demo, Public Safety FSS – Arrears, Federal Govt Arrear, Student Program, Networx, Public Safety Arrears, Public Safety Arrears-Army AF BPA, Federal Government, WAWF Arrear (Wide Area Work Flow), Employee Wireless Discounts, Higher Education – University, Public Safety Sec - FSS Arrears, Engineering Test Account |
|---|---|
| **Mailing Name** | The name that shows on any mailings Sprint sends to the customer (ex- bill reprints) |
| **Mailing Address 1** | The address that any mailings from Sprint would be sent to |
| **Mailing Address 2** | The second line for the address that any mailings from Sprint would be sent to |
| **Mailing City** | The city name for the address that any mailings from Sprint would be sent to |
| **St** | The state for the address that any mailings from Sprint would be sent to |
| **Zip** | The zip code for the address that any mailings from Sprint would be sent to |
| **Subscriber ID** | The Subscriber number associated to the PTN for the date range of March 2013.  When there |

132073170.2
Perkins Coie LLP

Timothy J. Sostrin
Frank Citera
July 29, 2016
Page 3

|  | is more than one handset associated to an account, each handset may have an independent Subscriber ID |
|---|---|
| **Subscriber Name** | An additional name field that may contain user information |
| **PTNs** | The count of how many associated PTNs found |
| **Associated PTNs -** | The list of PTNs associated to the original target PTN |
| **Zip** | The zip code for the address that any mailings from Sprint would be sent to |

Very truly yours,

Debra R. Bernard

DRB:sd

# EXHIBIT 5





Sprint is #1 among all national carriers in customer
satisfaction and most improved, across all 47
industries, over the last four years.

-2012 American Customer Satisfaction Index

American Customer
Satisfaction Index™

**Visit** sprint.com/expertsagree for more information.



CB100AGT



Johnson_Yahoo_00053

| | Account Number | Billing Period | Page |
|---|---|---|---|
| | | 02/24/13-03/23/13 | 5 of 12 |
| | Account Name | Invoice Date | Invoice Number |
| | WEBLIFE MEDIA LLC | March 27, 2013 | -064 |

**Sprint**

## > ACCOUNT SUMMARY

| | | Monthly Recurring Access Charges | Service Discount/ Adjustments | Cellular Minutes/ Charges | LD and Other Minutes/ Charges | Directory Assistance Charges | Direct Connect Svcs. Minutes/ Charges | Messaging Number of Messages/ Charges | Data and Third Party Services KB/ Charges | Equipment and Retail Purchases | Sprint Surcharges | Government Fees and Taxes | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

### Account Charges and Adjustments

| 404468817 WEBLIFE MEDIA LLC | | | $10.25 | | | | | | | | | $1.23 | $11.48 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

### Subscriber Charges and Adjustments

| Number/ Name | Plan | Page | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * MARY | Everything Data Share 1500 6 | 120.00 | | 539:00 | | | | | 82,803.00 | | 4.27 | 11.16 | 135.43 |
| * CARRIE | Everything Data Share 1500 8 | 29.99 | | 105:00 | | | | 3 | 20,873.00 | | 2.33 | 2.67 | 34.99 |
| * RACHEL | Everything Data Share 1500 10 | 19.99 | | 321:00 | | | | 5 | 1.00 9.99 | | 2.33 | 2.83 | 35.14 |
| WEBLIFE MEDIA LLC | AIRAVE Enhanced Coverage 11 | 4.99 | | | | | | | | | 2.10 | 0.85 | 7.94 |
| **Usage for All Subscribers** | | | | 965:00 | | | | 8 | 103,677.00 | | | | |
| **Discounts for All Subscribers** | | | | | | | | | | | | | |
| **Charges for All Subscribers** | | $174.97 | | | | | | | $9.99 | | $11.03 | $17.51 | $213.50 |
| **Total Current Usage** | | | | 965:00 | | | | 8 | 103,677.00 | | | | |
| **Total Current Charges** | | $174.97 | $10.25 | | | | | | $9.99 | | $11.03 | $18.74 | $224.98 |

Total Subscribers on Account 4

If you prefer to receive a Summary Invoice, please visit sprint.com, log into My Sprint, and select the "Change how detailed your bill is" option or contact Customer Care. The Summary Invoice is designed for your convenience, and will not display full billing details.

Johnson_Yahoo_00057

| Account Number | Billing Period | Page |
| | 02/24/13-03/23/13 | 10 of 12 |
| Account Name | Invoice Date | Invoice Number |
| WEBLIFE MEDIA LLC | March 27, 2013 | -064 |

**Sprint**

, * RACHEL

## > SUBSCRIBER ACTIVITY SUMMARY

| | | Billed Usage | Rate/Date | Amount |
|---|---|---|---|---|
| 📶 | **Monthly Recurring Access Charges** | | | |
| | Everything Data Share 1500 for 03/24 - 04/23 | | | 19.99 |
| | Total Monthly Recurring Access Charges | | | $19.99 |
| 🌐 | **Data and Third Party Services** | | | |
| | Third Party Charges | | | 9.99 |
| | Total Data and Third Party Services | | | $9.99 |
| 🔧 | **Sprint Surcharges** | | | |
| | * Federal -Univ Serv Assess Non-LD | | 3.990% | 0.43 |
| | * Administrative Charge | | | 1.50 |
| | * Regulatory Charge | | | 0.40 |
| | Total Sprint Surcharges | | | $2.33 |

*Sprint Surcharges are rates we choose to collect from you to help defray costs imposed on us. Surcharges are not taxes or amounts we are required to collect from you by law. Surcharges may include: Federal USF, regulatory charges, administrative charges, gross receipts charges, and other charges incurred to recover costs associated with governmental programs. The amounts, and the components used to calculate Surcharge amounts, are subject to change.

| | | Billed Usage | Rate/Date | Amount |
|---|---|---|---|---|
| 🏛 | **Government Fees and Taxes** | | | |
| | State - 911 Tax | | | 0.73 |
| | City - If Appl &State Excise Tax | | 13.000% | 2.10 |
| | Total Government Fees and Taxes | | | $2.83 |
| | **Total Charges for * RACHEL** | | | **$35.14** |

## > SUBSCRIBER ACTIVITY DETAIL

To view coverage maps and rates visit Sprint.com.

📞 **Cellular Services Call Detail**



| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | *Long Dist./ Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|

📞 **Cellular Services Call Detail**



| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | *Long Dist./ Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|

*Continued...*

Johnson_Yahoo_00062

# EXHIBIT 6



 # CONSUMERIST 

**Want Consumerist in your inbox?** We will not sell or rent your email   | Email Address | JOIN |



SPAMMY SPAM SPAM    

## Yahoo Hit With Class-Action Lawsuit Claiming Messenger Service Sent Spam Texts To Some Users

By Mary Beth Quirk 🐦 @marybethquirk  January 6, 2016



(Sigma.DP2.Kiss.X3)

When you sign up for one kind of message service, you might not expect, or want, messages about that service elsewhere. As such, Yahoo is facing a class-action lawsuit that claims the company's Messenger service spammed some Sprint cellphone customers with unwanted texts, which could put it on the line for costly fines if it loses in court.

U.S. District Judge Manish Shah ordered that a lawsuit originally filed by an Illinois resident in 2014 now applies to all Sprint cellular customers in the U.S. who received a certain kind of text message from Yahoo in March 2013, reports the Wall Street Journal. That could mean more than 500,000 members, the judge wrote.

The complaint claims Yahoo violated the Telephone Consumer Protection Act of 1991 by sending unsolicited text messages — or spam texts — from Yahoo Messenger. It essentially took instant messages and translated them into texts that could be sent to a cellphone, including a "welcome message" that urges the user to respond.

The lawsuit wants Yahoo to pay at least $500 for every violation of the rule, which bars unsolicited automated texts, phone calls or fax messages, and allows the recipient to sue for damages of $500 to $1,500 per violation.

### TRENDING

Yahoo Turned Off E-Mail Forwarding Just When People Might Want To Leave

Regal Can't Stop Studios From Letting Upscale iPic Theater Show New Movies

Samsung Permanently Scraps All Galaxy Note 7 Production

Who Am I Supposed To Call When My Credit Card Info Is Stolen?

Comcast Fined $2.3 Million For Charging Customers For Equipment, Services They Never Ordered

Thanks for participating in our comments beta test. While we review your feedback, you can stay connected and share tips. Please take this survey to share what we're doing well, what needs work, and what you'd like to see!

Yahoo isn't commenting on pending litigation, but says that the texts aren't spam at all, they're a good thing — because they're "not the type of annoying, intrusive mass communication" barred by the Telephone Consumer Protection Act. Instead, they simply alert recipients that they've gotten a message from another user, say what that message is and gives them actions to take, one of which is blocking future messages.

Yahoo Faces Class-Action Suit Over Spam Texts [Wall Street Journal]

**Tell a friend:**

      

Tagged With: spammy spam spam, yahoo, spam, unsolicited text messages, lawsuits, Telephone Consumer Protection Act of 1991

> This post has been shared!
> You have shared this post with
> mswiecinska@keoghlaw.com
> Close

⟨ PREVIOUS
Sprint Reportedly Ditching New 2-Year Contracts Starting This Friday

NEXT ⟩
Chick-fil-A's "Mom's Valet" Aims To Take The Stress Out Of Dining With Children

 *RELATED*

ORC SPAM?

R U CRASHING?

**Lawsuit Claims Universal Pictures Spammed Phones With Unsolicited 'Warcraft' Texts**

**Could You Get Sued For Texting Someone While They Are Driving?**

PAY TO GO AWAY

DETHRONED

**Supreme Court: You Can't Shut Down A Consumer Class Action By Offering Settlement**

**"Spam King" Gets 30 Months In Jail For Sending More Than 27M Unsolicited Facebook Messages**



About Us

Connect With Us

**Want Consumerist in your inbox?** We will not sell or rent your email



AdChoices ▷

**Latest in Gear**



Atari co-founder Nolan Bushnell launches a VR company

🕐 31m ago



of the future doesn't require a helmet

🕐 55m ago



Image credit:

Yahoo faces class action lawsuit over text spamming

Sprint customers could get cash thanks to Yahoo Messenger's automatic text messages.

 Jon Fingas , @jonfingas
01.05.16 in Mobile

f | 🐦 | 🔴 | ✉ |

Login

3 related articles ⌄

🔍

Mobile apps for Gmail



f  |  🐦  |  ⛯  |  ✉  |

Login

3 related articles  ⌄                                                          🔍

Yahoo probably isn't the first company you'd think of as a text
spammer, but the courts might soon beg to differ. A judge has ruled
that the internet pioneer has to face a class action lawsuit for sending
Sprint customers automatic "welcome" messages when someone else
pinged them on Yahoo Messenger in 2013. These were effectively

small, unwanted sales pitches for Yahoo's services, according to the lawsuit -- and it doesn't help that they sometimes followed spam from another party.

Yahoo hasn't commented on the lawsuit so far, but it unsurprisingly tried to fight the class action status. It claimed that the possible penalties from a large-scale case would be disproportionate to the actual damage done. However, the court doesn't buy that line -- it believes that the 500,000-plus affected Sprint subscribers have enough in common that they could be lumped together. If the suit is successful, then, Yahoo might find itself on the hook for millions of dollars.

[Image credit: AP Photo/Marcio Jose Sanchez]

---



Source: Reuters

In this article: classaction, culture, gear, internet, lawsuit, mobile, sms, spam, sprint, text, texting, timeline16suesettle, TL16Yahoo, yahoo, yahoomessenger

6 Shares

Comments

Sign In

3 related articles ⌄

Login

Submit



TECH   YAHOO

# Why Yahoo Is Being Sued By Sprint Customers

by Michal Addady     @michal_addady     JANUARY 6, 2016, 5:41 PM EDT



Photograph by Lucas Schifres — Bloomberg via Getty Images

## The payout could be huge.

A lawsuit originally filed against Yahoo in 2014 has just been granted class-action status.

The lawsuit claims that Yahoo ( YHOO ▼ -1.45% ) sent Sprint customer spam text messages in March 2013. The *Wall Street Journal* reports that it was originally filed in 2014 by Rachel Johnson, but U.S. District Judge Manish Shah ruled on Monday that the lawsuit now applies to all U.S.-based Sprint users who received the messages in question.

Yahoo is being accused of violating the Telephone Consumer Protection Act of 1991 which prohibits unsolicited automated text messages and permits

☰   Fortune.com        SUBSCRIBE

respond.

Yahoo contends that the act only prohibits "intrusive mass communication," a category which the company says its messages do not fall under.

The lawsuit is requesting that Yahoo pay affected Sprint customers a minimum of $500 for each violation, as per the act. The class-action could apply to upwards of 500,000 people, and if Yahoo loses the case, the payout could be substantial.

Yahoo declined to comment citing a policy on ongoing litigation.

Sponsored Stories                            Sponsored Links by


**Donald Trump's Advice For Paying Off Mortgage (It's Genius!)**
*(OneSmartPenny.com)*


**Why More Investors Are Scooping Up This Small Stock**
*(The Money Street)*


**Crowdfunding is Making Real Estate Investing Easy and Cheap**
*(RealtyShares)*


**It's Official: This Is the Best Laptop You Can Buy**
*(Yahoo!)*

✉    🐦    f      🖼   Licensing

EDITION: UNITED STATES

Business   Markets   World   Politics   Tech   Commentary   Breakingviews   Money   Life

It can help you cover the big purchases your business needs, when you need them.

TECHNOLOGY NEWS | Mon Jan 4, 2016 | 4:57pm EST

# Yahoo must face class action over text messages: U.S. judge



A Yahoo logo is pictured in front of a building in Rolle, 30 km (19 miles) east of Geneva, in this file picture taken December 12, 2012. REUTERS/Denis Balibouse



TRENDING **STORIES**

1   Bolt cutters expose vulnerability of North America's oil pipeline grid

2   Trump trails Clinton by 8 points after tape scandal, debate: Reuters/Ipsos poll

3   Stanley Black & Decker to buy Newell's tool business

4   Trump as president would pose global danger: U.N. rights chief

5   U.S. sees mounting evidence of Houthi role in strike on U.S. warship

By **Jonathan Stempel**

Yahoo Inc was ordered by a Chicago federal judge on Monday to face a class action lawsuit accusing the Internet company of sending unsolicited text messages to Sprint Corp cellphone users in violation of the Telephone Consumer Protection Act.

U.S. District Judge Manish Shah said the users could sue as a group over messages sent in March 2013 because their claims had enough in common.

Shah rejected Yahoo's arguments that a class action could subject it to damages that were disproportionate to the alleged harm, promote "piecemeal" litigation covering other time periods and phone carriers, and thwart Congress' desire that claims be brought individually in small claims court.

ADVERTISING



Sponsored by
Healthy Choice®



unRead invented by Teads

More than 500,000 cellphone users could be part of the class, court papers show.

The plaintiffs accused Yahoo of sending them automated "welcome" messages when other users sent them separate messages via the Yahoo Messenger service.

They said the welcome messages constituted unauthorized advertising for Yahoo services, violating the federal TCPA and subjecting the Sunnyvale, California-based company to damages of up to $1,500 per message if the violations were willful.

The case was brought by Rachel Johnson, an Illinois resident who claimed to receive a welcome message from Yahoo after being sent a spam text message from another user advertising a means to reduce high-cost debt.

Shah declined to certify a separate class of T-Mobile US Inc cellphone users for welcome messages sent in April 2014. He said the proposed plaintiff in that part of the case had consented to receiving welcome messages.

Yahoo did not immediately respond to requests for comment.

ALSO IN TECHNOLOGY NEWS

**Amazon challenges Apple and Spotify with new music streaming service**

**Vera Bradley says payment system hacked, sales could be affected**

Keith Keogh, a lawyer for Johnson, said: "We appreciate the court's thorough analysis."

The case is Johnson et al v. Yahoo Inc, U.S. District Court, Northern District of Illinois, Nos. 14-02028, 14-02753.

(Reporting by Jonathan Stempel in New York; Editing by Steve Orlofsky)

NEXT IN TECHNOLOGY NEWS



**Tesla, SolarCity shareholders vote November 17 on merger**

Tesla Motors Inc and SolarCity Corp said Wednesday in a U.S. securities filing that a vote to merge the two California-based companies will take place on Nov. 17.



**Alibaba's new payment system lets virtual reality shoppers pay by nodding**

HONG KONG Alibaba Group Holdings' finance arm on Wednesday demonstrated a payment service that will allow virtual reality shoppers to pay for things in future just by nodding their heads.

**PICTURES**

Pictures of the day

MORE FROM **REUTERS**

**Trump's body language during debate raises social media eyebrows**

**A Trump loss would 'upset the verdict of history': Allan Lichtman**

SPONSORED **CONTENT**

DO YOU HAVE QUESTIONS ABOUT TOP CLASS ACTIONS? CHECK OUT OUR NEW FAQ PAGE!



Create an Account (http://www.topclassactions.com/signup/) | Sign in (http://www.topclassactions.com/login

TOP CLASS ACTIONS
*Connecting Consumers to Settlements, Lawsuits & Attorneys*
(https://topclassactions.com)

credible  Overpaying on Student Loans?  Find My Rate

Home
(https://topclassactions.com/)

News ▾

Settlements ▾

Investigations
(https://topclassactions.com/lawsuit-settlements/investigations/)

Attorneys
(https://topclassactions.com/attorneys/)

About Us ▾

Services
(https://topclassactions.com/services/)

FAQ
(https://topclassactions.com/lawsuit-settlements/faq/)

Member Sign In
(https://topclassactions.com/login/)

# YAHOO 'WELCOME MESSAGE' LAWSUIT GETS CLASS CERTIFICATION (HTTPS://TOPCLASSACTIONS.COM/LAWSUIT-SETTLEMENTS/LAWSUIT-NEWS/305948-JUDGE-CERTIFIES-CLASS-OF-SPRINT-USERS-IN-YAHOO-TCPA-LAWSUIT/)

By Tamara Burns
February 4, 2016

0 (https://topclassactions.com/lawsuit-settlements/lawsuit-news/305948-judge-certifies-class-of-sprint-users-in-yahoo-tcpa-lawsuit/#respond)

FOLLOW ARTICLE (/MEMBER-HOME/MY-FAVORITES/?SZBL-FAVORITE=305948&HASH=96E8A90C50)

Like 0    Share

6+1  0          Tweet



A federal judge in Illinois partially certified a class in the Yahoo class action lawsuit originally filed in 2014, alleging that Yahoo sent a welcome text message to cell phone users immediately after the user received a message from someone who used the Yahoo messenger software.

The initial TCPA lawsuit was filed by two plaintiffs, Rachel Johnson and Zenaida Calderin, who represented users of Sprint Corp. mobile phone service and T-Mobile services, respectively.

Both plaintiffs claimed that Yahoo violated the **Telephone Consumer Protection Act (http://topclassactions.com/lawsuit-settlements/investigations/2828-text-message-spam-cell-phone-call-tcpa-class-action-lawsuit-settlement-investigation/)** (TCPA) when the company sent the welcome text message to their cell phones, saying the message was considered an advertisement and telemarketing.

U.S. District Judge Manish S. Shah certified the Sprint customer class, with Johnson named as the class representative. However, Judge Shah denied certification to the T-Mobile class, saying that Calderin had consented to receive the messages from Yahoo.

Johnson said she received the welcome text from Yahoo after she received a spam text message related to services for debt-alleviation. Johnson claims the debt-alleviation text was received following her recent application for online loan services.  Calderin said she received the welcome text after receiving a previous text from a coworker.

## POPULAR SETTLEMENTS


**Red Bull Energy Drink Class Action Settlement** (https://topclassactions.com/lawsuit-settlements/closed-settlements/41577-red-bull-energy-drink-class-action-settlement/)


**StarKist Tuna Class Action Settlement** (https://topclassactions.com/lawsuit-settlements/closed-settlements/103952-starkist-tuna-class-action-settlement/)

CHASE
**Chase Bank TCPA Class Action Settlement** (https://topclassactions.com/lawsuit-settlements/closed-settlements/40060-chase-bank-tcpa-class-action-settlement/)


**Ghirardelli White Chocolate Class Action Settlement** (https://topclassactions.com/lawsuit-settlements/closed-settlements/42739-ghirardelli-white-chocolate-class-action-settlement/)


**Vitaminwater Deceptive Marketing Class Action Settlement**

Judge Shah said that under Federal Communication Commission (FCC) guidelines, a person giving his phone number to a company gives the entity express consent. Judge Shah said that when Calderin consented to Yahoo's terms of service, that included consent to receive text messages.

The certified nationwide class will include all individuals who had received a welcome message text from Yahoo between March 1 and March 31, 2013, who were customers of Sprint's cell phone service, and who did not have a phone number associated with Yahoo in Yahoo's records.

The **Yahoo TCPA Class Action Lawsuit** is *Rachel Johnson v. Yahoo Inc.*, Case No. 1:14-cv-02028 in the U.S. District Court for the Northern District of Illinois.

## TCPA Violations

The TCPA was passed in 1991 to protect consumers against annoying and unwanted solicitation and communication from telemarketers and other solicitors. The FCC worked together with the FTC to further protect consumers by establishing the "National Do Not Call Registry" where individuals can register their phone numbers to prohibit telemarketers from calling that number.

Companies who violate the TCPA can face penalties of $500-$1,500 per violation. Violations include, but are not limited to:

- Sending unwanted text messages regarding advertisements or solicitation
- Placing robocalls using an automatic dialing system or precorded voice message
- Calling numbers on the National Do Not Call Registry or on company-specific internal "Do Not Call" lists
- Not giving consumers the option to opt out of receiving phone calls or text messages
- Sending junk faxes to personal residences or other businesses without prior permission

## TCPA Lawsuit Information

If you have received an unsolicited text message (text spam), have been contacted on your cell or home phone by an automated telephone dialing system, or received a prerecorded message (robocall), you may be eligible for legal compensation of the company engaged in a TCPA violation. Our attorneys can review your case for free and can help determine if you are eligible to take legal action.

### Join a Free TCPA Class Action Lawsuit Investigation

If you were contacted on your cell phone by a company via an unsolicited text message (text spam) or prerecorded voice message (robocall), you may be eligible for compensation under the Telephone Consumer Protection Act.

> **GET A FREE CASE EVALUATION NOW (HTTP://TOPCLASSACTIONS.COM/LAWSUIT-SETTLEMENTS/INVESTIGATIONS/2828-TEXT-MESSAGE-SPAM-CELL-PHONE-CALL-TCPA-CLASS-ACTION-LAWSUIT-SETTLEMENT-INVESTIGATION/)**

## WE TELL YOU ABOUT CASH YOU CAN CLAIM EVERY WEEK! SIGN UP FOR OUR FREE NEWSLETTER.

Email *

State *

select

SUBSCRIBE

*Top Class Actions is a Proud Member of the American Bar Association*



AMERICAN BAR ASSOCIATION
Defending Liberty, Pursuing Justice

*LEGAL INFORMATION IS NOT LEGAL ADVICE*

---

settlements/closed-settlements/41542-vitaminwater-deceptive-marketing-class-action-settlement/)

 **Truvia Natural Sweetener Class Action Settlement** (https://topclassactions.com/lawsuit-settlements/closed-settlements/37310-truvia-natural-sweetener-class-action-settlement/)

# ACTIVE INVESTIGATIONS

 **Waffle House Background Check Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/346314-waffle-house-background-check-class-action-lawsuit-investigation/)

 **Stryker Recall Metal Hip Implant Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/346440-stryker-recall-metal-hip-implant-class-action-lawsuit-investigation/)

 **California Commissioned & Piece Rate Employees Minimum Wage Violations Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/346143-california-commissioned-employees-minimum-wage-violations-class-action-lawsuit-investigation/)

 **Onglyza, Kombiglyze Heart Failure, Pancreatic Cancer, Thyroid Cancer Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/339220-onglyza-kombiglyze-lawsuit-heart-failure-pancreatic-cancer-investigation/)

 **California Outside Sales Expense Reimbursement Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/344957-california-salesperson-expense-reimbursement-class-action-lawsuit-investigation/)

 **Comcast Service Protection Plan Class Action Lawsuit Investigation** (https://topclassactions.com/uncategorized/345157-comcast-service-protection-plan-class-action-lawsuit-investigation/)

 **California Labor Law: Unpaid Overtime, Missed Breaks Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/40907-california-labor-law-class-action-lawsuit/)

 **Align Probiotic False Advertising Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/344271-align-probiotic-false-advertising-class-action-lawsuit-investigation/)

 **Bair Hugger Deep Joint Infection Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/339212-bair-hugger-deep-joint-infection-class-action-lawsuit-investigation/)

 **Abilify Lawsuit: Gambling Addiction, Shopping Addiction & Compulsive Behavior** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/339211-abilify-lawsuit-gambling-addiction-shopping-addiction-compulsive-behavior/)

 **California Force-Placed Insurance Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/consumer-products/25044-california-force-placed-insurance-class-action-lawsuit-investigation/)

**California Uber Driver Independent Contractor Misclassification Class Action Lawsuit Investigation** (https://topclassactions.com/lawsuit-settlements/lawsuit-news/339142-california-uber-driver-independent-contractor-misclassification-class-action-lawsuit-investigation/)

**Antibiotic Side Effects: Peripheral Neuropathy & Aortic Dissection/Aneurysm Class Action Lawsuit Investigation**

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

http://www.wsj.com/articles/yahoo-faces-class-action-suit-over-spam-texts-1452025558

TECH

# Yahoo Faces Class-Action Suit Over Spam Texts

Judge grants class-action status to certain Sprint cellular customers affected by text messages



On Monday, a U.S. District Judge in Illinois granted class-action status to a lawsuit against Yahoo Inc. that claims the firm sent unsolicited text messages to some cellphone users. *PHOTO: DENIS BALIBOUSE/REUTERS*

By **DOUGLAS MACMILLAN**

Jan. 5, 2016 3:25 p.m. ET

A lawsuit claiming Yahoo Inc. sent unsolicited text messages to some cellphone users was granted class-action status by a federal judge on Monday, raising the possibility the company could pay costly fines if it loses the cases.

U.S. District Judge Manish Shah ordered that the suit, originally filed by Illinois resident Rachel Johnson in 2014, now applies to all Sprint Corp. cellular customers in the U.S. to whom Yahoo sent a certain type of text message in March 2013, according to a court filing.

The proposed class could contain more than 500,000 members, Judge Shah, of the U.S. District Court for the Northern District of Illinois, wrote in the filing.



PAID PROGRAM

**18 Holes, Millions of Data Points**
How the cloud is transforming golf

READ MORE

Microsoft Cloud

A spokeswoman for Yahoo declined to comment on ongoing litigation. Yahoo has argued in court filings that the messages in question are beneficial to consumers.

Ms. Johnson's complaint claims Yahoo violated the Telephone Consumer Protection Act of 1991 by sending her and potentially thousands of other Sprint customers unsolicited text messages from its Yahoo Messenger service. That service converted online instant messages into text messages on a cellphone, including a Yahoo "welcome" message nudging the user to respond.

The suit argues that Yahoo should have to pay at least $500 for each violation of the rule. The Telephone Consumer Protection Act bars unsolicited automated texts, phone calls or fax messages, and allows the recipient to sue for damages of $500 to $1,500 per violation.

In court filings, Yahoo has argued that the messages in question are "not the type of annoying, intrusive mass communication" barred by the Telephone Consumer Protection Act. The "welcome" messages, Yahoo says, alert the recipients that they have received a message from another user, explains what the message is, and informs of certain actions to take, including blocking future messages.

**Write to** Douglas MacMillan at douglas.macmillan@wsj.com

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

**The Washington Post**

**The Switch**

# Yahoo allegedly broke the law by sending Sprint users unwanted text messages

**By Brian Fung**  January 5

A federal judge in Chicago allowed a class-action suit against Yahoo to move forward Monday amid allegations that the company violated telecom rules and sent consumers text messages they didn't agree to receive.

If consumers end up winning the lawsuit, Yahoo could be liable for up to $1,500 in damages for each unwanted text message it sent in March 2013 to non-Yahoo customers on Sprint's wireless network. As many as 500,000 people could be covered in the class-action, meaning Yahoo potentially faces up to $750 million in penalties.

Yahoo operates an instant messaging service, Yahoo Messenger, that supports the ability to convert online messages into text messages. When you receive one of these texts, the plaintiffs said, Yahoo also sends you a follow-up text message "welcoming" you to Yahoo Messenger. The message looks like this:

> A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms

Consumers, including the plaintiff Rachel Johnson, say they never gave Yahoo their permission to contact them with the follow-up message.

**The Switch newsletter**

The day's top stories on the world of tech.

Sign up

Federal rules make it illegal for a company to make auto-dialed calls or send automated text messages to consumers without their consent. As a result, much of this case turns on whether the plaintiffs in the class-action could be said to have agreed to getting Yahoo's text messages.

Yahoo told Judge Manish Shah that Johnson and the other members of the class may have given their consent if they had downloaded one of Yahoo's apps and agreed to the company's terms of service, which announce the possibility that customers might receive automated text messages.

But Shah held that Johnson, 68, only ever owned a basic flip phone, not a smartphone, and there was little evidence proving that she had ever interacted with Yahoo's services.

"In other words, defendant's contention that Johnson may have downloaded one of its applications is nothing but a shot in the dark," Shah wrote in an opinion Monday.

As a result, the class-action will be allowed to proceed. Yahoo declined to comment.

Brian Fung covers technology for The Washington Post, focusing on telecommunications and the Internet. Before joining the Post, he was the technology correspondent for National Journal and an associate editor at the Atlantic. 🐦 Follow @b_fung

**The Post Recommends**

## Why isn't Howard Dean's allegation that Donald Trump does cocaine a bigger deal?

This story deserves far more attention than it's getting.

## Think twice about changing a revocable trust to list your child as co-owner of a home

REAL ESTATE MATTERS | There may be tax implications.

## The GOP's biggest fear appears to be coming true: Independents ditching Donald Trump

New polls confirm it.

- Contact Law360
- Sign up for our newsletters
- Site Map
- Help



Make sure you don't miss any Law360 breaking news.

Download our plug-in for Chrome to get customizable, real-time news alerts

# Sprint Users Get Cert. In Yahoo 'Welcome Text' TCPA Suit

By **Christine Powell**

Law360, New York (January 4, 2016, 9:29 PM EST) -- An Illinois federal judge on Monday partially certified a class of cellphone users who allege Yahoo violated the Telephone Consumer Protection Act by sending unsolicited text messages, approving a class of Sprint customers who received the messages but finding the T-Mobile class representative had consented to receiving them.

U.S. District Judge Manish S. Shah established a nationwide class of Sprint Corp. mobile customers who received a "welcome text message" from Yahoo Inc. between March 1 and March 31, 2013, immediately after someone sent them a text...
To view the full article, register now.
Try Law360 FREE for seven days

Already a subscriber? Click here to login

- ⠀Add to Briefcase
- ⠀Printable Version
- ⠀Rights/Reprints
- ⠀Editorial Contacts

## Documents

- ⠀Order

## Related

### Sections

- Class Action
- Consumer Protection
- Illinois
- Privacy
- Technology