UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RACHEL JOHNSON,

    Plaintiff,

  v.

YAHOO! INC.,

    Defendant.

No. 14 CV 2028

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Rachel Johnson received a text message written by a non-party via a service provided by defendant Yahoo! Inc. A second text message soon followed, containing defendant's explanation of why plaintiff received the first. Plaintiff, pursuing a claim that the second text violated the Telephone Consumer Protection Act, represents a class of certain individuals who received similar text messages from defendant. Defendant moves to decertify the class, arguing that the class is unmanageable in light of information recently provided by a cellular telephone service provider. For the following reasons, the motion is granted.

**I.    Legal Standards**

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." "If the certification of the class is later deemed to be improvident, the court may decertify." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

(1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

The class must meet the four requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and at least one of the three alternatives provided in Rule 23(b). *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). Under Rule 23(b)(3), certification is proper when questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members, and a class action is superior to other methods of resolving the controversy. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

## II.  Background

As explained in earlier orders, defendant Yahoo! Inc. provided an instant messaging client called Yahoo! Messenger, which allowed registered users to send online messages to others. Yahoo! Messenger also allowed users to send personalized messages to people's cellular telephones through a feature called PC2SMS. PC2SMS converted Yahoo! users' instant messages into text messages, which were sent to recipients' cellular telephone numbers.[1] The first time a given cellular telephone number received a text message from the PC2SMS system, the number was sent an additional text message stating: "A Yahoo! user has sent you a

---

[1] The system is discussed in greater detail in the order denying summary judgment. *See* [89]; *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2014 WL 7005102, *1–2 (N.D. Ill. Dec. 11, 2014). Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of filings.

message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms." The parties refer to this stock message as the "Welcome Message."

On March 19, 2013, plaintiff Rachel Johnson received a text message from an unknown sender via PC2SMS, and she received the Welcome Message soon after. According to plaintiff, the transmission of the Welcome Message was a violation of the Telephone Consumer Protection Act, which makes it unlawful "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system . . . to any cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff moved for class certification under Rules 23(a) and 23(b)(3), and on January 4, 2016, I certified the following class:

> All persons within the United States to whose cellular telephone number Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while such cellular number was assigned to Sprint, and whose cellular telephone number is not associated with a Yahoo! user in Yahoo!'s records.

[177] at 21; *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2016 WL 25711, at *9 (N.D. Ill. Jan. 4, 2016). That definition was later clarified to specify that membership in the class was limited to the users—not the subscribers—of the cellular telephone numbers. [209]. The clarification aligned with plaintiff's approach to class certification, and plaintiff's own status as the user, but not subscriber, of a cellular telephone number.

Fact discovery closed on June 26, 2015. [94]. In August 2016, in response to a subpoena, Sprint produced previously undisclosed information related to the

3

identities of the users and subscribers of the cellular telephone numbers assigned to Sprint and that received the Welcome Message. The parties deposed Sprint's corporate representative the following month. Defendant then sought to reopen discovery to develop additional evidence to support its affirmative defense of prior express consent. That request was denied because defendant had sufficient opportunity to pursue that evidence during the discovery phase of the case. [277]. Defendant now moves to decertify the class.

### III. Analysis

Defendant argues that the class should be decertified due to manageability concerns. As noted above, Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." According to defendant, individualized issues related to prior express consent overwhelm any class-wide common questions of law or fact. Defendant picks up on a warning in my opinion certifying the class: "If plaintiff and her counsel cannot provide a manageable, cost-effective plan for . . . resolving issues of consent, then decertification may follow." [177] at 21; *Johnson*, 2016 WL 25711 at \*9.

The parties agree that "prior express consent" under the TCPA is an affirmative defense, and affirmative defenses can predominate such that a class should be decertified. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("We have noted that the 'predominance of individual issues

4

necessary to decide an affirmative defense may preclude class certification.'" (citation omitted)); *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 438 (4th Cir. 2003) ("[L]ike other considerations, affirmative defenses must be factored into the calculus of whether common issues predominate."); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("[W]e regard the law as settled that affirmative defenses should be considered in making class certification decisions."). In certifying the class, I acknowledged that a defendant could defeat class certification if it presented specific evidence showing that a significant percentage of the class consented. [177] at 16; *Johnson*, 2016 WL 25711 at *7. But defendant's vague assertions about consent were insufficient. *Id.*

Defendant focuses on consent in the acceptance of its Universal Terms of Service ("uTos"). The relevant provision of the uTos states:

> Yahoo! may provide you with notices, including those regarding changes to the [Terms of Service], including by but not limited to email, regular mail, SMS, MMS, text message, postings on the Service, or other reasonable means now known or hereinafter developed.

[177] at 9; *Johnson*, 2016 WL 25711 at *4. Those who agreed to the uTOS consented to the Welcome Message. [177] at 10; *Johnson*, 2016 WL 25711 at *4. The parties agree that both the subscriber—"the consumer assigned the telephone number dialed and billed for the call"—and the "non-subscriber customary user of a telephone number included in a family or business calling plan" can give prior express consent to be called at a number. *In re Rules & Regs Implementing the TCPA,* 30 FCC Rcd 7961, 8000–01 (2015). Here, if defendant sent the Welcome

5

Message to a number that belongs to someone (either a subscriber or user of the number) who accepted the uTOS, then the Welcome Message was sent with appropriate consent.[2]

The production of records from Sprint after the close of discovery gave defendants the missing evidentiary foundation for their consent-predominance argument. Defendant searched its accountholder database for the names of subscribers and users provided by Sprint. Certain common names matched with thousands of Yahoo! user accounts, and even limiting the results to less common names (using a somewhat arbitrary measure), defendant can now show that tens of thousands of potential class members may have consented. For example, defendant found that 47,672 unique names from the Sprint data matched five or fewer Yahoo! accounts (indicating that, with further inquiry into the Yahoo! accounts, a more precise match between Sprint user and uTos acceptance is possible). [281-1] ¶ 18. Defendant also searched its accountholder database for the associated telephone numbers provided by Sprint. It found that in 65,061 cases, a number that received a Welcome Message matched a number that was provided to defendant in registering a Yahoo! account. [281-1] ¶ 27. Excluding large group plans (e.g., a corporate account with thousands of users) results in 47,109 instances, according to defendant. *See* [294] at 9. The association of thousands of potential class members to a Yahoo! account (and therefore, in turn, an accepted uTos) is a concrete showing

---

[2] This is not intermediary consent, where the consent of one person is transmitted to the sender of messages through an intermediary. This is simply a direct act of consent by someone with authority to consent to messages sent to a device.

6

that individual consent issues will predominate the case moving forward. To drill down on whether these class members accepted the uTOS, and thereby provided consent, the facts surrounding each person associated with a matching number would have to be explored. This could not be done in a single proceeding through records and an expert witness because the requisite identity-match may be dependent on class member testimony. Defendant now has evidence sufficient to justify an individual consent inquiry for a significant percentage of the class (perhaps between 20 to 25%, maybe more). *See* [294] at 8–9.[3]

Plaintiff says that the evidence of consent identified by defendant is inconclusive and does not prove that a significant percentage of the class members consented. While it is true that more would need to be done to prove consent, defendant does not need to prove consent to decertify the class. It just needs to show that proving consent requires individualized analysis such that the class does not meet the predominance requirement. It has done that much. When the class was certified, it appeared that determination of consent was susceptible to class-wide proof based on the information then available to the parties—by analyzing user information in defendant's records to identify individuals who had agreed to the

---

[3] In addition to the consent issue presented by defendant's showing that individual Sprint subscribers can now be associated to an executed uTOS, there is a separate manageability concern. The class is defined to exclude people whose cellular phone numbers are "associated with a Yahoo! user in Yahoo!'s records." If the Sprint record for an individual is associated with a Yahoo! user, then the individual is not a class member at all. While the class definition is objective and theoretically ascertainable, the carve-out for Yahoo! users would require the exercise of pairing Sprint numbers and Yahoo! records to ensure that a person is a member of the class. Even if done as a matter of claims administration, this would be unwieldy and require an individualized check of class membership. It would not be easy to identify who is bound by the judgment in the case.

uTOS, and deferring further inquiry until a claims administration process. But the information disclosed by Sprint gives defendant an opportunity to present its defense on an individualized basis at a trial, and I will not exclude that evidence.

Plaintiff requested defendant's evidence of prior express consent during discovery, and defendant never produced this data. In fact, defendant did not pursue evidence of consent in discovery, and I denied its request to reopen discovery to pursue consent evidence. [277]. The Sprint data came into the litigants' hands as a result of plaintiff's efforts to identify class members and issue notice. Defendant took that data and, using custom scripts, conducted an analysis that was not readily available during fact discovery. [281-1] ¶ 10. Parties have a continuing obligation to supplement discovery responses, and perhaps defendant should have conducted and disclosed its analysis sooner. But excluding the analysis would be too harsh a sanction. Defendant did not seek out information related to associated telephone numbers in discovery, and, as plaintiff points out, neither party requested it from Sprint. This development is not attributable to some discovery misconduct by defendant. Ultimately, the truth-seeking function of litigation would be better served by testing the evidence, not pretending it doesn't exist.

Plaintiff proposes that the class be redefined to exclude class members who might have consented. Jettisoning people who consented would not create an impermissible fail-safe class (because whether the PC2SMS system is a prohibited automatic telephone dialing system is still a contested issue unresolved by the class definition), but plaintiff does not propose a new class definition. Without a specific

8

definition that has been tested against all the Rule 23 requirements, I decline to adjust the class further. Moreover, counsel's idea to exclude potential class members based on defendant's investigation invites concerns over adequacy of representation and loyalty to the class. Decertification, not redefinition, is the appropriate step in light of defendant's showing that individualized consent inquiries will predominate.[4]

## IV. Conclusion

Defendant's motion to decertify the class, [281], is granted. The parties shall appear for a status hearing on February 28, 2018, at 9:30 a.m.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: February 13, 2018

---

[4] Defendant raises two other arguments for decertification. First, it argues that whether its PC2SMS system amounts to an ATDS is an individualized question. Although there are factual questions about how the Address Book and PC2SMS worked together to send the Welcome Message, see [89] at 13; *Johnson*, 2014 WL 7005102 at *6, I am not persuaded that these questions are necessarily individualized. Even now, defendant seems to argue that the Address Book was completely independent of the PC2SMS system and human intervention was necessary to send the text. This argument would apply across the class without individual inquiry. Second, defendant argues that the statutory damages award sought by plaintiff is unconstitutionally excessive, and that an excessiveness determination cannot be conducted on a class-wide basis. Because the motion to decertify is granted for other reasons, I need not reach this issue.