**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | ) ) ) | Case No. 14-cv-2028 |
| Plaintiff, | ) ) | U.S. District Judge Manish S. Shah |
| v. | ) ) ) | Magistrate Judge Jeffrey Cole |
| YAHOO!, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE,
MOTION TO CERTIFY AMENDED CLASSES**

Keith J. Keogh
Timothy Sostrin
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (office)
312.726.1093 (fax)
TSostrin@KeoghLaw.com
*Attorneys for Plaintiff Rachel Johnson and the Class*

## <u>TABLE OF CONTENTS</u>

I.      The Court should Reconsider its Ruling in light of an Error of Fact.................................. 1

II.     Alternatively, the Court Should Certify Amended Classes .................................. 2

     A.   The Court Should Certify an ATDS Issue Class Pursuant to Rule 23(c)(4) .............. 3

     B.   The Court Should Certify a Narrower Class Pursuant to Rule 23(b)(3) ................... 5

     C.   Rule 23 is Satisfied ........................................................................................ 6

          1.    The Classes are Ascertainable .................................................. 6

          2.    The Classes are Sufficiently Numerous ............................................ 8

          3.    Commonality is Satisfied .................................................... 8

          4.    Plaintiff's Claims are Typical of both Classes .................................. 9

          5.    Plaintiff and Her Counsel are Adequate to Represent the Classes .................. 10

          6.    Speculation about Consent does not Destroy Predominance ........................... 12

          7.    Class Treatment is the Superior Method of Adjudication ................................ 16

III.    Conclusion ...................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Agne v. Papa John's Intern.*, 286 F.R.D. 559 (W.D. Wash. 2012) ................................................. 9

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 11, 12

*Amer. Copper & Brass v. Lake City Indust. Prod.*, 2014 U.S. App. LEXIS 12921 (6th Cir. 2014) ................................................................................................................................................. 7

*Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D 330 (N.D. Ill. 2009) ........................... 8

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill 2014) ......................... 7, 14

*Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779 (W.D. Wash. 2015) ........................... 7, 9

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ................................................. 12

*Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264 (7th Cir. 1996) ........................ 1

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................... 4

*Cordoba v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 125486 (N.D. Ga. July 12, 2017) ............. 15

*Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, Dist. LEXIS 8975 (N.D. Ill. 2018) 14

*Daniels v. Hollister Co.*, 113 A.3d 796 (N.J. App. 2015) ........................................................... 14

*G.M. Sign, Inc. v. Finish Thompson, Inc.*. 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2009) ......... 14

*Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ................................................... 17

*In re Allstate Ins. Co.*, 400 F.3d 505 (7th Cir. 2005) ................................................................... 4

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) ........................................... 12

*In the Matter of Rules and Regs. Implementing the TCPA of 1991*, 2015 FCC LEXIS 1586 (July 10, 2015) ................................................................................................................................. 15

*Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284 (N.D. Ill. 2005)................................... 5

*Johnson v. Yahoo!, Inc.*, 2016 U.S. Dist. LEXIS 256 (N.D. Ill. 2016)........................... 6, 9, 10, 11

*Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982) .................................... 1

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015) ....................................... 15

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ..................................................... 11

*McBean v. City of New York*, 233 F.R.D. 377 (S.D. N.Y. 2006).................................................. 12

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012) ...... 3, 4

*Mejdrech v. Met-Coil Systems Corp.* 319 F.3d 910, 911 (7th Cir. 2003)................................. 3, 5

*Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802 (7th Cir. 2012).............................. 11

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)...................................... 6, 11, 14

*Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849 (7th Cir. 2017) .................................... 8

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) .............................................. 16

*Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004)................................................. 16

*Myers v. Hertz Corp.*, 624 F.3d 537 (2nd Cir. 2010)................................................................. 12

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ............................................................ 9

*Pella Corp. v. Saltzman*, 606 F. 3d 391 (7th Cir. 2010) ............................................................ 4

*Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246 (7th Cir. 1987) .................................... 1

*Saltzman v. Pella*, 257 F.R.D. 471 (N.D. Ill. 2009).................................................................. 12

*Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005)................................................. 5

*Shurland v. Bacci Café*, 271 F.R.D. 139 (N.D. Ill. 2010)........................................................... 14

*Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)............................................................. 9

*Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 .............................................................. 10

*Suchanek v. Sturm Foods*, 764 F.3d 750 (7th Cir. 2014).......................................................... 16

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)...................................................... 11
*Toney v. Quality Rest., Inc.*, 2018 U.S. Dist. LEXIS 22712 (N.D. Ill. 2018)............................... 14
*United States v. Dish Network, LLC*, 75 F. Supp. 3d 942 (C.D. Ill. 2014)................................... 15
*United States v. Petersen Sand & Gravel, Inc.*, 806 F. Supp. 1346 (N.D. Ill. 1992)...................... 1
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................. 8

**Other Authorities**
*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) .................................................. 5
Fed. R. Civ. P. 23(a)(3)................................................................................................................. 9
Fed. R. Civ. P. 23(a)(4)............................................................................................................... 10
Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................................... 11
Fed. R. Civ. P. 23(c)(3)(4) ............................................................................................................ 3
Fed.R.Civ.P 23(d) ........................................................................................................................ 5
*Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006)................ 10

Plaintiff Rachel Johnson respectfully requests the Court reconsider its order decertifying the class (*Doc. 299*) in light of a factual error concerning the "associated telephone numbers" produced by Sprint.  In the alternative, Plaintiff requests the Court certify amended classes.

## I.  THE COURT SHOULD RECONSIDER ITS RULING IN LIGHT OF AN ERROR OF FACT

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996), citing *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982).  Thus, "a court may grant a motion for reconsideration to correct a clear error of fact." *United States v. Petersen Sand & Gravel, Inc.*, 806 F. Supp. 1346, 1360 (N.D. Ill. 1992), citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

Plaintiff respectfully submits that this Court made a mistake of fact with respect to Yahoo!'s analysis of the associated telephone number data provided by Sprint.  The Court held:

> "Defendant also searched its accountholder database for the associated telephone numbers provided by Sprint.  It found that in 65,061 cases, *a number that received a Welcome Message* matched a number that was provided to defendant in registering a Yahoo! account."

Doc. 299 at p. 6 (emphasis added).  This is incorrect.  In fact, <u>none</u> of the numbers that received a Welcome Message matched a number provided to defendant in registering a Yahoo! account.  This is because the class is comprised only of telephone numbers that do not appear in Yahoo!'s user database, and accordingly, all such numbers were removed from the class list even before the data was sent to Sprint. *See Doc. 125-12 – Hansen Dec.* at ¶ 18.

To be clear, the "associated telephone numbers" provided by Sprint are, by definition, NOT the numbers that received the Welcome Messages.  Even Yahoo! admits that they are all of the *other* telephone numbers on the same Sprint accounts of those numbers that *did* receive the Welcome Message. *Doc. 281* at p. 11.  For example, five of the telephone numbers that did receive

1

a welcome message belong to a single Sprint account in the name of . *Exhibit 1 – Sprint Excerpt*. That is a ███████████████████████████████ ██████████████ and Sprint identified each one those ██████████████████ as an associated telephone number. *Id.* It is this set of additional telephone numbers that Yahoo! analyzed.

Yahoo! claims that its analysis found "in at least 65,061 instances, a telephone number that received a Welcome Message *appears on the same Sprint account* as a telephone number that was used to register a Yahoo username." *Doc. 281* at p. 11. There is a big difference between this assertion and the Court's mistaken holding that there were 65,061 instances where the telephone number that received the welcome message had also been given to Yahoo!. The Court reasoned:

> "the association of thousands of potential class members to a Yahoo! account (and therefore, in turn, an accepted uTOS) is a concrete showing that individual consent issues will predominate the case moving forward. To drill down on whether these class members accepted the uTOS, and thereby provided consent, the facts surrounding each person associated with a matching number would have to be explored."

*Doc. 299* at pp. 6-7. Yet, in fact, the associated telephone number data does not show an association of thousands of potential class members to a Yahoo! account. In fact, all it shows is the association of thousands of *non-class members* to a Yahoo! account. To the extent the Court's certification order relied upon this mistaken view of the associated telephone number analysis, Plaintiff respectfully requests reconsideration.[1]

## II. ALTERNATIVELY, THE COURT SHOULD CERTIFY AMENDED CLASSES

In its decertification order, the Court addressed Plaintiff's proposal that, if the court was inclined to decertify, it should instead simply exclude class members identified by Yahoo!'s

---

[1] Note that Yahoo!'s analysis did not address how many of those non-class member Yahoo! users are actually identified in Yahoo!'s User Database by a name that matches a name in the Sprint records. Thus, Yahoo! has not shown how many of these non-class member Yahoo! users conceivable might be the subscriber for the Sprint telephone account containing the class member's telephone. To the extent any such matching names do exist, however, then they should have been captured by Yahoo!'s separate "name match" analysis. *See Doc. 281-1 - Whipple Declaration* at ¶ 12.

analysis in order to preserve a class.  The Court held:

> "Jettisoning people who consented would not create an impermissible fail-safe class . . . but Plaintiff does not propose a new class definition.  Without a specific definition that has been test against all the Rule 23 requirements, I decline to adjust the class further."

*Doc. 299* at pp. 8-9.

In the alternative to reconsideration, Plaintiff presents those specific definitions here and respectfully requests the Court enter an order granting certification of (1) a Rule 23(c)(4) issue class for determination of whether or not Yahoo! used an ATDS, which includes all persons in the previously certified class; and (2) a narrower Rule 23(b)(3) class for complete adjudication, defined to exclude those persons that Yahoo! has identified as potential Yahoo! users.

**A.  <u>The Court Should Certify an ATDS Issue Class Pursuant to Rule 23(c)(4)</u>**

The Federal Rules of Civil Procedure provide: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(3)(4).  As the Seventh Circuit held in *Mejdrech v. Met-Coil Systems Corp.*:

> "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."

319 F.3d 910, 911 (7th Cir. 2003).  Thus, the Seventh Circuit has reversed the denial of issue-class certification where the case presents certain "issues that can most efficiently be determine on a class-wide basis[.]" *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012)

In *McReynolds*, the plaintiffs filed a class action alleging racial employment discrimination and sought class certification for resolution of the common issue of "whether the defendant has engaged and is engaging in practices that have a disparate impact . . . on the members of the class,

in violation of federal antidiscrimination law." *Id.* at 483.  In reversing the district court's denial

of class certification, the Seventh Circuit held:

> "should the claim of disparate impact prevail in the class-wide proceeding, hundreds of
> separate trials may be necessary to determine which class members were actually adversely
> affected by one or both of the practices and if so what loss he sustained[.] But at least it
> wouldn't be necessary in each of those trials to determine whether the challenged practices
> were unlawful.  Rule 23(c)(4) provides that 'when appropriate, an action may be brought
> or maintained as a class action with respect to particular issues.' The practices challenged
> in this case present a pair of issues that can most efficiently be determined on a class-wide
> basis, consistent with the rule just quoted."

*Id.* at 490-91.  Similarly, in *Pella Corp. v. Saltzman*, 606 F. 3d 391 (7th Cir. 2010), the defendant

sold allegedly defective windows.  *Id.* at 392.  The Seventh Circuit upheld certification of two

issue classes, holding that:  "the common predominant issue of whether the windows suffer from

a single, inherent design defect leading to wood rot is the essence of the dispute and is better

resolved by class treatment.  The district court reasonably determined that the individual issues

that necessarily arise in a consumer fraud action would not prevent class treatment of the narrow

liability issues here."  *Id.* at 393; *see also Carnegie v. Household International, Inc.*, 376 F.3d 656,

661 (7th Cir. 2004) and *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005)

In this case, Plaintiff requests certification of the following Rule 23(c)(4) issue class for

the purpose of resolving whether the PC2SMS system is an ATDS:

> ***ATDS Issue Class***
> **All persons within the United States who was the user of a cellular telephone number
> to which Yahoo! sent the Welcome Message during the period commencing March 1,
> 2013 through March 31, 2013, while that cellular number was assigned to Sprint, and
> which cellular telephone number does not appear in Yahoo!'s user database as the
> number of a Yahoo! user.**

The Court has already determined that the question whether Yahoo!'s PC2SMS system is

an ATDS is a common issue for the entire class that requires no individualized inquiry. *See Doc.*

*299* at p.9, n. 4 (rejecting Yahoo!'s argument that the ATDS inquiry presents individual issues).

As the Seventh Circuit held in *Mejdrech*, "it makes good sense, especially when the class is large [as it is here], to resolve those issues in one fell swoop." 319 F.3d at 911. Further, as described below, and as this Court previously found, the ATDS Issue Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### B. The Court Should Certify a Narrower Class Pursuant to Rule 23(b)(3)

In addition, Plaintiff requests certification of the following, narrower[2] Rule 23(b)(3) class for complete adjudication:

> ***Complete Adjudication Class***
> **All persons within the United States who was the user of a cellular telephone number that Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while that cellular number was assigned to a Sprint account with five or fewer telephone lines, and which cellular telephone number does not appear in Yahoo!'s user database as the number of a Yahoo! user.**
> **Excluded from the class are (1) those cellular telephone numbers that Yahoo identified as potentially belonging to a Yahoo! user in either Exhibit A or B to the Whipple Declaration at ECF # 282-2,3; and (2) those persons who have responded to class notice from a Yahoo! email address.**

This class definition excludes all persons that Yahoo! has identified as a potential Yahoo! user, despite failing to do so during discovery. It thus removes the "evidentiary foundation for their consent-predominance argument" that justified decertification in the Court's view. *Doc. 299* at p. 6. In addition, by limiting the scope of the class to only those class members with individual Sprint accounts or small plans with five or fewer lines, this narrowed definition reduces the remote possibility that Yahoo! had "prior express consent" to send the welcome message to any significant percentage of this narrowed class.

---

[2]  "Litigants and judges regularly modify class definitions" *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005). *See also*, Fed.R.Civ.P 23(d); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 286 (N.D. Ill. 2005) (noting same).

**C.** **Rule 23 is Satisfied**

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). They "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985). Class certification in this case furthers the same policies, as the TCPA is not a fee shifting statute, and each class member's claim for receiving the Welcome Message is worth at most $500-$1500. *See* 47 U.S.C. § 227(b)(3) (allowing the court to treble damages up to $1500).

1. *The Classes are Ascertainable*

A class is ascertainable if it is defined clearly by reference to objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015). "Due process simply does not require the ability to identify all members of the class at the certification stage." *Id.* at 665.

In this case, the classes are defined clearly by reference to objective criteria in the business records of Yahoo! and Sprint. Aside from a few clarifications, the ATDS Issue Class definition tracks the original class definition that this Court already found to be ascertainable and covers the same class members. *See Johnson v. Yahoo!, Inc.*, 2016 U.S. Dist. LEXIS 256, *6 (N.D. Ill. 2016). The Rule 23(b)(3) Complete Adjudication Class definition simply adds additional objective criteria narrowing the scope of the class to address the issues in the Court's decertification order.

Though it is not required, analysis of these records has already identified the vast majority of the class members. Yahoo!'s PC2SMS database showed that it sent the Welcome Message to 520,210 unique cellular telephone numbers assigned to the Sprint Network in March 2013. *Doc. 125-12 – Hansen Declaration* at ¶ 13. 321,107 of those numbers did *not* appear in Yahoo!'s user records. *Id.* at ¶ 18. Plaintiff subpoenaed Sprint, asking it to provide the account level information for those 321,107 numbers. Sprint's records submitted in response to the subpoena did not provide

6

any responsive information for 87,884 of those numbers, and Sprint testified in its deposition that this lack of data means that there was no active customer account for those numbers in March 2013. *Doc. 252-2 - Sprint Deposition* at 85:13 – 87:10. Thus, there are 233,223 unique cellular telephone numbers in the class. *Doc. 252-1 – Intrepido-Bowen Declaration* at ¶ 19. Sprint's records identify the name and address of the account holder in March 2013 for 188,426 telephone numbers (81% of the class); for 167,672 telephone numbers (72% of the class), Sprint's records also identify the *user* in March 2013. *See Id.* at ¶¶ 19-20. 194,743 of the telephone numbers (83% of the class) were on an account with 5 or less telephone lines. *Id.* at ¶ 20.

Courts have routinely found TCPA classes to be ascertainable, even where no such analysis was completed, because a list of telephone numbers to which the offending communications were sent is alone sufficient. For instance, in *Birchmeier*, the court held that a class was ascertainable where the defendants' records identified the telephone numbers to which the calls at issue were placed, because telephone company records could be used to identify the persons subscribing to those telephone numbers at the time of the calls. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245-26 (N.D. Ill 2014) ("it is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000--indeed, the subscribers for those numbers at the time defendants called them--are sufficiently ascertainable."); *see also Amer. Copper & Brass v. Lake City Indust. Prod.*, 2014 U.S. App. LEXIS 12921, *12 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement."); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779, *9 (W.D. Wash. 2015) (finding class to be ascertainable where the plaintiffs "intend to rely on additional records, such as telephone carrier records and reverse look up directories, to identify class members and establish elements of their claims"). Ascertainability is therefore easily satisfied here.

2. *The Classes are Sufficiently Numerous*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all its members is impracticable." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). "A plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D 330, 333 (N.D. Ill. 2009). "Common sense assumptions can be made in order to support a finding of numerosity." *Id.* (citation omitted). In this case, there are approximately 233,223 persons in the Rule 23(c)(4) ATDS Issue Class. *Doc. 252-1 – Intrepido-Bowen Declaration* at ¶ 19.

As to the Rule 23(b)(3) Complete Adjudication Class, there are approximately 194,743 members before applying the exclusions for persons identified in the Whipple declaration or responding to the class notice from a Yahoo! email address. *Id.* at ¶ 20 (identifying count for unique numbers on Sprint accounts with five or fewer lines). Yahoo! contends that there are 47,109 class members identified in the Whipple declaration as potentially providing consent for Sprint accounts with five or fewer lines. *Doc. 294* at p. 9. In addition, Yahoo! contends there are twenty class members who responded to the class notice from a Yahoo! email address. *Id.* Thus, there are approximately 147,614 members of the complete adjudication class. Numerosity is satisfied.

3. *Commonality is Satisfied*

Commonality requires at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). In other words, the class claims must "depend upon a common contention… capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Commonality is satisfied in this case. Yahoo!'s PC2SMS system sent all of the class

members the exact same unsolicited text message, automatically, and indiscriminately in violation of their rights under the TCPA. This Court and numerous courts have found commonality to be satisfied in similar circumstances. *See Johnson*, 2016 U.S. Dist. LEXIS 256 at *7; *Agne v. Papa John's Intern.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Because Plaintiff's allegation is not merely that all class members suffered a violation of the TCPA, but rather that all class members were sent substantially similar unsolicited text messages by the same defendants, using the same automatic dialing technology, commonality is satisfied."); *Booth*, 2015 U.S. Dist. LEXIS 40779 at *19 (commonality satisfied where class members' claims predicated on "the use of the same predictive dialer to robocall and play the same recorded message to various cell phone numbers.")

In this case, Yahoo!'s common course of conduct gives rise to a single, predominating common question. Is the PC2SMS system an "ATDS" under the TCPA? The Court has already held that this is a common issue that will generate a common answer for the class. *Doc. 299* at p. 9, n. 4. Commonality is satisfied for both classes.

### 4. *Plaintiff's Claims are Typical of both Classes*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

In this case, Plaintiff's claims, and those of the absent class members, arise from the same course of conduct: Yahoo!'s PC2SMS system indiscriminately sending the Welcome Message to

whomever received a different text message from a Yahoo! Messenger user. Thus, this court held that Plaintiff satisfied the typicality requirement with respect to the original class. *Johnson*, 2016 U.S. Dist. LEXIS 256 at *16. The amended definitions proposed here do not add any additional class members to the mix. Thus, Plaintiff's typicality is unaffected. *See also Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 at *11-12 (finding typicality satisfied in a TCPA case because "the unnamed class members received text messages identical or similar to those received by Plaintiff. And these text messages were caused by the same course of conduct.").

### 5. *Plaintiff and Her Counsel are Adequate to Represent the Classes*

The adequacy requirement ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

In this case, the Court has already held that Plaintiff is demonstrably an adequate class representative. *Johnson*, 2016 U.S. Dist. LEXIS 256 at *16 ("Johnson's claim is not subject to unique defenses, or premised on unique facts. Johnson has prosecuted this action to date, participated in discovery, and she has no interest in an outcome adverse to the other members.") None of those facts have changed. Further, the amended class definitions do not add any additional class members and thus do not alter this analysis.

In addition, the Court held that Plaintiff's counsel were adequate to represent the original class, having "demonstrated their competence through their submissions . . . and also through their prosecution of this case to date." *Id.* at *17. The Court rejected Yahoo!'s argument that counsel was inadequate because they narrowed the class definition from that proposed in the complaint.

*Id.* The Court found there was no obligation to bring the broadest class possible. *Id.* at 25, quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes.")

In its motion to decertify, Yahoo! argued that counsel's proposal to redefine the certified class "raises ethical issues and casts doubt on whether class counsel can adequately fulfill their fiduciary duties." *Doc. 294* at p. 15. The Court did not make such a finding, but held the proposal "invites concerns" about adequacy. *Doc. 299* at p. 9.

Counsel of course made the proposal *in order to save the class* and avoid the very result this Court reached in decertifying the original class. As a result, unless the Court certifies a new class, *none* of the class members are likely to receive relief for their claims given the cost of individual litigation and available damages. *See Mullins*, 795 F.3d at 658 (class device "essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"), quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Under Plaintiff's proposal, at least some of the class members would have had that opportunity. That would have been a good thing for the class; not a reason to forego a class entirely. *See Mullins*, 795 F.3d 654 at 666 ("When it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good.")

Moreover, the proposal was expressly authorized by Rule 23 and by Seventh Circuit law and therefore cannot be a basis for a finding of inadequacy. Fed. R. Civ. P. 23(c)(1)(C); *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems "can and often should be solved by refining the class definition"); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("the better course is not deny class certification entirely but to amend the class

11

definition as needed to correct for the overbreadth.")

In any event, Plaintiff is now requesting, in the alternative to reconsideration, that the Court certify a new ATDS Issue Class that provides a benefit to the persons in the prior class, and a new Complete Adjudication Class that seeks damages for those persons who otherwise stand to receive nothing. This further demonstrates counsel's continued loyalty to the class, even though "[f]airness does not require class counsel to act on behalf of individuals not in the class, even if at one time those individuals were included in a pretrial class definition." *McBean v. City of New York*, 233 F.R.D. 377 (S.D. N.Y. 2006), citing *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000). Counsel are adequate to represent the new classes proposed here as they have demonstrated their loyalty to the class and have extensive experience and proven success with class actions brought under the TCPA. *See Doc. 125-15; Doc. 125-16*.

6. *Speculation about Consent does not Destroy Predominance*

"[T]he predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The rule does not ask the court to determine whether common issues "outnumber individual issues," but rather "requires a qualitative assessment," instead of "bean counting" or "counting noses." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The existence of numerous individual issues, therefore, does not preclude certification so long as common issues "are more substantial than those subject to only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2nd Cir. 2010); *Saltzman v. Pella*, 257 F.R.D. 471, 484-87 (N.D. Ill. 2009).

As an initial matter, there is no consent issue for the Rule 23(c)(4) ATDS Issue Class. Instead, the only issue is the resolution of the claim that the PC2SMS system is an ATDS. Thus, the issue of consent cannot possibly predominate such a proceeding.

With respect to the Rule 23(b)(3) Complete Adjudication Class, the consent issue is effectively resolved by the exclusion of persons that Yahoo! identified as potentially being a Yahoo! user. There is no reason to presume that any member of this class was a Yahoo! user. The Welcome Message was not even *intended* to be sent to Yahoo! users; it was instead intended for anyone and everyone who happened to receive a user message. *See e.g. Doc. 125-2 – Doron Dep.* at 32:25-33:15. It is thus sheer coincidence that any of the members of the original class may or may not have been Yahoo! users.

As the Court has repeatedly recognized, Plaintiff requested Yahoo!'s evidence of prior express consent during discovery, and it never produced anything. *Doc. 299* at p. 8. When "the Sprint data came into the litigants' hands as a result of *plaintiff's efforts* to identify class members and issue notice," Yahoo! compared that data to its user database and, in its motion for decertification, presented two lists of telephone numbers in the class list that it contended likely belonged to Yahoo! users. *Id.* Even then, Yahoo! never produced the underlying data for its name analysis discovery to Plaintiff, but after almost two years of sitting on Sprint's subscriber records, and six months sitting on the "associated telephone number" data, Yahoo! simply attached a one-sided presentation to its motion to decertify. The Court nevertheless relied on that analysis in decertifying the class, holding that individual issues predominated because "the facts surrounding each person associated with a matching number would have to be explored." *Id.* at p. 7. The amended class proposed here solves that problem because there are no longer any matching telephone numbers in the class. Once again, none of the associated telephone numbers ever belonged to a class member in the first place. *See Supra.*

Yahoo! might argue that consent still predominates because a class member with a common name, like "Rachel Johnson," shares a name with over 3,000 Yahoo! users and thus may have

actually been one of those Yahoo! users. *See Doc. 281-1 - Whipple Declaration* at ¶ 16. Yet this is pure speculation and would preclude all manner of class actions from ever being certified. It cannot defeat class certification. *See Toney v. Quality Rest., Inc.*, 2018 U.S. Dist. LEXIS 22712, *46 (N.D. Ill. 2018) (certifying TCPA class despite "speculation" about consent), citing *G.M. Sign, Inc. v. Finish Thompson, Inc.*. 2009 U.S. Dist. LEXIS 73869, * 13 (N.D. Ill. 2009) ("[The defendant] cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented[.]"); *see also Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, Dist. LEXIS 8975, *9 (N.D. Ill. 2018) (ruling that "the very specter of *possible* consent" cannot defeat class certification in a TCPA case.)

There are two fundamental facts that have thus far worked in Yahoo!'s favor during this litigation. 1. Yahoo! had no idea who it would be reaching when it indiscriminately sent the automated Welcome Messages. *See e.g. Doc. 125-2 – Doron Dep.* at 32:25-33:15. 2. Yahoo! apparently has very limited information about who its users actually are. *See Doc. 281-1 - Whipple Declaration* at ¶¶ 5-7. These shortcomings cannot preclude class adjudication. *Mullins*, 795 F.3d at 668 ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions."); *Shurland v. Bacci Café*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) ("whether a class action is appropriate cannot be a function of Bacci's record-keeping practices.")

Indeed, "allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies is not in harmony with the principles governing class actions." *Mullins*, 795 F.3d at 668, quoting *Daniels v. Hollister Co.*, 113 A.3d 796, 801 (N.J. App. 2015); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("Doing this—or declining to certify a class altogether, as defendants propose—would create an

incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct."); *See Cordoba v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 125486, at \*32-35 (N.D. Ga. July 12, 2017) (rejecting same argument in TCPA class); *Krakauer v. Dish Network* L.L.C., 311 F.R.D. 384, 393 (M.D.N.C. 2015)(Same).

In *Cordoba*, the court that excusing the defendant of its liability for flagrantly violating the TCPA by not maintaining adequate records would create the same "perverse incentive" discussed in *Krakauer*. *Id*. at \*33-34, following *Krakauer*, 311 F.R.D. at 398 (refusing to permit companies to create an almost foolproof shield against class liability by keeping insufficient records.) *Krakauer* rejected the defendant's argument that the class, which was made up of individuals on the defendant's DNC list, was overinclusive because the list "also include[d] other individuals [defendant] [had] decided not to call for other reasons." 311 F.R.D. 384, 393 (M.D.N.C. 2015). The court explained:

> to deny certification because Dish does not keep an accurate list as the regulations require and Dish itself cannot identify which individuals on the list actually requested not to be called, it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.

*Id*. (emphasis added); *see also United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 1014 n.21 (C.D. Ill. 2014) (rejecting argument that DNC list was "not properly maintained and updated")

These decisions track the FCC recognition that the callers have the duty to track consent. *In the Matter of Rules and Regs. Implementing the TCPA of 1991*, 2015 FCC LEXIS 1586, \*116, ¶ 70 (July 10, 2015) ("FCC Omnibus Ruling") ("We expect that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their burden to prove that they have such consent, will maintain proper business records tracking consent.") Yahoo! utterly failed to comply with this duty. It simply did not care.

15

Plaintiff respectfully submits that the amended class proposed here goes above and beyond what should be required to resolve these problems of Yahoo!'s own making by excluding *everybody* that Yahoo! has identified as a *potential* Yahoo! user from the Rule 23(b)(3) Complete Adjudication Class. To the extent that Yahoo! wants to present new evidence that there are even more people who might be Yahoo! Users, the Court should exclude it as Yahoo! has *still* not even supplemented its discovery production to include any of the data underlying its name matching analysis, despite having had a duty to supplement when it received the Sprint subscriber records nearly three years ago on April 16, 2015. *See Doc. 291-2.* Enough is enough. S*ee Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("The exclusion of nondisclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.")

7. *Class Treatment is the Superior Method of Adjudication*

Although certification of the ATDS Issue Class may incentivize some class members to file their own claims because the most time consuming and the most expensive aspect of the class member's claims – whether the PC2SMS system is an ATDS – will have already been resolved, as a practical matter, many will not.

As such, given the small amount of available damages, and lack of a fee shifting provision in the TCPA, certification of the Rule 23(b)(3) Complete Adjudication Class proposed here is likely the only means of adjudication for those class member's claims. It is therefore the superior method of adjudication. *See Suchanek v. Sturm Foods*, 764 F.3d 750, 760 (7th Cir. 2014) ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all.") Indeed, "Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Further, "the class-action device

16

[would] save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

### III.  CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court reconsider its order decertifying the class, or in the alternative, certify the amended classes defined herein pursuant to Rule 23(c)(4) and Rule 23(b)(3).

On February 27, 2018, Plaintiff counsel contacted Yahoo!'s counsel via telephone and email inquiring if Yahoo! would oppose this motion.  Plaintiff's counsel has not received a response as of the time of this filing.

Respectfully submitted,

By: /s/ Timothy J. Sostrin