## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RACHEL JOHNSON, on behalf of herself and all others similarly situated, | Case No. 14-cv-2028 |
| Plaintiff, | U.S. District Judge Manish S. Shah |
| v. | Magistrate Judge Jeffrey Cole |
| YAHOO!, INC., | |
| Defendant. | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE,
<u>MOTION TO CERTIFY AMENDED CLASSES</u>**

Keith J. Keogh
Timothy Sostrin
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (office)
312.726.1093 (fax)
TSostrin@KeoghLaw.com
*Attorneys for Plaintiff Rachel Johnson and the Class*

I. **Introduction**

Yahoo! indiscriminately sent the Welcome Message to anyone who happened to receive a message from a Yahoo user, without making any effort to determine who it would be contacting, and without making any effort to determine if it had consent to send automated text messages to those telephone numbers. *See e.g. Doc. 125-2 – Doron Dep.* at 32:25-33:15. Yahoo! *testified under oath that it never had any idea who it was contacting*:

> "Yahoo does not maintain personally identifying information in connection with any of the telephone numbers that Yahoo users input into its system. Yahoo stores mobile numbers on an exclusion list and these numbers are not logically associated with any contact information. Yahoo only maintains phone numbers, but does not otherwise know who those numbers belong to, let alone to whom those numbers belonged at the time the original message was sent by a Yahoo user.

*Doc. 291 -1* at Rog # 3

It now claims that some of the recipients might coincidentally happen to be Yahoo! users who generally consented to receive "notices" from Yahoo by signing Yahoo!'s universal terms of service, but similarly *admits under oath that its own business records are inadequate to identify who agreed to those terms*:

> "Yahoo has no way to cross reference its various databases to determine which of the phone numbers [at issue] belong to persons who have provided Yahoo consent.

*Id.* at Rog # 6; *see also Doc. 281-1 - Whipple Declaration* at ¶¶ 5-7 (testifying that Yahoo users are not required to provide Yahoo! with their names, telephone numbers, or other personal identifying information.)

Ignorant of who it contacted with its automated messages, and ignorant of who its own users are, Yahoo! conveniently claims that the only way to figure it out is through individualized inquiries that, according to Yahoo!, would make classwide adjudication unmanageable. The law in the Seventh Circuit, however, does not allow Yahoo! to defeat class certification on these

1

facts. *See infra, Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015). Plaintiff has in any event proposed amended class definitions that eliminate the need for extensive individual inquiries regarding Yahoo!'s consent defense. The Court should reconsider its order decertifying the class, or, in the alternative, certify the amended class definitions.

## II. Reconsideration is Appropriate Given the Error of Fact

Yahoo! acknowledges that the Court's order contains a factual error but contends that reconsideration is unnecessary because the factual record is clear in context and because consent still predominates even accounting for corrected facts. Plaintiff disagrees with both points. First, the order is not clear in context - it gives the distinct impression there were 65,061 class members who likely provided their telephone numbers to Yahoo!, but even Yahoo! acknowledges that is false. As Yahoo! concedes, there was no "direct pairing between a Yahoo account holder and a number that received the Welcome Message." Doc. 309 at p. 4. Rather, the "associated telephone number" data shows only that there are 65,061 telephone numbers in Yahoo!'s user database that appeared on the same group telephone plan that also serviced the class member's telephone number. In other words, this data shows that some of the class member's *co-workers and family members* were Yahoo! users, not that the class members themselves were Yahoo! users.

Yahoo! contends that consent still predominates because the associated telephone number data "gives rise to the question of whether the Yahoo account holder is also the subscriber to or the user of the telephone number that received a Welcome Message." *Id.* Yet there would be no need to make such an individual inquiry for the vast majority of telephone numbers because Sprint's data *already identifies* the name of the subscriber *and* the user of the telephone numbers in the class. *See Doc. 252-1* at ¶¶ 19-20. Yahoo! has had this data for years, yet there is no

2

evidence that any significant portion of those names also appear on the same Yahoo! accounts that contain a matching telephone number. Yahoo! could have set forth such evidence if it had it, but failed to do so. Without a statistical correlation of the associated telephone numbers to names that appear in both the Sprint records and Yahoo's user database, the "associated telephone number" data is not "specific evidence showing that a significant percentage of the class consented." *Doc. 299*. In other words, there is no evidence of any percentage of the class consented let alone a significant percentage. Rather, at best, it is evidence that some of the class member's co-workers or family members were Yahoo! users, which is not consent by the class.

In any event, Plaintiff set forth a revised class definition in response to Yahoo's motion for decertification that would simply exclude these telephone numbers from the class. Doc. 291 at pp. 9-10. "Obtaining a remedy for one [portion] of class members is superior to obtaining it for no [portion]." *Doc. 177 – Original order certifying class* at p. 19. In this revised class, there would be no associated telephone numbers whatsoever; Yahoo! would not be able to point to a single telephone number in its user database that is somehow associated with the class member's telephone plan. That would eliminate any need for individual inquiries into the issue.

### III. The Court should Certify the Complete Adjudication Class

In the alternative to reconsideration, Plaintiff moved to certify an amended class for complete adjudication:

> *Complete Adjudication Class*
> **All persons within the United States who was the user of a cellular telephone number that Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while that cellular number was assigned to a Sprint account with five or fewer telephone lines, and which cellular telephone number does not appear in Yahoo!'s user database as the number of a Yahoo! user.**
> **Excluded from the class are (1) those cellular telephone numbers that Yahoo identified as potentially belonging to a Yahoo! user in either Exhibit A or B to the Whipple Declaration at ECF # 282-2,3; and (2) those persons who have responded to class notice from a Yahoo! email address.**

3

Yahoo makes two arguments against certification of this class. First, it argues that individual issues of consent predominate. Second, it argues that Plaintiff's counsel are inadequate to represent the class. These arguments have no merit.

### a. Individual Issues of Consent Do Not Predominate

Individual issues of consent do not predominate in TCPA actions like this one where the defendant obtained the class members telephone numbers from a third party and made no effort to determine whether or not it had consent to call. In such cases, the evidence "suggest[s] a class-wide absence of consent" rather than a need for individual inquiries. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (reversing denial of class certification because the evidence showed that the defendant "failed to contact anyone on the list it purchased from InfoUSA to verify consent"); *Savanna Group, Inc. v. Trynex, Inc.*, 2013 U.S. Dist. LEXIS 1277, *50 (N.D. Ill. 2013) ("Plaintiff has presented evidence that B2B sent the faxes . . . without distinguishing between customer and non-customers. Defendants have neither argued nor provided any evidence to the contrary."); *McMillion v. Rash Curtis & Assocs.*, 2017 U.S. Dist. LEXIS 144403, * 10 (N.D. Cal. 2017) ("where the classes are limited to those whose phone numbers defendant obtained through skip tracing rather than from a third-party debt owner or the individuals themselves, 'there is no need for an individualized inquiry' regarding consent."), citing *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11-CV-1008-AJB, 2011 U.S. Dist. LEXIS 156610, * 10 (S.D. Cal. 2011) ("Because the Defendant obtained these cell phone number via skip-tracing . . ., there is no question of consent and no need for an individualized inquiry.")

Defendants in such cases cannot defeat class certification simply because it is possible that some of the class members coincidentally consented to receive communications from the defendant in another context. *See Hinman v. M & M Rental Ctr.*, 545 F.Supp.2d 802 (N.D. Ill.

4

2008) ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.") Another case in the Northern District of Illinois wherein the defendant obtained the phone numbers at issue from third parties put it this way:

> "To be sure, King claims that some of the contacts designated as prospects have separately consented to receiving the advertisements. Even assuming this is true, however, common issues would still predominate over the individual ones. Further, to the extent that King claims the individual determinations cannot be made without undue hardship, its claim rings hollow. **King's failure to keep orderly records should not be permitted to foil certification motions**." Cf. *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) ("Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted.")

*CE Design Ltd. v. King Architectural Metals*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) (emphasis added) (reversed on other grounds)

Courts within the Seventh Circuit have repeatedly reiterated this principle - a defendant cannot rely on its own failure to track consent in order to defeat class certification.[1] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions."); *id.* ("allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies is not in harmony with the principles governing class actions."); *Shurland v. Bacci Café*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) ("whether a class action is appropriate cannot be a function of Bacci's record-keeping practices.")

---

[1] Yahoo!'s position has been categorically rejected by courts in TCPA class actions that have reasoned it would create a "perverse incentive" to allow defendants to argue individual consent issues due to their own failure to maintain adequate records. *See Cordoba v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 125486, at *32-35 (N.D. Ga. July 12, 2017) and *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015).

5

Yet that is exactly what Yahoo! asks the Court to do in this case. The Court should not allow it. In any event, Yahoo!'s argument that consent predominates here is premised on two unsupported assertions of fact that, even if true, would not defeat predominance.

### i. Common Name Matches do not Defeat Predominance

First, Yahoo! contends that some of the common names extracted from the Sprint data happen to match names that also appear on six or more Yahoo! accounts.[2] Doc. 309 at p. 12. Yet there is no evidence that this is true for any significant portion of the class. Indeed, the only evidence on this point is that the name "▬ Johnson" appears in 23,838 Yahoo accounts and the name "▬ Johnson" appears in 3,080 Yahoo accounts. Doc. 282-1 at ¶¶ 15-16. This common name matching is not "specific evidence showing that a *significant percentage* of the class consented" and is therefore insufficient to defeat class certification. *See Toney v. Quality Res., Inc.*, 2018 U.S. Dist. LEXIS 22712, *44 (N.D. Ill 2018) ("Issues of individualized consent typically predominate when a defendant sets forth specific evidence showing consent from a large percentage of potential class members"), quoting *Mauer v. Am. Intercontinental Univ., Inc.*, No., 2016 U.S. Dist. LEXIS 121061 (N.D. Ill., 2016). The Court should not simply assume that a significant portion of the names in the Sprint data also appear on six or more Yahoo! accounts, especially given that Yahoo! has already completed its analysis and could have provided the Court with such evidence if it believed it to be helpful. *Id.* at ¶¶ 14-18. Obviously, Yahoo! would have included such evidence if it had it and its omission is dispositive.[3] To be clear, all

---

[2] Names that appear on five or fewer Yahoo! accounts appear in Exhibit A to the Whipple Declaration and are already excluded from the class by definition.

[3] Indeed, given Yahoo's repeated failures to supplement its discovery responses with such evidence, the Court should exclude it, if it even exists. S*ee Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("The exclusion of nondisclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.")

6

Yahoo! has presented is two common names matches in its user database without any evidence that those users are actually in the class or that this is statistically significant for the class.

Moreover, even if Yahoo! had presented evidence of common name matches for a significant percentage of the class, it would not pass the evidentiary threshold to defeat class certification on predominance grounds. Even Yahoo! itself acknowledges that it needs to produce "evidence *from which 'it would be reasonable to infer* consent had in fact been provided.'" *Doc. 309* at p. 13, *citing Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) (emphasis added). Yet Yahoo!'s evidence shows the exact opposite. Yahoo! contends that the name "▇▇▇ Johnson" appears in 3,080 Yahoo! accounts yet it concedes that none of those "▇▇▇ Johnsons" is in fact the named Plaintiff Rachel Johnson. Given this evidence, it would not be reasonable to infer that consent had in fact been provided by any given class member simply because there is a common name match. Presumably, Yahoo! chose to exclude common names from the evidence it (belatedly) presented to the Court on this issue for this very reason; it is not "evidence sufficient to justify an individual consent inquiry for a significant percentage of the class." *Doc. 299 – Opinion and Order* at p. 7.

Yahoo! nevertheless contends that "in each of these instances" of a common name match, it would "be entitled to explore and present its consent defense." Doc. 309 at p. 12. Yahoo!'s due process rights are not as broad is it suggests. *See Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) ("the absence of cross-examination does not render Johns's affidavit unworthy of credence. Hodges does not—and cannot—maintain that he has a right of confrontation in the circumstances of this case."), citing *Van Harken v. City of Chicago*, 103 F.3d. 1346, 1352 (7th Cir. 1997) ("There is no absolute right of confrontation in civil cases."); *Shurland*, 271 F.R.D. at 144 ("Plaintiffs have met the Federal Rules' requirement that 'questions

7

of law or fact common to class members predominate over any questions affecting only individual members', and the court, is therefore, not troubled by Defendant's inability to cross-examine absentee plaintiff class members."); *Long v. Trans World Airls.*, 761 F.Supp. 1320, 1323 (N.D. Ill. 1991) (no absolute right to introduce evidence concerning each adverse party.)

Yet even if the Court holds that Yahoo! is entitled to "explore and present its consent defense" as to these class members, a claims administration process by which these class members submit affidavits, subject to Yahoo's challenges, is a perfectly acceptable method of doing so. The Seventh Circuit made this clear in *Mullins*, where it held that a defendant's due process right "does not mean a court cannot rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges[.]" *Mullins*, 795 F.3d 654, 669 (7th Cir. 2015). "We should not underestimate the ability of district courts to develop effective auditing and screening methods tailored to the individual case." *Id.* "A district court can tailor fair verification procedures to the particular case, and a defendant may need to decide how much it wants to invest in litigating individual claims." *Id.* at 670.

Plaintiff suggested an affidavit-based claims process in this case, in both her original briefing on class certification (see Doc. 139 at p. 18, n. 12) and in her trial plan (Doc. 207 at p. 12). To the extent that the Court believes that Yahoo's speculation about common name matches is sufficient to justify individual inquiries, Plaintiff respectfully requests that the Court follow *Mullins* and allow class members with a common name match to submit affidavits in a claims process establishing that they were not Yahoo users prior to March 2013, subject to reasonable consent-focused challenges that Yahoo decides to make (e.g. interrogatories). *See Beaton v. SpeedyPC Software*, 2017 U.S. Dist. LEXIS 17361, *26 (N.D. Ill. 2017) ("Each of these [individual] questions is, as a general matter, sufficiently simple that there are streamlined

mechanisms available to determine which of the Class members has a viable claim. For example, as all of these questions have straightforward binary answers, the parties could utilize a form affidavit, with accompanying audit procedures, to address these questions.")

> ii. Speculation about Additional Yahoo! Accounts does not Predominate

Second, Yahoo! contends that there *might be* additional class members, for whom there is no name match, no associated telephone number match, and no correspondence from a Yahoo! email account, but who are still Yahoo! users. No evidence whatsoever supports this claim. Instead, Yahoo! asks the court to simply assume that such class members must exist simply because Yahoo! is "popular" and provides a lot of services. *Doc. 309* at p. 13. This is pure speculation, which is insufficient to derail a class action. See *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) ("we hold that speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3). The district court abused its discretion in holding otherwise in this case."). *Toney*, 2018 U.S. Dist. LEXIS 22712 at *44 ("mere speculation" about consent is insufficient to defeat predominance), citing *G.M. Sign, Inc. v. Finish Thompson*, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2009) ("[The defendant] cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented[.]")

Yahoo has failed to show that individual issues of consent preclude class certification of the amended class proposed here.

### b. Counsel are Adequate to Represent the Class

The only other argument that Yahoo! makes against certification of this amended class is that counsel are inadequate for the sole reason that the proposed definition excludes certain people from the class who were class members under the prior (now decertified) class. Yahoo!

9

has not cited a single case that supports this proposition. It has no merit whatsoever.

A proposal to amend a class definition is expressly authorized by Rule 23 and by Seventh Circuit law; it cannot be a basis for a finding of inadequacy. Fed. R. Civ. P. 23(c)(1)(C); *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems "can and often should be solved by refining the class definition")

Yahoo contends that these authorities "involve changes to a class definition before certification, and before notice, which are inapplicable here" (*Doc. 309* at p. 15), but it is not clear why that should matter when the changes are proposed as an alternative to decertifying the class entirely. *See Mullins*, 795 F.3d 654 at 666 ("When it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good.")

In any event, courts may amended class definitions *after certification*, and even *after trial*, to exclude persons that were previously in the class as an alternative to decertification. *See In re Pub. Offering Sec. Litig.*, 227 F.R.D. 65, n. 283 (S.D. N.Y. 2004) ("a determination of liability after certification may show a need to amend the class definition"), quoting Fed. R. Civ. P. 23(c)(1)(C) Advisory Committee Note.

For instance, in *Smentek v. Sheriff of Cook County*, 2014 U.S. Dist. LEXIS 17582 (N.D. Ill. 2014), the court certified a 23(b)(3) class, conducted a bench trial, and then ruled on a motion to decertify. *Id.* at *2. The court held that "Under Rule 23, the District Court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Id.* at *21 (citation omitted). Because of "individual issues" that became apparent after the bench trial (*id.* at * 35), the court ruled that "rather than decertifying the (b)(3) class, the court will modify the definition to include an end

10

date for inclusion in the class," thus excluding certain persons from the new class who were previously class members. *Id.* at * 37.

Numerous other courts have also amended class definitions after certification in lieu of decertification. *See Langley v. Coughlin*, 715 F. Supp. 522, 552 (S.D. N.Y. 1989) ("the record in this case supports the conclusion that decertification is not necessary and that a modification of the class [definition] . . . is appropriate"); *Lightfoot v. District of Columbia*, 246 F.R.D. 326 (D.C. Dist. 2007) (denying motion for decertification in light of redefinition of the class.)

Plaintiff has not breached any fiduciary obligations to the class simply by proposing an amended definition for certification after the court has already decertified the prior class. Given the cost of individual actions and the small amount of available damages, certification of an amended class is likely the only way for class members to obtain relief. *See Mullins*, 795 F.3d at 658 (class device "essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'") Plaintiff's proposal is a good thing for the recipients of the Welcome Message, not a breach of fiduciary obligations. In any case, all of the former class members would also be class members of the proposed issue class; Counsel is still working for their benefit. Crediting Yahoo!'s argument is "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *Eggleston v. Chicago Journeyman Plumbers*, 657 F.2d 890, 895 (7th Cir. 1981).

### IV. The Court Should Certify the ATDS Issue Class

Pursuant to Fed. R. Civ. P. 23(c)(4), Plaintiff also moved to certify an amended Issue Class for adjudication solely of the issue of whether Yahoo!'s PC2SMS system is an ATDS:

> *ATDS Issue Class*
> **All persons within the United States who was the user of a cellular telephone number to which Yahoo! sent the Welcome Message during the period commencing March 1, 2013 through March 31, 2013, while that cellular number was assigned to**

**Sprint, and which cellular telephone number does not appear in Yahoo!'s user database as the number of a Yahoo! user.**

In response, Yahoo! contends that an issue class to resolve the ATDS question would not be appropriate here because it "would only settle a limited slice of the litigation" and thus would not remove the need for "substantial individualized proceedings to resolve the class members' claims." *Doc. 309* at pp. 6-7 (citation omitted). Yet that is an argument against the rule itself. As the Seventh Circuit held in *Mejdrech v. Met-Coil Systems Corp.*:

> "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then **it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.**"

319 F.3d 910, 911 (7th Cir. 2003). Thus, even if Yahoo is right that there is a need for "substantial individualized proceedings" to completely resolve the class members' claims (there is not, as explained above), that need would not, by itself, be a reason to deny certification of an Issue Class. It is simply a feature of the issue class mechanism, which, by its very nature, ensures that not all issues will be resolved on a class wide basis. An issue class simply does not need to completely determine liability as Yahoo contends. *See Jacks v. DirectSat USA, LLC*, 2015 U.S. Dist. LEXIS 28881 (N.D. Ill. 2015) ("Follow-up proceedings would solely have to address . . . any defenses DirectSat raises against each individual plaintiff's claims.")

Moreover, Yahoo's stated intention to vigorously litigate individual claims supports certification of an issue class, as it would remove the substantial (and expensive) obstacle of proving that PC2SMS is an ATDS. Yahoo! nevertheless contends an ATDS issue class would not be appropriate because it would not "materially advance the disposition of the litigation as a whole," going so far as to say that "it is unclear what utility, if any" certification of the issue class would have. *Doc. 309* at pp. 6-7 (citation omitted). Yet the ATDS issue is not only the

12

lynchpin of liability (class members must establish that element to win their case), it would be the most technical and expensive issue to litigate in individual claims against Yahoo!, requiring tens of thousands of dollars in expenses for expert testimony and discovery from Yahoo!'s programmers. It is also one of the most litigated issues under the TCPA requiring specialized knowledge as evidenced by Yahoo!'s own motion for summary judgment on this issue. The utility of resolving that issue "in one fell swoop" for every person in the class is perfectly clear; it eliminates the need for each class member to spend tens of thousands of dollars to prove that Yahoo! used an ATDS in subsequent individual claims. Eliminating that burden would remove a substantial barrier preventing the class from proceeding with individual actions against Yahoo!.

### a. The Seventh Amendment does not Preclude an ATDS Issue Class

Threatening a "burden on this Court and its jurors," Yahoo! contends that the Seventh Amendment requires "the same jury" that hears the ATDS issue to also hear "all successive phases of the litigation." Doc. 309 at pp. 8-9. Yahoo! is wrong on the law. There is no requirement that "the same jury" hear every issue in the controversy; indeed, there isn't even a requirement that the *same court* hear every issue in the controversy. *See In re Rhone-Pulenc Rorer Inc.*, 51 F.3d 1293, 1297 (7th Cir. 1995) ("The members of the class, other than the named plaintiffs, would take the special verdict back to their home districts and use it to limit the scope of the individual trials that would be necessary"); *Jacks*, 2015 U.S. Dist. LEXIS 28881 at *22-23 ("Holding a single proceeding to resolve the common issues in one stroke would be most efficient and materially advance the litigation because subsequent courts would be spared from having to adjudicate the common issues "anew in each case.") (internal citations omitted).

Rather, all that the Seventh Amendment requires is that "the issues to be tried in each [separate trial] are, as here, 'distinct and separable.'" *In re Diagnostics*, 800 F.2d 1077, 1086 (7th

13

Cir. 1986). "[T]he prohibition is not against having two juries review the same *evidence*, but rather against having two juries *decide* the same *essential issues*." *Id.* (original emphasis); *see also Houseman v. United States Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999) ("While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome.") The issue of whether the PC2SMSM system is an ATDS is completely distinct from the only other issues in the litigation – whether the class members' telephone numbers are "assigned to cellular telephone service" and whether the class members gave "prior express consent" to receive the Welcome Message. 47 U.S.C. § 227(b)(1)(A). Yahoo fails to explain how there is any overlap between these issues or how subsequent juries would not to decide factual issues concerning the technical capabilities of the PC2SMS system. Its Seventh Amendment argument has no merit.

Of course, Yahoo!'s argument illustrates the efficiency to be had by reconsideration of the Court's prior order, or certification of the amended complete adjudication class, as there would then be one jury, as Yahoo! prefers.

### b. The Issue Class satisfies Rule 23(b)(3)

Finally, Yahoo! contends that Plaintiff's issue class fails to satisfy prerequisites of Rule 23(b)(3) because individual issues of consent predominate. Yet the only issue to be adjudicated in the issue class is whether the PC2SMS system is an ATDS. The issue of consent cannot possibly predominate such a proceeding. Yahoo! cries foul, claiming that Plaintiff cannot "gerrymander" the issues in order to certify a class when there are individual issues that would defeat certification for the claims as a whole. Doc. 309 at p. 10, citing *Hamilton v. O'Connor Chevrolet, Inc.*, 2006 U.S. Dist. LEXIS 44149 (N.D. Ill. 2006).

Although the Seventh circuit has not expressly addressed this contention, the weight of

14

authority in this district, and across the country, is that Rule 23(c)(4) allows for certification of an issue class *regardless of whether the entire claim* would satisfy the predominance test of rule 23(b)(3). As stated by another court in this district last year:

> "The Court believes that the Seventh Circuit likely would follow the trend of authority holding that a court may employ Rule 23(c)(4) "to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 48792, *184 (N.D. Ill. 2017). Numerous decisions are in accord. *See Jacks*, 2015 U.S. Dist. LEXIS 28881 at *12-14; *Healey v. Int'l Bhd. of Elec. Workers*, 296 F.R.D. 587, 596 (N.D. Ill. 2013); *In re Fedex Ground Package Sys., Inc. Empl. Prac. Litig.*, 2010 U.S. Dist. LEXIS 39736, *44-45 (N.D. Ind. 2010); *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 2005 U.S. Dist. LEXIS 12538, *8-9 (N.D. Ill. 2005); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 200-02 (3d Cir. 2009); *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court should follow the weight of authority here, especially given the Seventh Circuit's endorsement of Rule 23(c)(4) in cases that would require "hundreds of separate trials . . . to determine which class members were actually adversely affected by one or both of the practices and if so what loss [was] sustained." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-91 (7th Cir. 2012).

### V. Conclusion

The Court should reconsider its order decertifying the class, or in the alternative, certify the amended classes defined herein pursuant to Rule 23(c)(4) and Rule 23(b)(3).

Respectfully submitted,

By: /s/ Timothy J. Sostrin

15